Peter A. Arhangelsky, Esq. (SBN 291325)
parhangelsky@emord.com
Jonathan W. Emord (pro hac vice)
jemord@emord.com
Eric J. Awerbuch (pro hac vice)
eawerbuch@emord.com
Emord & Associates, P.C.
3210 S. Gilbert Road, Suite 4
Chandler, AZ 85286
Phone: (602) 388-8899
Fax: (602) 393-4361
Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

YOUNGEVITY INTERNATIONAL
CORP.; JOEL D. WALLACH,

                Plaintiffs,

    v.

TODD SMITH, et al.

                Defendants.

Case No.: 16-CV-704 W (JLB)


**PLAINTIFFS' OPPOSITION TO
DEFENDANTS' RENEWED
SPECIAL MOTION TO STRIKE
(CAL. CIV. PROC. CODE § 425.16),
OR, IN THE ALTERNATIVE,
PARTIAL MOTION TO DISMISS
PURSUANT TO FRCP 12(b)(6)**

**No Oral Argument Pursuant to
Local Rule**

Judge:   Thomas J. Whelan
Magistrate Judge:  Jill L. Burkhardt
Hearing Date:  June 13, 2016

# **TABLE OF CONTENTS**

I.   SUMMARY..………………………………………………………1

II.   LEGAL STANDARD ............................................................... 4

III.   ARGUMENT..................................................................... 6

    A. Defendants' Anti-SLAPP Argument Lacks Merit……………..........6

      1. The Defendants' Conduct Is Exempt from the
        Anti-SLAPP under Section 425.17...………………..………6

          a. All Defendants Are Primarily Engaged in the
            Business of Selling Goods and Services………………..7

          b. Youngevity's Claims Arise out of Defendants'
            Promotion of Wakaya's Commercial Interests…………8

          c. The Defendants Acted for the Purpose of
            Promoting Wakaya Perfection……………..………..…9

          d. The Intended Audience Was Potential Customers….…10

      2. The Defendants Conduct Does Not Implicate Free
        Speech Rights............................................................11

      3. Youngevity Is Likely to Succeed on the Merits
        of Claims I, II, III, and VIII………………………….......15

    B. Youngevity Is Entitled by Statute to Its Fees for Defending
      Against Defendants' Frivolous Section 425.16 Motion…………….21

    C. Youngevity Sufficiently Alleges Counts I, II, III, and
      VIII for Purposes of Rules 8 and 12………………………..………..22

IV.   CONCLUSION……………………………………………………...25

# TABLE OF AUTHORITIES

## Cases

*Allen v. Beverly Hills*, 911 F.2d 367 (9th Cir. 1990) ................................5

*Alliant Ins. Servs., Inc. v. Gaddy*, 72 Cal. Rptr. 3d 259 (Cal. Ct. App. 2008) .................................................................................24

*Ampex Corp. v. Cargle*, 27 Cal. Rptr. 3d 863 (Cal. Ct. App. 2005).................13

*Angelica Textile Servs., Inc. v. Park*, 163 Cal. Rptr. 3d 192 (Cal. Ct. App. 2013) ...............................................................17

*Bulletin Displays, LLC v. Regency Outdoor Adver., Inc.*, 448 F. Supp. 2d 1172 (C.D. Cal. 2006) ...............................................5

*Carr v. Asset Acceptance, LLC*, No. CV F 11-0890 LJO GSA, 2011 WL 3568338 (E.D. Cal. Aug. 12, 2011).................................5

*ComputerXpress, Inc. v. Jackson*, 113 Cal. Rptr. 2d 625 (Cal. Ct. App. 2001) .................................................................13

*Davis v. Elec. Arts, Inc.*, 775 F.3d 1172 (9th Cir. 2015) ........................15

*Elements Spirts, Inc. v.Inconic Brands, Inc.*, No. CV 15–02692 DDP (AGRx), 2015 WL 3649295 (C.D. Cal. June 11, 2015) ........................10

*Farmers Ins. Exchange v. Steele Ins. Agency, Inc.*, No. 2:13-cv-00784-MCE-DAD, 2014 WL 7140975 (E.D. Cal. Dec. 12, 2014)..................7

*Flores v. Emerich & Fike*, 2007 WL 9632825 (E.D. Cal. Mar. 29, 2007)...............5

*GA Telesis, LLC v. GKN Aerospace, Chem-Tronics, Inc.*, No. 12-CV-1331-IEG (BGS), 2013 WL 1147951 (S.D. Cal. Mar. 19, 2013) .................9

*Garham-Sult v. Clainos*, 756 F.3d 724 (9th Cir. 2013) ........................6

*Gerbosi v. Gaims, Wil, West & Epstein, LLP*, 122 Cal. Rptr. 3d 73 (Cal. Ct. App. 2011) .................................................................21

*Global Telemedia Intern., Inc. v. Doe 1*, 132 F. Supp. 2d 1261 (C .D. Cal. 2001) .................................................................13

*Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*, 63 F. Supp. 2d

1127 (N.D. Cal. 1999) ...........................................................13

*Graffiti Protective Coatings, Inc. v. City of Pico Rivera*, 104 Cal. Rptr. 3d
   692 (2010)................................................................................11

*Huong Que, Inc. v. Luu*, 58 Cal. Rptr. 3d 527 (Cal. Ct. App. 2007) ......................16

*In re Aroonsakool*, No. 11-06927-LA7, 2012 WL 458819 (S.D. Cal. Feb.
   9, 2012)...................................................................................21

*Integrated Healthcare Holdings, Inc. v. Fitzgibbons*, 44 Cal. Rptr. 3d 517
   (Cal. Ct. App. 2006) .................................................................12

*J-M Mfg. Co., Inc. v. Phillips & Cohen LLP*, --Cal. Rptr. 3d --, 2016 WL
   1757286 (Cal. Ct. App. May 2, 2016)............................................11

*K.C. Multimedia, Inc. v. Bank of Am. Tech & Operations, Inc.*, 90 Cal.
   Rptr. 3d 247 (Cal. Ct. App. 2009) .................................................19

*Martinez v. Metabolife Int'l, Inc.*, 6 Cal. Rptr. 3d 494 (Cal. Ct. App. 2003) ...........11

*Moore v. Shaw*, 10 Cal. Rptr. 3d 154 (Cal. Ct. App. 2004).....................................21

*NL Indus., Inc. v. Kaplan*, 792 F.2d 896 (9th Cir. 1986).........................................5

*Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480 (9th Cir. 1995) ......................5

*Phx. Tech. Ltd. v. DeviceVM*, No. C 09-04697, 2009 WL 4723400 (N.D.
   Cal. Dec. 8, 2009)....................................................................20

*Rasidescu v. Midland Credit Mngmt., Inc.*, 435 F. Supp. 2d 1090 (S.D.
   Cal. 2006) ..............................................................................15

*Robert Half Intern., Inc. v. Ainsworth*, 68 F. Supp. 3d 1178 (S.D. Cal.
   2014)......................................................................................18

*Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973 (C.D. Cal.
   1999)....................................................................................4, 5

*Rovince Intern. Corp. v. Preston*, No. CV 13-3257 CAS (PJWx), 2013
   WL 5539430 (C.D. Cal. Oct. 7, 2013) .........................................18

*Sarver v. Chartier*, 813 F.3d 891 (9th Cir. 2016) ................................. 5, 13, 15, 16

*Simpson Strong-Tie Co., Inc. v. Gore*, 230 P.3d 1117 (Cal. 2010) .......... 6, 9, 10, 11

*Summit Bank v. Rogers*, 142 Cal. Rptr. 3d 40 (Cal. Ct. App. 2012) ......................13

*Trindade v. Reach Media Grp., LLC*, No. 12:CV-4759-PSG, 2013 WL 3977034 (E.D. Cal. July 31, 2013)................................................................7, 8

*Troy Grp., Inc. v. Tilson*, 364 F. Supp. 2d 1149 (C.D. Cal. 2005) ..........................13

*TYR Sport Inc. v. Warnaco Swimwear Inc.*, 679 F. Supp. 2d 1120 (C.D. Cal. 2009) ...........................................................................................................12

*Weiland Sliding Doors and Windows, Inc. v. Panda Windows and Doors, LLC*, 814 F. Supp. 2d 1033 (S.D. Cal. 2011) ......................................................9, 22

*Weinberg v. Feisel*, 2 Cal. Rptr. 3d 385 (Cal. Ct. App. 2003).................................13

## Statutes

Cal. Bus & Prof. Code § 16601 ................................................... - 9 -, - 28 -, - 30 -

Cal. Bus. & Prof. Code § 16600 ................................................................. passim

Cal. Civ. Code §§ 3426-3426.11 ("CUTSA") .................................................. passim

Cal. Civ. Proc. Code § 425.16 .................................................................... passim

Cal. Civ. Proc. Code § 425.17 .................................................................... passim

Cal. Penal Code § 327.......................................................................... - 20 -

## Rules

Fed. R. Civ. Proc. 12 ............................................................................... passim

Fed. R. Civ. Proc. 56 ..............................................................................- 10 -

Fed. R. Civ. Proc. 8................................................................. - 10 -, - 11 -, - 21 -

Plaintiffs Youngevity International Corp. and Dr. Joel D. Wallach (collectively "Youngevity") hereby oppose the Special Motion filed by Defendants Wakaya Perfection, LLC ("Wakaya"), Todd Smith, Blake Graham, Andre Vaughn, Dave Pitcock, Total Nutrition, Inc. ("TNT"), Patti Gardner, and Brytt Cloward (collectively "Defendants" or "Wakaya") on May 12, 2016.  Dkts. 28–28-2.  For the following reasons, Defendants' Motion should be denied.

## I.   <u>SUMMARY</u>

Youngevity's FAC includes nine counts.  Defendants' Motion challenges only Counts I, II, III, and VIII.  Count I alleges intentional interference with prospective economic advantage.  Youngevity bases that claim on Defendants' intentional disruption of its business relationships, including Defendants' unlawful diversion to Defendant Wakaya Perfection LLC of a business opportunity from the Great American Clay company ("GAC") intended for Youngevity.  Count II alleges intentional interference with contractual relationships based, in part, on Defendants' unlawful disruption of Youngevity's existing business relationships with customers and distributors while working for and within Youngevity and immediately after departing.  Count III alleges breach of contract based on Defendants' violation of agreements with Youngevity including, e.g., employment agreements and purchase/sale agreements.  Count VIII alleges unfair competition based on false and misleading advertising claims, and unfair business practices, e.g., false income earnings claims, false advertising of Wakaya-brand products, and operation of an unlawful pyramid scheme.  Defendants have not challenged the remaining claims in Youngevity's FAC (i.e., Counts IV, V, VI, VII, and IX).

Defendants' *partial* motion to dismiss suffers from a fatal, irreconcilable conflict.  Count Six in Youngevity's FAC also included allegations of false and misleading advertising under the federal Lanham Act.  Dkt. 25 at ¶¶ 157–210. Count Nine in Youngevity's FAC included similar allegations under the California

False Advertising Law (FAL).  *Id.* at ¶¶ 233–40.  Count Seven concerned Defendant Andreoli's statements against Youngevity's interests while employed by Youngevity.  *Id.* at ¶¶ 211–14.  Those claims all mirror Youngevity's allegations in Count Eight, including the false advertising allegations and Wakaya's promotion of an unlawful pyramid scheme.  *Id.* at ¶¶ 215–32.  Therefore, regardless of the outcome of Defendants' pending motion, all factual statements raised in the Complaint concerning Count Eight will remain at issue because Defendants have not challenged Counts Six, Seven, and Nine.  By failing to contest Counts Six, Seven, and Nine, Defendants have waived argument on those claims and conceded that they are properly before this Court.  That concession creates an irreconcilable conflict with Defendants' isolated challenge of Count Eight.  If the same facts are actionable under the remaining claims (and not subject to an anti-SLAPP), then Defendants have conceded that they have no legal basis to bring their instant motion against Count Eight, leaving intact the same factual allegations under different counts.

Next, the California anti-SLAPP is inapplicable.  Youngevity's Counts I, II, III, and VIII are not subject to California's anti-SLAPP statute because Cal. Civ. Proc. Code § 425.17(c) expressly exempts commercial speech, which is the only speech here at issue.  Defendants do not even cite, let alone attempt to distinguish, the applicable Section 425.17 exemption.  The Defendants' speech is transparently in pursuit of commercial interests.  Defendants acted with the intent to induce Youngevity distributors and others to join Wakaya Perfection.  The Section 425.17 exemption defeats the Defendants' anti-SLAPP motion outright.  Because the Defendants' Section 425.16 Motion is expressly defeated by the Section 425.17 exemption, the motion has no tenable legal basis, and Youngevity may recover its fees and costs.  *See* Section 425.16(c)(1).

Even if we assume the anti-SLAPP argument survives Section 425.17, the Defendants fail to meet their burden to prove that Counts I, II, III, and VIII are

predicated on constitutionally protected conduct.  Moreover, Youngevity has a reasonable probability of success on the merits of Counts I, II, III, and VIII, which also defeats Defendants' anti-SLAPP.  Those claims are not predicated on the exercise of Defendants' rights to free speech or petition.  The claims are not in retaliation solely for speaking out against Youngevity on an issue of public importance.  Rather, those claims are predicated on Defendants' unlawful and unfair business practices.

Even assuming the Defendants could show that Counts I, II, III, and VIII arose out of protected speech or petitioning activity, Youngevity still overcomes Section 425.16 because it has a reasonable probability of success on the merits. Defendants misread and misapply Section 16600 and the California Uniform Trade Secrets Act.  Section 16600 ordinarily invalidates non-compete clauses in employment contracts, but that clause does not apply to current employees and agents of a company who compete directly against their employer while still employed.  Youngevity's claims are largely based on Defendant's conduct committed by the Defendants while they were still employed by, or distributors for, Youngevity.  The Defendants were all Youngevity distributors, officers, or employees, who solicited other Youngevity distributors, employees, and potential distributors, employees, and business partners, to work for Defendant Wakaya Perfection, a competing concern.

The non-compete clauses in the contracts with Cloward, Gardner, and Andreoli are valid and enforceable.  Under Cal. Bus & Prof. Code § 16601, non-compete clauses are valid when part of a sale of a business.  *See* Cal. Civ. Proc. Code § 16601.  Youngevity purchased Heritage Makers ("HM"), and as part of that agreement (the "HM Agreement"), Defendants Cloward and Gardner agreed not to compete with Youngevity.  Similarly, Youngevity purchased four businesses from Defendant Andreoli, and as part of that agreement (the "Andreoli Agreement"), Andreoli agreed not to unfairly compete with Youngevity.  Defendants again do

not cite, let alone distinguish, the Section 16601 exemption in their moving papers.

Finally, Youngevity's Counts I, II, III, and VIII are not preempted by the CUTSA.  CUTSA only supersedes causes of action arising out of the misappropriation of trade secrets or confidential information.  Counts I, II, III, and VIII do not "arise" out of Defendants' misappropriation of trade secrets or other confidential information.  The use of Youngevity's trade secret information is certainly part of the *evidence* of tortious activity, including, e.g., intentional interference with economic advantage.  But the use of that trade information is not the sine qua non of the claims.  The misuse of trade secret and proprietary information was but one of several actions taken by Defendants to build a competing venture unlawfully and at Youngevity's expense.  Youngevity may use the misappropriation of trade secrets as evidence of that larger tortious activity without risking preemption.  The Defendants' broad interpretation of CUTSA preemption would otherwise preclude all tort theories whenever the use of trade secret information is connected with tortious conduct.  The Courts have rejected that approach.  Defendants offer no reason to depart from well-established precedent.  Similarly, Defendants' motion to dismiss under Rule 12(b)(6) fails. Youngevity has sufficiently pled Counts I, II, III, and VIII.

## II.   LEGAL STANDARD

Defendants move to strike and/or dismiss four causes of action in Plaintiffs' FAC under Section 425.16 and/or Rule 12(b)(6).  *See generally* Dkt. 25-2.

A Section 425.16 motion proceeds on one of two theories:  (1) legal insufficiency of the pleadings or (2) plaintiff's lack of evidence supporting the claims.  *Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973, 981 (C.D. Cal. 1999).  The standards of review for an anti-SLAPP motion differ in federal court.  "[I]f a defendant desires to make a special motion to strike based on the plaintiff's lack of evidence, the defendant may not do so until discovery has been

developed sufficiently to permit summary judgment under Rule 56." *Bulletin Displays, LLC v. Regency Outdoor Adver., Inc.*, 448 F. Supp. 2d 1172, 1180 (C.D. Cal. 2006). By contrast, Section 425.16 motions brought at the pleading stage and based on legal deficiencies in the complaint are subject to the conventional Rule 12 standard. *See Rogers*, 57 F. Supp. 2d at 982–83; *see also Carr v. Asset Acceptance, LLC*, No. CV F 11-0890 LJO GSA, 2011 WL 3568338, at *3 (E.D. Cal. Aug. 12, 2011); *Flores v. Emerich & Fike*, No. 1:05-CV-0291 OWW DLB, 2007 WL 963282, at *5 (E.D. Cal. Mar. 29, 2007) *aff'd*, 385 F. App'x 728 (9th Cir. 2010) (citing *Rogers* with approval).

Defendants bring their anti-SLAPP motion at the pleading stage. They attach no countervailing evidence in support of their motion. In the Ninth Circuit, this Court must therefore apply the conventional analysis applicable to Rule 12(b)(6) motions. *See Sarver v. Chartier*, 813 F.3d 891, 901 (9th Cir. 2016).

Rules 8 and 12 include the requirement that the complaint be read liberally, that all well-pled allegations be taken as true, and that dismissal generally be with leave to amend. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986); *Allen v. Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990).

Indeed, the Ninth Circuit recently held that, on a Section 425.16 Motion, well-pled allegations in the complaint are to be taken as true. *Sarver*, 813 F.3d at 901. As explained below, Rules 8 and 12 are satisfied through Youngevity's FAC (Dkt. 25) and the exhibits and declarations attached thereto.

Finally, commercial speech is expressly exempt from the ambit of actionable Section 425.16 motions. *See* Cal. Civ. Proc. Code § 425.17(c). Thus, a Section 425.16 motion is inappropriate and unsupported. As discussed below, all speech at issue here is unquestionably commercial.

# III.   ARGUMENT

## A. Defendants' Anti-SLAPP Argument Lacks Merit

None of the conduct underlying Counts I, II, III, and VIII is protected by Cal. Civ. Proc. Code section 425.16.  Defendants' Section 425.16 Motion therefore lacks merit.

To succeed on a Section 425.16 Motion, the Defendant first has the burden of proving that "the plaintiff's causes of action arise from an act in furtherance of the defendant's right of petition or free speech."  *Garham-Sult v. Clainos*, 756 F.3d 724, 734–35 (9th Cir. 2013).  Only if the defendants meet that requirement does the burden then shift to the plaintiff to "show that it has a reasonable probability of prevailing in its claims" to avoid dismissal.  *Id.* at 735, 741.

### 1.   The Defendants' Conduct Is Exempt from the Anti-SLAPP under Section 425.17

Under Section 425.17(c), commercial speech is categorically excluded from a Section 425.16 motion.  *Simpson Strong-Tie Co., Inc. v. Gore*, 230 P.3d 1117, 1120 (Cal. 2010) (identifying Section 425.17(c) as "the commercial speech exemption to the anti-SLAPP statute").  To invoke that commercial exemption, Youngevity must establish:

> (1)  The cause of action is against a person primarily engaged in the business of selling or leasing goods or services; (2) the cause of action arises from a statement or conduct by that person consisting of representations of fact about that person's business or a business competitor's business operations, goods, or services; (3) the statement or conduct was made either for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services in the course of delivering the person's goods or services; and (4) the intended audience for the statement or conduct meets the definition set forth in section 425.17(c)(2).

*Id.* at 1129 (the "*Simpson* elements").

Youngevity satisfies each of the four *Simpson* elements.

---

### a.  All Defendants Are Primarily Engaged in the Business of Selling Goods and Services

All of the Defendants are "primarily engaged in the business of selling or leasing goods or services."  The Defendants are corporations that sell goods, or individuals that sells goods through Wakaya Perfection LLC.  *See  Farmers Ins. Exchange v. Steele Ins. Agency, Inc.*, No. 2:13-cv-00784-MCE-DAD, 2014 WL 7140975, at *3 (E.D. Cal. Dec. 12, 2014) (holding that corporations are primarily engaged in the business of selling goods and service); *Trindade v. Reach Media Grp., LLC*, No. 12:CV-4759-PSG, 2013 WL 3977034, at *9 (E.D. Cal. July 31, 2013) (holding that an individual defendant was primarily engaged in the sale of goods and services where the plaintiff alleged that the individual sold services).

Defendant Wakaya Perfection LLC is a direct-networking sales company that sells health and beauty products, including nutritional supplements.  Dkt. 25 at ¶ 50.  Defendant TNT, founded and owned by Defendants Smith and Graham, is also engaged in the business of distributing goods and services through the websites wallachonline.com and yteamtools.com.  *Id.* at ¶¶ 21–22, 28, 61–65, 225.  Defendant Todd Smith is the owner and founder of Wakaya Perfection LLC, and one of the owners and founders of TNT.  *Id.* at ¶¶ 21, 39, 171.  Through Wakaya Perfection and TNT, Todd Smith is engaged in the business of selling products and services.  *Id.* at ¶¶ 21, 63–65.  Defendant Andreoli, through his involvement and undisclosed financial interest in Wakaya Perfection, is in the business of selling goods and services.  *Id.* at ¶¶ 18, 83.  Defendants Pitcock and Vaughn are top-level ambassadors for Wakaya Perfection, and, through those positions, are engaged in the business of selling Wakaya Perfection's goods and services.  *Id.* at ¶¶ 19, 79, 100; Dkt. 25-1 at p. 124 (identifying Andre Vaughn and Dave Pitcock as Wakaya Perfection "ambassadors").  Graham is also a Wakaya ambassador.  Dkt. 25-1 at p. 124 (identifying Blake Graham as a Wakaya Perfection "ambassador").  Through his involvement and financial interests in TNT and Wakaya Perfection, Defendant

Graham is primarily involved in the business of selling goods and services.
Defendants Gardner and Cloward are participants and investors in Wakaya
Perfection.  Dkt. 25 at ¶¶ 23–24.  Gardner is the vice president of sales at Wakaya
Perfection.  *Id.* at ¶ 90.  Through their participation and involvement in Wakaya
Perfection, Defendants Cloward and Gardner are primarily engaged in the business
of selling goods and services.  In sum, all Defendants, through their positions and
interests in Wakaya Perfection are primarily engaged in the business of selling
goods and services.  *Cf. Trindade*, 2013 WL 3977034 at *9.

### b. Youngevity's Claims Arise out of Defendants' Promotion of Wakaya's Commercial Interests

Youngevity and Wakaya Perfection are direct competitors.  Dkt. 25, at ¶ 15.
Both companies use direct multi-level marketing models to sell similar goods to
similar consumers, including:  health, food, wellness, and cosmetic products.  *Id.* at
¶¶ 7, 39, 43, 45, 50, 193, 206.  Defendants have unlawfully diverted business
opportunities, suppliers, distributors, and consumers from Youngevity to Wakaya
Perfection.  *Id.* at ¶¶ 16, 31, 39, 46–52.  As of April 22, 2016, approximately half
of all Wakaya's ambassadors were Youngevity distributors, and about 61% of
"Founder Qualified" Wakaya ambassadors were Youngevity distributors.  *Id.* at ¶¶
56–57.  The Defendants have used Youngevity's proprietary information,
including distributor lists, to contact Youngevity's distributors and encourage them
to join Wakaya.  *Id.* at ¶¶ 58– 61.  New publications and promotional content
published by Wakaya have adopted the format and content of Youngevity
publications and promotional content.  *Id.* at ¶ 93.

All of the communications identified by Defendants in their Section 425.16
Motion involve representations of fact made by the Defendants about Wakaya
Perfection's or Youngevity's business.  The FAC documents Defendants'
concerted attempt to takeover Youngevity business from within, preying upon
Youngevity's goodwill and proprietary business information.  Defendants cannot

impart constitutional protections to their conduct merely because Youngevity is a publicly traded company.[1]  Their false claims that Youngevity suffered poor financial health were representations of fact about Youngevity.  False claims that Youngevity is on the brink of bankruptcy are representations of fact about Youngevity.  Statements impugning the character, integrity and fitness of Youngevity officers are also representations of fact concerning Youngevity.  Graham's message to Youngevity distributors falsely indicating that Youngevity condoned Todd Smith's employment with a competing company are also statements of fact about Youngevity.  *See* Dkt. 25-1 at pp. 116–18 (Graham's message to Youngevity distributors).

### c.  The Defendants Acted for the Purpose of Promoting Wakaya Perfection

All of those statements, *supra*, were designed to further Wakaya's commercial interests.  Youngevity thus satisfies the third *Simpson* element.  *Simpson*, 230 P.3d at 1129.  "California courts consider the purpose motivating the communication when evaluating this factor."  *GA Telesis, LLC v. GKN Aerospace, Chem-Tronics, Inc.*, No. 12-CV-1331-IEG (BGS), 2013 WL 1147951, at *7 (S.D. Cal. Mar. 19, 2013) (collecting cases).  Statements "made in connection with directing the audience towards purchasing [the speaker's] product" satisfy this element.  *Weiland Sliding Doors and Windows, Inc. v. Panda Windows and Doors, LLC*, 814 F. Supp. 2d 1033, 1038 (S.D. Cal. 2011).

Here, all the purportedly protected communications made by Defendants were inextricably part of an effort to secure business for Wakaya from Youngevity.

---

[1] Defendants argue that those statements cannot support a claim of cross-recruiting or misappropriation.  Dkt. 28-2 at p. 10 n. 2.  Youngevity does not bring claims for cross-recruiting.  It brings no claims against the Defendants under the Youngevity distributor agreement.  Further, the Defendants have only asserted arguments related to preemption under CUTSA and illegality under Section 16600.  They have not argued failure to plead with particularity.  *See* Dkt. 28-2 at § (II).

Defendants' intended to induce Youngevity distributors to breach their contracts and work for a direct competitor, Wakaya Perfection.  Dkt. 25 at ¶¶ 60–61, 75. Smith and Vaughn falsely told Youngevity distributors that Youngevity suffered from financial hardship and was on the brink of bankruptcy with the intent to have those distributors breach Youngevity contracts and join Wakaya.  *Id.* at ¶¶ 19, 20, 109.   Those statements were false; trade libel is not protected speech.  *Elements Spirts, Inc. v. Inconic Brands, Inc.*, No. CV 15–02692 DDP (AGRx), 2015 WL 3649295, at \*10 (C.D. Cal. June 11, 2015). The more distributors that joined Wakaya, the more profit Vaughn, Smith, Pitcock, Graham, and Wakaya Perfection received.  In sum, all of the defendants' communications featured in the FAC were intended to induce Youngevity distributors to breach contracts and become Wakaya distributors for the financial benefit of Wakaya and each of the Defendants—distinctly a commercial purpose.

### d.  The Intended Audience Was Potential Customers

Youngevity satisfies the final *Simpson* element because the Defendants' targeted their statements to "actual or potential buyer[s] or customer[s], or a person likely to repeat the statement to, or otherwise influence, an actual potential buyer or customer …"  Cal. Civ. Proc. Code § 425.17(c)(2); *see also Simpson*, 230 P.3d at 1129.  For a company like Wakaya Perfection, dependent on the acquisition of new distributors, any person is a potential "customer."  *See, e.g.*, Dkt. 25 at ¶ 31. Moreover, individuals already involved in multi-level marketing, like Youngevity distributors, are more likely to be potential Wakaya customers.  The statements identified in the Motion were made to Youngevity distributors who Wakaya attempted to convert.  *Id.* at ¶¶ 19–20, 39, 42.  Graham sent his e-mail and text message to Youngevity distributors.  *Id.* at ¶ 73.  Graham and Pitcock made their comments concerning Youngevity's health to Youngevity distributors, among others.  *Id.* at ¶¶ 19–20, 39.  The Defendants made comments condemning Youngevity's officers directly to Youngevity distributors, including on the

Youngevity expense-paid cruise ship in January, 2015.  *Id.* at ¶ 42.  Defendants directed all of the conduct giving rise to Youngevity's causes of action I, II, III, and VIII at individuals they hoped would become distributors for or employees of Wakaya Perfection.

### 2. The Defendants Conduct Does Not Implicate Free Speech Rights

The Defendants cannot meet their burden even were the commercial speech exemption under Section 425.17 inapplicable, because Youngevity's causes of action do not arise out of Defendants' protected conduct.  For Section 425.16 to apply, the defendant must prove that the speech at issue furthers the Defendants' right of petition or right of free speech.  *Simpson*, 230 P.3d at 336.  They have not demonstrated that basic element.

"In deciding whether an action is a SLAPP, the trial court should distinguish between (1) speech or petitioning activity that is mere *evidence* related to liability and (2) liability that is *based on* speech or petitioning activity."  *Graffiti Protective Coatings, Inc. v. City of Pico Rivera*, 104 Cal. Rptr. 3d 692, 697 (2010) (emphasis in original).  Only the latter is protected by anti-SLAPP.  Almost every legal action involves "speech" in some way.  "[T]the critical point [of distinction] is whether the plaintiff's cause of action itself was *based on* acts in furtherance of the defendant's right of petition or free speech."  *J-M Mfg. Co., Inc. v. Phillips & Cohen LLP*, --Cal. Rptr. 3d --, 2016 WL 1757286, at *4 (Cal. Ct. App. May 2, 2016) (emphasis in original); *see also Martinez v. Metabolife Int'l, Inc.*, 6 Cal. Rptr. 3d 494, 499 (Cal. Ct. App.2003) ("it is the principal thrust or gravamen of the plaintiff's cause of action that determines whether [Section 425.16] applies").  If the plaintiffs' cause of action is not based on acts in furtherance of the defendants' right of petition or free speech, Section 425.16 does not apply.  *Id.*

In this case, Youngevity sues for redress arising out of unlawful business practices, not speech or petitioning activity.  Counts I, II, III, and VIII are not

based on acts in furtherance of Defendants' rights of petition or free speech. The lawsuit challenges Defendants' tortious behavior, including: breaches of contract (Dkt. 25 at ¶¶ 132–37); inducing breaches of contract by others (*Id.* at ¶¶ 123–31); tortiously interfering with business and contractual relations (*Id.* at ¶¶ 120–22); converting business opportunities through deceit and misrepresentation (*Id.* at ¶¶ 113–19); breaching fiduciary duties while working for Youngevity (*Id.* at ¶¶ 211–14); violating the Lanham Act through unfair and unlawful business practices (*Id.* at ¶¶ 157–210); engaging in false and misleading advertising while in direct competition with Youngevity (*Id.* at ¶¶ 158–210, 233–40); violating unfair competition laws (*Id.* at ¶¶ 215–32); and promoting an unlawful pyramid scheme (*Id.* at ¶¶ 182–210, 226–32).

Defendants attempt to shoehorn this lawsuit through the anti-SLAPP statute by extracting three specific factual allegations in the Complaint that purportedly constitute "protected speech" within the meaning of Section 425.16: (1) Wakaya Perfection's and Todd Smith's dissemination of false information about Youngevity's financial health during a commercial presentation for Wakaya Perfection LLC; (2) Vaughn's and Pitcock's false statement during the course of a commercial presentation for Wakaya Perfection LLC concerning Youngevity's financial status; and (3) Graham's unauthorized use of corporate e-mail lists to promote Wakaya and falsely convey the impression that Youngevity condoned Todd Smith's creation of the Wakaya Perfection venture.

Under well-settled precedent, those private commercial communications by Youngevity competitors are not protected under Section 425.16. *See TYR Sport Inc. v. Warnaco Swimwear Inc.*, 679 F. Supp. 2d 1120, 1141–42 (C.D. Cal. 2009) (explaining that "with few exceptions, [Section 425.16] does not apply to commercial speech about a competitor"); *see also Integrated Healthcare Holdings, Inc. v. Fitzgibbons*, 44 Cal. Rptr. 3d 517, 525 (Cal. Ct. App. 2006); *Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*, 63 F. Supp. 2d 1127, 1130 (N.D. Cal.

1999).

None of the statements cited in Defendants' motion address issues of public interest; rather they all address matters of private commercial concern to those involved in Youngevity and Wakaya's respective businesses.  They concern the financial interests of two competing companies and the financial interests of the individual Defendants.  They solely relate to and focus on those commercial interests and address no matters of public concern or issues that occupy local, regional, or national discussion or debate.  *See Sarver*, 813 F.3d at 901 (explaining that for statements to be protected by Section 425.16, "there should be some degree of closeness between the challenged statements and the asserted public interest, and the focus of the speaker's conduct should be the public interest.") (quoting *Weinberg v. Feisel*, 2 Cal. Rptr. 3d 385, 392 (Cal. Ct. App. 2003)).  The primary motivation for the speech was to promote Defendants' commercial interests.[2]

The gravamen of Count I is that Defendants Smith, Graham, and Wakaya intentionally interfered with Youngevity's prospective economic advantage with GAC by converting that business opportunity from Youngevity to Wakaya, ultimately consummating a deal with Wakaya otherwise available to Youngevity. Dkt. 25 at ¶¶ 112–19.  The remaining allegations under Count I are that the Defendants (Youngevity's competitors) contacted Youngevity distributors whom

---

[2] Defendants cite to case law that is irrelevant or inapposite, in part, because the cases do not involve the transparently commercial interests that define the speech here in issue.  In *Summit Bank*, *Ampex*, *ComputerXpress*, and *Global Telemdia*, the speakers, who were not competitors, posted public statements about the plaintiffs on the internet.  *Summit Bank v. Rogers*, 142 Cal. Rptr. 3d 40, 57–58 (Cal. Ct. App. 2012); *Ampex Corp. v. Cargle*, 27 Cal. Rptr. 3d 863, 869 (Cal. Ct. App. 2005); *ComputerXpress, Inc. v. Jackson*, 113 Cal. Rptr. 2d 625, 637–38 (Cal. Ct. App. 2001); *Global Telemedia Intern., Inc. v. Doe 1*, 132 F. Supp. 2d 1261, 1264 (C .D. Cal. 2001).  In *Troy Group*, the relevant speech did not come from a competitor, and the statement went to a reporter for *The Wall Street Journal*—not a potential customer.  *Troy Grp., Inc. v. Tilson*, 364 F. Supp. 2d 1149, 1151 (C.D. Cal. 2005).

they had located through the unlawful use of Youngevity's confidential distributor lists, and induced those Youngevity distributors to breach their contracts with Youngevity.  Similarly, the gravamen of Count II is that the Defendants contacted Youngevity distributors and induced them to violate their contracts with Youngevity while fully understanding the contours of those Youngevity contractual agreements (having previously agreed to the contracts themselves while involved with the company).  *See* Dkt. 25 at ¶¶ 123–31.  The private communications between the Defendants and Youngevity's distributors were not protected speech under Section 425.16.

Count III does not arise out of protected conduct.  The gravamen of Count III is that defendants Andreoli, Pitcock, Gardner, and Cloward had valid and enforceable contracts with Youngevity, which they breached.  Dkt. 25 at ¶¶ 132–37.  For example, Andreoli, while acting as Youngevity's president, diverted business opportunities from Youngevity to Wakaya Perfection; Pitcock took commercial and financial actions that were directly inconsistent with Youngevity's business objectives; Gardner and Cloward began working for Wakaya while still employed by Youngevity.  *Id.* at ¶ 135.  Andreoli had solicited potential Wakaya suppliers and customers on behalf of the Wakaya venture while still employed as Youngevity's President, while still under the Youngevity employment contract, and while still collecting a seven figure salary from Youngevity.  *See, e.g.*, *id.* at ¶¶ 83–84.  None of that conduct furthered Defendants' protected rights of free speech or petition.

Defendants never explain how Count VIII (unfair competition under the California Unfair Competition Law), arises from protected activity.   Dkt. 28-2 at pp. 9–12.  They make no argument that Youngevity's UCL claim is based on protected conduct.  *Id.*  The gravamen of Count VIII is that Defendants' violate law through unlawful advertising and promotional claims, including the promotion of an unlawful endless chain scheme under Cal. Penal Code § 327.  Dkt. 25 at ¶¶

215–32.  None of those violations of law arise out of protected activity, and Defendants make no specific argument that any part of Count VIII is predicated on, or designed to target, constitutionally protected activity.  Advancing an anti-SLAPP motion based on Count VIII is therefore meritless, proceeding without legal support.

In sum, because none of Youngevity's causes of action arise out of constitutionally protected speech or petitioning activity, Defendant's special motion to strike fails.  *Sarver*, 813 F.3d at 901 ("if the defendants fail to show that [the plaintiff's] lawsuit involves a matter of public concern, California's [Section 425.16] provisions are inapplicable on their face").

### 3.  Youngevity Is Likely to Succeed on the Merits of Claims I, II, III, and VIII

Defendants' Section 425.16 motion additionally fails because Youngevity can "state and substantiate [] legally sufficient claim[s]."  *Sarver*, 813 F.3d at 902–03.  Defendants' Motion fails in any event because Youngevity's claims are sufficiently pled under the low bar for anti-SLAPP motions in federal court.  *See Davis v. Elec. Arts, Inc.*, 775 F.3d 1172, 1177 (9th Cir. 2015).  "Reasonable probability requires only a minimum level of legal sufficiency and triability."  *Id.* (citation omitted).

Youngevity's complaint, supported by declarations and documentary evidence, establishes a reasonable probability of success on all claims against Defendants, including Counts I, II, III, and VIII.  All of those claims are subject to the Rule 8 pleading requirements, and *none* is subject to the heightened standards of Rule 9(b).  *See Rasidescu v. Midland Credit Mngmt., Inc.*, 435 F. Supp. 2d 1090, 1099 (S.D. Cal. 2006); *Regents of Univ. of Cal. V. Aisen*, No. 15-cv-1766-BEN (BLM), 2016 WL 1428072, at *7 (S.D. Cal. Apr. 12, 2016); *Kling v. Bank of Am., Nat. Ass'n*, No. 13-2648 DSF (CWx), 2013 WL 7141259, at *3 (C.D. Cal. Sept. 4, 2013).  For Count I, Youngevity alleges with documentary support that

Defendants Smith, Graham, and Wakaya interfered with Youngevity's prospective business relationship with GAC.  Dkt. 25 at ¶¶ 113–19; Dkt. 25-1 at pp. 74–100. The Complaint sufficiently alleges that the Defendants interfered with Youngevity's prospective business relationship with its own distributors, while committing wrongful acts.  *Id.* at ¶¶ 3, 16–20, 22–24, 39–42, 60–62, 73–75, 79–80, 83, 101, 102, 104, 107–10, 120–22.  For Count II, the Complaint sufficiently alleges that the Defendants induced Youngevity distributors to violate their distributor agreements with Youngevity and that defendant Andreoli induced Casperson, Barney, Cloward, and Gardner to violate their contracts with Youngevity.  *Id.* at ¶¶ 124–31.  Count III sufficiently alleges that defendants Andreoli, Pitcock, Gardner, and Cloward violated their agreements with Youngevity.  Count VIII sufficiently alleges that all of the Defendants engaged in unfair competition in violation of the UCL.  *Id.* at ¶¶ 133–37.  Therefore, under the proper standard of review (*Sarver*, 813 F.3d at 901), Youngevity has demonstrated a probability of success on the merits for all of its claims.

Defendants nonetheless argue that Youngevity cannot show a probability of success because Counts I, II, III, and VIII "are based on facially invalid contractual provisions and [because] they are preempted by CUTSA."  Dkt. 28-2 at p. 13. They argue that Section 16600 invalidates Youngevity's claims based on "cross-recruiting."  Dkt. 28-2, at pp. 13–16.  Defendants err.  Their argument fails because Youngevity's prohibition on cross-recruiting is not invalidated by Section 16600.

The statutory limitations in Section 16600 do not apply to employment agreements during the period of actual employment.  *Huong Que, Inc. v. Luu*, 58 Cal. Rptr. 3d 527, 538 (Cal. Ct. App. 2007) ("an employee, while employed, owes undivided loyalty to his employer").  Consistent with California law, a business can restrict employment activities during the period of active employment and Defendants cite nothing in California law or precedent to the contrary.

Section 16600 "has consistently been interpreted as invalidating any

employment agreement that unreasonably interferes with an employee's ability to compete with an employer *after* his or her employment ends." *Angelica Textile Servs., Inc. v. Park*, 163 Cal. Rptr. 3d 192, 204 (Cal. Ct. App. 2013) (citation omitted) (emphasis in original).  Section 16600 "does not affect limitations on an employee's conduct or duties *while* employed." *Id.* (emphasis in original). Therefore, where, as here, a plaintiff's claims are based on conduct during his or her employment "they are in no sense barred by [Section] 16600." *Id.*

Youngevity's distributor agreement is not at issue in this case, only the actions of the Defendants in inducing other Youngevity distributors to breach their contracts with Youngevity.  The Youngevity distributor agreement only applies to active and authorized Youngevity distributors.  Dkt. 25 at ¶ 36.  Once an individual ceases to be a Youngevity distributor, the distributor agreement no longer applies to the distributor.  *Id.* at ¶¶ 36, 105; Dkt. 25-1 at pp. 17–18, 21–22.  Youngevity's prohibition on cross-recruiting does not prohibit distributors from working for other businesses, including Wakaya Perfection.  *Id.*  Rather, the prohibition only prohibits Youngevity distributors from recruiting other Youngevity distributors to work for competing companies, such as Wakaya Perfection.  *Id.*  That prohibition therefore bars existing employees or distributors from using Youngevity's business model as a platform to promote the goods or services of competing companies. Distributors are not permitted to encourage Youngevity distributors to work for Wakaya.  *Id.* at pp. 21–22.  Those restrictions are legally and logically reasonable to protect Youngevity's networking business model.  The integrity of Youngevity's uplines and downlines are essential to its ongoing business operations.  *Id.* at ¶¶ 6–7, 32–37.  Section 16600 does not apply to Youngevity's prohibition on cross-recruiting and the Defendants' argument that "the cross-recruiting prohibitions in Youngevity's Policies and Procedures are invalid under California law" fails.

None of Youngevity's claims is predicated on cross-recruiting by the Defendants.  But evidence that the Defendants induced existing Youngevity

distributors to breach their contractual prohibition against cross-recruiting is relevant.  That conduct defines an improper purpose and an unlawful act in the promotion of Wakaya.  Defendants' interference with Youngevity contracts was tortious.  Defendants were aware of the Youngevity agreements prohibition on cross-recruiting, having each been distributors in the Youngevity business.

Count II is a cause of action for intentional interference with contractual relations and inducing breach of contract.  *Id.* at ¶¶ 123–31.  Youngevity alleges in Count II that the Defendants intentionally induced Youngevity distributors to breach their contracts with Youngevity and that Defendants Wakaya and Andreoli induced defendants Cloward and Gardner and non-defendants Casperson and Barney to violate their agreements with Youngevity.  *Id.* at ¶¶ 127–28.  Count III is a claim for breach of contract against Defendants Andreoli, Pitcock, Gardner, and Cloward.  That count does not depend upon any allegation of cross-recruiting.  *Id.* at ¶¶ 132–37.  Lastly, Count VIII, alleging violations of the UCL, is also not dependent on any allegation of cross-recruiting.  *Id.* at ¶¶ 215–32.

Defendants next argue that Youngevity's tort claims are preempted by CUTSA.  Dkt. 28-2 at pp. 16–18.  That argument fails because Counts I, II, III, and VIII encompass different or additional conduct apart from the Defendants' misappropriation of trade secrets.  "Common law tort claims are displaced by the CUTSA [only] where they are either based upon misappropriation of a trade secret or they are based upon no legally significant events at all."  *Robert Half Intern., Inc. v. Ainsworth*, 68 F. Supp. 3d 1178, 1187 (S.D. Cal. 2014) (citation omitted).  In contrast, "[a] common law tort claim is not displaced by the CUTSA where the alleged wrongdoing is not based on the existence of a trade secret."  *Id.* (internal citation omitted).  In other words, CUTSA supersedes common law tort claims only "if the gravamen of the common law claim is misappropriation of trade secrets."  *Rovince Intern. Corp. v. Preston*, No. CV 13-3257 CAS (PJWx), 2013 WL 5539430, at *3 (C.D. Cal. Oct. 7, 2013) (citing *K.C. Multimedia, Inc. v. Bank*

*of Am. Tech & Operations, Inc.*, 90 Cal. Rptr. 3d 247 (Cal. Ct. App. 2009)).  Here, Counts I, II, III, and VIII are not based on the Defendants' misappropriation of trade secrets.

In Count I, Youngevity alleges that Defendants Smith, Graham, and Wakaya intentionally interfered with Youngevity's prospective business advantage with GAC.  Dkt. 25 at ¶¶ 113–19.  That claim has no connection to the misappropriation of trade secrets, and is therefore not superseded by CUTSA.  Youngevity's first cause of action also alleges that Defendants interfered with Youngevity's prospective economic advantage by targeting Youngevity distributors and interfering in the relationship between Youngevity distributors and Youngevity. *Id.* at ¶¶ 120–22.  To prove intentional interference with prospective economic advantage, Youngevity must show that the Defendants engaged in some wrongful conduct other than the act of interference itself. *Rovince*, 2013 WL 5539430 at *5. But misappropriation of trade secret is not the *only* wrongful act alleged here. *Id.* Defendants Andreoli, Pitcock, Gardner, and Cloward violated their own contracts with Youngevity. *See, e.g.*, Dkt. 25 at ¶¶ 132–37.  Defendants TNT, Graham, and Smith misrepresented that they were acting on behalf of Youngevity when negotiating and discussing business opportunities with David Smith and GAC. *Id.* at ¶¶ 43–49.  Defendants Pitcock, Vaughn, and Smith made false income claims when interfering with Youngevity's prospective business relations with Youngevity distributors or potential distributors. *See, e.g.*, *id.* at ¶ 110.  Count I is thus not preempted by CUTSA.

Count II, intentional interference with contractual relations, is not superseded by CUTSA.  Where a cause of action alleges that a defendant "used [the plaintiff's] trade secrets when inducing [a] breach of contract," that cause of action is not preempted by CUTSA. *Rovince*, 2013 WL 5539430 at *5.  That is precisely what Youngevity alleges under Count II—that the Defendants took Youngevity's distributor lists, contacted the people on those lists, and induced

those people to breach their agreements with Youngevity.  Youngevity's cause of action for intentional interference with contract is not tethered to the allegation that the Defendants misappropriated Youngevity's trade secrets; the claim would succeed even if Youngevity made no allegation that the Defendants misappropriated trade secrets.  *Cf. K.C. Multimedia*, 90 Cal. Rptr. at 263 (explaining that the plaintiff's interference with contract claim was preempted by CUTSA because the defendant encouraged a third party to violate his contract with the plaintiff by misappropriating the plaintiff's trade secrets).  The misappropriation is just one aspect of Defendants' larger plan to convert Youngevity business opportunities to themselves.

Defendants make no specific preemption argument under CUTSA concerning Count III of the FAC, which alleges that defendants Andreoli, Pitcock, Gardner, and Cloward violated their contracts with Youngevity.  Dkt. 28-2 at pp. 16–18.  Youngevity alleges that those four defendants violated contracts with Youngevity for reasons unrelated to the misappropriation of trade secrets.  Andreoli violated his agreement with Youngevity by diverting Youngevity's business opportunities to Wakaya.  Dkt. 25 at ¶ 135.  Pitcock violated his agreement with Youngevity by disparaging Youngevity and promoting cross-recruiting and diversion of business from Youngevity.  *Id.*  Gardner and Cloward violated their agreement with Youngevity by working for Wakaya, a company that competes directly with Youngevity.  *Id.*

Defendants also make no specific preemption argument for Count VIII, which alleges that all Defendants violated the UCL.  Dkt. 28-2 at pp. 16–18.  That claim is not preempted by CUTSA if based on any "distinct nexus of facts" separate from the claim for misappropriation of trade secrets.  *Phx. Tech. Ltd. v. DeviceVM*, No. C 09-04697, 2009 WL 4723400, at *5 (N.D. Cal. Dec. 8, 2009).  Here, all of the allegations under Count VIII are unrelated to misappropriation.  Dkt. 25 at ¶¶ 217–32.  For example, Youngevity alleges that the Defendants' false

advertising and misappropriation of Dr. Wallach's name and likeness give rise to Youngevity's UCL claims.  Count VIII is not preempted by CUTSA.

**B. <u>Youngevity Is Entitled by Statute to Its Fees for Defending Against Defendants' Frivolous Section 425.16 Motion</u>**

Section 425.16 includes a statutory entitlement to fees and costs in defending against a frivolous Section 425.16 Motion.  *See* Section 425.16(c)(1) ("If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5.").  "The imposition of sanctions for a frivolous anti-SLAPP motion is *mandatory*."  *Moore v. Shaw*, 10 Cal. Rptr. 3d 154, 166 (Cal. Ct. App. 2004)) (emphasis added).  A Section 425.16 Motion is frivolous when "totally and completely without merit." *In re Aroonsakool*, No. 11-06927-LA7, 2012 WL 458819, at *2 (S.D. Cal. Feb. 9, 2012).  A Section 425.16 Motion is completely without merit where a defendant "failed to meet [its] threshold burden establishing the challenged causes of action arose from protected activity."  *Moore*, 10 Cal. Rptr. 3d at 166–67 (directing the trial court to award the plaintiff its reasonable attorney fees and costs incurred in opposing the defendant's Section 425.16 Motion); *see also Gerbosi v. Gaims, Wil, West & Epstein, LLP*, 122 Cal. Rptr. 3d 73, 85 (Cal. Ct. App. 2011) (holding that the trial court acted within its discretion in finding that one of the defendant's Section 425.16 Motions was frivolous where that defendant failed to show that it was being sued for exercising its constitutional rights).

The Defendants' Section 425.16 Motion is frivolous because they do not meet their initial burden of showing that any of Youngevity's causes of action arise out of Defendants' constitutionally protected actions.  Indeed, the Commercial Speech exemption, Section 425.17(c), expressly removes commercial speech from the ambit of protection under Section 425.16.  *See supra*, at § III(A)(1). Defendants failed to even cite, let alone distinguish, the Commercial Speech

exemption, which plainly applies.  *See generally*, Dkt. 28-2.  The Commercial Speech exemption is meant to exclude the exact type of communication at issue here—private commercial communications that are inextricably part of solicitations of business opportunities and customers—from Section 425.16.  *See Weiland*, 814 F. Supp. 2d at 1036–37.

Even if the Commercial Speech exemption did not apply, Defendants' Section 425.16 Motion lacks merit because the Defendants have failed to explain in a reasoned manner how Youngevity's lawsuit retaliates against the exercise of Defendants' free speech or right of petition.  *See supra*, at § III(A)(2).  None of the conduct alleged by Youngevity in the Complaint is protected conduct under Section 425.16.  *Id.*  None of the speech concerns any issue of public, rather than solely private, interest.  Therefore, Defendants' Section 425.16 Motion is facially invalid, wholly lacking in merit, and Youngevity is entitled to recover its reasonable attorneys' fees and costs in defending against the frivolous Motion.[3]

**C. <u>Youngevity Sufficiently Alleges Counts I, II, III, and VIII for Purposes of Rules 8 and 12</u>**

Neither Section 16600 nor CUTSA invalidates or supersedes Youngevity's claims and, so, none of Youngevity's claims should be dismissed under Rule 12(b)(6).  Additionally, Section 16601 renders the non-compete clauses in the HM and Andreoli agreements valid.  *See* Cal. Bus. & Prof. Code § 16601.

Defendants argue that this Court should dismiss Counts I, II, III, and VIII because those Counts rely on allegations of cross-recruiting. Dkt. 28-2 at p. 19. As explained above, Youngevity brings no claim for cross-recruiting in this litigation; its claims against Defendants concern inducement to breach contract and

---

[3] Following this Court's Order, Youngevity will file a separate motion to recover its attorneys' fees and costs expended in defending against the Defendants' Section 425.16 Motion.

intentional interference with business relations.  *See generally* Dkt. 25. Nonetheless, Youngevity's prohibition on "cross-recruiting" in its agreement with its distributors is valid because Section 16600 does not apply to employees while employed, and because Youngevity's distributors are free to engage in other businesses generally, they are only prohibited from cross-recruiting Youngevity distributors into competing businesses while serving as Youngevity distributors. Dkt. 25 at ¶ 105.

Defendants also argue that "Youngevity's tort claims" (without specifying which causes of action) should be dismissed because they are preempted by CUTSA.  Dkt. 28-2 at p. 19.  As Youngevity explained above, Counts I, II, III, and VIII are not preempted by CUTSA.  *See supra*, at § III(A)(3).  None of those claims are based on the Defendants' misappropriation of trade secrets.  *See id.*; *see also* Dkt. 25.

Finally, Defendants incorrectly argue that Youngevity cannot enforce the non-compete clauses contained in the Andreoli and HM Agreements[4] because Section 16600 invalidates the relevant contractual clauses.  Dkt. 28-2 at pp. 19–21. Section 16600 does not apply, where, as here, the defendants violated a non-compete clause while employed by Youngevity.  *See supra*, at § III(A)(3). Youngevity alleges that Andreoli, Gardner, and Cloward violated their agreements with Youngevity, including any covenants not to compete contained therein, while they were still employed at Youngevity.  For example, in October 2015, while serving as Youngevity's President, Andreoli induced Youngevity employees and distributors to join Wakaya and hosted Wakaya corporate events at his New

---

[4] Gardner and Cloward are bound by the HM Agreement's non-competition clause because that clause explicitly states that "HM" and "each of the Representing Parties agrees to the confidentiality and non-competition provisions …" Dkt. 25-1 at p. 164.  Gardner signed the HM Agreement on behalf of HM, *id.* at p. 168, and Cloward signed the HM Agreement as a represented party, *id.* at pp. 132, 173.

Hampshire facilities.  Dkt. 25 at ¶¶ 82–84.  Youngevity alleges that Cloward and Gardner violated their agreements with Youngevity in August, 2015, while still employed at Youngevity, by travelling to New Hampshire to discuss their prospective involvement in and employment for Wakaya Perfection.  *Id.* at ¶ 88.  Therefore, Andreoli, Cloward, and Gardner all violated their agreements with Youngevity while still employed at Youngevity, and Section 16600 is inapplicable.

Youngevity also alleges that Andreoli breached his agreement with Youngevity for a variety of reasons unrelated to any covenant not-to-compete.  For example, Youngevity alleges that Andreoli violated his agreement with Youngevity by attempting to divert Youngevity business opportunities to Wakaya and by failing to promptly notify Youngevity about those business opportunities.  *Id.* at ¶ 135.

Furthermore, Defendants fail to address Section 16601, which expressly permits noncompetition covenants in connection with the sale of a business, like the non-compete clauses in the HM and Andreoli agreements.  *See* Cal. Bus. & Prof'l Code § 16601.  "The reason for this exception to the general rule against noncompetition covenants is to prevent the seller from depriving the buyer of the full value of its acquisition, including the sold company's goodwill."  *Alliant Ins. Servs., Inc. v. Gaddy*, 72 Cal. Rptr. 3d 259, 267 (Cal. Ct. App. 2008).  A covenant not to compete, when included in the sale of a business, is valid so long as the "geographic scope of [the] noncompetition covenant [is] limited to the area where the sold company carried on business…."  *Id.*  The sold companies here in issue carried on business worldwide, or at least nationwide.

The non-competition clauses of the HM and Andreoli Agreements are valid under Section 16601.  The parties executed the HM Agreement as part of Youngevity's purchase of the HM business.  Dkt. 25-1 at p. 132 (explaining that Youngevity is purchasing all of HM's assets).  The parties executed the Andreoli Agreement as part of Youngevity's purchase of Andreoli's businesses.  *Id.* at p.

120 (explaining that Youngevity is purchasing 100% of the issues and outstanding shares of four of Andreoli's businesses).

In sum, Section 16600 does not apply to Youngevity's causes of action. Further, the non-competition clauses in the HM and Andreoli Agreements are valid under Section 16601.

## IV.  **CONCLUSION**

Defendants' Motion is without merit because the speech at issue is not protected by Section 425.16 and is expressly exempted by Section 425.17. Therefore, Youngevity requests that this Court award the Plaintiffs their reasonable fees and costs incurred in defending against the frivolous motion, as mandated by Section 425.16(c)(1).  Defendants' argument that Claims I–III and VIII should be dismissed pursuant to Rule 12(b)(6) is similarly without merit because those claims are not preempted by CUTSA, are not affected by Section 16600, and are sufficiently pled.  Youngevity therefore requests that this Court deny Defendants' Motion, Dkt. 28, in its entirety and award Youngevity its fees and costs in defending against that Motion.

DATED:  May 27, 2016

Respectfully submitted,

YOUNGEVITY INTERNATIONAL
CORP.,

By:     _/s/ Peter A. Arhangelsky_____
Peter A. Arhangelsky, Esq. (SBN 291325)
Jonathan W. Emord (pro hac vice)
Eric J. Awerbuch (pro hac vice)
*Attorney for Plaintiff Youngevity*
E-mail: parhangelsky@emord.com
Emord & Associates, P.C.
3210 S. Gilbert Road, Suite 4
Chandler, AZ 85286
Phone: (602) 388-8899
Fax: (602) 393-4361

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 27, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Kyle M. Van Dyke
Hurst & Hurst
701 B Street
Suite 1700
San Diego, CA 92101
(619) 236-0016
(619) 236-8569 (fax)
kvandyke@hurst-hurst.com
*Attorney for Defendants*

Jonathan R. Schofield
Jonathan O. Hafen
Parr Brown Gee & Loveless
101 South 200 East, Suite 700
Salt Lake City, UT 84111
801-532-7840
Fax: 801-532-7750
jschofield@parrbrown.com
jhafen@parrbrown.com
*Attorneys for Defendants*

                                                  <u>/s/ Peter A. Arhangelsky</u>
                                                  Peter A. Arhangelsky