Debra L. Hurst (106118)
dhurst@hurst-hurst.com
Kyle Van Dyke (171186)
kvandyke@hurst-hurst.com
HURST & HURST
701 B Street, Suite 1700
San Diego, CA 92101
Telephone: (619) 236-0016
Facsimile: (619) 236-8569

Jonathan O. Hafen (admitted pro hac vice, Utah #6096)
jhafen@parrbrown.com
Jonathan R. Schofield (admitted pro hac vice, Utah #8742)
jschofield@parrbrown.com
PARR BROWN GEE & LOVELESS, P.C.
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
Facsimile: (801) 532-7750

Attorneys for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOUNGEVITY INTERNATIONAL CORP. and JOEL D. WALLACH, DVM, ND, <br><br> Plaintiff, <br><br> v. <br><br> TODD SMITH; WAKAYA PERFECTION; TOTAL NUTRITION TEAM dba TNT; BLAKE GRAHAM; WILLIAM ANDREOLI; ANDRE VAUGHN; DAVE PITCOCK; PATTI GARDNER; and BRYTT CLOWARD, <br><br> Defendants. | Case No. 3:16-CV-00704-L-JLB <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** <br><br> **Oral Argument Requested** <br><br> Judge M. James Lorenz <br><br> Hearing date: August 29, 2016 |

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................... 1

RELEVANT PROCEDURAL HISTORY ...................................................... 1

BACKGROUND ........................................................................................... 2

ARGUMENT ................................................................................................. 3

I.     LEGAL STANDARD ......................................................................... 5

II.    COUNT I SHOULD BE DISMISSED UNDER RULES 8 AND 9 .............. 6

       A.    Legal Standards Under the Lanham Act ............................... 7

       B.    Count 1 Should be Dismissed Under Rule 8 for Failure to
             Identify Specific Statements Alleged to Be False ................. 8

       C.    Plaintiffs Have Alleged No False Statements *by Wakaya
             And Smith* ......................................................................... 8

III.   PLAINTIFFS LACK STANDING TO ASSERTS COUNTS 2 AND 3 ...... 11

IV.    COUNTS 4B and 6A SHOULD BE DISMISSED WITH PREJUDICE
       BECAUSE THEY ARE PREMISED ON FACIALLY INVALID
       AND UNENFORCEABLE CONTRACTUAL PROVISIONS .................. 12

       A.    Restrictive Covenents Are Invalid Under California Law ................. 13

       B.    Contractual Provisions at Issue ............................................ 14

       C.    Counts 4B and 6A Are Premised on an Invalid
             Nonsolicitation Provision ..................................................... 15

V.     COUNT 5C SHOULD BE DISMISSED WITH PREJUDICE
       BECAUSE PITCOCK IS NOT A SIGNATORY TO THE LIVINITY
       AGREEMENT ................................................................................. 17

i

VI.  COUNTS 5D AND 6B SHOULD BE DISMISSED WITH
PREJUDICE BECAUSE GARDNER IS NOT A SIGNATORY
TO THE HM AGREEMENT, CLOWARD IS NOT BOUND BY
THE NONCOMPETE PROVISION IN ARTICLE 11.2, AND
PLAINTIFFS HAVE NOT ALLEGED A VIOLATION OF
ARTICLE 11.1 ...................................................................................... 19

A.  Contractual Provisions at Issue ............................................. 19

B.  Gardner Is Not a Signatory to the HM Agreement .............. 21

C.  Cloward Is Not Bound by the Noncompete Provision in Article
11.2 of the HM Agreement .................................................. 21

D.  Plaintiffs Have Not Alleged a Breach of Article 11.1 of the
HM Agreement ...................................................................... 22

VII.  COUNT 8 SHOULD BE DISMISSED UNDER RULE 12(b)(6) ................ 23

CONCLUSION ............................................................................................ 25

# TABLE OF AUTHORITIES

## CASES

*A-Mark Coin Co. v. Gen. Mills, Inc.*, 195 Cal. Rptr. 859 (Cal. Ct. App. 1983).........16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)....................................................................5

*Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Village Square Venture Partners*,
  60 Cal. Rptr. 2d 830 (Cal. Ct. App. 1997)...............................................................16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)....................................................5, 7

*Bensara v. Marciano*, 112 Cal. Rptr. 2d 358 (Cal. Ct. App. 2001).....................18, 21

*Californians for Disability Rights v. Mervyn's, LLC*, 138 P.3d 207 (Cal. 2006).......11

*Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946 (9th Cir. 2013).........6

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
  173 F.3d 725 (9th Cir. 1999) ..................................................................................7

*Conservation Force v. Salazar*, 646 F.3d 1240 (9th Cir. 2011)...................................6

*Cook v. Brewer*, 637 F.3d 1002 (9th Cir. 2011) ...........................................................6

*Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv.*,
  911 F.2d 242 (9th Cir. 1990) ..................................................................................8

*Davis v. Chase Bank U.S.A., N.A.*, 650 F. Supp. 2d 1073 (C.D. Cal. 2009)...............6

*Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244 (Cal. Ct. App. 1968) ......................13

*Dowell v. Biosense Webster, Inc.*, 102 Cal. Rptr. 3d 1
  (Cal. Ct. App. 2009)...................................................................................13, 14, 16

*Edwards v. Arthur Andersen LLP*, 189 P.3d 285 (Cal. 2008)..............................13, 16

*In re Tobacco II Cases*, 207 P.3d 20 (Cal. 2009) ......................................................11

*Kwikset Corp. v. Superior Court*, 246 P.3d 877 (Cal. 2011)....................................11

*L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852 (N.D. Cal. 2015) ...11

*Lippert v. Bailey*, 50 Cal. Rptr. 478 (Cal. Ct. App. 1966)..........................18, 20, 21

*New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090 (C.D. Cal. 2004) ...........................8

*Newton v. Thomason*, 22 F.3d 1455 (9th Cir. 1994) .................................................24

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*,
  791 P.2d 587 (Cal. 1990).................................................................16, 21, 22, 23

*Pestube Sys., Inc. v. Hometeam Pest Defense, LLC*,
   No. CIV-05-2832-PHX-MHM, 2006 WL 1441014 (D. Ariz. May 24, 2006).........8

*Roberts v. McAfee, Inc.*, 660 F.3d 1156 (9th Cir. 2011) ...........................................23

*Semegen v. Weidner*, 780 F.2d 727 (9th Cir. 1985) .....................................................5

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134 (9th Cir. 1997)...................7

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) ...................................................8

*TransFresh Corp. v. Ganzerla & Assocs., Inc.*,
   862 F. Supp. 2d 1009 (N.D. Cal. 2012)....................................................................5

*U.S. Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 83 Cal. Rptr. 418 (Cal. 1970).........9, 10

*Vaughn v. Bay Envtl. Mgmt., Inc.*, 567 F.3d 1021 (9th Cir. 2008)..............................6

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003)..............................5, 6

*Yeager v. Bowlin*, 693 F.3d 1076 (9th Cir. 2012).................................................23, 24

**STATUTES**

Cal. Bus. & Prof. Code § 16600 ........................................................................... 13, 14

Cal. Bus. & Prof. Code § 17200 ........................................................................... 11, 14

Cal. Bus. & Prof. Code § 17203 ................................................................................. 11

Cal. Bus. & Prof. Code §§ 17204, 17535 ............................................................. 11, 12

Cal. Civ. Code § 3344(a) ............................................................................................23

Cal. Civ. Code § 3425.3................................................................................................23

Cal. Civ. Code § 3344.........................................................................................23, 24

Cal. Com. Code § 3402................................................................................................18

1    Defendants Wakaya Perfection, LLC ("Wakaya"); Todd Smith ("Smith");

2  William Andreoli ("Andreoli"); Blake Graham ("Graham"); Andre Vaughn

3  ("Vaughn"); David Pitcock ("Pitcock"); Patti Gardner ("Gardner"); Brytt Cloward

4  ("Cloward"); and Total Nutrition, Inc. dba TNT ("TNT") (collectively,

5  "Defendants"), through their undersigned counsel, respectfully submit this

6  Memorandum in Support of their Partial Motion to Dismiss Plaintiffs' Second

7  Amended Complaint, filed concurrently herewith.

8                        **INTRODUCTION**

9    Throughout this litigation, Plaintiffs have engaged in a strategy of pleading

10  through innuendo and suggestion instead of direct factual averments. Despite

11  repeated opportunities to cure their prior defective pleadings, Plaintiffs continue to

12  assert vague and conclusory allegations unsupported by relevant factual averments.

13  The Second Amended Complaint ("SAC") fails to cure the defects identified by the

14  Court in its June 29, 2016 Order granting Defendants' motion to dismiss. [Dkt. 45 at

15  8.] That is, the SAC fails to specify which alleged bad acts are attributable to which

16  Defendant, thereby failing to provide Defendants with fair notice of the grounds on

17  which each claim rests as to which Defendant. Finally, the SAC continues to assert

18  claims premised on invalid and unenforceable contractual provisions, the defects of

19  which Defendants have twice before notified Plaintiffs. [*See* Dkt. 24; Dkt. 28.] For

20  the reasons discussed below, Defendants respectfully request that the Court dismiss

21  with prejudice Counts 1, 2, 3, 4B, 5C,[1] 5D, 6, and 8 pursuant to Rules 8, 9, and

22  12(b)(6) of the Federal Rules of Civil Procedure.

23                 **RELEVANT PROCEDURAL HISTORY**

24    On March 23, 2016, Plaintiff Youngevity International ("Youngevity") filed

25  its Verified Complaint for Damages and Injunctive Relief ("Verified Complaint").

26  [Dkt. 1.] On May 5, 2016, Defendants filed a Special Motion to Strike, or in the

27  _____

28  [1] There is no Count 5B. [*See* SAC ¶¶ 219, 227.] For clarity, Defendants will maintain Plaintiffs' designations of the Counts.

Alternative, Partial Motion to Dismiss, in which Defendants argued Youngevity's claims premised on various contractual provisions failed as a matter of law. [Dkt. 24.] The next day, Youngevity filed its First Amended Complaint ("FAC"), in which Youngevity added Dr. Joel Wallach ("Dr. Wallach") as a plaintiff, but asserted substantially the same claims as in the Verified Complaint.[2] [Dkt. 25.] Based on the filing of the FAC, the Court denied Defendants' motion as moot. [Dkt. 27.] On May 12, 2016, Defendants filed a Renewed Special Motion to Strike, or in the Alternative, Partial Motion to Dismiss, which again sought to dismiss Plaintiffs' claims premised on various invalid contractual provisions. [Dkt. 28.] On June 29, 2016, the Court issued an Order denying Defendants' Special Motion to Strike without prejudice, but dismissing four of Plaintiffs' claims in their entirety pursuant to Rule 8 of the Federal Rules of Civil Procedure. [Dkt. 45 at 8.] The Court specifically rebuked Plaintiffs for failing to provide a clear factual basis for their claims and for failing to specify which Defendant was alleged to have committed which wrong. [*Id.* at 6, 8.] The Court's June 29, 2016 Order granted Plaintiffs leave to amend to attempt to cure their pleading deficiencies. [Dkt. 45 at 9.] On July 13, 2016, Plaintiffs filed their Second Amended Complaint ("SAC"). [Dkt. 47.]

## **BACKGROUND**

While Defendants vigorously dispute that they engaged in the alleged misconduct identified by Plaintiffs the SAC and will, at the appropriate time, provide evidence disproving Plaintiffs' allegations, Defendants provide the following brief background for purposes of providing some limited context to the issues discussed in this motion.

For nearly two decades, Smith and Graham operated some of Youngevity's most successful distributorships through their company, TNT. After a several instances of serious misconduct by Youngevity's corporate officers, Smith left Youngevity to pursue other opportunities and founded Wakaya in late 2015. Rather

---

[2] Notably, Plaintiffs' FAC was no longer verified.

1   than accept Smith's decision to leave Youngevity gracefully, Youngevity's

2   management team engaged in a concerted campaign to destroy Wakaya in its infancy

3   by threatening and punishing any Youngevity distributor who expressed an interest

4   in Wakaya or who Youngevity *suspected* might be connected with Wakaya. In

5   particular, Youngevity summarily terminated the distributorships of Graham, TNT,

6   Vaugh, and Pitcock, as well as many others, without legal cause, and threatened to

7   do the same to any distributor perceived as "disloyal."

8      Following their wrongful terminations, Graham, TNT, Vaughn, and Pitcock

9   filed suit in Utah against Youngevity, seeking damages resulting from Youngevity's

10  tortious actions ("Utah Action").[3] In response, Youngevity brought this action in

11  California in which it has engaged in a pattern and practice of making false and

12  irrelevant allegations unrelated to any cause of action. Youngevity, through its

13  counsel, also published its Verified Complaint, which contained numerous

14  defamatory statements about Defendants, to the press. This excessive publication

15  was designed to, and had the effect of, damaging Defendants' reputations.

16  Defendants have, accordingly, added claims for defamation, false light, and business

17  disparagement in the Utah Action.

18     At heart, this lawsuit is a vindictive attempt by Youngevity and its

19  management to damage and discredit Defendants, but the weakness of Plaintiffs'

20  claims is revealed by the paucity of their factual allegations. Defendants ask that the

21  Court not countenance Plaintiffs' continued failure to allege cognizable legal claims.

22                          **ARGUMENT**

23     Far from remedying the defects identified by the Court in its prior Order, the

24  SAC merely reorders Plaintiffs claims and reasserts the same vague and conclusory

25  factual averments. Plaintiffs do appear to have realized that most of the facts asserted

26

27  [3] A copy of the Second Amended Complaint filed in the Utah Action is attached to
    the Declaration of Blake Graham in Support of Defendants' Opposition to Plaintiffs'
28  Motion for Preliminary Injunction.

in the Verified Complaint and FAC were irrelevant to their causes of action and have appropriately removed many of those allegations from the SAC. [*Compare* Dkt. 1 *and* Dkt. 25 *with* Dkt. 47.] However, Plaintiffs remaining allegations nonetheless fail to support their causes of action or to sufficiently tie particular Defendants to those causes of action. For the reasons discussed below, Defendants respectfully move to dismiss with prejudice Counts 1, 2, 3, 4B, 5C, 5D, 6, and 8 of the SAC pursuant to Rules 8, 9, and 12(b)(6) of the Federal Rules of Civil Procedure.

In Count 1, Plaintiffs allege Defendants engaged in false advertising as defined by the Lanham Act. But, consistent with their prior practice, Plaintiffs' allegations wholly fail to meet the pleading requirements of Rules 8 and 9 because Plaintiffs have failed to identify specific statements of fact attributable to Defendants and alleged to be false.

Counts 2 and 3 allege violations of California's unfair competition and false advertising laws. These claims fail as a matter of law because Plaintiffs lack standing to assert them.

In Counts 4B and 6A, Plaintiffs allege Defendants tortiously interfered with Youngevity's contractual relationships with its distributors by encouraging those distributors to work for Wakaya. Counts 4B and 6A fail as a matter of law because the contractual provision Youngevity seeks to enforce is an invalid nonsolicitation provision under California law.

In Counts 5C, 5D, and 6B, Plaintiffs allege Pitcock, Gardner, and Cloward violated various provisions of contracts with Youngevity and that Wakaya induced them to do so. These Counts fail as a matter of law because neither Pitcock nor Gardner is a signatory to the identified contracts as each signed those contracts solely in his or her representative capacity as a corporate officer. As to Cloward, by the plain language of the identified contract, he is either not bound by, or Youngevity has not alleged a violation of, the contractual provisions at issue.

Finally, in Count 8, Plaintiffs allege Defendants misappropriated Dr.

4

1   Wallach's likeness.[4] This Count fails as a matter of law because Plaintiffs have

2   conceded that all challenged uses of Dr. Wallach's likeness were consensual and lack

3   of consent is a required element of the statutory cause of action.

4   **I.    LEGAL STANDARDS**

5        Rule 8(a) requires a plaintiff to make "a short plain statement of the claim

6   showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8

7   "demands more than . . . unadorned, the-defendant-unlawfully-harmed-me

8   accusation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers

9   labels and conclusions or a formulaic recitation of the elements of a cause of action

10  will not do. Nor does a complaint suffice if it tenders naked assertions devoid of

11  further factual enhancement." *Id.* (internal quotation marks, citation, and brackets

12  omitted). At a minimum, a complaint must give each defendant fair notice of the

13  claims against him and the grounds on which they rest. *Bell Atl. Corp. v. Twombly*,

14  550 U.S. 544, 555 (2007).

15       Rule 9 requires a party alleging fraud to "state with particularity the

16  circumstances constituting fraud." Fed. R. Civ. P. 9(b). The purpose of Rule 9 is to

17  protect defendants from reputational harm stemming from reckless claims of

18  wrongdoing. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003).

19  To satisfy Rule 9(b), "the plaintiff must include the who, what, when, where, and

20  how of the fraud." *TransFresh Corp. v. Ganzerla & Assocs., Inc.*, 862 F. Supp. 2d

21  1009, 1017 (N.D. Cal. 2012). A claim of fraud must be "specific enough to give

22  defendants notice of the particular misconduct which is alleged to constitute the

23  fraud charged so that they can defend against the charge and not just deny that they

24  have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

25       "Rule 9(b) applies when (1) a complaint specifically alleges fraud as an

26

27  ───────────────

     [4] Count 8 is also the subject of Plaintiffs Motion for Preliminary Injunction. [Dkt.
28  48.] Defendants have filed an Opposition to Plaintiffs' Motion for Preliminary
     Injunction concurrently with this Motion.

1    essential element of a claim, (2) when the claim 'sounds in fraud' by alleging that the

2    defendant engaged in fraudulent conduct, but the claim itself does not contain fraud

3    as an essential element, and (3) to any allegations of fraudulent conduct, even when

4    none of the claims in the complaint 'sound in fraud.'" *Davis v. Chase Bank U.S.A.,*

5    *N.A.*, 650 F. Supp. 2d 1073, 1089-90 (C.D. Cal. 2009) (citing *Vess*, 317 F.3d at

6    1102-06). When a plaintiff alleges "a unified course of fraudulent conduct" and

7    relies on that course of conduct as the basis of the claim, the claim "sounds in fraud"

8    and must be pled with particularity. *Vess*, 317 F.3d at 1104.

9        "A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Cook v.*

10   *Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011). Dismissal "is proper if there is a lack

11   of a cognizable legal theory or the absence of sufficient facts alleged under a

12   cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th

13   Cir. 2011). The Court must accept all material allegations in the complaint as true

14   and construe them in the light most favorable to the plaintiff. *Chubb Custom Ins. Co.*

15   *v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013). But if there is no set of

16   facts on which a plaintiff can establish a plausible claim for relief, dismissal with

17   prejudice is appropriate. *See id.* Moreover, a motion to dismiss for lack of statutory

18   standing is treated as a motion to dismiss for failure to state a claim under Rule

19   12(b)(6). *Vaughn v. Bay Envtl. Mgmt., Inc.*, 567 F.3d 1021, 1024 (9th Cir. 2008).

20   **II.    COUNT 1 SHOULD BE DISMISSED UNDER RULES 8 AND 9.**

21       In Count 1, Plaintiffs allege that "Wakaya and Smith, and all others found

22   through discovery to have acted in concert with them" have violated the Lanham

23   Act's prohibitions against false advertising. [SAC ¶ 27.] Plaintiffs assert six theories

24   by which Wakaya and Smith allegedly conspired with unnamed others to lure

25   Youngevity distributors to join Wakaya through false and misleading advertising.

26   [SAC ¶¶ 27-122.] But despite devoting nearly one hundred paragraphs to their

27   allegations, Plaintiffs have failed to adequately plead violations of the Lanahm Act

28   under *any* of those theories. Consequently, Count 1 should be dismissed in its

entirety for failure to adequately plead pursuant to Rules 8 and 9.

**A.Legal Standards Under the Lanham Act**

A plaintiff alleging a claim for false advertising under the Lanham Act must establish "(1) a false statement of fact *by the defendant* in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) *the defendant* caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (emphasis added). "In order for representations to constitute 'commercial advertising or promotion'. . . , they must be: (1) commercial speech; (2) *by a defendant* who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a 'classic advertising campaign,' but may consist instead of more informal types of 'promotion,' the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999) (emphasis added). Thus, Plaintiffs must establish a false statement of fact *by Defendants* in commercial advertisements designed to influence consumers to purchase Defendants' goods or services that was placed in interstate commerce *by Defendants*. Plaintiffs have not done so.

**B.Count 1 Should Be Dismissed Under Rule 8 for Failure to Identify Specific Statements Alleged to Be False.**

Under Rule 8, plaintiffs are required to give defendants fair notice of the claims against them and the grounds on which those claims rest. *Twombly*, 550 U.S. at 555. In the context of a Lanham Act false advertising claim, plaintiffs must—at a

minimum—identify the particular statements alleged to be false. *See Pestube Sys., Inc. v. Hometeam Pest Defense, LLC*, No. CIV-05-2832-PHX-MHM, 2006 WL 1441014, at *2 (D. Ariz. May 24, 2006). If the plaintiff fails to identify particular statements, defendants cannot formulate a proper affirmative defense. *Id.*; *see also New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1117-18 (C.D. Cal. 2004) (dismissing under 12(b)(6) a Lanham Act claim because challenged statement was not commercial speech); *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv.*, 911 F.2d 242, 245 (9th Cir. 1990) (holding court may determine whether statement constitutes actionable statement of fact as a matter of law). Thus, a plaintiff's failure to allege particular statements prevents defendants from properly asserting affirmative defenses.

Here, Plaintiffs have continued their practice of sweeping general allegations with no factual support. Although Plaintiffs identify a few scattered statements, the vast majority of their allegations in Count 1 are unsupported by identified statements. Indeed, Counts 1C and 1D allege *no* identifiable statements. [*See* SAC ¶¶ 61-76.] To the extent Count 1 fails to allege identifiable statements that can be fairly attributed to Defendants, it should be dismissed.

**C.  Plaintiffs Have Alleged No False Statements *by Wakaya and Smith*.**

Plaintiffs assert Count 1 as to Wakaya and Smith. "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 765-66 (9th Cir. 2007) (internal quotation marks, ellipses, and brackets omitted). In nearly one hundred paragraphs, Plaintiffs fail to identify a *single* statement attributable to Smith. Rather, Plaintiffs continue to lump Defendants together with generalized allegations, something the Court has already specifically rebuked. [*See* Dkt. 45 at 6, 8.] "Directors or officers of a corporation do not incur personal liability for torts of the corporation merely by

reason of their official position, unless they participate in the wrong or authorize or direct that it be done." *U.S. Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 83 Cal. Rptr. 418, 423 (Cal. 1970). Consequently, Plaintiffs have not alleged a violation of the Lanham Act by Smith, and Count 1 should be dismissed as to him.

Similarly, Count 1 fails to allege a violation of the Lanham Act by Wakaya. Throughout Count 1, Plaintiffs vaguely allege that Wakaya promotional materials contain a variety of false and misleading statements. But the only specific statements identified by Plaintiffs are either not attributable to Wakaya or are not alleged to be false.

For example, Plaintiffs assert "Wakaya agents promised that 'a year from now, many of us will be million dollar earners.'" [SAC ¶ 32.] Even if this aspirational statement could constitute an actionable statement of fact under the Lanham Act (which it does not), Plaintiffs have not identified the speaker nor established that Wakaya authorized or controlled the contents of the statement or its publication on the internet. *See also id.* ¶¶ 31 (alleging similarly unattributed statements); 51 (same); 80-82 (same); 83-84 (same); 93 (same); 108 (same); 119-20 (same).] Although Plaintiffs vaguely allege that "Wakaya agents" were responsible for the identified statements, they allege no facts supporting an inference of an agency relationship between Wakaya and the speakers. Such conclusory allegations fail to meet even Rule 8's minimal standards, let alone the pleading requirements of Rule 9. Thus, Plaintiffs have not raised even an inference that Wakaya was responsible for the identified statements.

Plaintiffs identify only two statements attributable to Wakaya. First, they cite a Wakaya product label for calcium bentonite mineral clay. [*Id.* ¶ 79; Ex. A, Att. 1.] On its face, the label makes no health claims; it merely identifies the ingredients of the clay and provides directions for use. [*Id.*] Indeed, Plaintiffs point to no aspects of the clay label that are false. Rather, Plaintiffs attempt to cobble together statements by unidentified individuals, along with a statement from the FDA that does not

1   reference Wakaya products, [SAC ¶ 87 & n.5], to suggest—falsely—that Wakaya's

2   clay products are unsafe. Even if Plaintiffs' claims related to Wakaya's clay products

3   were true—and to be clear, they are not—Plaintiffs identify no false statements

4   attributable to Wakaya sufficient to support a claim for false advertising. In short,

5   Plaintiffs' allegations in Count 1E fail entirely to state a claim under the Lanham Act

6   and instead appear to be an attempt to disparage Wakaya.

7       Second, Plaintiffs cite Wakaya's Ambassador Application to suggest—again,

8   falsely—that Wakaya's compensation plan operates as an illegal pyramid scheme.

9   [*Id.* ¶ 104 & Ex. A, Att. 4.] Although Plaintiffs devote thirty paragraphs to laying out

10  their interpretation of Wakaya's compensation plan, they do not identify *any*

11  statements of fact by Defendants alleged to be false. [*See* SAC ¶¶ 93-122.] To be

12  clear, Defendants vehemently dispute Plaintiffs' self-serving and misleading

13  characterization of Wakaya's compensation plan and will, at the appropriate time,

14  demonstrate the falsity of that characterization. But for purposes of this Motion, it is

15  sufficient to note that Plaintiffs have not identified a single statement of fact in the

16  Wakaya Ambassador Application—the only identified statement attributable to

17  Wakaya in Count 1F—that is false. On its face, the Wakaya Ambassador Application

18  provides two options for enrollment as a Wakaya Ambassador and lays out the terms

19  and conditions of participation in the program. [*Id.* Ex. A, Att. 4.] Nowhere does the

20  Ambassador Application make claims related to income potential or describe

21  Wakaya's compensation plan. And Plaintiffs have not identified *any* other statements

22  made by Wakaya. Again, Plaintiffs' vague and conclusory allegations in Count 1F

23  fail to allege a colorable claim against Wakaya for false advertising under the

24  Lanham Act and appear to be an attempt to smear Wakaya under the guise of a false

25  advertising claim.

26      In summary, because Plaintiffs have continued their practice of pleading

27  through innuendo and suggestion, their conclusory allegations fail to establish a

28  colorable claim for relief under the Lanham Act. Accordingly, Defendants request

10

1    the Court dismiss Count 1 in its entirety pursuant to Rules 8 and 9.

2    **III.   PLAINTIFFS LACK STANDING TO ASSERT COUNTS 2 AND 3.**

3         Counts 2 and 3 allege violations of California's false advertising law ("FAL")

4    and unfair competition law ("UCL"). [SAC ¶¶ 123-57.] The UCL prohibits unfair

5    competition. Cal. Bus. & Prof. Code § 17200 *et seq*. The FAL prohibits untrue or

6    misleading advertising. *Id.* § 17500 *et seq*. In response to a rash of frivolous and

7    abusive lawsuits under the UCL and FAL, California voters passed Proposition 64,

8    which sharply curtailed private enforcement actions under the UCL and the FAL by

9    providing that only plaintiffs who have "suffered injury in fact and [have] lost money

10    or property as a result of unfair competition" or false advertising have standing to

11    assert claims under the UCL and FAL. *Kwikset Corp. v. Superior Court*, 246 P.3d

12    877, 884 (Cal. 2011); *Californians for Disability Rights v. Mervyn's, LLC*, 138 P.3d

13    207, 209-10 (Cal. 2006); *see also* Cal. Bus. & Prof. Code §§ 17204, 17535.

14         Relevant to this Motion, the California Supreme Court has expressly held that

15    plaintiffs alleging violations of the UCL and FAL based on a defendant's "false

16    advertising and misrepresentations to consumers" must plead and prove personal

17    reliance on those misrepresentations as an immediate cause of the plaintiff's injury.

18    *See Kwikset*, 246 P.3d at 888; *In re Tobacco II Cases*, 207 P.3d 20, 39 (Cal. 2009);

19    *L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852, 866-67 (N.D. Cal.

20    2015) (collecting cases). That is, plaintiffs must allege their *own* reliance on the

21    alleged misrepresentation caused their injuries; they cannot maintain an action under

22    the UCL or FAL based on the reliance of third parties. *See L.A. Taxi Coop.*, 114 F.

23    Supp. 3d at 866-67; *Kwikset*, 246 P.3d at 888 ("[A] plaintiff proceeding on a claim of

24    misrepresentation as the basis of his or her UCL action must demonstrate *actual*

25    *reliance* on the allegedly deceptive or misleading statements." (emphasis added)).

26    Moreover, a plaintiff seeking to assert UCL or FAL claims in a representative

27    capacity must have individual standing. *Tobacco II*, 207 P.3d at 32; Cal. Bus. &

28    Prof. Code § 17203 (authorizing representative UCL suits only if the claimant meets

the standing requirements of section 17204); *id.* § 17535 (authorizing representative FAL suits only if the claimant has individual standing).

Plaintiffs attempt to support Counts 2 and 3 under the theory that Defendants conspired to mislead Youngevity distributors—as well as unspecified potential distributors—to become Wakaya distributors, thereby causing Youngevity damage. [*See, e.g.*, SAC ¶¶ 126, 133, 147, 154.] But Plaintiffs cannot meet the standing requirements of California's UCL or FAL because they themselves did not rely on Defendants allegedly false advertising. Rather, Plaintiffs claim damages stemming from unspecified third parties' reliance on Defendants' purportedly false advertising. Thus, even if Plaintiffs' allegations related to Defendants' advertising were true (which they are not), Plaintiffs lack standing to bring claims under the UCL or FAL. Accordingly, Counts 2 and 3 should be dismissed with prejudice.[5]

## IV.   COUNTS 4B AND 6A SHOULD BE DISMISSED WITH PREJUDICE BECAUSE THEY ARE PREMISED ON FACIALLY INVALID AND UNENFORCEABLE CONTRACTUAL PROVISIONS.

Counts 4B and 6A are premised on Defendants' alleged interference with Youngevity's contractual relationships with its distributors.[6] Defendants purportedly conspired to encourage Youngevity distributors to breach their agreements with

---

[5] In addition to Plaintiffs' lack of standing, Count 3 should be dismissed because Count 3 purports to allege violations of the UCL as to all Defendants. [SAC ¶¶ 128-57.] But Count 3 incorporates the factual allegations only from Counts 1 and 2, which allege facts only as to Wakaya. [*See* SAC ¶¶ 27-127.] Thus, at a minimum, Count 3 should be dismissed for failure to state a claim against Smith, TNT, Graham, Andreoli, Vaughn, Pitcock, Gardner and Cloward.

[6] Although Plaintiffs style Count 4B as a claim for intentional interference with prospective economic advantage, it appears that Count is actually a claim for interference with existing contractual relations. [*See* SAC Count 4B.] Specifically, Count 4B alleges Defendants interfered with Youngevity's relationships with its distributors supposedly by encouraging those distributors to breach their distributor agreements with Youngevity. [*See* SAC ¶¶ 194-216.] As such, Count 4B and Count 6A are duplicative. Defendants intend their arguments to apply to both Counts.

1   Youngevity by working for Wakaya and recruiting other Youngevity distributors to

2   do the same. [*See, e.g.*, SAC ¶¶ 193, 195-97, 199-201, 247-49.] Counts 4B and 6A

3   fail as a matter of law and should be dismissed with prejudice because a claim for

4   intentional interference with contract cannot be premised on invalid contractual

5   provisions.

**A.  Restrictive Covenants Are Invalid Under California Law.**

7       California law broadly prohibits contractual provisions that restrain a party's

8   ability to engage in a lawful profession or business. *See* Cal. Bus. & Prof. Code

9   § 16600 ("§ 16600") ("[E]very contract by which anyone is restrained from engaging

10  in a lawful profession, trade, or business of any kind is to that extent void."). Indeed,

11  California has a long-settled "legislative policy in favor of open competition and

12  employee mobility." *Edwards v. Arthur Andersen LLP*, 189 P.3d 285, 291 (Cal.

13  2008); *see also Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 255 (Cal. Ct. App.

14  1968) ("The interests of the employee in his own mobility and betterment are

15  deemed paramount to the competitive business interests of the employers . . . ."). The

16  California Supreme Court has interpreted § 16600 broadly, holding that it applies to

17  *all* restraints on a party's ability to engage in a lawful business, not only those

18  restraints that are unreasonable or overbroad. *See Edwards*, 189 P.3d at 292-93. And

19  the Court has expressly rejected attempts to dilute § 16600 "by judicial fiat," noting

20  that the statute is unambiguous and that it is the prerogative of the California

21  Legislature to create any exemptions to the statutory mandate. *Id.* at 293.

22      In accordance with this legislative mandate, contractual provisions not to

23  compete or not to solicit are void under California law. *See Edwards*, 189 P.3d at

24  290 (invalidating noncompete and nonsolicitation clauses in employment

25  agreement). Moreover, attempts at enforcing an invalid noncompete or

26  nonsolicitation clause are themselves a violation of California's Unfair Business

27  Practices Act. *Dowell v. Biosense Webster, Inc.*, 102 Cal. Rptr. 3d 1, 8-9 (Cal. Ct.

28  App. 2009) (holding that an attempt to enforce invalid noncompete and

13

nonsolicitation clauses violates section 17200 of the California Business and Professions Code). Finally, this Court can hold noncompete and nonsolicitation clauses invalid as a matter of law when, on their face, they violate § 16600. *See id.* at 12.

### B. Contractual Provisions at Issue

Defendants, except for Wakaya Perfection, LLC ("Wakaya"), are former Youngevity distributors and executives. [SAC ¶¶ 12-21.] Youngevity's relationship with its distributors is governed by the Youngevity Policies and Procedures ("Policies and Procedures"). [SAC ¶ 244-45.] Section E6 of the Policies and Procedures ("Section E6") states:

> All Distributors are Independent Contractors; [Youngevity] imposes no restrictions on any Distributor's participation or sales activities in other businesses or programs other than Youngevity except as said activities or programs would cause or create a violation of any provision of Distributor's agreement with [Youngevity] or any of these policies and procedures.

[SAC, Ex. C, Att. 1, at p.9, § E6.]

On its face, Section E6 allows Youngevity distributors to work for other businesses, including competing businesses.

Section E12 of the Policies and Procedures ("Section E12") states:

> Distributors are strictly forbidden from Cross-Recruiting, and shall not sell, recruit, propose, or in any way induce or attempt to induce any other Distributor to purchase any product or service, or to participate in any other income opportunity, investment, venture, or commit any other activity deemed, at the full discretion of [Youngevity], as cross-recruiting. This includes any such activities across any divisions of [Youngevity], should any separate divisions with different compensation plans and or hierarchy exist, unless, and as specifically stated otherwise. The integrity of the hierarchy and the relationships therein is of paramount importance to every Distributor as well as to [Youngevity]. Any Distributor violating this provision may be subject to immediate termination for cause, forfeiting any and all commission due him or her.

1  [SAC, Ex. C, Att. 1, at p. 10-11, § E12.]

2    In Count 4B, Plaintiffs allege Defendants "interfered with Youngevity's

3  distributor relations through improper means, to wit, by encouraging or soliciting

4  those distributors to breach Youngevity's distributor agreement." [SAC ¶ 214.]

5  Plaintiffs do not specify which provisions of the distributor agreement Defendants

6  purportedly encouraged distributors to violate, but a review of the allegations in

7  Count 4B suggests Plaintiffs' claims are premised on Defendants' alleged

8  inducement of Youngevity distributors to violate Sections E6 and E12. [*See, e.g.*,

9  SAC ¶ 193 ("Defendants encouraged other high ranking Youngevity distributors and

10  Youngevity employees to work for, and enroll as distributors in, Wakaya and further

11  recruit to Wakaya other Youngevity distributors . . . ."); *id.* ¶ 199 (alleging Andreoli

12  induced distributors "to breach their Youngevity distributor agreements by

13  simultaneously becoming Wakaya distributors or employees and further recruit other

14  Youngevity distributors to do the same"); *id.* ¶ 200 (alleging Defendants induced

15  Youngevity distributors to violate the distributor agreement "by simultaneously

16  becoming Wakaya distributors and further recruiting Youngevity distributors to do

17  the same").] Similarly, Count 6A alleges that Defendants interfered with

18  Youngevity's contractual relations with its distributors by inducing "Youngevity

19  distributors to breach their Youngevity contracts by inducing them to cross-recruit

20  for Wakaya while still serving as Youngevity's distributors." [SAC ¶ 247.] Thus,

21  Counts 4B and 6A are both premised on Defendants' alleged inducement of

22  Youngevity distributors to violate Sections E6 and E12 of the distributor agreement.

23    **C.  Counts 4B and 6A Are Premised on an Invalid Nonsolicitation Provision.**

24    In Counts 4B and 6A, Plaintiffs allege Defendants interfered with

25  Youngevity's distributor relationships by encouraging distributors to violate the

26  Policies and Procedures by becoming Wakaya distributors and further recruiting

27  other Youngevity distributors to do the same. [*E.g.*, SAC ¶¶ 193, 196, 199-207, 247-

28  48.] First, to the extent Youngevity alleges Defendants induced Youngevity

15

distributors to breach the Policies and Procedures by becoming Wakaya distributors, it cannot maintain an action for interference with contract. Section E6 of the Policies and Procedures expressly allows Youngevity distributors to work for other, competing, companies. Thus, Defendants cannot have induced a breach of the Policies and Procedures by encouraging Youngevity distributors to also work for Wakaya.

Second, to the extent Youngevity alleges Defendants induced a breach of the Policies and Procedures by encouraging Youngevity distributors to violate Section E12, its claim fails because Section E12 is an invalid nonsolicitation provision. *Edwards*, 189 P.3d at 292-93 (holding invalid *all* restraints on a party's ability to engage in a lawful business). To maintain a claim for intentional interference with contractual relations, Plaintiffs must demonstrate "(1) a *valid contract* between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 791 P.2d 587, 590 (Cal. 1990) (emphasis added). If a contract is void, there can be no interference with contract. *See Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Village Square Venture Partners*, 60 Cal. Rptr. 2d 830, 838 (Cal. Ct. App. 1997); *A-Mark Coin Co. v. Gen. Mills, Inc.*, 195 Cal. Rptr. 859, 866 (Cal. Ct. App. 1983); Restatement (Second) of Torts § 744 cmt. b ("Illegal agreements and those in violation of public policy are commonly held to be entirely void and so not contracts at all. On that basis they are simply not within the rules . . . on liability for interference with the performance of contracts and there is no liability for causing their breach."). Moreover, attempts to enforce invalid nonsolicitation provisions are violations of California's UCL. *See Dowell*, 102 Cal. Rptr. 3d at 8-9.

Even if Plaintiffs' allegations in Counts 4B and 6A were true (which they are not), those Counts fail because the contractual provision Youngevity seeks to enforce

1  is an invalid nonsolicitation provision. Section E12 prohibits Youngevity distributors
2  from cross-recruiting, indicating that Youngevity distributors "shall not sell, recruit,
3  propose, or in any way induce or attempt to induce any other Distributor to purchase
4  any product or service, or to participate in any other income opportunity, investment,
5  venture, or commit any other activity deemed, at the full discretion of [Youngevity],
6  as cross-recruiting." [SAC, Ex. C, Att. 1, at p. 10-11, § E12.] On its face, Section
7  E12 is a broad prohibition against soliciting Youngevity distributors into
8  participating in "any other income opportunity." Youngevity retains the "full
9  discretion" to define any activity as "cross-recruiting." Moreover, Section E12
10 purports to prohibit Youngevity distributors from selling "*any* product or service" to
11 other distributors. A plausible reading of Section E12 could prohibit one Youngevity
12 distributor from selling his car to another distributor. Youngevity would be hard
13 pressed to draft a broader nonsolicitation clause.

14        Youngevity's independent distributors are entitled under California law to
15 solicit their fellow distributors to work for other businesses, notwithstanding Section
16 E12. Thus, Youngevity can have no legal expectation that its distributors would
17 refrain from cross-recruiting. Consequently, even if Plaintiffs' allegations were true
18 (which they are not), Defendants cannot have interfered with Youngevity's
19 contractual relationships by encouraging distributors to violate Section E12.
20 Accordingly, Counts 4B and 6A should be dismissed with prejudice.

21 **V.    COUNT 5C SHOULD BE DISMISSED WITH PREJUDICE**
22 **       BECAUSE PITCOCK IS NOT A SIGNATORY TO THE LIVINITY**
       **AGREEMENT.**

23        On or about July 10, 2012, Youngevity entered into a consulting agreement
24 with Livinity, Inc. ("Livinity Agreement"). Livinity, Inc. will be referred to as
25 "Livinity" throughout. [SAC, Ex. G, at p.253 (defining the parties to the Livinity
26 Agreement as Livinity and Youngevity).] The Livinity Agreement designated
27 Livinity as the "Consultant" being hired by Youngevity. [SAC, Ex. G, at p. 253.]
28 Pitcock signed the Livinity Agreement in his capacity as president of Livinity and

Steve Wallach signed in his capacity as CEO of Youngevity. [SAC, Ex G, at p.258.]

Section 6 of the Livinity Agreement ("Section 6") provides:

> **6. Acts Discreditable.** Consultant shall at all times refer to [Youngevity] and its operating units in terms that further its business objectives. Consultant shall not refer to [Youngevity] or its operating units in a manner that damages [Youngevity's] position in the marketplace.

[SAC, Ex. G, at p.256, § 6.]

In Count 5C, Plaintiffs allege Pitcock breached the Livinity Agreement by "refer[ing] to Youngevity in terms that do not further Youngevity's business objectives and instead disparage[ing] Youngevity, including personal attacks calling into question the fitness to serve and fiduciary integrity of Youngevity's CEO Steve Wallach and Youngevity's COO Michelle Wallach on a company cruise in January, 2015." [SAC ¶ 232.] Even if Plaintiffs' allegations were true (which they are not), Pitcock cannot have breached the Livinity Agreement because he was not a signatory to that agreement.

A corporate officer signing a contract in his representative capacity is not personally bound to the terms of the contract. *See Bensara v. Marciano*, 112 Cal. Rptr. 2d 358, 360 (Cal. Ct. App. 2001) (holding a corporate officer signing in representative capacity is not a party to the agreement); *Lippert v. Bailey*, 50 Cal. Rptr. 478, 482 (Cal. Ct. App. 1966) ("Where the signature as agent and not as a principal appears on the face of the contract, the principal is liable and not the agent."); Cal. Com. Code § 3402 ("If the form of the signature shows unambiguously that the signature is made on behalf of the represented person who is identified in the instrument, the representative is not liable on the instrument."); Restatement (Third) of Agency § 6.01 ("When an agent acting with actual or apparent authority makes a contract on behalf of a disclosed principal, . . . the principal and the third party are parties to the contract . . . ."). Thus, where the face of the contract discloses the agency relationship, an agent signing in his representative capacity is not a party to

the contract and cannot be bound by its terms.

On its face, the Livinity Agreement is between Youngevity and *Livinity*. The contract unambiguously designates "Livinity, Inc." as "Consultant" and establishes a variety of obligations between the Consultant and Youngevity. The Livinity Agreement was signed by Steve Wallach, in his capacity as CEO of Youngevity and by Pitcock in his capacity as President of Livinity. Pitcock is not identified as a party to the Livinity Agreement; nor does the agreement purport to obligate any parties other than Livinity and Youngevity. Thus, the Livinity Agreement was unambiguously entered into by Youngevity and *Livinity*. Pitcock was not a party to the Livinity Agreement and, therefore, cannot be bound by its terms. Consequently, Count 5C should be dismissed with prejudice.

## VI.   COUNTS 5D AND 6B SHOULD BE DISMISSED WITH PREJUDICE BECAUSE GARDNER IS NOT A SIGNATORY TO THE HM AGREEMENT, CLOWARD IS NOT BOUND BY THE NONCOMPETE PROVISION IN ARTICLE 11.2, AND PLAINTIFFS HAVE NOT ALLEGED A VIOLATION OF ARTICLE 11.1.

In Count 5D, Plaintiffs allege Gardner and Cloward breached the HM Agreement "by using Youngevity's customer lists to benefit Wakaya; by working for Wakaya which is a business that directly competes with Youngevity; and by interfering in the relationships between Youngevity and its customers and distributors." [SAC ¶ 239.] In Count 6B, Plaintiffs allege Wakaya and Andreoli interfered with Youngevity's employment contracts by inducing Garnder and Cloward to violate the HM Agreement. [SAC ¶¶ 264-65.] For the reasons discussed below, Counts 5D and 6B fail as a matter of law and should be dismissed with prejudice.

### A. Contractual Provisions at Issue

On or about August 7, 2013, Youngevity entered into a purchase agreement with Heritage Makers, Inc. (the "HM Agreement") and certain "Representing Parties." [SAC ¶ 234 & Ex. H.] Heritage Makers, Inc. will be referred to as "HM" throughout. Gardner signed the HM Agreement in her capacity as HM's president.

19

[SAC, Ex. H, at p. 297.] Cloward signed the HM Agreement in his capacity as an identified "Representing Party." [SAC, Ex. H, at p.302; SAC, Ex. H, at p.261 (defining "Representing Parties" for purposes of the HM Agreement).] Article 11.1 of the HM Agreement ("Article 11.1") provides:

> 11.1 <u>Confidentiality</u>. At all times after the Closing Date, HM[7] and the Representing Parties shall retain in strictest confidence, and shall not use for its benefit or for the benefit of others all confidential information comprising or related to the Assets[8] described in this Agreement including, without limitation, the technology, trade secrets, customer lists transferred hereby to [Youngevity], pricing policies, marketing plans or strategies, product development techniques or plans, or technical processes, designs and design projects respecting the Business.[9]

[SAC ¶ 236; *id.*, Ex. H, at p.293, § 11.1.]

On its face, Article 11.1 binds the signatories to the HM Agreement from disclosing confidential information related to the HM assets sold to Youngevity as part of the HM Agreement. Article 11.2 of the HM Agreement ("Article 11.2") provides in relevant part:

> 11.2 <u>Non-Competition</u>.
>
> (a) (i) For a period of four (4) years from and after the Closing Date, HM shall not, directly or indirectly: (i) engage in a business or enterprise (either as proprietor, partner, employee, agent, consultant, or controlling stockholder) that qualifies as a "competing business" . . . or (ii) solicit or attempt to solicit sales or licenses of any competing businesses, interfere with, or disrupt or attempt to disrupt

---

[7] The HM Agreement defines "HM" as "Heritage Makers, Inc., a Delaware corporation." [SAC, Ex. H, at p.261.]

[8] The HM Agreement defines "Assets" as "all of the properties, assets, rights, claims, leasehold interests, contracts and goodwill used in the Business of owned by HM." [SAC, Ex. H. at p.261.]

[9] The HM Agreement defines "Business" as "the current business of HM relating to, among other things, on-demand photo publishing and the sale of 'points' to exchange for products through a network of distributors and sales consultants." [SAC, Ex. H, at p.262.]

the relationship (contractual or otherwise) between HM, [Youngevity] and their customers, suppliers, agents, consultants, officers or employees relating to the Product; and (ii) each of the Representing Parties agrees to the confidentiality and non-competition provisions set forth in their respective employment agreements, if any.

[SAC ¶ 236; *id.*, Ex. H, at p. 293, § 11.2.]

On its face, Article 11.2 purports to bind *HM* to not compete with Youngevity for 4 years. Article 11.2 also purports to bind the Representing Parties—including Cloward—to the confidentiality and non-compete provisions of their respective employment agreements, *if any*. Gardner is not mentioned in either Article 11.1 or 11.2.

B. **Gardner Is Not a Signatory to the HM Agreement.**

As discussed previously, *see* Part V *supra*, a corporate officer signing a contract in her representative capacity is not personally bound to the terms of the contract. *See Bensara*, 112 Cal. Rptr. 2d at 360; *Lippert*, 50 Cal. Rptr. at 482. On its face, the HM Agreement was entered into by HM, Youngevity, and certain "Representing Parties." [SOF ¶¶ 11-13; SAC, Ex. H, at p.261.] Gardner was not identified as a "Representing Party" in the HM Agreement. [SAC, Ex. H, at p.261.] Instead, Gardner signed the HM Agreement in her capacity as President of HM. [SOF ¶ 12.] Thus, she is not a signatory to the HM Agreement and therefore cannot have breached it. And Defendants cannot have induced Gardner to breach a contract to which she was not a signatory. *See Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 791 P.2d 587, 590 (Cal. 1990) (requiring plaintiff alleging interference with contractual relations to establish the existence of a *valid* contract).

C. **Cloward Is Not Bound by the Noncompete Provision in Article 11.2 of the HM Agreement.**

Unlike Gardner, Cloward is a signatory to the HM Agreement. But Cloward signed the HM Agreement in his capacity as a "Representing Party." [SOF ¶ 13.] On its face, the noncompete provision contained in Article 11.2 does not apply to the "Representing Parties," including Cloward. [SOF ¶¶ 16-18.] Article 11.2 provides

that *HM* will refrain from competing with Youngevity for a period of 4 years. [SOF ¶ 16.] It further provides that "each of the Representing Parties agrees to the confidentiality and non-competition provisions set forth *in their respective employment agreements, if any*." [*Id.* (emphasis added).] Thus, Cloward, as one of the Representing Parties, is not bound by the noncompete in Article 11.2.[10] Rather, he would be bound by any noncompete provision in his individual employment contract, *if any*. Consequently, Plaintiffs cannot premise Count 5D on Cloward's breach of Article 11.2. And because Cloward was never bound by Article 11.2, Wakaya and Andreoli cannot be liable for inducing Cloward to breach that provision.

### D. Plaintiffs Have Not Alleged a Breach of Article 11.1 of the HM Agreement.

On its face, Article 11.1 requires HM and the Representing Parties—including Cloward—to "retain in strictest confidence . . . all confidential information comprising or related to the Assets described in [the HM] Agreement."[11] [SOF ¶ 14.] Article 11.1 is not, as Plaintiffs suggest, a generalized nondisclosure agreement. It specifically prohibits disclosure of confidential information originating with HM and transferred to Youngevity during the asset sale. [*Id.*] Despite the plain meaning of Article 11.1, Plaintiffs assert Cloward breached Article 11.1 by "using Youngevity's customer lists to benefit Wakaya." [SAC ¶ 239.] Plaintiffs have not alleged any facts indicating Cloward disclosed confidential information originating with HM. Thus, even if their allegations were true (which they are not), Plaintiffs have not alleged a breach of Article 11.1 of the HM Agreement.

In short, Counts 5D and 6B should be dismissed. Neither Gardner nor Cloward are bound by the noncompete provision in Article 11.2 of the HM Agreement, and

---

[10] As discussed in Part 4A, *supra*, restrictive covenants, including noncompetes, are invalid under California law. Thus, even if Cloward or Garnder were bound by the noncompete in Article 11.2 (which they are not), Count 5D would still fail as a matter of law.

[11] As discussed above, Gardner was not a party to the HM Agreement, and so is not bound to the terms of Article 11.1. *See* Part VI.A, *supra*.

1  Plaintiffs have not alleged a breach of Article 11.1. Defendants have twice before

2  notified Plaintiffs of the defects underlying these Counts. [Dkt. 24-2 at 20 n.6; Dkt.

3  28-2 at 20 n.5.] And yet, Plaintiffs continue to assert them. Defendants respectfully

4  ask the Court to dismiss Counts 5D and 6B with prejudice.

5      **VII.   COUNT 8 SHOULD BE DISMISSED UNDER RULE 12(b)(6).**

6          In Count 8, Plaintffs bring a claim under California Civil Code § 3344

7  ("Section 3344"), alleging Graham and TNT ("Graham/TNT") misappropriated Dr.

8  Wallach's likeness through the use of the phone number 1-800-WALLACH (the "1-

9  800 number") and wallachonline.com and myyoungevity.com (collectively, the

10  "Websites") and through the creation of a variety of "tools" designed to assist

11  Youngevity distributors in building their Youngevity businesses. [SAC ¶ 291.]

12  Section 3344 establishes a cause of action for misappropriation of likeness, which

13  occurs when a party "knowingly *uses* another's name, voice, signature, photograph,

14  or likeness . . . *without such person's prior consent*." Cal. Civ. Code § 3344(a)

15  (emphasis added). The plain language of the statute requires a *nonconsensual use* of

16  a party's likeness, but Plaintiffs concede that *all* of Graham/TNT's challenged uses

17  were *consensual*. [SAC ¶¶ 294-95.] That is, all of the uses of Dr. Wallach's likeness

18  occurred while Graham/TNT were distributors for Youngevity and had implied

19  consent to make such use. [*Id.*]

20          In Count 8, Plaintiffs appear to suggest that they can retroactively alter the

21  status of Graham/TNT's *past* uses of Dr. Wallach's likeness by withdrawing consent

22  for any *future* use. This is unsupported by California law. California recognizes that

23  a *use* of a party's likeness in a publication occurs upon the first publication of the

24  challenged statement. Cal. Civ. Code § 3425.3; *Roberts v. McAfee, Inc.*, 660 F.3d

25  1156, 1166-67 (9th Cir. 2011). In the context of websites, a statement is published

26  when first made available to the public. *Yeager v. Bowlin*, 693 F.3d 1076, 1081-82

27  (9th Cir. 2012). And statements on a website constitute a single publication—a

28  single *use*—as long as the statement is not "substantively altered or added to, or the

1   website is directed to a new audience." *See id.* at 1082. Because Plaintiffs conceded

2   that every statement referencing Dr. Wallach was authorized, those statements

3   cannot be misappropriations under California law or retroactively converted into

4   misappropriations simply by withdrawing consent for *future* uses.

5          The Ninth Circuit's discussion in *Newton v. Thomason*, 22 F.3d 1455 (9th Cir.

6   1994), is instructive. In *Newton*, the plaintiff brought a misappropriation of likeness

7   claim against a defendant based on the defendant's use of a character featuring the

8   plaintiff's name in a TV series. *Id.* at 1458. The defendant provided evidence that the

9   plaintiff had consented to the use of his name, both in writing and through his

10  conduct. *Id.* Only after the defendant declined to purchase a theme song the plaintiff

11  had written for the series did the plaintiff object to the use of his likeness. *Id.* The

12  Ninth Circuit affirmed summary judgment in favor of the defendant based on the

13  undisputed evidence that the plaintiff had consented to the use of his name at the

14  time such use was made. *Id.* at 1458-59. The plaintiff's subsequent withdrawal of

15  consent did not change the fact that the defendant's use was consensual.

16         Importantly, Count 8 is a statutory cause of action. Plaintiffs' claim for relief

17  is premised solely on the text of Section 3344. To the extent Plaintiffs rely on the

18  Youngevity Policies and Procedures to suggest that they can retroactively withdraw

19  consent for prior publications, their claim should be disregarded. Plaintiffs have

20  never asserted a breach of any license—implied or otherwise—and have

21  affirmatively disavowed any claims premised on the Policies and Procedures. [*See*

22  Plaintiffs' Opposition to Defendants' Renewed Motion to Strike (Dkt. 35) 17

23  ("Youngevity's distributor agreement is not at issue in this case.").]

24         In short, by conceding that all of Graham/TNT's uses of Dr. Wallach's

25  likeness were consensual, Plaintiffs must also concede that all such uses cannot

26  constitute misappropriation within the meaning of Section 3344. Consequently,

27  Count 8 fails as a matter of law and should be dismissed with prejudice.

28

## **CONCLUSION**

Rather than plead their claims clearly and concisely, with support from relevant factual allegations, Plaintiffs have engaged in a pattern and practice of pleading through innuendo and suggestion. The Court has already rebuked Plaintiffs for this practice and dismissed several of their claims under Rule 8. Defendants respectfully request that the Court dismiss the Counts identified in this Motion with prejudice. Plaintiffs have already amended their complaint twice and have failed to cure the defects in their pleading. Enough is enough.


RESPECTFULLY SUBMITTED this 1st Day of August, 2016.

PARR BROWN GEE & LOVELESS


*/s/ Jonathan R. Schofield*

PARR BROWN GEE & LOVELESS
Jonathan O. Hafen
Jonathan R. Schofield

HURST & HURST
Debra L. Hurst
Kyle Van Dyke

Attorneys for Defendants

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed August 1, 2016.


  /s/ *Jonathan R. Schofield*
Jonathan R. Schofield

PARR BROWN GEE & LOVELESS
101 South 200 East, Suite 700
Salt Lake City, UT 84111
Telephone: (801) 532-7840
Facsimile: (801) 532-7750
jschofield@parrbrown.com