Debra L. Hurst (106118)
dhurst@hurst-hurst.com
Kyle Van Dyke (171186)
kvandyke@hurst-hurst.com
HURST & HURST
701 B Street, Suite 1700
San Diego, CA 92101
Telephone: (619) 236-0016
Facsimile: (619) 236-8569

Jonathan O. Hafen (admitted pro hac vice, Utah #6096)
jhafen@parrbrown.com
Jonathan R. Schofield (admitted pro hac vice, Utah #8742)
jschofield@parrbrown.com
PARR BROWN GEE & LOVELESS, P.C.
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
Facsimile: (801) 532-7750

Attorneys for Defendants

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOUNGEVITY INTERNATIONAL CORP. and JOEL D. WALLACH, DVM, ND,<br><br>Plaintiff,<br><br>v.<br><br>TODD SMITH; WAKAYA PERFECTION; TOTAL NUTRITION TEAM dba TNT; BLAKE GRAHAM; WILLIAM ANDREOLI; ANDRE VAUGHN; DAVE PITCOCK; PATTI GARDNER; and BRYTT CLOWARD,<br><br>Defendants. | Case No.  3:16-CV-00704-L-JLB<br><br>**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>**Oral Argument Requested**<br><br>Judge M. James Lorenz<br><br>Hearing date: August 29, 2016 |

Defendants Wakaya Perfection, LLC ("Wakaya"); Todd Smith ("Smith"); William Andreoli ("Andreoli"); Blake Graham ("Graham"); Andre Vaughn ("Vaughn"); David Pitcock ("Pitcock"); Patti Gardner ("Gardner"); Brytt Cloward ("Cloward"); and Total Nutrition, Inc. dba TNT ("TNT") (collectively, "Defendants"), through their undersigned counsel, respectfully submit this Reply Memorandum in Support of their Partial Motion to Dismiss Plaintiffs' Second Amended Complaint.[1]

## INTRODUCTION

In their Opposition, Plaintiffs assert that they should be allowed to amend their complaint for a third time to remedy the defects in their claims. [Opp. 1-2.] Plaintiffs have attached over fifty pages of additional material and referenced over an hour of video and audio recordings not previously included in the Second Amended Complaint ("SAC") in an attempt to identify additional facts they would allege to support their claims. [Declaration of Steve Wallach ("Wallach Dec."), attached to Opposition; Opp. 9 n.4.] When, as here, a party's proffer of additional facts in opposition to a motion to dismiss fails to cure the defects in its claims, dismissal with prejudice is appropriate. *Sensible Foods, LLC v. World Gourmet, Inc.*, No. 11-2819 SC, 2012 WL 566304, at * 4 (N.D. Cal. Feb. 21, 2012) (concluding amendment would be futile when facts proffered in opposition failed to cure defects); *Brown v. Option One Mortg. Corp.*, No. C 09-5705MHP, 2010 WL 1267774, at * 5 (N.D. Cal. Apr. 1, 2010) ("To justify the request to amend, plaintiffs must explain what they can add to the complaint to overcome the fatal obstacles that exist. Otherwise, granting

---

[1] Defendants apologize for their oversight in not filing a separate notice and motion as required by CivLR 7.1(f)(1) and ask that the Court exercise its discretion to forgive their technical violation. *See Princeton Devs.. LLC v. Baylor*, No. C 11-4471 CW, 2013 WL 211179, at * 2 (N.D. Cal. 2013). The provisions under which Defendants moved for dismissal were identified in each section, and Plaintiffs identified that authority and responded without being prejudiced. If the Court so directs, Defendants will file a corrected memorandum with notice and motion.

1

leave to amend amounts to a pure delay in the final disposition of the case.")

## ARGUMENT
### I. PLAINTIFFS HAVE NOT ALLEGED A LANHAM ACT VIOLATION AND AMENDMENT WOULD BE FUTILE.

Despite claiming that it can support its Lanham Act claim with "hundreds" of allegedly false advertising statements from Wakaya, Plaintiffs have failed to point to a *single* statement of fact attributable to Wakaya or Smith. A plaintiff asserting a false advertising claim under the Lanham Act must—at a minimum—identify the particular statements alleged to be false. [Mot. 7-8] If the plaintiff does not identify particular statements, the defendant cannot formulate a proper defense because the defendant cannot assess whether the challenged statement is one of fact or opinion, mere puffery, fairly attributable to the defendant, or even commercial speech.[2] *See Cook, Perkiss and Liehe, Inc. v. Cal. Collection Serv.*, 911 F.2d 242, 245 (9th Cir. 1990) (holding court may determine whether challenged statement is actionable falsehood as a matter of law). Thus, Plaintiffs' failure to identify specific statements and their context warrants dismissal of Count 1.[3]

Moreover, such dismissal should be with prejudice. Plaintiffs' Opposition makes clear that they cannot cure the deficiencies of Count 1. Plaintiffs continue to insist that the YouTube videos and Facebook posts made by unidentified individuals contain actionable statements of fact attributable to Wakaya and Smith. [Opp. 6-9.] As Defendants explained in their Motion, this argument is unavailing. Wakaya

---

[2] Plaintiffs appear to suggest that their practice of placing words in quotation marks sufficiently identifies the challenged statements. [Opp. 6-8.] It does not. A statement's meaning is necessarily dependent on its context. *See William H. Morris Co. v. Group W, Inc.*, 66 F.3d 255, 258 (9th Cir. 1995). Merely placing words in quotation marks does not identify the speaker or the context of the statement.

[3] Plaintiffs' assertion that Defendants waived arguments related to claims it previously chose not to move to dismiss finds no support in law. Motions to dismiss are optional and partial motions to dismiss are contemplated by the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12.

2

distributors are neither employees nor agents of Wakaya. [SAC, Ex. A, Att. 4.] As such, they are not authorized to make advertising claims on Wakaya's behalf. Thus, even if the unattributed YouTube videos and Facebook posts were created by Wakaya distributors (which has not been established), those statements are not attributable to Wakaya or Smith.

Additionally, Plaintiffs do not need discovery to properly plead a claim for false advertising, which necessarily relies on *public* statements. Despite opting to use their Opposition to highlight the facts they would include in an amended pleading, Plaintiffs have failed to identify a single public statement of fact by either Wakaya or Smith that was used in a commercial advertisement and false. For example, although Smith appears in the videos cited in the Opposition, he does not make any of the statements alleged in the SAC. Moreover, Smith's wholly unsurprising participation in Wakaya promotional material that does not contain any false statements cannot support a claim for false advertising. In short, Plaintiffs have provided no indication that they recognize the problems in their pleading of Count 1. Nor do they indicate how they would fix the deficiencies if granted leave to amend. Consequently, Count 1 should be dismissed with prejudice. *See McHenry v. Renne*, 84 F.3d 1172, 1177-78 (9th Cir. 1996) (affirming dismissal with prejudice when complaint was "argumentative, prolix, replete with redundancy, and largely irrelevant" and seemingly "designed to provide quotations for newspaper stories").

## II.   PLAINTIFFS LACK STANDING TO ASSERT COUNTS 2 AND 3.

Plaintiffs misunderstand the standing requirements under California's UCL and FAL. When, as here, a plaintiff asserts claims whose causal mechanism is false and fraudulent advertising to consumers, that plaintiff has standing *only* if he can show *actual* reliance on the fraudulent advertising. *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 888 (Cal. 2011) ("[A] plaintiff proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with the

3

well-settled principles regarding the element of reliance in ordinary fraud actions."); *id.* at 888 n.9; *In re Tobacco II Cases*, 207 P.3d 20, 39 (Cal. 2009). The vast majority of federal courts have correctly followed the California Supreme Court's lead and refused to find standing for competitors who cannot show their own reliance on the allegedly false advertising. *See, e.g.*, *L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852, 866-67 (N.D. Cal. 2015) (collecting cases); *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1003 (N.D. Cal. 2014) (holding that competitor lacks standing on claim that "sounded in fraud" without showing actual reliance); *U.S. Legal Support, Inc. v. Hofioni*, No. CIV. S-13-01770 LKK/AC, 2013 WL 6844756, at * 15 (E.D. Cal. Dec. 20, 2013) (same); *ZL Techs., Inc. v. Gartner, Inc.*, No. CV 09-02393 JF (RS), 2009 WL 3706821, at * 11 (N.D. Cal. Nov. 4, 2009) (same). Thus, the actual reliance requirement stems from the nature of Plaintiffs' UCL and FAL claims. Claims that sound in fraud must be premised on actual reliance because reliance *is* the causal mechanism for fraud.

     The cases cited by Plaintiffs do not hold otherwise. Although those cases recognize that a competitor may allege economic injury for purposes of standing, they do not address the required *causal* connection when the competitor's claim sounds in fraud. *See Allergen, Inc. v. Athena Cosmetics, Inc.*, 640 F.3d 1377, 1383 (Fed. Cir. 2011) (not addressing causation requirement for claim sounding in fraud); *Obesity Research Institute, LLC v. Fiber Research Int'l, LLC*, __ F. Supp. 3d __, 2016 WL 739796, at * 5 (S.D. Cal. 2016) (same); *Clayworth v. Pfizer, Inc.*, 233 P.3d 1066, 1087 (Cal. 2010) (same); *Law Offices of Matthew Higbee v. Expungement Assistance Servs.*, 153 Cal. Rptr. 3d 865, 878 (Cal. Ct. App. 2013) (same). And Plaintiffs' reliance on *Two Jinn, Inc. v. Government Payment Service, Inc.*, 183 Cal. Rptr. 3d 432, 440-41 (Cal. Ct. App. 2015), is curious because the *Two Jinn* court held the plaintiff *lacked* standing under the UCL because he could not show causation under his theory of the case, which supports Defendants' position.

     Although competitive injury *can be* cognizable under the UCL and FAL,

4

Plaintiffs fail to appreciate the requirement that—for claims relying on allegations of fraud and deceit—a plaintiff cannot establish the requisite causation without showing personal reliance on the fraudulent statements. Plaintiffs allege that unidentified third parties relied on Defendants' allegedly false advertising, thereby injuring Plaintiffs. This is precisely the kind of third-party reliance that cannot support standing for a claim of false advertising. Thus, Plaintiffs lack standing to assert Counts 2 and 3, and those Counts should be dismissed with prejudice under Rule 12(b)(6).[4]

### III. THE CONTRACTUAL PROVISIONS UNDERLYING COUNTS 4B AND 6A ARE INVALID.

As explained in Defendants' Motion, Counts 4B and 6A rely on the validity of Section E12 of the Youngevity Policies and Procedures. [Mot. 12-17.] Youngevity's sole argument that Section E12 is a valid contractual provision is that California Business and Professions Code § 16600 ("Section 16600") permits an employer to impose restrictive covenants on current employees. [Opp. 15-16.] In *Edwards*, the California Supreme Court expressly rejected such nonstatutory, common-law exceptions to Section 16600 because the California Legislature specifically abrogated the common-law rules for noncompetition and nonsolicitation agreements. *See Edwards v. Arthur Andersen LLP*, 189 P.3d 285, 290-93 (Cal. 2008). Indeed, California courts were cautioned against creating additional exceptions to Section 16600's clear language by "judicial fiat." *Id.* at 291. Section 16600's plain language simply does not contemplate the anti-competitive contractual provisions used by Youngevity, even for current employees.

But even assuming such provisions are not void for *employees*, Section E12 is still invalid as a matter of law because Youngevity's distributors *are not employees*.

---

[4] Plaintiffs have not addressed Defendants' argument that Count 3 should be dismissed as to Smith, TNT, Graham, Andreoli, Vaughn, Pitcock, Gardner, and Cloward. [Mot. 12 n.5.] "Such a failure in an opposition brief constitutes abandonment of the claim" and dismissal with prejudice is appropriate. *Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1204 (N.D. Cal. 2014).

1  Youngevity's Policies and Procedures expressly detail the distributor relationship
2  and disclaim any employment or agency arrangement. [*See* SAC, Ex. C, Att. 2, § D1
3  ("Distributors are independent contractors and are *not*: franchisees, partners, joint
4  venturers, *employees or agents* of [Youngevity] . . . ." (emphasis added)); *id.* § D3
5  ("Because Distributors are independent contractors, the Company does not dictate
6  selling methods, specific hours, or effort levels . . . ."); *id.* § E6 ("Distributors are
7  Independent Contractors. . . .").]

8  Any employee exception to section 16600 is merely due to an employee's duty
9  of loyalty to an employer. *See Angelica Textile Servs., Inc. v. Park*, 163 Cal. Rptr. 3d
10 192, 204 (Cal. Ct. App. 2013) ("California law does not authorize an employee to
11 transfer his loyalty to a competitor. During the term of employment, an employer is
12 entitled to its employees' 'undivided loyalty.'"). But independent contractors owe no
13 such duty of loyalty unless the relationship rises to the level of that of an agent. *See*
14 *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 181 P.3d 142, 150-54 (Cal. 2008);
15 Restatement (Second) of Agency § 14N cmt. b. Youngevity expressly disclaims any
16 such agency relationship.

17 Youngevity distributors are independent business owners who contract to sell
18 Youngevity products. Because Youngevity distributors are neither employees nor
19 agents, Plaintiffs' purported exception to section 16600's prohibition on anti-
20 competitive contractual provisions does not apply. Section E12 is therefore invalid
21 under California law. Consequently, Youngevity cannot have a legal expectation that
22 its independent distributors would refrain from recruiting their fellow distributors to
23 participate in other business opportunities.[5] Accordingly, Counts 4B and 6A fail as a
24 matter of law and should be dismissed with prejudice under Rule 12(b)(6).

---

[5] To the extent Plaintiffs suggest that Youngevity can—through some unidentified contractual provision—prevent its independent distributors from transferring their interest in their independent businesses to third parties, [Opp. 13-14], any such provision would also violate Section 16600.

6

### IV.  PAROL EVIDENCE CANNOT VARY THE UNAMBIGUOUS TERMS OF THE LIVINITY AGREEMENT.

Plaintiffs attempt to rescue Count 5C by introducing evidence extrinsic to the Livinity Agreement. [Wallach Dec. & attachments.] The parol evidence rule bars admission of extrinsic evidence to "add to, detract from, or vary the terms of a written contract." *See Pac. Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging Co.*, 442 P.2d 641, 645 (Cal. 1968); *see also* Cal. Civ. Code § 1625; Cal. Code Civ. P. § 1856. Only if the language of the written agreement is "reasonably susceptible" to the interpretation urged is parol evidence admitted to aid in interpretation. *Winet v. Price*, 6 Cal. Rptr. 2d 554, 557 (Cal. Ct. App. 1992). And while contracts should receive a reasonable interpretation, "the courts cannot rewrite a contract to avoid difficulty or hardship." *Pac. Architects Collaborative v. State of California*, 166 Cal. Rptr. 184, 190 (Cal. Ct. App. 1979). Plaintiffs seek to fundamentally rewrite the terms of the Livinity Agreement by changing the parties subject to the agreement.

The Livinity Agreement unambiguously identifies "Livinity, Inc." as the contracting party. [SAC, Ex. G, p. 253.] The Livinity Agreement is fully integrated and affirmatively defines "Livinity, Inc." as the "Consultant" that agreed to provide consulting services. [*Id.*; *id.* at 257-58.] Further, the signature page unambiguously identifies Pitcock as the President of Livinity, Inc. [*Id.* at 258.]

Despite the unambiguous language of the Livinity Agreement, Plaintiffs now argue that Youngevity understood that Pitcock was executing the Livinity Agreement in his personal capacity. This argument is unavailing, even when the evidence attached to the Plaintiffs' Opposition is considered. First, Youngevity's subjective understanding is irrelevant to the interpretation of the contract. "It is the outward expression of the agreement, rather than a party's unexpressed intention, which the court will enforce." *Winet*, 6 Cal. Rptr. 2d at 558.

Second, the proffered parol evidence does not support Plaintiffs' interpretation. According to Steve Wallach's sworn declaration, he affirmatively asked Pitcock whether the Livinity Agreement should reference Pitcock individually

7

or the corporate entity, Livinity, Inc. [Wallach Dec. ¶ 6.] Pitcock replied that the agreement should reference "Livinity, Inc., Barb and Dave Pitcock, 125 east 7th, Russell, KS 67665." [*Id.*; Wallach Dec., Ex. B.] Following that exchange, Youngevity drafted the Livinity Agreement, which specifically identified "Livinity, Inc." as the contracting party. [SAC, Ex. G; Wallach Dec., Ex. B.] Youngevity cannot now complain that it intended to contract with Pitcock personally when the parties expressly contemplated whether Livinity, Inc. was the contracting party and Youngevity drafted an agreement reflecting that understanding.

Third, because Youngevity drafted the Livinity Agreement, any ambiguity must be construed against Plaintiffs. *See Fed. Nat'l Mortg. Ass'n v. Bugna*, 67 Cal. Rptr. 2d 233, 236 (Cal. Ct. App. 1997); Cal. Civ. Code § 1654.

Fourth, the Livinity Agreement is not illusory. The mere fact that Youngevity acquired Livinity, Inc. did not terminate Livinity Inc.'s existence. Once Youngevity acquired the company, it was free to dissolve the company or continue the company's existence in order to allow Livinity, Inc. to act as a consultant. A company does not cease to exist as a legal entity merely because it was acquired.

Finally, Plaintiffs' argument that Livinity, Inc. was the alter ego of Pitcock is unpled, unsupported, and unavailing. Plaintiffs have not alleged alter-ego liability in the SAC. Moreover, Plaintiffs' additional facts in their Opposition do not establish that Pitcock was the alter ego of Livinity, Inc. Plaintiffs argue only that the Pitcocks owned and operated Livinity, Inc. as the sole shareholders and officers.[6] "An

---

[6] The only other evidence Plaintiffs provide is that—*after the sale* of Livinity, Inc. to Youngevity—the Pitcocks did not maintain a corporate registration for Livinity, Inc. and directed that all commission payments for their Youngevity distributorships should be directed to their personal accounts. [Opp. 20.] First, post-sale evidence is irrelevant to whether Pitcock was the alter ego of Livinity, Inc. at the time the parties executed the Livinity Agreement. Second, the Pitcocks would have had no reason to maintain a corporate registry after the sale to Youngevity. It was then *Youngevity's* responsibility, as owner of Livinity, Inc., to properly register the corporation. Finally, there was no reason for the Pitcocks to direct their Youngevity

8

1 allegation that a person owns all of the corporate stock and makes all of the
2 management decisions is insufficient to cause the court to disregard the corporate
3 entity." *Leek v. Cooper*, 125 Cal. Rptr. 3d 56, 68 (Cal. Ct. App. 2011). Thus,
4 Plaintiffs have not alleged alter-ego liability and have failed to establish any
5 reasonable probability that they could successfully allege such liability. Because
6 further amendment would be futile, the Court should dismiss Count 5C with
7 prejudice under Rule 12(b)(6).

### V. GARDNER AND CLOWARD ARE NOT BOUND BY THE HM AGREEMENT.

Plaintiffs' argument that Gardner and Cloward are bound by the HM Agreement is similarly unavailing. The HM Agreement unambiguously identifies Heritage Makers, Inc. as the contracting party. [SAC, Ex. H, p. 261.] On its face, the HM Agreement contemplates that the corporate entity was separate and distinct from any individual owners. [*Id.*] The agreement clearly identifies several individuals, including Cloward, as "Representing Parties." [*Id.*] Notably, Gardner is not among the Representing Parties. Thus, on its face, the HM Agreement evidences the parties' understanding that the corporate entity is separate and distinct from individuals associated with it and Plaintiffs have proffered no facts to the contrary. Defendants have twice before put Plaintiffs on notice about the deficiency of this Count and Plaintiffs have failed to cure the defect. [Dkt. 24-2 at 20 n.6; Dkt. 28-2 at 20 n.5.]

Moreover, Plaintiffs' continued assertion that Cloward is bound by the noncompete provision in the HM Agreement borders on frivolous. The plain language of the noncompete provision states that Cloward "agrees to the confidentiality and non-competition provisions set forth in [his] respective employment agreement[], *if any*." [SAC, Ex. H, p. 293, § 11.2.] Plaintiffs continue to ignore this unambiguous language of the very provision they seek to enforce.

---

commissions to any other account but their personal account, as they had already sold Livinity, Inc. to Youngevity.

9

Finally, Plaintiffs have provided no support for their contention that Article 11.1 is a generalized nondisclosure agreement. The provision is specifically limited to disclosure of confidential information related to the Heritage Makers assets. Plaintiffs have failed to allege any facts supporting even an inference that Cloward disclosed information related to the Heritage Makers assets. Consequently, Counts 5D and 6B should be dismissed with prejudice under Rule 12(b)(6).

## VI. COUNT 8 SHOULD BE DISMISSED UNDER RULE 12(b)(6).

Plaintiffs have conceded that *all* uses of Dr. Wallach's likeness prior to the termination of the TNT Distributorships were consensual. [SAC ¶¶ 294-95.] This concession bars any claim for misappropriation of likeness. *See Newton v. Thomason*, 22 F.3d 1455 (9th Cir. 1994). Plaintiffs' attempt to avoid the clear statutory requirement of a nonconsensual use and the holding of *Newton* is unavailing. The *Newton* court held that a claim for misappropriation of likeness fails as a matter of law if the challenged use was consensual.[7] *Id.* at 1461. Consequently, Plaintiffs cannot establish *any* instances of misappropriation and Count 8 should be dismissed with prejudice under Rule 12(b)(6).

## CONCLUSION

In their Opposition, Plaintiffs continue to argue through innuendo and suggestion, relying on irrelevant factual allegations. Plaintiffs have already amended their complaint twice and—despite highlighting in their Opposition the allegations they would have included in a new amendment—have failed to demonstrate that they can cure the defects in their claims. Plaintiffs should not be permitted a fourth bite at the apple. Defendants respectfully request that the Court dismiss the identified Counts with prejudice.

---

[7] Plaintiffs' reliance on the unpublished *Butkus v. Downtown Athletic Club of Orlando, Inc.*, No. CV 07-2507 PA (JWJx), 2008 WL 2557427 (C.D. Cal. 2008), is misplaced. That decision addressed uses of a likeness *after* withdrawal of consent and did not consider the application of the single publication rule when all uses occurred with consent.

10

RESPECTFULLY SUBMITTED this 22nd day of August, 2016.

PARR BROWN GEE & LOVELESS

/s/ *Jonathan R. Schofield*

PARR BROWN GEE & LOVELESS
Jonathan O. Hafen
Jonathan R. Schofield

HURST & HURST
Debra L. Hurst
Kyle Van Dyke

Attorneys for Defendants