1
2
3
4
5
6
7
8
9
UNITED STATES DISTRICT COURT

10
SOUTHERN DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| 12   YOUNGEVITY INTERNATIONAL, INC. AND JOEL D. WALLACH, | Case No.:  16-cv-704 BTM (JLB) |
| 13 | **ORDER GRANTING IN PART AND** |
| 14          Plaintiffs, | **DENYING IN PART PLAINTIFFS** |
| 15   v. | **AND COUNTERCLAIM** |
| 16   TODD SMITH et al., | **DEFENDANTS' MOTION FOR** |
| 17          Defendants. | **PROTECTIVE ORDER** |
| 18   AND RELATED COUNTER ACTION. | **[ECF No. 134]** |

19

20        Before the Court is Plaintiffs and Counterclaim Defendants' motion for a protective

21   order.  (ECF No. 134.)  Plaintiffs and Counterclaim Defendants (the "Youngevity parties")

22   seek a protective order directing that: (1) Plaintiff and Counterclaim Defendant Dr. Joel D.

23   Wallach is not required to respond to Defendants and Counterclaim Plaintiffs'

24   Interrogatories Numbers 5 and 6; and (2) Defendants and Counterclaim Plaintiffs may not

25   ask Dr. Wallach and Counterclaim Defendants Steve Wallach and Michelle Wallach

26   deposition questions concerning Dr. Wallach's marital and sexual history.  (*Id.* at 11.)

27   Defendants and Counterclaim Plaintiffs (the "Wakaya parties") oppose the motion for a

28   protective order.  (ECF No. 136.)  The Court held a telephonic hearing on the motion on

June 16, 2017.[1]  (ECF No. 137.)  Having considered the parties' motion and opposition papers and oral arguments, and for the reasons set forth below, the Court **GRANTS in part and DENIES in part** the Youngevity parties' motion for a protective order.  (ECF No. 134.)

## I.    Background

Youngevity International Corporation ("Youngevity") and Wakaya Perfection ("Wakaya") are both multi-level marketing companies that sell their products through a chain of independent distributors.  (ECF No. 64 at 4; ECF No. 70 at 42.)  The Youngevity parties allege that Wakaya was formed by former Youngevity distributors for the purpose of competing against Youngevity.  (ECF No. 64 at 4.)

The Youngevity parties commenced this lawsuit on March 23, 2016.  (ECF No. 1.)  They filed the operative complaint on December 21, 2016.  (ECF No. 64.)  The Wakaya parties filed counterclaims on January 18, 2017.  (ECF No. 70.)

The Youngevity parties allege both federal and state law claims against the Wakaya parties.  Specifically, the Youngevity parties allege federal claims of violations of the Lanham Act, as well as state law claims of false advertising, unfair competition, intentional interference with prospective economic advantage, intentional interference with a contract, breach of contract, misappropriation of trade secrets, misappropriation of likeness, and breach of fiduciary duty.  (ECF No. 64.)  The Wakaya parties allege the following state law counterclaims against the Youngevity parties: breach of contract, breach of the covenant of good faith and fair dealing, conversion, tortious interference with existing contractual relations, tortious interference with prospective economic advantages, defamation, false light, business disparagement, unfair competition, and fraudulent or negligent misrepresentation.  (ECF No. 70.)

---

[1] Due to the limited period of time between the parties' filing their motion and opposition papers and the three depositions that would be impacted by the Court's ruling on the motion for a protective order, the Court issued an oral ruling on the motion for a protective order at the June 16, 2017 hearing. (*See* ECF No. 137.)  So that the parties may have the benefit of reviewing the Court's detailed analysis of their filings, the Court issues this written order in addition to its oral ruling.

The parties' current dispute involves the discovery of information related to Dr. Wallach's marital and sexual history. The Wakaya parties seek this information under the theory that multiple distributors left Youngevity to join Wakaya due to Dr. Wallach's inappropriate relationships with several female Youngevity distributors. (ECF No. 136 at 5–6.) The Wakaya parties argue that the information they seek is relevant to their defenses to the Youngevity parties' Lanham Act claims and their claim for misappropriation of Dr. Wallach's name and likeness. (*Id.* at 3–4.)

The Wakaya parties have propounded their first set of interrogatories to Dr. Wallach. (*See* ECF No. 134-4 at 5–11.) At issue here are the Wakaya parties' Interrogatories Nos. 5 and 6. Interrogatory No. 5 requests that Dr. Wallach "[i]dentify with particularity each and every person with whom [he] ha[s] entered into a legal marriage, domestic partnership, cohabitation, or substantially similar relationship and the dates on which such relationship commenced." (*Id.* at 11.) Interrogatory No. 6 requests that Dr. Wallach "[i]dentify with particularity any Youngevity Distributor with whom [he] ha[s] had or attempted to have any degree of intimate physical contact." (*Id.*) Dr. Wallach has objected to the Wakaya parties' Interrogatories Nos. 5 and 6 on the bases that they are overbroad, seek information that is not relevant to the claims and defenses in this case, are not proportional to the needs of the case, and are meant to harass Dr. Wallach. (*Id.*)

In addition, Dr. Wallach's deposition is scheduled for June 19, 2017. (ECF No. 134 at 2.) During the telephonic Status Conference before the Court on June 12, 2017 (*see* ECF No. 131), counsel for the Wakaya parties stated that they intend to ask Dr. Wallach about his marital relationships and sexual history at the deposition. Counsel also stated that they intend to ask similar questions at the June 20, 2017 and June 21, 2017 depositions of Counterclaim Defendants Steve Wallach and Michelle Wallach. Dr. Wallach's counsel represented during the June 12, 2017 telephonic Status Conference that they intend to instruct Dr. Wallach not to answer any deposition questions that relate to his marital and sexual history.

///

16-cv-704 BTM (JLB)

The Youngevity parties now seeks a protective order that would allow Dr. Wallach to refrain from responding to the Wakaya parties' Interrogatories Nos. 5 and 6 and Dr. Wallach, Steve Wallach, and Michelle Wallach to refrain from responding to deposition questions that relate to Dr. Wallach's marital and sexual history.  (ECF No. 134.)

## II.   Legal Standards

Federal Rule of Civil Procedure 26, as recently amended, provides that litigants

> may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).  Information within this scope "need not be admissible in evidence to be discoverable."  *Id.*  The December 2015 amendment to Rule 26 reinforced the proportionality factors for defining the scope of discovery and, thus, under the amended Rule 26, relevancy alone is clearly no longer sufficient to obtain discovery.  *See* Fed. R. Civ. P. 26(b)(1) advisory committee's notes to 2015 amendment.  Discovery must also be proportional to the needs of the case.  *Doherty v. Comenity Capital Bank*, 16cv1321-H-BGS, 2017 WL 1885677, at *2 (S.D. Cal. May 9, 2017) (citing *Mora v. Zeta Interactive Corp.*, 1:16-cv-00198-DAD-SAB, 2017 WL 1187710, at *3 (E.D. Cal. Feb. 10, 2017)).  Rule 26 requires that courts "limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)."  Fed. R. Civ. P. 26(b)(2)(C)(iii).

The relevance standard is commonly recognized as one that is necessarily broad in scope in order "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  *Doherty*, 2017 WL 1885677, at *2 (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).  Regardless of its broad nature, however, relevancy is not without "ultimate and necessary boundaries."  *Id.* (quoting *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).

Accordingly, district courts have broad discretion to determine relevancy for discovery purposes. *Id.* (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)).

Because "pretrial discovery by depositions and interrogatories has a significant potential for abuse," *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984), district courts "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Robinson v. Chefs' Warehouse*, 3:15-cv-05421-RS (KAW), 2017 WL 836944, at *1 (N.D. Cal. Mar. 3, 2017) (citing *Seattle Times*, 467 U.S. at 36). For example, district courts may, among other things, forbid discovery, specify the terms for discovery, forbid inquiry into certain matters, or limit the scope of discovery to certain matters. Fed. R. Civ. P. 26(c)(1)(A), (B), and (D). "The burden is upon the party seeking the [protective] order to 'show good cause' by demonstrating harm or prejudice that will result from the discovery." *Rivera v. Nibco, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004) (quoting Fed. R. Civ. P. 26(c)). This burden may be met by showing that the discovery requested is irrelevant, overly broad, burdensome, or oppressive. *Del Socorro Quintero Perez v. United States*, 13cv1417-WQH-BGS, 2016 WL 705904, at *6 (S.D. Cal. Feb. 23, 2016).

In addition, while there is no federal common law privilege akin to the right to privacy, federal courts ordinarily recognize a constitutionally-based right of privacy that can be raised in response to discovery requests.[2] *See, e.g.*, *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 191 (C.D. Cal. 2006). Privacy concerns may be protected through the issuance of a protective order. *Id.* When resolving a privacy objection, courts are to

---

[2] Although the Youngevity parties assert that Dr. Wallach's sexual privacy is protected under the California Constitution (ECF No. 134 at 7), questions of privilege that arise in the course of the adjudication of federal rights are governed by the principles of federal common law. *United States v. Zolin*, 491 U.S. 554, 562 (1989) (citing Fed. R. Evid. 501). Where, as in this case, federal questions and pendent state law claims are present, federal law on privilege, not state law, applies. *Agster v. Maricopa Cty.*, 422 F.3d 846, 839 (9th Cir.), *cert. denied*, 546 U.S. 958 (2005).

balance the need for the information sought against the privacy right asserted.  *Id.*

## III.   Discussion

### A.     Parties' Arguments

The Youngevity parties assert that their motion for a protective order should be granted because no cause, counterclaim, or defense in this case is based or dependent upon Dr. Wallach's marital and sexual history.  (ECF No. 134 at 7.)  Instead, the Youngevity parties assert, the Wakaya parties' interrogatories and deposition questions are designed to "invade Dr. Wallach's right to privacy and annoy, embarrass, harass, and oppress him" and "damage Dr. Wallach's reputation among distributors and within the direct selling community."  (*Id.* at 7–8.)

In support of their position, the Youngevity parties contend that there is no factual predicate for the Wakaya parties' theory that certain distributors received benefits from Youngevity in return for engaging in sexual activities with Dr. Wallach.  (*Id.* at 8.)  The Youngevity parties point out that Dr. Wallach is not an owner, officer, director, shareholder, employee, or distributor in Youngevity, and therefore he lacks the authority to alter distributor downlines and uplines.[3]  (*Id.* at 4.)  In addition, the Youngevity parties attached to their motion declarations from the two Youngevity distributors whom the Wakaya parties have identified as being inserted into more favorable distribution-line positions as a result of their intimate physical relationships with Dr. Wallach: Brandy Brogdon and Charmaine Murphy.  (ECF Nos. 134-2, 134-3.)  Both Ms. Brogdon and Ms. Murphy affirm that they never had sex with Dr. Wallach, were never asked by Dr. Wallach to have sex with him, and were never promised any benefit from Youngevity, Dr. Wallach, or anyone else in exchange for having sex with Dr. Wallach.  (ECF No. 134-2 at 2; ECF No. 134-3 at 2.)

---

[3] The Youngevity parties explain in their motion that to insert a distributor into a new distribution-line position, the consent of Youngevity's President or CEO is required.  (ECF No. 134 at 4.)

16-cv-704 BTM (JLB)

1    The Youngevity parties further contend that the Wakaya parties fail to present a bona

2  fide injury that would allow them to inquire about Dr. Wallach's marital and sexual history.

3  (ECF No. 134 at 9–10.)  The Youngevity parties assert that Steve Wallach, Youngevity's

4  CEO, and Bill Andreoli, Youngevity's President from August 2011 through November

5  2015, never approved Ms. Brogdon or Ms. Murphy switching distributor uplines or

6  downlines, which approval was necessary for the transfers to occur.  (*Id.*)

7    Lastly, the Youngevity parties contend that to the extent the Wakaya parties argue

8  that Dr. Wallach's marital and sexual history is relevant to his claim for reputational

9  damages, Dr. Wallach is not alleging that the Wakaya parties harmed his reputation for

10  marital faithfulness or sexual discretion, but his professional reputation with respect to the

11  quality of the products with which he is associated.  (*Id.* at 11.)  Therefore, the Youngevity

12  parties assert, Dr. Wallach's marital and sexual history is irrelevant to this claim.  (*Id.*)

13    On the other hand, the Wakaya parties argue that their interrogatories are narrowly

14  tailored and wholly proper because the information sought is directly relevant to the issues

15  in this case.  (ECF No. 136 at 4.)  Specifically, the Wakaya parties argue that the sought-

16  after discovery relates directly to their defense to the Youngevity parties' federal Lanham

17  Act claims in that distributors left Youngevity for Wakaya not because Wakaya lured

18  distributors to Wakaya, as the Youngevity parties allege, but because Dr. Wallach's

19  inappropriate conduct created a work culture that caused distributors to leave Youngevity.

20  (*Id.* at 3–4.)  According to the Wakaya parties, Youngevity would provide preferential

21  treatment to certain female distributors who engaged in intimate physical relationships and

22  activities with Dr. Wallach to the detriment of other distributors.  (*Id.* at 5–7.)

23    Additionally, the Wakaya parties argue that the discovery sought is relevant to the

24  Youngevity parties' state law claim that the Wakaya parties misappropriated Dr. Wallach's

25  name and likeness.  (*Id.* at 4.)  The Wakaya parties argue that this claim places

26  Dr. Wallach's character and reputation directly at issue and renders their interrogatories

27  and deposition questions appropriate.  (*Id.*)

28  ///

Lastly, the Wakaya parties argue that the Youngevity parties have not met their Rule 26(c) burden of demonstrating that Dr. Wallach will suffer a particularized harm or prejudice if the protective order is not granted.  (*Id.* at 8–11.)  The Wakaya parties argue that they are not seeking information regarding Dr. Wallach's entire sexual history but only the identities of the distributors with whom he has had or has sought a romantic or intimate relationship, and this identification does not fall within the scope of any right Dr. Wallach may have to "sexual privacy."  (*Id.* at 8–9.)  The Wakaya parties argue further that the Youngevity parties have failed to show why the sexual privacy right to which they believe Dr. Wallach is entitled under the California Constitution applies in this federal action arising under federal question jurisdiction.  (*Id.* at 9.)

### B.    Analysis

#### 1.    Interrogatory No. 5

The Wakaya parties' Interrogatory No. 5 requests that Dr. Wallach "[i]dentify with particularity each and every person with whom [he] ha[s] entered into a legal marriage, domestic partnership, cohabitation, or substantially similar relationship and the dates on which such relationship commenced." (ECF No. 134-4 at 11.)  Dr. Wallach objects to this interrogatory "on the grounds that the Interrogatory is overbroad, seeks irrelevant information, and is not proportional to the needs of the case.  The identification of any such persons is irrelevant to the claims and defenses in this case.  Dr. Wallach additionally objects to this Interrogatory because it is clearly meant to harass Dr. Wallach." (*Id.*)

With respect to the Wakaya parties' Interrogatory No. 5, the Youngevity parties' motion for a protective order is **GRANTED**.  Having reviewed the parties' moving and opposition papers and the case record, the Court finds that this interrogatory is not relevant to any claim or defense at issue in this case.  The Court is persuaded that this interrogatory was calculated to harass, embarrass, and implicate the privacy interests of Dr. Wallach.  Accordingly, the Youngevity parties' motion for a protective order with respect to Interrogatory No. 5 is **GRANTED**.  Dr. Wallach need not respond to the interrogatory, and neither Dr. Wallach, Steve Wallach, nor Michelle Wallach need respond to deposition

questions directed to the subject matter of this interrogatory.

### 2.   Interrogatory No. 6

The Wakaya parties' Interrogatory No. 6 requests that Dr. Wallach "[i]dentify with particularity any Youngevity Distributor with whom [he] ha[s] had or attempted to have any degree of intimate physical contact." (ECF No. 134-4 at 11.)  Dr. Wallach objects to this interrogatory "on the grounds that the Interrogatory is overbroad, seeks irrelevant information, and is not proportional to the needs of the case.  The identification of any such persons is irrelevant to the claims and defenses in this case.  Dr. Wallach additionally objects to this Interrogatory because it is clearly meant to harass Dr. Wallach." (*Id.*)

With respect to the Wakaya parties' Interrogatory No. 6, the Youngevity parties' motion for a protective order is **GRANTED in part and DENIED in part**.  While the discovery that the Wakaya parties seek bears some relevance to the claims and defenses in this case, the request is overbroad and unduly burdensome relative to the sought-after discovery's limited importance in resolving the issues in this case.  First, the interrogatory is not limited in scope to any allegedly inappropriate conduct that purportedly led to the departure of distributors from Youngevity to Wakaya, which is the stated relevance of this inquiry.  Second, the interrogatory is not limited to any pertinent period of time, such as the period of time when distributors allegedly left Youngevity for Wakaya based on Dr. Wallach's conduct.  Third, to the extent that the Wakaya parties rely on the Youngevity parties' misappropriation of likeness claim as the basis for the relevancy of their inquiry, the misappropriation of likeness claim pertains only to Dr. Wallach's professional reputation as it relates to his name being associated with Wakaya products, not his reputation for marital faithfulness or sexual discretion.  Therefore, the information sought via Interrogatory No. 6, as drafted, is not relevant or proportional to this claim.

Additionally, the Court is persuaded that this interrogatory was designed to harass, annoy, embarrass, and oppress Dr. Wallach.  As correctly noted by the Wakaya parties in their opposition, whether Dr. Wallach actually engaged in intimate activities with any Youngevity distributor or distributors is not the issue here. (*See* ECF No. 136 at 5.)  Rather,

the issue is whether Dr. Wallach's *observable* conduct and his "perceived inappropriate relationships . . . with numerous female Youngevity distributors unfairly impacted many other distributors and deterred many from working with Youngevity altogether." (*Id.* at 5–6.) Thus, the identities of "any Youngevity Distributor with whom [Dr. Wallach] ha[s] had or attempted to have any degree of intimate physical contact," regardless of whether such intimate physical contact was ever observed by any Youngevity distributor, are irrelevant to the issues at hand. Hence, the effort to unearth extremely personal and potentially embarrassing information that may have been completely unobserved and may have had no impact on anyone's actions seems at least partially motivated by a desire to harass or embarrass.

Even if the Court gives credit to the Wakaya parties' specific allegations regarding Dr. Wallach's conduct, the allegations are not sufficiently tied to the issues in this case to justify the production of the discovery that the Wakaya parties seek. The allegations of Dr. Wallach making unwelcomed sexual advances toward certain distributors (ECF No. 136 at 6), demanding to be seated next to certain women at events (*id.* at 7), and changing the person to whom his royalty payments are made (*id.* at 5), though concerning if true, do little to tie the requested areas of discovery to the issues of this case. The Wakaya parties have failed to demonstrate more than the most tenuous connection between these alleged behaviors and Youngevity distributors leaving Youngevity for Wakaya.

Further, the entirety of the declaration filed in support of the Wakaya parties' opposition to the motion for a protective order is of little to no evidentiary or persuasive value. First, the Court cannot credit the factual assertions made by the Wakaya parties' counsel that were not attributed to identified witnesses, as the Court is unable to evaluate the competency of the unidentified witnesses to testify to those assertions. (*See, e.g.*, ECF No. 136-1, ¶¶ 5, 6.a–e, 7.a–c, 8, 9, 10.) Second, the Court cannot credit the Wakaya parties' counsel's several conclusory assertions that lack specific factual support. (*See, e.g.*, ECF No. 136-1, ¶¶ 6.b–d, 7.a–c.) And third, the Court cannot rely on the Wakaya parties' counsel's assertions that constitute inadmissible double or triple hearsay. (*See, e.g.*, ECF

No. 136-1, ¶¶ 6.e, 7.a–c, 10.)  Thus, the declaration of the Wakaya parties' counsel provides the Court with little support for the Wakaya parties' position that there is a basis to fully deny the Youngevity parties' motion for a protective order.[4]

For the reasons discussed above, the Youngevity parties' motion for a protective order with respect to Interrogatory No. 6 is **GRANTED in part**.  Accordingly, Dr. Wallach is not required to "[i]dentify with particularity any Youngevity Distributor with whom [he has] had or attempted to have any degree of intimate physical contact."  Furthermore, in any deposition, including those of Dr. Wallach, Steve Wallach, and Michelle Wallach, the Wakaya parties are precluded from making a general inquiry into Dr. Wallach's romantic or sexual relationships.

However, because the Wakaya parties have demonstrated a connection, albeit a tenuous one, between a subset of the information sought via Interrogatory No. 6 and the claims and defenses at issue in this case, the Youngevity parties' motion for a protective order is also **DENIED in part**.  To that end, the Wakaya parties may make a more limited inquiry, either by written interrogatories or by deposition questions posed to Dr. Wallach, Steve Wallach, or Michelle Wallach, into whether Dr. Wallach has ever used his influence to try to obtain a more favorable distribution-line position for anyone with whom he had, or was trying to have, an intimate physical relationship.[5]  Any such inquiry will be subject to the terms of the Stipulated Protective Order between the parties (ECF No. 103).

---

[4] Though the Wakaya parties' counsel offers to make a more detailed proffer of the names of the witnesses and the facts mentioned in his declaration in an *in camera* submission (ECF No. 136-1, ¶ 11), the appropriate time to have provided that information to the Court was at the time of submission of the Wakaya parties' opposition.

[5] The Court clarifies that this protective order is designed to shield Dr. Wallach from inquiry into his sexual and romantic relationships.  The Wakaya parties are free to explore generally any time and any way that Dr. Wallach used his influence to provide any Youngevity distributor with preferential treatment. For example, the Wakaya parties may explore whether Dr. Wallach provided preferential treatment to some distributors with respect to speaking engagements and other scheduling matters.  In addition, the Wakaya parties are not precluded from exploring whether a deponent received complaints about Dr. Wallach's conduct, what those complaints were, and whether the deponent took any action to remedy the complaints.

In addition, and, again, subject to the Stipulated Protective Order between the parties (ECF No. 103), for any specific distributor that the Wakaya parties: (1) have evidence that the distributor was actually moved into a more favorable distribution-line position relative to the position of one of the distributors who left Youngevity for Wakaya; (2) have evidence that Dr. Wallach used his influence to obtain that more favorable distribution-line position for the distributor; and (3) have an evidence-based, good-faith belief that Dr. Wallach had or was trying to have an intimate physical relationship with that distributor, the Wakaya parties may ask Dr. Wallach, but not Steve Wallach or Michelle Wallach, whether Dr. Wallach had, or was trying to have, an intimate physical relationship with that distributor. The Wakaya parties may inquire into the details of the temporal nature of that relationship, such as when the relationship began and ended and on what date that distributor obtained a more favorable distribution-line position, but they may not inquire into the details of the physical nature of the relationship.

## C.     Rule 37(a)(5) Sanctions

Neither the Youngevity parties nor the Wakaya parties requested in their pleadings that the Court award sanctions. Pursuant to its authority under Federal Rule of Civil Procedure 37(a)(5)(C), the Court declines to apportion the expenses of bringing this motion to the Wakaya parties.

**IT IS SO ORDERED.**

Dated:  June 22, 2017

Hon. Jill L. Burkhardt
United States Magistrate Judge

12

16-cv-704 BTM (JLB)