UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOUNGEVITY INTERNATIONAL, CORP., et al.,<br><br>　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>TODD SMITH, et al.,<br><br>　　　　　　　　　　Defendants. | Case No.: 16-cv-704 BTM (JLB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' AND COUNTERCLAIM DEFENDANTS' MOTION FOR A PROTECTIVE ORDER AND SANCTIONS**<br><br>**[ECF No. 179]** |

Before the Court is Plaintiffs' and Counterclaim Defendants' Motion for Protective Order and Sanctions. (ECF No. 179.) Plaintiffs and Counterclaim Defendants Youngevity International Corp. and Joel D. Wallach (Youngevity) seek a protective order (1) prohibiting Defendants and Counterclaim Plaintiffs Wakaya, et al. (Wakaya) from asking any witnesses "questions concerning securities laws of the United States or facts germane to whether any federal securities laws have been violated," and (2) prohibiting Wakaya from using at trial any answers by deponent Keith Halls in response to questions related to securities laws. (*Id*. at 12.)[1] By oral motion made at the September 28, 2017 hearing on the pending motion, Youngevity also seeks to strike testimony relating to securities

---

[1] All citations to page numbers in this Order refer to the page numbers generated by the CM/ECF system.

1

violations from depositions that took place after Youngevity filed the instant motion. (*See* ECF No. 216.) Wakaya opposes the motion for a protective order and sanctions. (ECF No. 184.) The Court held oral argument on the motion on September 28, 2017. (ECF No. 207.) As Youngevity moved orally at the hearing for a motion to strike testimony relating to securities violations from depositions that took place after Youngevity filed the instant motion, the Court invited Youngevity to supplement its motion with exhibits identifying those portions of the depositions it seeks to strike. Youngevity did so on October 5, 2017. (ECF Nos. 216, 216-1.) Having considered the parties' motion and opposition papers and oral arguments, and for the reasons set forth below, the Court **GRANTS in part and DENIES in part** Youngevity's motion for a protective order and sanctions and **DENIES** Youngevity's oral motion to strike deposition testimony.

I.     **Factual Background**

Youngevity markets, develops, and distributes products relating to nutrition, sports and energy drinks, health and wellness, cosmetics, and lifestyle through independent direct-sellers known as "distributors." (ECF No. 64 at 2-3.) Defendant Wakaya is a multi-level marketing company that also sells its products through independent distributors. (ECF No. 83 at 43.) Wakaya was formed by former Youngevity distributor Defendant Todd Smith in 2015. (*Id*. at 39.) Wakaya markets, develops, and distributes organic and kosher healing products grown on Wakaya Island, among other products. (*Id*. at 41.)

Youngevity commenced this lawsuit on March 23, 2016. (ECF No. 1.) The operative complaint was filed on December 21, 2016. (ECF No. 64.)[2] Youngevity alleges that Wakaya was formed by former Youngevity distributors for the purpose of competing against Youngevity. (*Id*. at 4.) Youngevity alleges both federal and state law claims against Wakaya. Specifically, Youngevity alleges violations of the Lanham Act, as well as state law claims of unfair competition, intentional interference with prospective

---

[2] Youngevity has a pending motion for leave to file a Fourth Amended Complaint. (ECF No. 109.)

economic advantage, intentional interference with contract, breach of contract, misappropriation of trade secrets, misappropriation of likeness, and breach of fiduciary duty. (*See id*.) Wakaya's operative answer and counter complaint was filed on February 23, 2017. (ECF No. 83.)[3] Wakaya seeks a declaratory judgment and alleges the following state law counterclaims against Youngevity: breach of contract, breach of the covenant of good faith and fair dealing, tortious interference with existing economic relations, tortious interference with prospective economic advantage, defamation, false light, business disparagement, unfair competition, and fraudulent or negligent misrepresentation. (ECF No. 83.)

The parties' current dispute involves the discovery of information relating to alleged insider trading by Youngevity officers and distributors. On August 2, 2017, Wakaya deposed non-party Keith Halls. (ECF No. 179 at 5.) Mr. Halls has been an independent distributor for Youngevity since 2013. (ECF No. 184-1 at 112.) During Mr. Halls' deposition, counsel for Wakaya, Michael Anderson, asked Mr. Halls numerous questions about an email chain between Mr. Halls and Dave Briskie, Youngevity's President and Chief Financial Officer. (*See id*. at 288-93.) The deposition testimony and the email chain itself reflect that on February 27, 2016, Mr. Halls sent Mr. Briskie a draft report detailing Youngevity's financial performance, which Mr. Halls intended to send to Youngevity distributors. (*Id*. at 12-13, 271-78.) Mr. Halls prepared the report to allay distributor concerns following Wakaya's announcement that the company was going public. (*Id*. at 270-71.) Mr. Briskie responded to Mr. Halls' email, "If you want to lower your revenue estimate to 155 Million for 2015 we will likely beat that number when our filings come out." (*Id*. at 12.) Mr. Halls then updated his report, seemingly to reflect Mr. Briskie's number. (*Id*.) Following this conversation, Mr. Halls sent the report to some of his down-

---

[3] Youngevity has a pending motion to strike and dismiss Wakaya's First Amended Answer and Counterclaim (ECF No. 90) and Wakaya has a pending motion for leave to file a Second Amended Counterclaim. (ECF No. 111.)

3

line Youngevity distributors. (*Id*. at 272-73, 290.) The information in the report was later published as a blog post dated March 1, 2016 and was available to the public. (*Id*. at 7-10.)

During Mr. Halls' deposition, Mr. Anderson asked whether Mr. Halls "believe[d] that revenue is a material piece of information for purposes of distributors or shareholders deciding whether or not to be involved in Youngevity?" (ECF No. 184-1 at 290.) Mr. Halls responded affirmatively. (*Id*.) Soon after, Mr. Anderson asked Mr. Halls for his definition of insider trading, which Mr. Halls provided. (*Id*. at 292) Mr. Anderson responded to Mr. Halls' definition by asking, "Are you also aware that insider trading includes communicating material, nonpublic information, to others? . . . And, again, I'll remind you[,] you have a Fifth Amendment right against self-incrimination if you prefer not to answer." (*Id*. at 292.) At that time, Mr. Halls invoked his Fifth Amendment right. (*Id*.) Mr. Anderson cited to the Securities and Exchange Act and asked Mr. Halls, "Are you aware of Dave Briskie's communications of a material, as you've defined it, material nonpublic information to you constitutes insider trading? And, again, you can assert your Fifth Amendment right if you prefer to." (*Id*. at 292-93.) After an objection from Youngevity's counsel, Mr. Anderson again reminded Mr. Halls of his right to invoke the Fifth Amendment and Mr. Halls again invoked his Fifth Amendment right. (*Id*. at 293-94.) Youngevity then instructed Mr. Halls not to answer any further questions relating to insider trading as Youngevity intended to seek a protective order. (*Id*. at 294-95.)

On September 8, 2017, Youngevity filed the instant Motion for Protective Order and Sanctions. (ECF No. 179.) While this motion was pending, Wakaya asked questions relating to allegations of insider trading during the depositions of Dave Briskie,[4] Tom Chenault,[5] and Youngevity's Rule 30(b)(6) representative.[6] (*See* ECF No. 216-1.)

---

[4] Mr. Briskie's deposition occurred on September 13, 2017. (ECF No. 216-1 at 10.)
[5] Mr. Chenault's deposition occurred on September 14, 2017. (*Id*. at 49.)
[6] Youngevity's Rule 30(b)(6) deposition occurred on September 19, 2017. (*Id*. at 38.)

4

Youngevity requests the Court strike this testimony. During Mr. Briskie's deposition, Youngevity objected to the insider trading line of questioning as subject to the pending motion for protective order and instructed Mr. Briskie not to answer the questions. (*Id*. at 18-21, 29-30, 32.) During the depositions of Mr. Chenault and Youngevity's Rule 30(b)(6) representative, Youngevity objected to the line of questioning and allowed the deponents to answer the immediate question posed, but counsel stated that he may instruct the witness not to answer additional questions if the line of questioning continued. (*Id*. at 41-43, 55-56.)

As stated above, at the September 28, 2017 hearing, Youngevity orally moved to strike answers to questions related to insider trading posed at depositions which took place after it filed its motion for protective order, which was September 8, 2017. (ECF No. 210 at 2-3.) When Youngevity filed its supplemental exhibits identifying the testimony it seeks to strike, it recharacterized its motion and the Court's corresponding invitation to supplement the record and submitted "exhibits containing excerpts from the depositions where . . . 'Wakaya' . . . inquired into insider trading after August 18, 2017 . . . ." (ECF No. 216 at 3.) Youngevity included in its excerpts testimony from Raymond Bennett's deposition, which took place on August 23, 2017, before Youngevity filed the instant motion. (*Id*. at 70.) In the excerpts of Mr. Bennett's deposition submitted to the Court, Youngevity did not object to the insider trading line of questioning as irrelevant. (*See id*. at 70-78.)

Wakaya argues that information relating to actual or rumored insider trading by Youngevity officers and distributors is relevant to its defenses and counterclaims as it tends to show that distributors left Youngevity because of misconduct by Youngevity officers, and not because Wakaya impermissibly lured them away. (ECF No. 184 at 7.) Youngevity argues that alleged instances of insider trading are wholly irrelevant to both parties' claims, defenses, and counterclaims. (ECF No. 179 at 11.) Youngevity also requests sanctions against Mr. Anderson for his conduct at Mr. Halls' deposition. (*Id*. at 13.)

The Court must decide (1) whether to issue a protective order limiting discovery of information related to alleged securities violations by Youngevity officers and distributors, and if so, whether to strike any deposition testimony on the subject, and (2) whether the conduct of Wakaya's counsel at Mr. Halls' deposition merits sanctions.

## II. Legal Standards

Federal Rule of Civil Procedure 26, as recently amended, provides that parties

> may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Information within this scope "need not be admissible in evidence to be discoverable." *Id.* However, only evidence that is "relevant to any party's claim or defense" is within the scope of permissible discovery. *Id.*; *Medicinova Inc. v. Genzyme Corp.*, No. 14-cv-2513-L (KSC), 2017 WL 2829691, at *5 (S.D. Cal. June 29, 2017) ("The test going forward is whether evidence is 'relevant to any party's claim or defense,' not whether it is 'reasonably calculated to lead to admissible evidence.' ") (quoting *In re Bard IVC Filters Products Liability Litigation*, 317 F.R.D. 562, 564 (D. Ariz. 2016)).

The December 2015 amendment to Rule 26 reinforced the proportionality factors for defining the scope of discovery and, thus, under the amended Rule 26, relevancy alone is no longer sufficient to obtain discovery. *See* Fed. R. Civ. P. 26(b)(1) Advisory Committee Notes to 2015 Amendment. Discovery must also be proportional to the needs of the case, which necessitates conducting a cost/benefit analysis taking into consideration the importance of the issue to the outcome of the case, the amount at stake in the case, the parties' resources, and their relative access to the information. Fed. R. Civ. P. 26(b)(1). Discovery unlikely to produce information relevant to any parties' claims or defenses is also unlikely to be proportional to the needs of a case. *See IMDb.com, Inc. v. Becerra*, ---

F.Supp.3d ---, 2017 WL 2859063, at *2 (N.D. Cal. June 27, 2017) (discovery requests unlikely to produce information relevant to any parties' claims or defenses also impose a burden not proportional to the needs of the case).

Rule 26 requires that courts "limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii). Because "pretrial discovery by depositions and interrogatories has a significant potential for abuse," *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984), district courts "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Robinson v. Chefs' Warehouse*, 3:15-cv-05421-RS (KAW), 2017 WL 836944, at *1 (N.D. Cal. Mar. 3, 2017) (citing *Seattle Times*, 467 U.S. at 36). For example, district courts may, among other things, forbid discovery, specify the terms for discovery, forbid inquiry into certain matters, or limit the scope of discovery to certain matters. Fed. R. Civ. P. 26(c)(1)(A), (B), and (D).

A party seeking a protective order under Rule 26(c) must show that "specific prejudice or harm will result if no protective order is granted." *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002). "The burden is upon the party seeking the [protective] order to 'show good cause' by demonstrating harm or prejudice that will result from the discovery." *Rivera v. Nibco, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004) (quoting Fed. R. Civ. P. 26(c)). This burden may be met by showing that the discovery requested is irrelevant, overly broad, burdensome, or oppressive. *Del Socorro Quintero Perez v. United States*, 13-cv-1417-WQH-BGS, 2016 WL 705904, at *6 (S.D. Cal. Feb. 23, 2016). If the party makes this showing, the court must then determine if an order is necessary by "balanc[ing] the public and private interests" at stake. *Phillips ex rel. Estates of Byrd*, 307 F.3d at 1211.

//

A party may move to terminate or limit a deposition "on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." Fed. R. Civ. P. 30(d)(3). Under Rule 30(d), a court may issue an order terminating or limiting the scope and manner of a deposition as provided in Rule 26(c). *Id.*

### III. Analysis

#### A. Protective Order

Youngevity requests a protective order "(1) Prohibiting Wakaya from asking Halls and any future witness questions concerning securities laws of the United States or facts germane to whether any federal securities laws have been violated; and (2) Prohibiting the use at trial of any answers given by Halls in response to securities law related questions during his August 2, 2017 deposition." (ECF No. 179 at 12.) Youngevity argues that questions related to alleged violations of securities laws are wholly irrelevant as Wakaya never raised the issue of insider trading in its answer or counterclaims. (*Id.* at 11.) Youngevity counters the argument that the information is material because insider trading motivated the defendants to leave Youngevity for Wakaya by pointing out that, by the time of the February 27, 2016 email exchange between Mr. Halls and Mr. Briskie, named Defendants and Youngevity's former President (William Andreoli) and Vice Presidents (Patti Gardner and Brytt Cloward) had already left Youngevity. (ECF No. 185 at 3.)

Wakaya argues that information regarding insider trading is relevant to its defenses and counterclaims. Wakaya argues that Youngevity's complaint alleges that Wakaya engaged in a "grand conspiracy" to leave en masse and lure distributors away from Youngevity, but distributors and employees actually left "because they had grown tired of the culture of corruption among Youngevity's executives and top distributors." (ECF No. 184 at 7.) Wakaya argues that "[e]vidence bearing on these reasons for leaving Youngevity—including actual and rumored corruption at Youngevity—is directly relevant to this case." (*Id.*) Evidence of rumored or actual misconduct, Wakaya argues, will

"directly rebut Youngevity's allegations that the Wakaya parties' reasons for leaving Youngevity were illegitimate." (*Id.* at 9.)

The Court finds that Youngevity has met its burden to establish that discovery related to insider trading, without evidence that actual or rumored insider trading motivated distributors or employees to leave Youngevity, is irrelevant, overly broad, burdensome, and oppressive. *See Del Socorro Quintero Perez*, 2016 WL 705904 at *6. A protective order is merited because Wakaya has not demonstrated that that actual or rumored insider trading resulted in employees or distributors leaving Youngevity.

Wakaya does not allege or reference insider trading in its answer or counterclaims. (*See generally* ECF No. 83.) Instead, Wakaya alleges general misconduct by Youngevity's leadership and specific instances of misconduct that are wholly unrelated to insider trading. Wakaya's Answer alleges that ". . . any loss of distributors or potential distributors by Youngevity to Wakaya has been the direct result of the actions taken by Youngevity, Wallach, and the other Counterclaim Defendants—as further described in the Counterclaims below." (ECF No. 83, Answer at ¶¶ 44, 63, 71, 89, 112, 143, 149, 163, 164, 199, 213, 223, 260, 311, 322.) Additionally, Wakaya "[a]ffirmatively allege[s] that Youngevity has had financial problems and other issues that could cause Youngevity to go out of business. . . ." (*Id.* at ¶ 65.) In its counterclaims, Wakaya alleges that "[i]n response to several instances of serious misconduct by the individual Counterclaim Defendants, [Counterclaim Plaintiff Todd] Smith left Youngevity . . . ." (ECF No. 83, Counterclaims at ¶ 2.) Additionally, Wakaya alleges that "[t]ogether with Youngevity's founder, Dr. Wallach, the Wallach Group engaged in counterproductive behavior, including undermining promising acquisitions, promoting ill-conceived and unprofitable business decisions, concealing certain acts from management, and engaging in inappropriate and dishonest behavior." (*Id.* at ¶ 46.) Wakaya's counterclaims allege specific instances of misconduct, such as Dr. Wallach's favoritism of his female companions (*Id.* at ¶¶ 47-50), the fabrication of emails accusing Counterclaim Plaintiff Barb Pitcock of cross-recruiting (*Id.* at ¶ 51), the public intimidation and bullying of distributors (*Id.* at ¶¶ 53, 198), a

misleading announcement that Youngevity had completed all of the requirements to operate in Mexico when Youngevity officers knew this to be false (*Id.* at ¶¶ 55-62), and disparaging remarks by Dr. Wallach about Mr. Smith's family, finances, and business (*Id.* at ¶ 91). Wakaya's counterclaims also include general allegations, paralleling those quoted above, about the misconduct and inappropriate behavior of Youngevity officers. (*Id.* at ¶¶ 6, 54, 75.)[7] Nowhere in Wakaya's answer or counterclaims is insider trading mentioned. (*See generally id.*) Nor are rumors of insider trading mentioned. (*See id.*) Wakaya's answer and counterclaims also do not allege that Youngevity officers provided non-public information to distributors. (*See id.*)

In addition to Wakaya's failure to mention insider trading in its pleadings, Wakaya has offered no evidence or examples of Youngevity distributors or employees leaving because of actual or rumored insider trading. Under Wakaya's own theory of relevance, evidence of insider trading would only be relevant to Wakaya's defenses and counterclaims to the extent that distributors and employees left Youngevity *because of* the alleged misconduct. Here, despite being presented with the opportunity to do so in its opposing papers and at oral argument, Wakaya failed to present any such evidence.[8] At oral argument, on September 28, 2017, Wakaya could not identify a single distributor or employee who left Youngevity because of actual or rumored insider trading, much less because of the specific incident of alleged insider trading Wakaya pressed at Mr. Halls' deposition. (ECF No. 210 at 36-38.)

Wakaya argues that discovery of financial improprieties by Youngevity officers and distributors is relevant to its defenses and counterclaims for the same reasons that this Court

---

[7] Wakaya also cites to ¶¶ 170, 192, 193, 223, 260, 280, 311 and 322 in its counterclaims to support its argument that allegations of insider trading are relevant. (ECF No. 184 at 4 n.2.) These paragraphs either do not exist or are wholly unrelated to the reasons Youngevity distributors' and employees' left Youngevity. (*See* ECF No. 83, Counterclaims at ¶¶ 170, 192, 193, 223, 260, 280, 311, 322.)

[8] It should be noted that this case is not in its early stages. On the contrary, Wakaya filed its first answer and counterclaim on January 18, 2017. (ECF No. 70.) Discovery opened on February 2, 2107. (ECF No. 73 at 4.) With a few specific exceptions, discovery closed on September 22, 2017. (ECF No. 132.)

previously found discovery of Dr. Wallach's actual or rumored sexual improprieties relevant. (*Id*. at 9) (citing ECF No. 139 at 11 n.5.) This argument ignores the fact that the Court previously granted in part Youngevity's motion for a protective order for the same reason that the Court finds a protective order appropriate here—Wakaya failed to establish that the alleged instances of misconduct had any bearing on distributors' decisions to leave Youngevity. The Court previously granted in part and denied in part Youngevity's motion for a protective order to preclude Wakaya from seeking discovery on Dr. Wallach's alleged and rumored sexual improprieties. (ECF No. 139.) Youngevity's motion was granted to the extent that Wakaya sought information on Dr. Wallach's conduct that Wakaya had failed to demonstrate actually caused any distributors or employees to leave. (*See id*. at 8-10.) The Court's partial denial of Youngevity's motion for a protective order was conditioned on the requirement that Wakaya have evidence supporting a connection between Dr. Wallach's alleged misconduct and distributors' decisions to leave. (*See id* at 11-12.)[9] As in the Court's prior order, a protective order is merited here because Wakaya has "failed to demonstrate more than the most tenuous connection between these alleged behaviors and Youngevity distributors leaving Youngevity for Wakaya." (*Id*. at 10.)

Wakaya also argues that "Mr. Halls' knowledge about financial improprieties involving Youngevity executives also supports the existence of other rumors, including that Youngevity's President and CFO, Dave Briskie, had served jail time for securities fraud." (ECF No. 184 at 10.) Wakaya argues that "[t]hese rumors regarding Briskie caused

---

[9] The Court allowed Wakaya to make a "limited inquiry" to Dr. Wallach, Steve Wallach, or Michelle Wallach as to whether Dr. Wallach ever used his influence to try to obtain a more favorable distribution-line position for anyone with whom he had, or was trying to have, and intimate physical relationship. (*Id*. at 11.) Additionally, "for any specific distributor that the Wakaya parties: (1) have <u>evidence</u> that the distributor was actually moved into a more favorable distribution-line position relative to the position of one of the distributors who left Youngevity for Wakaya; (2) have <u>evidence</u> that Dr. Wallach used his influence to obtain that more favorable distribution-line position for the distributor; and (3) have an <u>evidence-based</u>, good-faith belief that Dr. Wallach had or was trying to have an intimate physical relationship with that distributor, the Wakaya parties may ask Dr. Wallach, <u>but not</u> Steve Wallach or Michelle Wallach, whether Dr. Wallach had, or was trying to have, an intimate physical relationship with that distributor." (*Id*. at 12.) (emphasis in original)

11

extensive concern among Youngevity distributors and were the subject of several publicly available blog posts dating back to 2011." (*Id*.) As evidence of these rumors, Wakaya attaches a complaint filed by Youngevity and Mr. Briskie alleging that unidentified persons defamed Youngevity and Mr. Briskie in three internet postings falsely stating that Mr. Briskie had been convicted of securities crimes and sentenced to prison. (ECF No. 184-1 at 15-49.) This argument fails for two reasons. First, evidence of alleged financial improprieties by Youngevity officers other than Mr. Briskie does not make rumors about Mr. Briskie's alleged criminal record more valid or more likely to exist. Second, even if rumors about Mr. Briskie's criminal record and alleged securities crimes existed, Wakaya has failed to provide any evidence that a single distributor or employee left Youngevity because of these rumors.

Lastly, Wakaya argues that Mr. Halls was not forthcoming about the report he prepared regarding Youngevity's financial performance, and had Wakaya been able to continue questioning Mr. Halls about the report, "it would have further connected the dots and firmly established the relevance of these financial improprieties by Youngevity executives and distributors." (ECF No. 184 at 11.) The evidence Wakaya needs to connect the dots is evidence that distributors or employees left Youngevity because of actual or rumored insider trading. Evidence that Mr. Halls' report was based on material non-public information, or even that Youngevity officers and distributors engaged in insider trading, is not relevant without this missing link.

Furthermore, the discovery Wakaya seeks is unduly burdensome as it subjects the deponents to questions about conduct that Wakaya characterizes as criminal when it has been unable to substantiate that any criminal conduct occurred. Insider trading requires that a trade occur in connection with the exchange of material, nonpublic information. *See* Securities Exchange Act of 1934, § 10(b), *amended by* 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5. Despite multiple opportunities to provide the Court with evidence or examples of a trade occurring based on material inside information, Wakaya failed to do so. At oral argument, when the Court asked what evidence Wakaya had going into Mr. Halls'

deposition that a trade took place, Wakaya responded only with the fact that Mr. Halls testified during his deposition that he owned Youngevity stock and that he at unknown times traded that stock. (ECF No. 210 at 7-10.) Wakaya's characterization of Mr. Halls' and Mr. Briskie's conduct as criminal, without any evidence of any trades made on insider information, subjected the deponents to the implication that they may face criminal charges without a good faith basis to make such a suggestion.

Wakaya seeks information outside the scope of discovery permitted by Rule 26. Wakaya has not demonstrated that actual or rumored insider trading is relevant to any claim, defense, or counterclaim in this case. *See* Fed. R. Civ. P. 26(b); *Medicinova Inc.*, 2017 WL 2829691, at *5. The requested discovery also is not proportional to the needs of this case as it will not resolve the issues in this case and would be unduly burdensome. *See IMDb.com, Inc.*, --- F.Supp.3d ---, 2017 WL 2859063, at *2. The substantial burden and expense of reopening the depositions of Mr. Halls, Mr. Briskie, Mr. Chenault, and Youngevity's Rule 30(b)(6) representative is not proportional to the needs of this case as Wakaya has not demonstrated that questions regarding allegations of insider trading would lead to relevant information. Accordingly, Youngevity has met its burden to establish that it will suffer harm if a protective order is not granted. *See Rivera*, 364 F.3d at 1063. Balancing the interests at stake, the Court finds that the potential harm to Youngevity by allowing Wakaya to pursue this discovery outweighs any other private or public interests. *See id*. Here, where Wakaya has failed to connect the dots between allegations of insider trading and any claim, defense, or counterclaim in this case, Wakaya's interest in obtaining this information is minimal. Youngevity's interest in avoiding the burden and costs associated with the requested discovery, as well as the witnesses' interests in not being subjected to harassing questions based upon speculation instead of evidence, outweigh Wakaya's interest in obtaining the information.

Accordingly, the Court holds that Wakaya is foreclosed from inquiring into alleged instances of insider trading at any future deposition and may not reopen the depositions of

Mr. Halls, Mr. Briskie, Mr. Chenault, or Youngevity's Rule 30(b)(6) representative for the purpose of pursuing discovery of alleged insider trading.[10]

Youngevity also seeks to strike the portions of testimony during the depositions of Mr. Halls, Mr. Briskie, Mr. Chenault, Mr. Bennett, and Youngevity's Rule 30(b)(6) representative relating to allegations of insider trading. (*See* ECF Nos. 179 at 12, 210 at 39, 216.) Having considered the record and posture of this case, the Court declines to do so. The Court does not strike Mr. Bennett's deposition testimony relating to insider trading because Youngevity failed to address Mr. Bennett's deposition in its motion, even though Mr. Bennett's deposition occurred before this motion was filed. (*See generally* ECF No. 179.) Compounding this failure, although not dispositive of the issue, is the fact that Youngevity failed to object to the insider trading line of questioning in the excerpts of Mr. Bennett's deposition submitted to the Court. (*See* ECF No. 216-1 at 70-78.)

The Court declines to strike the deposition testimony of Mr. Halls, Mr. Briskie, Mr. Chenault, and Youngevity's Rule 30(b)(6) representative because the above protective order sufficiently limits discovery of information related to insider trading. Rule 26(c) is intended to protect a party or deponent from "annoyance, embarrassment, oppression, or undue burden or expense" through the issuance of a protective order. Fed. R. Civ. P. 26(c)(1). Under the authority of Rule 30(d), which allows a party to object during a deposition and seek a protective order to terminate or limit the deposition, Youngevity objected to Wakaya's insider trading line of questioning during Mr. Halls' deposition. (ECF No. 184-1 at 194-95.) Youngevity instructed Mr. Halls not to answer questions regarding insider trading and sought the instant protective order. (*See id*.; ECF No. 179.) In the subsequent deposition of Mr. Briskie, Youngevity again limited the deposition

---

[10] Youngevity requests a protective order barring Wakaya from inquiring into "facts germane to whether any federal securities laws have been violated." (ECF No. 179 at 12.) The Court does not adopt such a broad order. At future depositions, Wakaya may not inquire into alleged instances or rumors of insider trading without leave of court. Wakaya may, however, inquire into facts that may be considered "germane" to insider trading, if they are otherwise directly relevant to a claim, defense, or counterclaim in this case.

14

16-cv-704 BTM (JLB)

pursuant to Rule 30(d) by objecting to this line of questioning as it was the subject of a pending request for protective order, and instructed Mr. Briskie not to answer. (ECF No. 216-1 at 18-21, 29-30, 32.) During the depositions of Mr. Chenault and Youngevity's Rule 30(b)(6) representative, Youngevity again objected and stated that it would instruct the deponent not to answer if the insider trading line of questioning continued. (*Id.* at 41-43, 55-56.) The Court has issued a protective order preventing Wakaya from reopening depositions for the purpose of asking questions related to insider trading or otherwise inquiring into insider trading; this is sufficient to protect Youngevity and the deponents from annoyance, oppression, or undue burden or expense.[11] Youngevity may raise an objection to the admissibility of this evidence, armed with the benefit of this ruling, when and if Wakaya attempts to use this testimony in subsequent motion practice or at trial.[12]

### B. Monetary Sanctions Against Wakaya's Counsel

Youngevity requests financial sanctions against Wakaya's counsel, Mr. Anderson, for his conduct during Mr. Halls' deposition pursuant to Rule 30(d)(2), 28 U.S.C. § 1927, and the Court's inherent power. (ECF No. 179 at 13.)[13] Youngevity argues that Mr. Anderson offered gratuitous legal advice to Mr. Halls by suggesting that Mr. Halls invoke his Fifth Amendment right against self-incrimination in an effort to intimidate and harass the witness. (ECF No. 179 at 13.) Youngevity argues that Mr. Anderson's misstatement of securities law, specifically his failure to inform Mr. Halls that there must be evidence of a trade in reliance on inside information for insider trading to occur, compounds this harassment. (*Id.* at 13.)

---

[11] Youngevity does not argue that the testimony should be struck because it is embarrassing and should be removed from the record. To the contrary, Youngevity publicly filed the portions of the deposition testimony it seeks to strike. (*See* ECF Nos. 179-1; 216-1.)

[12] The Court also notes that Youngevity's request to strike all deposition testimony in its Supplemental Exhibits to this motion (ECF No. 216) is overbroad as it includes testimony that is not directly related to insider trading. (*See id.*)

[13] Youngevity does not request sanctions against Wakaya. (*See* ECF No. 179 at 13-14.) Accordingly, the Court does not address whether Wakaya should be sanctioned for counsel's conduct during the deposition of Mr. Halls.

A district court "has great latitude in imposing sanctions for discovery abuse." *Dahl v. City of Huntington Beach*, 84 F.3d 363, 367 (9th Cir. 1996). A court may, at its discretion, impose sanctions against counsel pursuant to Rule 30(d)(2), 28 U.S.C. § 1927, or the Court's inherent power. Rule 30(d)(2) provides that a "court *may* impose an appropriate sanction—including reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2) (emphasis added). Sanctions under Rule 30(d)(2) are discretionary. *See id.*; *Batts v. Cty. of Santa Clara*, No. C 08-00286 JW, 2010 WL 545847, at *2 (N.D. Cal. Feb. 11, 2010).

28 U.S.C. § 1927 provides that an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct." "The key term in the statute is 'vexatiously'; carelessly, negligently, or unreasonably multiplying the proceedings is not enough." *In re Girardi*, 611 F.3d 1027, 1061 (9th Cir. 2010).

A court may also impose sanctions under its inherent power "for 'willful disobedience of a court order . . . or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012) (quoting *Fink v. Gomez*, 239 F.3d 989, 991-93 (9th Cir. 2001)). These powers, however, "must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). Accordingly, the bad faith requirement sets a "high threshold," *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997), which may be met by willful misconduct, or recklessness that is coupled with an improper purpose. *Fink*, 239 F.3d at 993-94.

Having considered the parties' moving papers and Mr. Anderson's statements at oral argument, the Court declines to impose sanctions against Mr. Anderson. The Court finds the manner in which Wakaya questioned Mr. Halls in this area to be very concerning. Counsel for Wakaya came to the deposition armed with a copy of the statute on insider

training and a Fifth Amendment advisal. (ECF No. 210 at 4-5.) Although the purported reason for advising Mr. Halls of his Fifth Amendment rights was to protect him from incriminating himself, counsel did not advise Mr. Halls of his rights before asking questions calculated to lead to admissions regarding alleged insider trading. Instead, counsel proceeded to ask Mr. Halls about how he obtained what Wakaya characterizes as insider information (ECF No. 184-1 at 279-80, 290), how he disseminated that information (*Id*. at 271-74) and his stock ownership and trades. (*Id*. at 280.) Counsel only advised Mr. Halls of his Fifth Amendment rights as a precursor to the kill shot question: "Are you also aware that insider trading includes communicating material, nonpublic information, to others?" (*Id*. at 291-92.) This question, which includes a grossly misleading – if not wholly inaccurate – statement of the law, as it leaves out any requirement of a stock trade, was followed immediately by a reminder that Mr. Halls could decline to answer so as not to incriminate himself: "And, again, I'll remind you you have a Fifth Amendment right against self incrimination if you prefer not to answer." (*Id*. at 292.) This was followed almost immediately by a similar misstatement of the law: "Are you aware of Dave Briskie's communications of a material, as you've defined it, material nonpublic information to you constitutes insider trading? And, again, you can assert your Fifth Amendment right if you prefer to." (*Id*. at 293.) The Court finds Mr. Anderson's multiple misstatements of the law in conjunction with repeated warnings to Mr. Halls that he may invoke the Fifth Amendment, after Mr. Anderson had already asked questions intended to establish the factual predicate for insider trading, very concerning.

However, at the hearing in this matter, Mr. Anderson asserted unequivocally and, in the Court's opinion, genuinely, that he did not ask these questions in bad faith and he was not motivated by the intent to harass Mr. Halls. (S*ee, e.g.*, ECF No. 210 at 19-29) Although the Court's concerns about the propriety of the questioning have not been allayed, the Court finds that Mr. Anderson did not act in bad faith or with the intent to harass Mr. Halls. Accordingly, the Court declines to impose sanctions against Mr. Anderson.

///

### C. Reasonable Costs and Expenses

Youngevity requests an award of reasonable expenses incurred in the making of the this motion pursuant to Rules 26(c)(3) and 37(a)(5). (ECF No. 179 at 12.)[14] Rule 26(c)(3) provides that Rule 37(a)(5) applies to the award of expenses when a protective order is issued. Rule 37(a)(5) provides that when a motion for a protective order is granted, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). The court must not award expenses, however, if the movant failed to attempt in good faith to obtain the discovery before filing the motion, the opposing party's nondisclosure, response, or objection was substantially justified, or other circumstances make an award of expenses unjust. *Id*.

Youngevity's request for attorneys' fees and costs incurred in connection with this motion (ECF No. 179) is **GRANTED**. No later than **January 22, 2018**, Wakaya shall reimburse Youngevity for its reasonable fees and costs incurred in researching, drafting, and finalizing Youngevity's motion to compel, as well as those incurred in preparing for and attending the September 28, 2017 hearing. Accordingly, no later than **November 10, 2017**, Youngevity shall provide Wakaya a detailed fee and cost invoice(s) supporting the amount of reasonable attorneys' fees and costs incurred by Youngevity in connection with this motion. The parties shall promptly and thoroughly, and by no later than **November 24, 2017**, meet and confer over any disputed fees and costs incurred by Youngevity in connection with this motion. If the parties are unable to resolve their dispute(s) through the meet and confer process, then Defendant is granted leave to file, on or before **December 1, 2017**, an ex parte motion supported by sufficient evidence in support of the amount of

---

[14] Wakaya also requests an award of reasonable expenses. (ECF No. 184 at 18-20.) The Court does not address this request because Wakaya is not the prevailing party.

reasonable fees and costs owed by Wakaya to Youngevity in connection with this motion.[15] The deadline for Wakaya to file an opposition to Youngevity's motion for fees and costs, if any, shall be **December 15, 2017**.

### IV. Conclusion

For the reasons set forth above, Youngevity's Motion for Protective Order and Sanctions (ECF No. 179) is hereby **GRANTED in part and DENIED in part**. Wakaya may not inquire into actual or rumored insider trading in future depositions and is foreclosed from reopening the depositions of Mr. Halls, Mr. Briskie, Mr. Chenault, or Youngevity's Rule 30(b)(6) representative for the purpose of pursuing questions regarding insider trading. The Court declines to issue sanctions against Mr. Anderson, but finds that Youngevity is entitled to reasonable expenses and attorneys' fees incurred by the making of this motion.

**IT IS SO ORDERED.**

Dated: October 23, 2017

_____
Hon. Jill L. Burkhardt
United States Magistrate Judge

---

[15] Youngevity has not yet presented the Court with sufficient evidence to enable the Court to consider all the factors necessary in setting reasonable fees under both Fed. R. Civ. P. 37 and pertinent case law. *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008).