UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOUNGEVITY INTERNATIONAL, INC. AND JOEL D. WALLACH,<br><br>　　　　　　　　Plaintiffs,<br><br>v.<br><br>TODD SMITH et al.,<br><br>　　　　　　　　Defendants.<br><br>_____<br><br>AND RELATED COUNTER ACTION. | Case No.: 16-cv-704 BTM (JLB)<br><br>**ORDER OVERRULING OBJECTION TO RULING OF MAGISTRATE JUDGE**<br><br>**ECF NO. 218** |

　　　　On September 22, 2017, Magistrate Judge Jill L. Burkhardt issued an order denying Defendants and Counterclaim Plaintiffs' Motion to Compel Production of Unredacted Communications. (ECF No. 198 ("Order")). On October 6, 2017, Defendants and Counterclaim Plaintiffs, pursuant to Rule 72 of the Federal Rules of Civil Procedure, filed an objection to Judge Burkhardt's order. (ECF No. 218 ("Objection")). For the reasons below, the Court overrules the objection.

//
//

1

## I. BACKGROUND

At issue were two email chains with communications dated December 14, 2016 and December 15, 2016. Order at 3. The relevant parties involved in the communications were: **(a)** Peter Arhangelsky and Eric Awerbuch, counsel for Youngevity International Corp ("Youngevity"); **(b)** Rick Anson, owner of Livewell L.L.C. ("Livewell") and Vice President of Product Development for Wakaya Perfection ("Wakaya"); **(c)** George Rondeau, attorney for both Anson and Livewell; **(d)** Clay Carley, an officer for, and investor in, Livewell **(e)** and Steve Wallach, Chief Executive Officer of Youngevity. *Id.* at 2.

At the time of the emails, Youngevity was engaged in the instant litigation with Wakaya, Livewell was a vendor of Wakaya and had a licensing agreement with them, and Anson was employed as Wakaya's Vice President of Product Development and had a royalty agreement with them for the Livewell products he developed. *Id.* at 3. On December 16, 2016, Anson and Livewell initiated the severance process with Wakaya when they sent Notices of Default to Wakaya for both the licensing and royalty agreements. *Id.*

On December 14, 2016, Youngevity's counsel sent an email to Rondeau, the counsel of both Anson and Livewell, on the subject of the Notices of Default. *Id.* Rondeau forwarded the email to Anson, and then they, along with Livewell officer Carley, proceeded to exchange communications about the Notices and the severance with Wakaya. *Id.* On December 15, 2016, Anson forwarded these communications to Wallach, Youngevity's CEO. *Id.*

First, Judge Burkhardt found that the December 14, 2016 email sent from Youngevity's counsel to the counsel of Anson and Livewell was protected by the work product privilege because it "contain[ed] the mental impressions, opinions and legal theories of counsel regarding the Notices and Youngevity's claims against Wakaya." *Id.* at 8. As third parties, Anson and Livewell did not break the privilege because of the common interest exception. *Id.* at 9. Second, Judge

Burkhardt determined that the December 14, 2016 communications between Rondeau, Anson, and Carley fell under the attorney-client privilege because "they sought legal advice, in confidence, regarding the claims asserted in the Notices of Default and Anson's separation from Wakaya." *Id.* at 12. Forwarding these discussions to Youngevity's Wallach on December 15, 2016 did not waive the privilege because, again, the common interest exception applied. *Id.*

Defendants and Counterclaim Plaintiffs now argue that Judge Burkhardt's application of the common interest exception was contrary to law. Objection at 1.

## II. **STANDARD**

Upon an objection to a magistrate judge's ruling on a nondispositive pretrial matter, a district judge must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). The "contrary to law" standard applies to a magistrate judge's purely legal determinations. *Computer Economics, Inc. v. Gartner Group, Inc.*, 50 F. Supp. 2d 980, 983 (S.D. Cal.1999). The "clearly erroneous" standard applies to factual determinations and discretionary decisions. *Id.* S*ee also Concrete Pipe & Prods. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 623 (1993) (the review is "significantly deferential, requiring a definite and firm conviction that a mistake has been committed").

## III. **DISCUSSION**

Defendants and Counterclaim Plaintiffs do not dispute Judge Burkhardt's determination that the emails were protected by the work product and attorney-client privileges. They only object to the application of the common interest exception. The exception "applies where (1) the communication is made by separate parties in the course of a matter of common interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived." *United States v. Bergonzi*, 216 F.R.D. 487, 495 (N.D. Cal. 2003).

Defendants and Counterclaim Plaintiffs argue that, as a matter of law, Youngevity, Anson, and Livewell could not have had a common interest at the time

of the emails because Youngevity and Wakaya were litigation opponents, Anson was Wakaya's Vice President of Product Development, and Wakaya and Livewell were in a licensing agreement. Objection at 12. Defendants and Counterclaim Plaintiffs therefore characterize Youngevity as an "adverse party" to Anson and Livewell.[1] Objection at 11. Judge Burkhardt, however, found that the interests of Anson and Livewell were not "adverse to Youngevity in all respects." Order at 10. Judge Burkhardt pointed out that "the record shows that at the time of the email correspondence at issue, Anson was actively working to sever all ties with Wakaya by drafting the Notices and seeking legal advice on separation as an employee of Wakaya." *Id.*

Relying on *United States v. Gonzalez*, 669 F.3d 974 (9th Cir. 2012), Judge Burkhardt concluded that the common interest exception could apply to the communications between Youngevity, Anson, and Livewell, even if Anson and Livewell had some interests adverse to Youngevity. *Id.* In *Gonzalez*, a husband and wife were initially codefendants in an insurance fraud trial where they were accused of burning their own car after taking out an insurance policy on it. *Gonzales*, 669 F.3d at 976. The trial was severed when the husband declared he intended to testify against his wife at her trial about whether she knew that fire would be used to destroy the car. *Id.* The government argued that even if the husband and wife started with a common interest, these "legal interests . . . lacked sufficient commonality . . . when [the husband] announced a defense that was demonstrably adverse to the interests of [the wife] by blaming her for the crime." *Id.* at 980. The Ninth Circuit rejected this proposition, explaining that "parties to an asserted [common interest privilege] need not have identical interests and may even have some adverse motives," although "communications are privileged to the extent that they concern common issues and are intended to facilitate

---

[1] Neither Anson nor Livewell are named defendants in the instant litigation.

representation." *Id.* (internal citations omitted). The Ninth Circuit further explained that the husband "remained consistently committed to [the wife's] defense on the use-of-fire count—that she was guilty of fraud but had no knowledge that the car would be burned. If their mutual interest [was] defined more narrowly in this way, then it [was] possible that their other adverse positions did not undermine their [common interest] privilege on this specific issue." *Id.* at 980-81.

Defendants and Counterclaim Plaintiffs take issue with Judge Burkhardt's analogy of the *Gonzalez* parties to Youngevity and Anson.[2] Objection at 15. Judge Burkhardt acknowledged that *Gonzalez* was not a precise factual analogy[3] and instead used it as authority for the general proposition that parties could have adverse interests in some respects while still maintaining a common interest in other respects. This was not contrary to law. *See United States v. Bergonzi*, 216 F.R.D. 487, 495 (N.D. Cal. 2003) ("The [common interest] privilege does not require a complete unity of interests among the participants, and it may apply where the parties' interests are adverse in substantial respects").

Further, Judge Burkhardt properly articulated what the common interest was between Youngevity, Anson, and Livewell and how the email communications furthered that common interest. After reviewing the emails *in camera*, the Notices of Default, and the Third Amended Complaint, Judge Burkhardt found that:

> [a]t the time of the email communications, [Youngevity, Anson, and Livewell] had or were preparing to assert legal claims against Wakaya. Youngevity and Wakaya were already engaged in litigation. Livewell and Anson were preparing to assert their claims against Wakaya in the [Notices of Default] that were sent two days later, on December 16, 2016. Accordingly, counsel for Youngevity, Livewell, and Anson shared legal advice related to their common legal claims against Wakaya. The parallels between the Notices and Youngevity's allegations in the

---

[2] They contend that Judge Burkhardt compared Youngevity and Anson to the husband and wife in *Gonzalez* when Youngevity should have been compared to the government in *Gonzalez*. Objection at 15.

[3] Judge Burkhardt described *Gonzalez* as "somewhat instructive." Order at 10.

> instant litigation evidence this common legal strategy. Specifically, both the Notices and Youngevity's Third Amended Complaint, filed on December 21, 2016, allege that Wakaya: (1) made misrepresentations about David Gilmour's status at Wakaya, (2) falsely claimed that the ingredients of all Wakaya products were sourced from Wakaya island, (3) marketed ginger products with excessive bacteria, and (4) distributed clay products with high levels of lead and arsenic. Although there was no written agreement, the Court concludes that the parties' exchange of confidential communications regarding Youngevity, Livewell and Anson's legal claims against Wakaya evidences an implied agreement to pursue a common legal strategy.

Order at 9. This analysis was not contrary to law. *See Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007) ("the [common interest privilege] can extend to interested third parties who have a community of interests with respect to the subject matter of the communications"); *Morvil Tech., LLC v. Ablation Frontiers, Inc.*, 2012 WL 760603, at *2 (S.D. Cal. Mar. 8, 2012) ("The protection of the privilege under the community of interest rationale, however, is not limited to joint litigation preparation efforts. It is applicable whenever parties with common interests join forces for the purpose of obtaining more effective legal assistance.") (quoting *Nidec*, 249 F.R.D. at 578).

Defendants and Counterclaim Plaintiffs also argue that it was contrary to law for Judge Burkhardt to apply the common interest privilege because the crime-fraud exception applied. Objection at 22. Defendants and Counterclaim Plaintiffs allege violations of Rule 2-100 of the California Rules of Professional Conduct[4] and "intentional interference with contractual relations and prospective economic advantage, among other possible torts." Objection at 17, 22; ECF No. 155 ("Motion to Compel"). Judge Burkhardt found that these allegations of "unethical and tortious" conduct did not equate to "an argument that [Anson and Youngevity were]

---

[4] "While representing a client, a member shall not communicate directly or indirectly about the subject of the representation with a party the member knows to be represented by another lawyer in the matter, unless the member has the consent of the other lawyer." CA ST RPC Rule 2-100.

'engaged in or planning a criminal or fraudulent scheme,' the first requirement for showing the application of the crime-fraud exception to privilege protection." Order at 11. Judge Burkhardt explained that "[t]o the extent that Wakaya endeavors to rely on the crime-fraud exception to privilege protection, it has failed to persuade the Court of its applicability to the current situation." *Id.* This conclusion was not contrary to law. *See In re Grand Jury Proceedings*, 87 F.3d 377, 381 (9th Cir. 1996) ("To trigger the crime-fraud exception, the [party asserting the exception] must establish that the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme.").

## IV. **CONCLUSION**

For the foregoing reasons, the Court OVERRULES Defendants and Counterclaim Plaintiffs' objection to Magistrate Judge Burkhardt's order denying Defendants and Counterclaim Plaintiffs' Motion to Compel Production of Unredacted Communications.

IT IS SO ORDERED.

Dated: December 5, 2017

_____
Barry Ted Moskowitz, Chief Judge
United States District Court