UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOUNGEVITY INTERNATIONAL CORP., et al.,<br><br>               Plaintiffs,<br><br>v.<br><br>TODD SMITH, et al.,<br><br>               Defendants. | Case No.:  16-cv-00704-BTM (JLB)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL PROPER PRODUCTIONS**<br><br>**[ECF No. 232]** |

Before the Court is Defendants and Counterclaim Plaintiffs' Motion to Compel Proper Productions.  (ECF No. 232.)  Defendants and Counterclaim Plaintiffs Wakaya, et al. (Wakaya) argue that Plaintiffs and Counterclaim Defendants Youngevity International Corp., et al. (Youngevity) failed to comply with their discovery obligations when they produced documents without any review and designated the entirety of two productions, amounting to approximately 4.2 million pages, as attorney's eyes only, and entirely failed to produce an additional 700,000 responsive documents.  (*Id*. at 3.)[1]  Wakaya requests an order requiring Youngevity to: (1) make a proper production and bear the costs of the reproduction; (2) produce their "hit list" of documents responsive to the parties' proposed search terms run across Youngevity's data; and (3) pay the costs incurred by Wakaya as a

---

[1] All page numbers in citations to the docket refer to those generated by the CM/ECF system.

result of this motion and the costs associated with reviewing Youngevity's prior productions. (*Id*. at 7-8.) Youngevity argues that Wakaya seeks to improperly shift the costs of review to a party-opponent and that Youngevity produced the documents in the manner that Wakaya demanded. (ECF No. 240 at 3.)

## I. FACTUAL BACKGROUND

Youngevity develops and distributes products relating to nutrition, health and wellness, weight loss, cosmetics, and gourmet coffee, among other products, through independent direct-sellers known as "distributors." (ECF No. 269 at 3-4.) Defendant Wakaya is a multi-level marketing company that also sells its products through independent distributors. (ECF No. 83 at 43.) Youngevity filed this lawsuit on March 23, 2016. (ECF No. 1.) The operative complaint, Youngevity's Fourth Amended Complaint, was filed on November 6, 2017. (ECF No. 269.) Youngevity alleges both federal and state law claims against Wakaya, arguing that Wakaya was formed by former Youngevity distributors for the purpose of competing against Youngevity and has done so unlawfully. (*Id*. at 5.) Wakaya's First Amended Answer and Counterclaim to Youngevity's Second Amended Complaint, seeking declaratory relief and alleging state law counterclaims against Youngevity, was filed on February 23, 2017. (ECF No. 83.)[2]

The parties' current dispute involves Youngevity's voluminous document productions. Wakaya argues that Youngevity failed to comply with its discovery obligations by: (1) refusing to provide the "hit list" of search terms run across its data; (2) failing to review any documents prior to production, and thus producing a substantial amount of non-responsive and irrelevant documents; (3) warning that the production may contain privileged information and putting the onus on Wakaya to identify and return them;

---

[2] Wakaya has not filed a responsive pleading to Youngevity's Fourth Amended Complaint. Youngevity's motion to strike and dismiss Wakaya's First Amended Answer and Counterclaim (ECF No. 90) was granted in part and denied in part on December 13, 2107 (ECF No. 330) and Wakaya's motion for leave to file a Second Amended Counterclaim (ECF No. 111) was granted on December 15, 2017 (ECF No. 331). Wakaya has until December 27, 2017 to file its Second Amended Complaint, and Youngevity has 30 days thereafter to respond. (*Id*.)

(4) failing to produce 700,000 responsive documents Youngevity admits are in its possession; and (5) improperly mass designating the entirety of the production as attorney's eyes only (AEO). (ECF No. 252 at 3-6.)

A history of the parties' relevant discovery disputes and meet and confer efforts is set forth below.

### A. Commencement of Discovery

A Stipulated Protective Order governing the disclosure of documents produced in discovery was entered on April 5, 2017. (ECF No. 103.) The Stipulated Protective Order provides that "[a]ny party may designate information as 'CONFIDENTIAL – FOR COUNSEL ONLY' only if, in the good faith belief of such party and its counsel, the information is among that considered to be most sensitive by the party, including but not limited to trade secret or other confidential research, development, financial or other commercial information." (*Id*. at 3.)

Wakaya issued its discovery requests to Youngevity between April 6, 2017 and April 12, 2017. (ECF No. 232 at 3.) The record before the Court on this motion does not indicate when or if Youngevity served its written responses and objections to Wakaya's discovery requests. The parties began meeting and conferring on document review procedures and protocols following service of Wakaya's discovery requests in late April 2017. (*See* ECF No. 252-1 at ¶¶ 5-9.)

### B. Search Terms "Hit List"

On May 9, 2017, Wakaya emailed Youngevity to discuss the use of search terms to identify and collect potentially responsive electronically-stored information (ESI) from the substantial amount of ESI both parties possessed. (*See* ECF No. 252-3 at 233-35.) Wakaya proposed a three-step process by which: "(i) each side proposes a list of search terms for their own documents; (ii) each side offers any supplemental terms to be added to the other side's proposed list; and (iii) each side may review the total number of results generated by each term in the supplemented lists (i.e., a 'hit list' from our third-party vendors) and request that the other side omit any terms appearing to generate a disproportionate number

of results." (*Id.* at 233.) On May 10, 2017, while providing a date to exchange search terms, Youngevity stated that the "use of key words as search aids may not be used to justify non-disclosure of responsive information." (*Id.* at 247.) On May 15, 2017, Youngevity stated that "[w]e are amenable to the three step process described in your May 9 e-mail . . . ." (*Id.* at 254.) Later that day, the parties exchanged lists of proposed search terms to be run across their own ESI. (ECF Nos. 240-3 at 144, 252-3 at 265.) On May 17, 2017, the parties exchanged lists of additional search terms that each side proposed be run across the opposing party's ESI. (ECF No. 252-3 at 268, 271.)

On June 2, 2017, Wakaya provided Youngevity with a hit list of the total number of results generated by running each term in the expanded search term list across Wakaya's ESI. (ECF No. 240-3 at 113.) On June 4, 2017, Youngevity refused to produce its hit list in response, and instead provided Wakaya with a list of search terms it found problematic and suggestions to omit or revise these terms. (*Id.* at 115-18.) Wakaya objected to this approach and requested that Youngevity provide its hit list first, as previously agreed. (*Id.* at 119.) On June 5, 2017, Youngevity responded that if Wakaya provided it with a list of search terms Wakaya found problematic by noon the next day, Youngevity would provide Wakaya with its search terms hit list. (ECF No. 252-3 at 331.) Wakaya responded that it "never agreed to any such modification to our process" and stated that if Youngevity was unwilling to provide Wakaya with its hit list report, it should be prepared to contact the Court the next day with the dispute. (*Id.* at 338.) On June 7, 2017, Youngevity informed Wakaya that its discovery vendor was currently unable to run the proposed search terms across all of its data and that Youngevity would provide the hit list the following week. (*Id.* at 349.) Youngevity agreed to omit several search terms from the list run across Wakaya's ESI, which Wakaya had challenged as generating a disproportionate number of hits, and proposed a modification of one search term instead of omission of the term. (*Id.* at 350-51.) Wakaya responded that in exchange it would agree to omit the search terms Youngevity argued were resulting in a disproportionate number of hits, with the exception

of one search term Wakaya refused to omit, "particularly without reviewing the number of results generated" by the search term. (*Id*. at 349.)

Youngevity never produced its hit list. Wakaya now seeks an order compelling Youngevity to produce the hit list, in addition to other relief. Youngevity opposes this motion to compel generally, but does not specifically address the request that it provide its hit list and does not dispute in its opposition that it had agreed to do so.

### C. Mass Designation of Documents as "For Counsel Only"

On July 21, 2017, Youngevity made its first large document production, consisting of approximately 1.9 million pages. (ECF Nos. 240-3 at 131, 252-2 at 8.) Youngevity stated that "[t]o be able to timely produce all of these documents, Youngevity has marked all documents as 'Confidential—Counsel Eyes Only.' If you wish to de-designate any produced document, please let us know and we will reconsider such designation." (ECF No. 240-3 at 131.) Wakaya states that it immediately objected to the mass designation of documents as AEO and held a meet-and-confer conference regarding the production the same day. (ECF No. 252-2 at 8-9.) Wakaya states that on August 1, 2017, it proposed that the production be treated as if designated only "Confidential," instead of AEO, and Wakaya would give Youngevity three business days' notice of its intent to disclose any document containing agreements with non-parties, detailed product formulations, or detailed genealogical information, and allow Youngevity the opportunity to re-designate those documents as AEO. (*Id*. at 9.) The parties continued to meet and confer but were ultimately unable to resolve the issue and contacted the Court on August 15, 2017. (ECF Nos. 157, 252-2 at 10.)

On August 18, 2017, the parties participated in an informal discovery conference with the Court, wherein the parties discussed re-designation of Youngevity's production as "Confidential" with the understanding that certain categories of documents would be maintained as AEO. (*See* ECF Nos. 159, 252-2 at 10.) The parties agreed to meet and confer on which categories of documents would remain designated as AEO. (ECF No. 252-2 at 10.)

Wakaya states that on August 22, 2017, Youngevity produced an additional 2.3 million pages of documents that were also mass designated AEO. (*Id*. at 11.) On August 24, 2017, Youngevity proposed 24 categories of documents to be maintained as AEO, apparently including "financial information," "product information," "shareholder information," "compliance information," and "anything not relevant to this case," among other categories. (*See* ECF Nos. 240-3 at 135, 252-2 at 11.)[3] Wakaya states that it objected to these categories as vague and ambiguous on August 28, 2017. (ECF No. 252-2 at 11.) On September 5, 2017, Wakaya again objected to these categories as "vague and amorphous," and stated that if Youngevity did not identify "a workable set of categories (narrow and well-defined) and agree to re-designate its production as CONFIDENTIAL by 5 PM Mountain tomorrow, Wakaya will move to compel and for sanctions." (ECF No. 240-3 at 135.) On September 12, 2017, the parties placed a joint call to the Court regarding their inability to come to an agreement on the categories of documents that would remain designated as AEO. (ECF No. 252-2 at 12.) On September 27, 2017, the parties again discussed the mass designation of documents as AEO in an informal discovery conference with the Court. (*See id*. at 13.) The Court suggested that a technology-assisted review (TAR) may be the most efficient way to resolve the myriad disputes surrounding Youngevity's productions. (*Id*.) As discussed below, the parties continued to meet and confer on the designation of documents as AEO and raised the issue with the Court after failing to come to a resolution.

Youngevity does not dispute that its productions, totaling approximately 4.2 million pages, remain designated as AEO. Youngevity does not claim that the documents are all properly designated AEO, but asserts that this mass designation was the only way to timely meet its production obligations when it produced documents on July 21, 2017 and August 22, 2017. (ECF No. 240 at 6.) It offers no explanation as to why it has not used the

---

[3] Neither party provided a copy of Mr. Awerbuch's August 24, 2017 email. This email is referenced, however, in an email attached to Youngevity's opposition brief. (ECF No. 240-3 at 135.)

intervening five months to conduct a review and properly designate the documents, except to say, "Youngevity believes that the parties reached an agreement on de-designation of Youngevity's production which will occur upon the resolution of the matters underlying this briefing." (*Id.* at 11.) Why that de-designation is being held up while this motion is pending is not evident.

### D. Documents Produced Without Document-by-Document Review

Wakaya argues that Youngevity failed to review any documents prior to production and instead provided Wakaya with a "document dump" containing masses of irrelevant documents, including privileged information, and missing "critical" documents. (ECF No. 232 at 3, 8.) Youngevity's productions contain documents such as Business Wire news emails, emails reminding employees to clean out the office refrigerator, EBay transaction emails, UPS tracking emails, emails from StubHub, and employee file and benefits information. (ECF No. 252-3 at 359-442.) Youngevity argues that it simply provided the documents Wakaya requested in the manner that Wakaya instructed. (ECF No. 260 at 3.)

While providing its July 21, 2017 document production, Youngevity communicated to Wakaya that "given the size of this production and the limited discovery timetable, we may have accidentally produced material protected by a privilege such as the attorney client and/or attorney work product privileges, but note that such inadvertent production does not waive any privilege." (ECF No. 240-3 at 131.) Wakaya states that on August 22, 2017, Youngevity provided its second large document production consisting of 2.3 million pages. (ECF No. 252-2 at 11.) On September 5, 2017, Wakaya informed Youngevity that "[i]t has become clear that Youngevity engaged in no pre-production review of its documents and has instead engaged in a 'document dump.'" (ECF No. 240-3 at 135.) Wakaya demanded that Youngevity review its production and remove irrelevant and non-responsive documents. (*Id.*)

As mentioned above, on September 12, 2017, the parties placed a joint call to the Court requesting an informal discovery conference regarding the number of non-responsive and irrelevant documents in Youngevity's production. (*See* ECF Nos. 205, 252-

2 at 4.)  Wakaya states that on September 20, 2017, Youngevity communicated for the first time that it did not engage in a pre-production review of documents.  (ECF No. 252-2 at 13.)

As discussed above, on September 27, 2017, the parties participated in an informal discovery conference with the Court regarding Youngevity's document productions in which the Court suggested that conducting a TAR of Youngevity's productions might be an efficient way to resolve the issues.  (*Id*.)  On October 5, 2017, the parties participated in another informal discovery conference with the Court because they were unable to resolve their disputes relating to the TAR process and the payment of costs associated with TAR.  (*See* ECF No. 215.)  The Court suggested that counsel meet and confer again with both parties' discovery vendors participating.  Wakaya states that on October 6, 2017, the parties participated in a joint call with their discovery vendors to discuss the TAR process.  (ECF No. 252-2 at 14.)  The parties could not agree on who would bear the costs of the TAR process.  Youngevity states that it offered to pay half the costs associated with the TAR process, but Wakaya would not agree that TAR alone would result in a document production that satisfied Youngevity's discovery obligations.  (ECF No. 240-1 at 4.)  Wakaya argued that it should not have bear the costs of fixing Youngevity's improper productions.  (ECF No. 252-3 at 14.)  On October 9, 2017, the parties left a joint voicemail with the Court stating that they had reached a partial agreement to conduct a TAR of Youngevity's production, but could not resolve the issue of which party would bear the TAR costs.  (*Id*.; ECF No. 222.)  In response to the parties' joint voicemail, the Court issued a briefing schedule for the instant motion.  (ECF No. 222.)

///
///
///
///
///
///

### E. 700,000 Documents Not Yet Produced

The discovery period closed on September 22, 2017. (ECF No. 193.)[4] Sometime between September 25, 2017 and October 2, 2017,[5] Youngevity informed Wakaya that it had inadvertently failed to produce an additional 700,000 documents due to a technical error by its discovery vendor. (ECF Nos. 260-1 at 4, 252-3 at 13.) Youngevity states that it offered to produce these documents "as previously produced documents," presumably without review and designated *in toto* as AEO, but Wakaya declined the offer. (ECF No. 260 at 7.) Youngevity has not produced these documents and states that they will be produced "after the issues in this Motion are resolved." (*Id.*) Again, why the production of these concededly belated and responsive documents is being held in abeyance while this motion is pending is not evident to the Court.

## II. LEGAL STANDARDS

Wakaya seeks an order under Federal Rule of Civil Procedure 26(g) or Rule 37 requiring Youngevity to remedy what it asserts is an improper production and pay the costs incurred by Wakaya as a result of this motion and the costs associated with reviewing Youngevity's prior productions. (ECF No. 232 at 7-8.)

### A. Rule 26(g)

Federal Rule of Civil Procedure 26(g) requires an attorney or party to sign and certify "that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry" every discovery response is—

**(i)** consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;

**(ii)** not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and

---

[4] The parties were granted leave to depose specific witnesses after this date. (ECF Nos. 244, 224, 208.)

[5] Youngevity states that it informed counsel of the missing documents during the week of September 25, 2017. (ECF No. 260-1 at 4.) Wakaya states that Youngevity informed it of the missing documents on or about October 2, 2017. (ECF No. 252-3 at 13.)

**(iii)** neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

Fed. R. Civ. P. 26(g)(1). The Court, "on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both," when a certification violates Rule 26(g)(1) without substantial justification. Fed. R. Civ. P. 26(g)(3).

Rule 26(g) "imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37." *U.S. ex rel. O'Connell v. Chapman Univ.*, 245 F.R.D. 646, 651 (C.D. Cal. 2007) (quoting Fed. R. Civ. P. 26(g) advisory committee's note to 1983 amendment). Fulfilling the spirit and purposes of the discovery rules "requires cooperation rather than contrariety, communication rather than confrontation." *Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 357 (D. Md. 2008). The advisory committee's note to the 1983 amendment states that Rule 26(g) "provides a deterrent to both excessive discovery and evasion by imposing a certification requirement that obliges each attorney to stop and think about the legitimacy of a discovery request, a response thereto, or an objection." Fed. R. Civ. P. 26(g) advisory committee's note to 1983 amendment. The duty to make a "reasonable inquiry" is "a matter for the court to decide on the totality of the circumstances" using an objective standard. *Id.*

## B. Rule 37(a)

Federal Rule of Civil Procedure 37(a) provides for motions to compel when a party fails to appropriately produce requested discovery. Specifically, under Rule 37, "on a motion to other parties . . ., a party may move for an order compelling disclosure or discovery."

The Federal Rules of Civil Procedure generally allow for broad discovery, authorizing the parties to obtain discovery regarding "any nonprivileged matter that is

relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The party seeking to compel discovery has the burden of showing that the discovery sought is relevant. *Aros v. Fansler*, 548 Fed. App'x. 500, 501 (9th Cir. 2013) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)); *La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, No. 09cv03529, 2012 WL 5519199, at *3 (N.D. Cal. Nov. 14, 2012). The opposing party is "required to carry a heavy burden of showing why discovery was denied." *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975); *McEwan v. OSP Grp., L.P.*, No. 14cv2823-BEN (WVG), 2016 WL 1241530, at *4 (S.D. Cal. Mar. 30, 2016) (same).

If a motion to compel is granted, a court "must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees" unless, *inter alia*, the nondisclosure "was substantially justified" or "other circumstances make an award of expenses unjust." (Fed. R. Civ. P. 37(a)(5)(A)).

### C. Rule 37(b)(2)(A)

Rule 37(b)(2)(A) provides that if a party "fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A). "The definition of 'order' in Rule 37(b) has been read broadly. But Rule 37(b)(2)'s requirement that there be some form of court order that has been disobeyed has not been read out of existence; Rule 37(b)(2) has never been read to authorize sanctions for more general discovery abuse." *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992) (internal citations omitted). *See also Bair v. California State Dep't of Transp.*, 867 F. Supp. 2d 1058, 1068 (N.D. Cal. 2012). The rule "grants courts the authority to impose sanctions

where a party has violated a protective order issued pursuant to Rule 26(f)." [6]  *O'Connor v. Uber Techs., Inc.*, No. 13-CV-03826-EMC, 2017 WL 3782101, at *4 (N.D. Cal. Aug. 31, 2017) (quoting *Life Tech. Corp. v. Biosearch Tech., Inc.*, No. C-12-00852 WHA (JCS), 2012 WL 1600393, at *8 (N.D. Cal. May 7, 2012)); *Avago Techs., Inc. v. IPtronics Inc.*, No. 5:10-CV-02863-EJD, 2015 WL 3640626, at *3 (N.D. Cal. June 11, 2015).  *See also Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 784 (9th Cir. 1983) (affirming assessment of attorney's fees as sanction for violation of stipulated protective order).

Rule 37(b)(2)(C) provides that "[i]nstead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C).

### D. Inherent Power

District courts may impose sanctions as part of their inherent power "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991).  Indeed, district courts can impose sanctions for a "full range of litigation abuses."  *Id.* at 55.  A finding of bad faith is usually required before a court can enter sanctions pursuant to its inherent authority.  *Lahiri v. Universal Music and Video Distribution Corp.*, 606 F.3d 1216, 1219 (9th Cir. 2010) (citing *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107-08 (9th Cir. 2002); *Fink v. Gomez*, 239 F.3d 989, 993-94 (9th Cir. 2001)).  However, "a 'willful' violation of a court order does not require proof of mental intent such as bad faith or an improper motive, but rather, it is enough that a party acted deliberately."  *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir.

---

[6] "Rule 26(f) addresses the development of a discovery plan and references 'any other orders that should be entered by the court under Rule 26(c),' the rule addressing protective orders." *Harmston v. City & Cty. of San Francisco*, No. C 07-01186SI, 2007 WL 3306526, at *9 (N.D. Cal. Nov. 6, 2007) (quoting Fed. R. Civ. P. 26(f)(3)).

16-cv-00704-BTM (JLB)

2012) (holding that counsel acted willfully when he knowingly filed class certification motion without redacting confidential information in violation of protective order).

## III.   ANALYSIS

As noted above, Wakaya requests an order requiring Youngevity to: (1) make a proper production and bear the costs of the reproduction, (2) produce their "hit list" of documents responsive to the parties' agreed upon list of search terms run across Youngevity's data, and (3) pay the costs incurred by Wakaya as a result of this motion and the costs associated with reviewing Youngevity's prior productions pursuant to Rules 26(g) and 37.  (ECF No. 232 at 7-8.)

### A. Timeliness of Wakaya's Motion to Compel

As an initial matter, Youngevity challenges Wakaya's motion to compel as untimely under Judge Burkhardt's Civil Chamber Rules (Civil Chambers Rules).  Youngevity argues that the parties did not begin the meet and confer process over the alleged "document dump" until over six weeks after Youngevity's initial document production.  (ECF No. 240 at 8.)  Youngevity also argues that Wakaya failed to bring the dispute to the attention of the Court until over seven weeks after Youngevity's initial production.  (*Id.*)

The Civil Chambers Rules provide that absent leave of court, counsel shall comply with their meet and confer requirements under the Local Rules "within 14 days of the event giving rise to the dispute." [7]  Civil Chambers Rules, Section IV.A.  If the parties are unable to conclude the meet and confer process in a timely manner they may file a joint motion requesting an extension of the meet and confer deadline.  *Id.*  The Civil Chambers Rules also provide that any discovery disputes must be brought to the attention of the court "no later than 30 calendar days after the date upon which the event giving rise to the dispute occurred."  *Id.* at Section IV.B.  For written discovery, the "event giving rise to the dispute" is defined as "the date of the service of the response, or in the absence of a response, the

---

[7] The Local Rules provide that "[t]he court will entertain no motion pursuant to Rules 26 through 37, Fed. R. Civ. P., unless counsel will have previously met and conferred concerning all disputed issues."  CivLR. 26.1.

date upon which a timely response was due." *Id*. at Section IV.F. The Scheduling Order in this case further provides that "[a]ll discovery motions must be filed within 30 days of the service of an objection, answer, or response which becomes the subject of dispute, or the passage of a discovery due date without response or production, and only after counsel have met and conferred to resolve the dispute **and** requested an informal teleconference with the Court." (ECF No. 132) (emphasis in original.)

Youngevity argues that Wakaya should have been aware that Youngevity did not perform a document-by-document review when it informed Wakaya on July 21, 2017 that its entire production was marked as AEO. (ECF No. 240 at 6.) Youngevity argues that Wakaya nonetheless failed to meet and confer on the issue until September 5, 2017, and did not raise the issue with the Court until seven weeks after Youngevity's initial production. (*Id*. at 8.) Wakaya argues that it "repeatedly urged Plaintiffs to remedy errors, which was met with stonewalling," and that the 30-day deadline should not be strictly enforced as it "would punish Defendants' attempts to work professionally and in good faith to resolve issues without running to the Court at the first pushback." (ECF No. 252 at 6.)

Youngevity's initial production occurred on July 21, 2017. (ECF Nos. 240-3 at 131, 252-2 at 8.) The parties first brought the issue of Youngevity's mass designation of documents as AEO to the Court's attention on August 15, 2017, after meeting and conferring on the issue. (*See* ECF No. 157.) Accordingly, this dispute was brought within the Court's 30-day deadline. Civil Chambers Rules, Section IV.B. However, Wakaya did not bring the issue of Youngevity's failure to review its document production to the Court's attention until September 12, 2017. (*See* ECF Nos. 205, 252-2 at 4.) Wakaya states that it began to "suspect" that Youngevity's productions constituted a "document dump" around August 28, 2017. (ECF No. 252-2 at 11.) But Wakaya was in possession of Youngevity's July 21, 2017 production, which was mass designated as AEO, for over seven weeks before it brought the issue to the Court. Under the Court's Civil Chambers Rules, Wakaya should have brought the dispute regarding Youngevity's failure to conduct a document-by-document review of its production within 30 days of Youngevity's production. Civil

Chambers Rules, Section IV.B.  Alternatively, Wakaya could have requested an extension of the discovery dispute deadlines.  *See id*. at Section IV.A.  Despite this failure, the Court considers the merits of all aspects of this motion, in part because the merits of the untimely discovery issues are closely related to those that are timely.

## B. Rule 26(g)

Wakaya argues that Youngevity's responses to its requests for production violate Rule 26(g) as counsel failed to conduct a reasonable inquiry prior to certifying that Youngevity's responses were not interposed for an improper purpose nor unreasonable or unduly burdensome or expensive.  (ECF No. 232 at 8-9.)  Wakaya argues that Youngevity impermissibly certified its discovery responses because its productions amounted to a "document dump" intended to cause unnecessary delay and needlessly increase the cost of litigation.  (*Id*. at 8.)

Wakaya fails to establish that Youngevity violated Rule 26(g).  Wakaya does not specifically claim that certificates signed by Youngevity or its counsel violate Rule 26(g).  Neither party, despite filing over 1,600 pages of briefing and exhibits for this motion, provided the Court with Youngevity's written discovery responses and certification.  The Court declines to find that Youngevity improperly certified its discovery responses when the record before it does not indicate the content of Youngevity's written responses, its certification, or a declaration stating that Youngevity in fact certified its responses.  *See Cherrington Asia Ltd. v. A & L Underground, Inc.*, 263 F.R.D. 653, 658 (D. Kan. 2010) (declining to impose sanctions under Rule 26(g) when plaintiffs do not specifically claim that certificates signed by defendant's counsel violated the provisions of Rule 26(g)(1)).  Accordingly, Wakaya is not entitled to relief under Rule 26(g).

## C. Rule 37(a)

### 1. Production of 4.2 Million Pages

As noted above, Wakaya argues that production of 4.2 million pages mass designated as AEO without a pre-production review violates Youngevity's discovery obligations and caused, and continues to cause, Wakaya prejudice as it is unable to properly

prepare for depositions, motion practice, and trial.  (ECF No. 232 at 6, 7, 10.)  Youngevity admits that it produced documents without conducting a document-by-document review. (ECF No. 240 at 11.)  Youngevity argues that its production was nonetheless proper because (1) the documents were produced exactly as Wakaya requested (*Id*. at 8), and (2) every document is responsive to Wakaya's requests for production because each document hits on at least one of the agreed-upon search terms.  (ECF No. 260 at 5.)  Youngevity characterizes its massive productions as the result of Wakaya's failure to narrow its search terms or adopt Youngevity's proposed modifications.  (*Id*.)[8]

Youngevity's arguments fail for two reasons.  First, the Court finds that the documents were <u>not</u> produced as Wakaya requested.  Youngevity argues that "the very 'sea' of irrelevant documents Wakaya complains of is entirely of Wakaya's own making" because Wakaya refused to narrow its search terms or requests for production.  (ECF No. 260 at 3.)  Youngevity argues that "nearly all, if not all" of the documents in its production *are* responsive to Wakaya's broad requests for production.  (ECF No. 240 at 7.)[9]  The Court agrees that a number of Wakaya's requests for production appear to be overly broad in subject matter or unbounded by any time period, likely contributing to the massive size of

---

[8] Both parties argue that they have suffered more prejudice than the other side as a result of the opposing party's failure to comply with the discovery rules.  (*See* ECF Nos. 232 at 4-5, 7, 240 at 12.)  The dispute before the Court is whether Youngevity complied with its discovery obligations, not which party has suffered more from their opponent's discovery abuses.  *See Montgomery v. Home Depot U.S.A., Inc.*, No. 3:12-cv-03057-AJB-DHB (S.D. Cal. Dec. 3, 2016) ("[D]iscovery is not conducted on a 'tit-for-tat' basis, and the fact that Plaintiff may have suffered prejudice in connection with [defendant's] alleged untimely document production does not remove the prejudice [defendant] suffered as a result of Plaintiff's improper 'document dump.'  If Plaintiff truly experienced prejudice, as alleged, his proper remedy was to have sought appropriate sanctions.").

[9] Youngevity cites to an email attached to Wakaya's reply brief reminding employees to clean out the office refrigerator (ECF No. 252-3 at 418) as an example of a document Wakaya identifies as non-responsive but which Youngevity maintains is responsive.  Youngevity argues that this email is responsive to Wakaya's requests for production requesting "all Documents, Communications, or ESI from January 1, 2014, to the present related to any Defendant or Counterclaim Plaintiff."  (ECF Nos. 260 at 6, 240-3 at 48, 68, 88, 107.)  This email is not responsive to Wakaya's requests for production.  The email copies Michelle Wallach, a *Plaintiff* and Counterclaim *Defendant*.  If the email had copied a Defendant or Counterclaim Plaintiff, however, the email reminding employees to clean out the refrigerator would have been responsive to Wakaya's requests for production.

Youngevity's document productions. (*See*, *e.g.*, ECF No. 240-3 at 14 ("Please produce all Documents or Communications related to any Defendant or Counterclaim Plaintiff from January 1, 2015, to the present."); *id*. at 16 ("Please produce all Documents or Communications showing the amount of revenue earned by Youngevity from sales to persons or entities that are Youngevity Distributors.").) Wakaya's requests are very broad, and would no doubt result in the production of a huge number of responsive documents in any event, but Wakaya has established that Youngevity's production improperly exceeded Wakaya's requests.

Besides establishing that Youngevity's production exceeded Wakaya's requests, the record indicates that Youngevity did not produce documents following the protocol to which the parties agreed. The parties negotiated an ESI search term protocol wherein the parties would provide search terms for their own ESI to the other side; then the parties would respond to the list they received with any additional proposed search terms for the opposing party's ESI; then each side would provide the other with a hit list of search term results, so the other side could consider narrowing the proposed search terms based upon the hit list numbers. (ECF No. 252-3 at 233.) Youngevity failed to produce its hit list to Wakaya, and instead produced every document that hit upon any proposed search term. (ECF No. 240-3 at 115-18.) Had Youngevity provided its hit list to Wakaya as agreed and repeatedly requested, Wakaya might have proposed a modification to the search terms that generated disproportionate results, thus potentially substantially reducing the number of documents requiring further review and ultimate production. Youngevity argues that Wakaya refused to accept Youngevity's proposed search term modifications, ballooning the size of Youngevity's production. (ECF No. 260 at 6.) The record reflects the opposite. Youngevity requested a limited number of modifications to the search terms, almost all of which Wakaya agreed to, with the exception of one term that Wakaya stated it could not

agree to omit "particularly without reviewing the number of results generated." (ECF No. 252-3 at 349.) [10]

In addition, the parties negotiated a stipulated protective order, which provides that only the "most sensitive" information should be designated as AEO. (ECF No. 103 at 3.) In spite of the parties' negotiations and the Court's subsequent order entering the Stipulated Protective Order, Youngevity designated every document in its July 21, 2017 production as AEO. On August 22, 2017, after participating in a discovery conference with the Court a few days prior regarding re-designation of the July 21, 2017 production from AEO to "Confidential," Youngevity produced an additional approximately 2.3 million pages mass designated as AEO. (ECF No. 252-2 at 11.) Wakaya promptly objected to each of these actions. It is not disputed that Youngevity failed to conduct any review of its documents prior to production and mass designated every document as AEO, even after discussing the impropriety of such a designation with the Court days earlier.

Second, Youngevity conflates a hit on the parties' proposed search terms with responsiveness.[11] The two are not synonymous. Youngevity admits that it has an obligation to produce *responsive* documents. (ECF No. 260 at 3-4.) Youngevity argues that because each document hit on a search term, "the documents Youngevity produced are

---

[10] Youngevity cites to a June 4, 2017 email exchange in which Wakaya provides Youngevity with its hit list and Youngevity then refuses to provide Wakaya with its hit list and instead sends a lengthy list of proposed modifications to narrow Wakaya's search terms. (ECF No. 240-3 at 113-28.) After meeting and conferring, counsel conveyed to Wakaya that it would accept more limited modifications, stating that "Youngevity is amendable to similarly omitting only the following terms [from the proposed search terms to be run across Wakaya's ESI], which based on the data obtained thus far produce disproportionate number of results: Dr*, label*; protect*; #wacky; *phone*." (ECF No. 252-3 at 350-51.) Wakaya agreed to omit label*, protect*, and *phone*, and substitute "Dr." for Dr*, but stated that "particularly without reviewing the number of results generated, we cannot agree to omit #wacky in light of information reported to and observed by us regarding how that hashtag has been and is being used." (*Id*. at 349; ECF No. 252-1 at ¶ 28.) Wakaya then renewed its request for Youngevity's hit list. (*Id*.)

[11] Youngevity also argues that Wakaya conflates "relevance" with "responsiveness," and Youngevity is not required to determine which documents are *relevant* to Wakaya's claims and defenses. (ECF No. 260 at 3-5.) The Court does not address this argument further as the Court does not consider whether Youngevity's production contained "irrelevant" documents, as opposed to non-responsive documents, in coming to its decision.

necessarily responsive to Wakaya's Requests." (ECF No. 240 at 9.) Search terms are an important tool parties may use to identify *potentially* responsive documents in cases involving substantial amounts of ESI. Search terms do not, however, replace a party's requests for production. *See In re Lithium Ion Batteries Antitrust Litig.*, No. 13MD02420 YGR (DMR), 2015 WL 833681, at *3 (N.D. Cal. Feb. 24, 2015) (noting that "a problem with keywords 'is that they often are overinclusive, that is, they find responsive documents but also large numbers of irrelevant documents'") (quoting *Moore v. Publicis Groupe*, 287 F.R.D. 182, 191 (S.D.N.Y. 2012)). UPS tracking emails and notices that employees must clean out the refrigerator are not responsive to Wakaya's requests for production solely because they hit on a search term the parties' agreed upon. (*See* ECF No. 252-3 at 359-442.)

The Court is persuaded that running proposed search terms across Youngevity's ESI, refusing to honor a negotiated agreement to provide a hit list which Wakaya was to use to narrow its requested search terms, and then producing all documents hit upon without reviewing a single document prior to production or engaging in any other quality control measures, does not satisfy Youngevity's discovery obligations. Further, as is discussed below, mass designation of every document in both productions as AEO clearly violates the Stipulated Protective Order in this case. Youngevity may not frustrate the spirit of the discovery rules by producing a flood of documents it never reviewed, designate all the documents as AEO without regard to whether they meet the standard for such a designation, and thus bury responsive documents among millions of produced pages. *See Queensridge Towers, LLC v. Allianz Glob. Risks US Ins. Co.*, No. 2:13-CV-00197-JCM, 2014 WL 496952, at *6-7 (D. Nev. Feb. 4, 2014) (ordering plaintiff to supplement its discovery responses by specifying which documents are responsive to each of defendant's discovery requests when plaintiff responded to requests for production and interrogatories by stating that the answers are somewhere among the millions of pages produced). Youngevity's productions were such a mystery, even to itself, that it not only designated the entirety of both productions as AEO, but notified Wakaya that the productions might

contain privileged documents. Accordingly, Wakaya's request to compel proper productions is granted, as outlined below. *See infra* Section IV.

### 2. Failure to Produce 700,000 Documents

Youngevity failed to produce 700,000 documents prior to the discovery cutoff and, as far as the Court is aware, has not produced the documents to this day. Youngevity states that it offered to produce these documents "as previously produced documents," presumably without review and designated AEO, but Wakaya declined the offer. (ECF No. 260 at 5.) Youngevity identified these documents as responsive but states that it will produce these documents after the issues in the instant motion are resolved. (*Id*.) This position is unsupportable. Wakaya's request to compel these documents pursuant to Rule 37(a) is granted, as outlined below. *See infra* Section IV.

### D. Rule 37(b)(2)(A)

Wakaya argues that the Court should grant Wakaya's requested relief under Rule 37(b)(2)(A) as the Court "may issue further just orders" when "a party . . . fails to obey an order to provide or permit discovery." [12] (ECF No. 232 at 11.) Rule 37(b)(2)(A) does not "authorize sanctions for more general discovery abuse," but instead requires that a party disobey an order to provide or permit discovery. *Bair*, 867 F. Supp. 2d at 1068. Wakaya does not indicate which order was violated by the litany of discovery abuses it alleges against Youngevity. (*See* ECF Nos. 232, 252.)

Youngevity's mass designation of millions of pages of documents as AEO without review violates the Stipulated Protective Order entered by this Court. (ECF No. 103.) The Stipulated Protective Order provides that a "party may designate information as 'CONFIDENTIAL – FOR COUNSEL ONLY' only if, in the good faith belief of such party and its counsel, the information is among that considered to be most sensitive by the party, including but not limited to trade secret or other confidential research, development,

---

[12] Wakaya cites to Rule 37(b)(2)(B) but quotes Rule 37(b)(2)(A) in its motion. (ECF No. 232 at 11.) The Court presumes that Wakaya intended to cite Rule 37(b)(2)(A).

financial or other commercial information." (*Id*. at 3.)  Youngevity admits that it did not conduct a document-by-document review (ECF No. 240 at 11), but instead "[t]o be able to timely produce all of these documents," designated every document in its 4.2 million page productions as AEO.  (ECF No. 240-3 at 131.)  Youngevity cannot have a good faith belief that every document in its 4.2 million page productions should be designated as AEO if it has not reviewed any of the documents.  Furthermore, Youngevity has apparently not used the intervening five months to mitigate this violation by conducting the necessary review and revising its improper designation.  Youngevity's mass designation of 4.2 million pages of documents as AEO without review constitutes a willful violation of a court order.  Accordingly, the Court may issue just orders pursuant to Rule 37(b)(2)(A) and its inherent authority.  *See O'Connor*, No. 13-CV-03826-EMC, 2017 WL 3782101, at *4; *Evon*, 688 F.3d at 1035.  As outlined below, Youngevity is ordered to designate all documents in the July 21, 2017 and August 22, 2017 productions, as well as the 700,000 to-be-produced-documents, with the appropriate designation under the Stipulated Protective Order.  *See infra* Section IV.

### E. Reasonable Costs and Fees Associated with Wakaya's Motion Compel

Wakaya requests reasonable costs and attorney's fees associated with the making of its motion to compel.  (ECF No. 232 at 8.)  Rule 37(a)(5)(A) provides that if a motion to compel is granted, the court "must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  Youngevity shall reimburse Wakaya for the reasonable expenses Wakaya incurred in making this motion, including attorney's fees.

## IV.  Relief

It is hereby ordered that Youngevity satisfy its discovery obligations with respect to the July 21, 2017 and August 22, 2017 productions and the production of the 700,000 yet-to-be-produced documents.  At Youngevity's option, it can either:

1) By **December 26, 2017**, provide its hit list to Wakaya; by **January 5, 2018**, conclude the meet and confer process as to mutually acceptable search terms based upon the hit list results; by **January 12, 2018**, run the agreed upon search terms across Youngevity's data; by **February 15, 2018**, screen the resulting documents for responsiveness and privilege; and by **February 16, 2018**, produce responsive, non-privileged documents with only appropriate designations of "confidential" and "AEO" (said production to include that subset of the not-previously-produced 700,000 documents that are responsive and non-privileged); or

2) By **December 26, 2017**, provide the not-previously-produced 700,000 documents to Wakaya without further review; pay the reasonable costs for Wakaya to conduct a TAR of the 700,000 documents and the July 21, 2017 and August 22, 2017 productions for responsiveness; by **January 24, 2018**, designate only those qualifying documents as "confidential" or "AEO"; by that date, any documents not designated in compliance with this Order will be deemed de-designated.

Additionally, Youngevity shall pay for the reasonable expenses, including attorney's fees, of bringing this motion. The parties shall follow the procedure outlined below to determine the amount of reasonable expenses.

Further, Youngevity shall pay for the reasonable expenses, including attorney's fees, Wakaya incurred as a result of Youngevity's failure to abide by the Stipulated Protective Order. Wakaya is entitled to the reasonable expenses associated with its efforts to re-designate documents from Youngevity's July 21, 2017 and August 22, 2017 productions. This includes costs relating to negotiations with Youngevity to re-designate documents and participation in discovery conferences with the Court regarding this issue. Wakaya is not entitled to the costs it incurred in reviewing Youngevity's productions for other matters, such as deposition or trial preparation. The parties shall follow the procedure outlined below to determine the amount of reasonable expenses.

On or before **January 19, 2018**, Wakaya shall provide Youngevity with a detailed fee and cost invoice(s) supporting the amount of reasonable attorneys' fees and costs

16-cv-00704-BTM (JLB)

incurred by Wakaya. The parties shall promptly and thoroughly, and by no later than **February 2, 2018**, meet and confer over any disputed fees and costs incurred by Wakaya. If the parties are able to resolve any disputes with respect to the amount of reasonable attorneys' fees and costs, Youngevity is to pay that amount no later than **February 12, 2018**. If the parties are unable to resolve their dispute(s) through the meet and confer process, then Wakaya is granted leave to file, on or before **February 12, 2018**, an *ex parte* motion supported by sufficient evidence in support of the amount of reasonable fees and costs owed by Youngevity to Wakaya in connection with this motion and its efforts to re-designate Youngevity's productions.[13] The deadline for Youngevity to file an opposition to Wakaya's motion for fees and costs, if any, shall be **February 26, 2018**.

## V.     CONCLUSION

For the reasons set forth above Wakaya's motion to compel is **GRANTED.** Youngevity shall reimburse Wakaya for the reasonable expenses, including attorney's fees, associated with bringing this motion and its efforts to re-designate Youngevity's July 21, 2017 and August 22, 2017 productions.


Dated:  December 21, 2017

*Jill Burkhardt*
Hon. Jill L. Burkhardt
United States Magistrate Judge

---

[13] Youngevity has not yet presented the Court with sufficient evidence to enable the Court to consider all the factors necessary in setting reasonable fees under both Fed. R. Civ. P. 37 and pertinent case law. *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008).

16-cv-00704-BTM (JLB)