UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOUNGEVITY INTERNATIONAL, CORP., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TODD SMITH, et al.,<br><br>Defendants. | Case No.: 16-cv-704 BTM (JLB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR LEAVE TO CONDUCT ADDITIONAL DISCOVERY**<br><br>**[ECF No. 283]** |

Before the Court is Plaintiffs' Motion for Leave to Conduct Additional Discovery. (ECF No. 283.) Plaintiffs Youngevity, et al. (Youngevity) seek leave to modify the pretrial scheduling order and conduct discovery after being granted leave to file a Fourth Amended Complaint (FAC). (ECF No. 283-1 at 3.)[1] Defendants Wakaya Perfection, et al. (Wakaya) oppose Youngevity's request. Youngevity's motion is **GRANTED in part and DENIED in part**.

## **BACKGROUND**

A pretrial scheduling order issued on March 2, 2017, setting a deadline of April 21, 2017 for motions to amend the pleadings or join other parties. (ECF No. 87.) On April 20, 2017, Youngevity filed a motion for leave to file its FAC. Discovery closed, with

---

[1] All citations to page numbers in this Order refer to the page numbers generated by the CM/ECF system.

limited exceptions, on September 22, 2017. (ECF No. 132.) On October 30, 2017, the Court granted Youngevity leave to file its FAC. (ECF No. 261.)

Youngevity filed its FAC on November 6, 2017. (ECF No. 269.) On November 7, 2017, the parties contacted the Court with Youngevity's request to conduct additional discovery. (*See* ECF No. 273.) The Court ordered the parties to meet and confer on Youngevity's request to conduct additional discovery and required Youngevity to provide Wakaya with the specific discovery requests it would serve if granted leave to do so. (*Id.*) The parties could not agree on what discovery, if any, would be appropriate in light of the filing of the FAC. (*See* ECF No. 281.) Youngevity filed the instant motion on November 28, 2017, seeking leave to conduct certain discovery on the new defendants and allegations contained in the FAC. (ECF No. 283-1 at 3.)

The FAC contains, *inter alia*, two new defendants—Michael Randolph and Michael Casperson—and the following additional allegations in Youngevity's Lanham Act claims against Wakaya:[2]

(i) Wakaya's "Plan to a Grand" advertising campaign conveyed the false impression that Wakaya ambassadors could easily earn more than $1,000 per month and that ninety-five percent (95%) of its Ambassadors would earn more than $1,000 per month (ECF No. 269 at ¶¶ 42-53);

(ii) Wakaya misled consumers to believe that its "BulaFIT BURN! Capsules" only contained "herbs and extracts" when the capsules actually contained a chemical stimulant known as Octodrine HCI (*id.* at ¶¶ 122-30);

(iii) Wakaya falsely advertised that its turmeric products have a 6% curcumin content and contain five times the amount of curcumin as other turmeric products when

---

[2] The FAC also includes additional allegations concerning defendant William Andreoli's alleged breaches of fiduciary duties and contract; a new cause of action against Brytt Cloward and Patti Gardner for breach of duty of loyalty; and names Barb Pitcock as a defendant. (ECF No. 109-1 at 7-8.) Youngevity does not seek leave to conduct discovery on these amendments. (*See* ECF No. 283-1.)

the products only had a 4% curcumin content, which is the same as most turmeric products available in the marketplace (*id*. at ¶¶ 162-68); and

(iv) Wakaya advertised its BulaFIT weight loss program with weight loss claims and testimonials that misled customers to believe that all, or almost all, program participants would lose substantial amounts of weight in a limited period of time (*id*. at ¶¶ 169-87).

Youngevity requests leave to conduct the following discovery relating to the new parties and claims in the FAC:

- Propound requests for production and interrogatories on new defendants Randolph and Casperson;
- Conduct fact depositions of Dr. Shane Harada, Carolee Koehn, Dr. Randy Lundell, John DeHart, and PharamaTech Lab's Rule 30(b)(6) designee;
- Supplement the expert report of Dr. David Stewart by conducting two new consumer surveys on Wakaya's Plan to a Grand and BulaFIT weight loss program advertising; and
- Retain a new expert, Dr. Richard Rucker, to analyze the curcumin content of Wakaya's turmeric productions and other turmeric products available in the marketplace.

Wakaya objects to all of Youngevity's proposed discovery requests as duplicative of discovery already taken, futile or irrelevant to the claims in the FAC, and unduly burdensome. (ECF No. 289 at 5-11.) Wakaya further objects to certain discovery on the basis that Youngevity failed to include it in the meet and confer process. (*Id*. at 5.)

## **LEGAL STANDARDS**

Federal Rule of Civil Procedure 16 provides that the court must issue a pretrial scheduling order that limits the time to join other parties, amend the pleadings, complete discovery, and file motions. The scheduling "order controls the course of the action unless the court modifies it." Fed. R. Civ. P. 16(d). "District courts have 'broad discretion to manage discovery and to control the course of litigation under Federal Rule of Civil

Procedure 16.'" *Hunt v. County of Orange*, 672 F.3d 606, 616 (9th Cir. 2012) (quoting *Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 833 (9th Cir. 2011)). Rule 16(b)(4) provides that a pretrial scheduling order may be modified only for good cause and with the judge's consent. The "good cause" requirement primarily considers the diligence of the party seeking the amendment. *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 609 (9th Cir. 1992). A pretrial schedule may be modified "if it cannot reasonably be met despite the diligence of the party seeking the extension." *Id.* (quoting Fed. R. Civ. P. 16 advisory committee's note to 1983 amendment). "[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Id.* In deciding whether to amend a pretrial scheduling order and reopen discovery, a court considers:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

*City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017) (quoting *United States ex rel. Schumer v. Hughes Aircraft Co.*, 63 F.3d 1512, 1526 (9th Cir. 1995)).

"Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." *Id.* If the moving party "'was not diligent, the inquiry should end' and the motion to modify should not be granted." *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (quoting *Johnson*, 975 F.2d at 609).

## ANALYSIS

### I. Good Cause to Amend the Scheduling Order

Youngevity seeks to modify the scheduling order to allow for discovery on new defendants and allegations contained in the FAC. Youngevity argues that good cause exists to modify the scheduling order and allow discovery because it acted diligently in pursuing

amendments to the complaint and it had no obligation to conduct discovery on the amendments prior to the grant of its motion to amend. (ECF No. 283-1 at 5.) Wakaya argues that the discovery Youngevity seeks is duplicative of discovery already taken, futile or irrelevant to the claims in the FAC, and unduly burdensome. (ECF No. 289 at 5-11.)

The Court finds that Youngevity has established good cause to modify the scheduling order and permit discovery on the new allegations and parties contained in the FAC, subject to the limitations of this Order. Wakaya argues that any discovery is duplicative, unnecessary, and would be prejudicial. (*Id.*) "Although the existence or degree of prejudice to the party opposing the modification might supply *additional* reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." *Johnson,* 975 F.2d at 609 (emphasis added). Here, even if Wakaya may be somewhat prejudiced by modification of the scheduling order, Youngevity was diligent in seeking amendment of its complaint and in requesting discovery related to the amendments. Youngevity filed its motion to amend the complaint on April 20, 2017, before the deadline to file a motion to amend the pleadings and add parties. (ECF No. 109.) In granting Youngevity's motion to amend, the Court found that amendment was not sought in bad faith or futile and would not cause undue prejudice to Wakaya. (ECF No. 261 at 3.) Youngevity filed its FAC on November 6, 2017, within seven days of the order granting Youngevity leave to file, as directed by the Court. (ECF No. 269.) The next day, the parties contacted the Court with Youngevity's request for leave to conduct discovery. (*See* ECF No.273.) Accordingly, the Court finds good cause to modify the scheduling order and allow Youngevity to conduct discovery on the new allegations and parties in the FAC as it was diligent in seeking leave to amend and conduct discovery on its new claims.

Wakaya argues that reopening discovery will interfere with the current schedule for the parties' motions for summary judgment. (*Id*. at 5.) Wakaya states that at an October 31, 2017 Status Hearing with the Honorable Barry Ted Moskowitz regarding the issuance of a briefing schedule for the parties' motions for summary judgment, Wakaya represented

5

16-cv-704 BTM (JLB)

to Judge Moskowitz that there was no need to reopen discovery and Youngevity did not object to Wakaya's statement. (ECF No. 289 at 3-4.) Judge Moskowitz issued a scheduling order for the parties' motions for summary judgment later that day. (ECF No. 263.) Wakaya argues that Youngevity "had their chance to object to the current summary judgement [sic] schedule set by the Court, but chose not to say anything knowing then that leave to file the 4AC had been granted." (ECF No. 289 at 5.)

To the extent that Wakaya argues Judge Moskowitz's October 31, 2017 Scheduling Order addressed the issue of the parties conducting additional discovery, that argument is not supported by the language of the Order. The October 31, 2017 Order sets a briefing schedule for the parties' motions for summary judgment and vacates the pretrial conference and trial dates. (ECF No. 263 at 1-2.) The Order does not suggest that the Court is precluding requests to reopen discovery. (*Id.*) To the extent Wakaya argues Youngevity waived any right to request to reopen discovery by remaining silent when counsel for Wakaya opined that no new discovery would be necessary, the Court is not persuaded. If Wakaya is arguing Youngevity should have alerted the Court that its request for leave to file the FAC would require discovery on the new allegations, Youngevity did so. In its Motion for Leave to File Fourth Amended Complaint Youngevity argued that Wakaya would not be prejudiced by the amendments because the case was, at the time the motion was filed, in the early stages of discovery and Youngevity would be amenable to jointly moving the Court for an extension of the discovery deadline should the need arise. (ECF No. 109-1 at 9-10.) The Court will, however, take into account the schedule for the parties' motions for summary judgment in its modification of the scheduling order.[3]

///

///

---

[3] Oral argument on the parties' motions for summary judgment and related Daubert motions as to Youngevity's claims, previously set for January 3, 2018, was vacated on December 29, 2017. (ECF No. 405.) Oral argument on the parties' motions for summary judgment and related Daubert motions on Wakaya's counterclaims is set for February 5, 2018. (ECF No. 263 at 2.)

6

## II. Leave to Propound the Requested Discovery

Having decided that good cause exists to modify the scheduling order and allow for some discovery on the new allegations and parties in the FAC, the Court turns to the categories of discovery Youngevity seeks leave to conduct.[4] Wakaya argues that Youngevity should not be allowed to conduct any discovery because: (1) Youngevity failed to meet and confer in good faith; and (2) Youngevity's proposed discovery is duplicative of discovery already taken or futile to the new claims asserted in the FAC. (ECF No. 289 at 5.) The Court addresses each argument in turn.

### A. Meet and Confer Efforts

Wakaya argues that Youngevity failed to meet and confer in good faith because it now seeks leave to propound discovery that it did not inform Wakaya it intended to seek during the meet and confer process. (*Id.* at 4.) Wakaya states that Youngevity failed to inform Wakaya that it wanted to conduct the following discovery: deposition of Dr. Randy Lundell; deposition of the designated Rule 30(b)(6) deponent of PharmaTech Labs and production of documents at the deposition; and issuance of a second consumer survey by Dr. David Stewart relating to Wakaya's BulaFIT weight loss program. (*Id.* at 8-10.)[5] Youngevity responds only that its failure to inform Wakaya that it intended to seek this discovery was immaterial because Wakaya maintains that it is not amenable to any additional discovery. (ECF No. 326 at 5.)

Youngevity's failure to fulfill its obligation to meet and confer under the Local Rules and this Court's Chambers Rules, in disregard of a court order, forecloses its ability to

---

[4] The parties do not address specific requests for production or interrogatories in their briefing. Accordingly, the Court rules on the categories of discovery Youngevity seeks instead of specific requests.
[5] Wakaya also states that Youngevity seeks to retain an additional expert witness not mentioned in the meet and confer process but fails to identify the expert. (ECF No. 289 at 4.) It is not clear what additional expert witness Wakaya references. Youngevity's November 10, 2017 email to Wakaya clearly states that it would like to "[s]ubmit an expert report comparing curcumin content in Wakaya turmeric to competing turmeric." (ECF No. 289-1 at 11.) Youngevity seeks leave to retain only one new expert—Dr. Richard Rucker—who would opine on the exact issue identified in Youngevity's November 10, 2017 email. (ECF No. 283-1 at 10-11.)

pursue this discovery. The Local Rules require parties to meet and confer prior to filing discovery motions. CivLR 26.1. Judge Burkhardt's Civil Chamber Rules (Chambers Rules) further provide that "[t]he Court will not address discovery disputes until counsel have met and conferred to resolve the dispute." Chambers Rules at Section IV.A. Here, the Court specifically ordered Youngevity to "provide Defendants with the specific discovery requests it would serve if granted leave to do so." (ECF No. 273.) The Court further ordered the parties to meet and confer on those requests in an effort resolve the parties' dispute about the propriety of additional discovery. (*Id.*)

Youngevity's argument that its omission was immaterial falls flat. This is not the first time Youngevity failed to fulfill its meet and confer obligations. (*See* ECF No. 333 at 2-3.) The purpose of the meet and confer requirement is to narrow the disputes before the Court and avoid the unnecessary expenditure of resources. As the Court has previously stated, the "parties' recurring failure to satisfy their meet and confer obligations prior to filing motions or contacting chambers, among other patience-trying practices, has strained this Court's resources." (*Id.* at 4.) Accordingly, Youngevity's request for leave to depose Dr. Randy Lundell, the designated Rule 30(b)(6) deponent of PharmaTech Labs, and to conduct a second consumer survey relating to Wakaya's BulaFIT weight loss program is hereby **DENIED**.

**B. Leave to Conduct Categories of Discovery**

Wakaya argues that Youngevity should not be granted leave to conduct any discovery because the discovery it seeks is duplicative of discovery already taken, futile or irrelevant to the claims in the FAC, and unduly burdensome. (ECF No. 289 at 5-11.)

Federal Rule of Civil Procedure 26, as recently amended, provides that parties

> may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Information within this scope "need not be admissible in evidence to be discoverable." *Id.* However, only evidence that is "relevant to any party's claim or defense" is within the scope of permissible discovery. *Id.*; *Medicinova Inc. v. Genzyme Corp.*, No. 14-cv-2513-L (KSC), 2017 WL 2829691, at *5 (S.D. Cal. June 29, 2017) ("The test going forward is whether evidence is 'relevant to any party's claim or defense,' not whether it is 'reasonably calculated to lead to admissible evidence.' ") (quoting *In re Bard IVC Filters Products Liability Litigation*, 317 F.R.D. 562, 564 (D. Ariz. 2016)).

The December 2015 amendment to Rule 26 reinforced the proportionality factors for defining the scope of discovery and, thus, under the amended Rule 26, relevancy alone is no longer sufficient to obtain discovery. *See* Fed. R. Civ. P. 26(b)(1) advisory committee notes to 2015 amendment. Discovery must also be proportional to the needs of the case, which necessitates conducting a cost-benefit analysis taking into consideration the importance of the issue to the outcome of the case, the amount at stake in the case, the parties' resources, and their relative access to the information. Fed. R. Civ. P. 26(b)(1).

**1. Requests for Production and Interrogatories to Randolph and Casperson**

Youngevity seeks leave to serve requests for production and interrogatories on new defendants Randolph and Casperson. (ECF No. 283-1 at 6.) Both Randolph and Casperson served as Youngevity Vice Presidents, resigned, and then became Wakaya Vice Presidents. (*Id.*) In its FAC, Youngevity alleges that both defendants violated the duty of loyalty they owed Youngevity by assisting in formation of Wakaya as a new company while still employed by and receiving compensation from Youngevity. (ECF No. 269 at ¶¶ 371-75.) Youngevity also alleges that Casperson misappropriated Youngevity's trade secrets. (*Id.* at ¶¶ 304-16.) Youngevity argues that it should be granted leave to propound the proposed requests because it was not previously able to serve these defendants with requests for production and interrogatories as they were nonparties. (ECF No. 283-1 at 6.) Youngevity argues that, although it previously deposed Randolph and Casperson, its proposed

interrogatories are appropriate because many of them are requests for information that cannot be provided in deposition form, such as specific dates. (*Id*. at 6-7.)

Wakaya argues that Youngevity is not entitled to this discovery because Randolph and Casperson were previously deposed and Youngevity has known about both defendants' roles from the outset of the case. (ECF No. 289 at 6.) Wakaya argues that most of the questions Plaintiffs propose to ask in written discovery either were or could have been asked during their depositions. (*Id*.)[6] Wakaya argues that Youngevity could have served Randolph and Casperson with Rule 45 subpoenas before they were named defendants, but chose not to do so. (*Id*.) Lastly, Wakaya argues that most of Randolph and Casperson's relevant communications have already been produced. (*Id*.)

Youngevity is granted leave to serve Randolph and Casperson with requests for production and interrogatories. First, the information Youngevity seeks from Randolph and Casperson is relevant to the new allegations against these defendants. The FAC alleges that Randolph and Casperson breached their duty of loyalty to Youngevity by working for Wakaya while being compensated by Youngevity, neglected their employment duties to Youngevity, used Youngevity equipment and computers to benefit Wakaya, improperly used Youngevity's trade secrets, and enticed Youngevity distributors and employees to join Wakaya. (ECF No. 269 at ¶¶ 371-75.) Youngevity's requests for production and interrogatories request, *inter alia*, information regarding the amount the defendants earned, their job responsibilities at both Youngevity and Wakaya, communications regarding Wakaya during the time period the company was established, and communications with Youngevity and Wakaya distributors after both defendants joined Wakaya. (ECF No. 283-3 at 12-13, 25-26, 36-37, 49-50.)

Second, Youngevity did not have an obligation to conduct discovery on its proposed claims before it was granted leave to file the FAC. Youngevity could not have served

---

[6] Wakaya does not identify which questions asked during the depositions of Randolph and Casperson are repeated in Youngevity's requests for production and interrogatories.

Randolph or Casperson with requests for production or interrogatories prior to the filing of the FAC as they were nonparties. Fed. R. Civ. P. 33(a); Fed. R. Civ. P. 34(c). Although Youngevity may have previously conducted some discovery related to the new allegations against Randolph and Casperson, Youngevity was not required to expend the resources to fully conduct discovery on these allegations before it was granted leave file its FAC. Rule 26(b) provides that parties may obtain discovery on matters "relevant to any party's claim or defense." Youngevity did not have any claims against Randolph and Casperson until after it was granted leave to file its FAC and properly filed the amended complaint. As a result, Youngevity did not have an obligation to incur the cost of conducting discovery on proposed claims by issuing subpoenas to Randolph and Casperson prior to filing its FAC.

Lastly, Youngevity's request for leave to propound requests for production and interrogatories on the new defendants is proportional to the needs of the case. Youngevity has limited its discovery requests to 14-16 requests for production and 8-9 interrogatories for each defendant. (ECF No. 283-1 at 6.) Youngevity's requests for production take into account the fact that both parties have expended substantial resources in responding to discovery requests in this litigation and specifically instruct Randolph and Casperson that they are not required to produce any documents already produced in this litigation. (ECF No. 283-3 at 8, 32.) Accordingly, Youngevity's request for leave to propound the proposed requests for production and interrogatories on Randolph and Casperson is **GRANTED**.

### 2. Deposition of Dr. Shane Harada

Youngevity seeks leave to depose Dr. Shane Harada, a Youngevity and Wakaya distributor who allegedly held weight loss meetings discussing Wakaya's products and attended a BulaFIT seminar with Defendant Blake Graham. (ECF No. 283-1 at 7.)[7] The FAC includes new allegations regarding Wakaya's BulaFIT weight loss program. (ECF

---

[7] Both parties refer to Wakaya's "weight loss program" and "weight loss meetings" without indicating whether these programs and meetings were related to the BulaFIT program. (*See, e.g.*, ECF Nos. 283-1 at 7, 289 at 7.) The Court presumes that these references to weight loss programs and meetings refer to the BulaFIT weight loss program.

No. 269 at ¶¶ 169-87.) Youngevity alleges that "[t]hrough the use of advertisements and testimonialists," Wakaya falsely advertised that the vast majority of BulaFIT program participants lost a substantial amount of weigh in a limited period of time. (*Id*. at ¶ 180.) Youngevity argues that Dr. Harada has information relevant to these claims because he held weight loss meetings and attended a BulaFIT seminar with Defendant Blake Graham. (ECF No. 283-1 at 7.) Youngevity argues that Dr. Harada may testify on the claims he made about the weight loss program and the actions, if any, taken by Wakaya to reprimand distributors for false or misleading claims. (*Id*. at 7-8.)

Wakaya argues that this discovery is duplicative of other evidence as Youngevity already questioned witnesses about statements related to Wakaya's weight loss program in dozens of depositions and issued an expert report on the BulaFIT weight loss program. (ECF No. 289 at 7-8.) Wakaya also argues that Dr. Harada's testimony would be irrelevant to Youngevity's new claims relating to alleged false advertising. (*Id*.)

Youngevity request for leave to depose Dr. Harada is **GRANTED**. The information Youngevity seeks from Dr. Harada is relevant to its new claims. The FAC states that Wakaya, "through its employees and agents," made false claims about its weight loss program. (ECF No. 269 at ¶ 170.) As a Wakaya distributor who held weight loss meetings, Dr. Harada is likely to have information on claims he made about Wakaya's weight loss program, in addition to claims made by other Wakaya employees and agents. As discussed above, Youngevity did not have an obligation to conduct discovery on proposed claims before these claims became operative. Further, Youngevity's request to depose Dr. Harada is proportional to the needs of this case. Youngevity has not previously deposed Dr. Harada. The fact that Youngevity may have conducted some discovery on the claims in the FAC does not establish that the information it now seeks is wholly duplicative of prior discovery. Wakaya does not argue that his deposition is otherwise unduly burdensome.[8]

---

[8] Youngevity intends to depose Dr. Harada, Carolee Koehn, and John DeHart in Salt Lake City, Utah, where they reside and where Wakaya's counsel is located. (ECF No. 283-1 at 7.)

12

Youngevity may depose Dr. Harada on the new allegations in the FAC relating to the BulaFIT weight loss program (*id.* at ¶¶ 169-87).

### 3. Deposition of Carolee Koehn

Youngevity seeks leave to depose ambassador Carolee Koehn, also known as Keri Ann, who promoted the BulaFIT program and worked with Blake Graham to develop promotional material and answers to consumers' questions about the program. (ECF No. 283-1 at 8.) Youngevity argues that Koehn has information on the claims Wakaya allowed its ambassadors to make about its weight loss program and the actions, if any, taken by Wakaya to reprimand distributors for making false or misleading claims. (*Id.*) As with Dr. Harada's deposition, Wakaya argues that deposing Koehn would only result in redundant and irrelevant information because Youngevity has already asked about the BulaFIT program and products in dozens of depositions and issued an expert report on the issue. (ECF No. 289 at 7-8.)

Youngevity's request for leave to depose Koehn on the new allegations in the FAC relating to Wakaya's allegedly false and misleading advertising of the BulaFIT weight loss program is **GRANTED**. The information Youngevity seeks is relevant to its new claims. The record indicates that Koehn worked with Defendant Graham to develop and disseminate promotional material on the BulaFIT program. (ECF No. 283-3 at 75-97.) Koehn is likely to have relevant information on the weight loss claims Wakaya's employees and agents made, Wakaya's promotion of the weight loss program, and Wakaya's response to allegedly false claims. This discovery is proportional to the needs of the case—Koehn has not been previously deposed and Wakaya has not presented any evidence that Koehn's deposition would be unduly burdensome.

### 4. Deposition of John DeHart

Youngevity also seeks leave to depose John DeHart regarding Wakaya's promotion of the BulaFIT weight loss program. (ECF No. 283-1 at 9.) Youngevity asserts that DeHart helped Graham develop the BulaFIT Ketogenic shake product and has information on the

"safety and efficacy" of the shake product. (*Id*.)[9] Youngevity does not explain DeHart's role in the development of the shake product or why his involvement would provide him with information on the safety and efficacy of the product. (*See id*.)

Wakaya disputes that DeHart was involved in the development of the Ketogenic shake product. (ECF No. 289 at 8.) Wakaya further argues that even if DeHart was involved in the product's development, the shake product is irrelevant to the new claims in the FAC as Youngevity's claims concerning the weight loss program relate only to the BulaFIT Burn Capsules. (*Id*.) Wakaya argues that DeHart has no knowledge of the Burn Capsules or the alleged false statements identified by Youngevity. (*Id*.)

Information regarding Wakaya's allegedly false advertising of its BulaFIT products, including the Ketogenic shake, is relevant to Youngevity's new claims. Youngevity alleges that Wakaya made false and misleading statements in its promotion of the BulaFIT weight loss program as a whole. (ECF No. 269 at ¶¶ 169-87.) The BulaFIT product line contains products other than just the BulaFIT capsules, and includes the Ketogenic shake. (*Id*. at ¶¶ 90, 174.) The new allegations in the FAC specifically reference the Ketogenic shake product. (*Id*. at ¶ 174.) Nonetheless, Youngevity fails to provide enough information for the Court to conclude that DeHart has information relevant to the new claims. Youngevity's claim that DeHart had a role in the product development of the Ketogenic shake is disputed by Wakaya and Youngevity fails to provide the Court with any support for its claim. Even if DeHart had some role in the development of the Ketogenic shake, Youngevity does not explain why DeHart's involvement makes it likely that he has information relevant to its claims that Wakaya promoted the BulaFIT products in a false and misleading manner. Accordingly, Youngevity's request to depose DeHart is **DENIED**.

---

[9] Youngevity attaches excerpts of Blake Graham's deposition transcript to support its assertion that DeHart worked with Graham to develop the Ketogenic shake product; however, the excerpts are wholly unrelated to DeHart or the shake product. (ECF Nos. 283-1 at 9, 283-3 at 105-11.)

### 5. Supplement to Dr. David Stewart's Expert Report

Youngevity requests leave to supplement the expert report of Dr. David Stewart with two new consumer surveys and additional analysis of Wakaya's statements regarding its Plan to a Grand Promotion, BulaFIT weight loss program, and BulaFIT Burn Capsules. (ECF No. 283-1 at 10.) As discussed above, Youngevity's request to commission an expert survey on Wakaya's BulaFIT weight loss program and the BulaFIT Burn Capsules is denied because Youngevity failed to inform Wakaya during the meet and confer process that it intended to seek this discovery. *See supra* Section II.A. Youngevity requests leave to conduct a consumer survey relating to consumers' perception of the Plan to a Grand advertisements. (*Id.*) Youngevity argues that supplementing Dr. Stewart's report is estimated to cost $50,000,[10] and Youngevity should not have been obligated to incur this cost prior to being granted leave to file the FAC. (*Id.*)

Wakaya argues that Youngevity is actually seeking to cure deficiencies in Dr. Stewart's report that were exposed during his deposition. (ECF No. 289 at 10.)[11] Wakaya argues that Dr. Stewart already issued a report specifically analyzing the Plan for a Grand Promotion and should not be granted leave to conduct a consumer survey he failed to administer the first time around. (*Id.*)

Youngevity's request to supplement Dr. Stewart's expert report with a consumer survey and analysis of Wakaya's Plan for a Grand Promotion is **GRANTED**. The consumer survey and additional analysis of Wakaya's Plan for a Grand Promotion is directly relevant to the new allegations in the FAC that Wakaya's Plan to a Grand advertising campaign conveyed the false impression that Wakaya ambassadors could earn significant amounts of money in a short period of time. (*See* ECF No. 269 at ¶¶ 42-53.)

---

[10] This amount refers to the cost of supplementing Dr. Stewart's expert report with two additional consumer surveys and analysis of Plan to a Grand Promotion, BulaFIT weight loss program, and BulaFIT Burn Capsules. (ECF No. 283-1 at 10.)

[11] Wakaya does not identify what deficiencies were allegedly exposed during Dr. Stewart's deposition that Youngevity seeks to cure with additional analysis and consumer surveys. (*See* ECF No. 289 at 10.)

Dr. Stewart's initial report included two consumer surveys designed to determine whether consumers obtained misleading or deceptive beliefs about the role of David Gilmour and/or the source of Wakaya's products from Wakaya's website. (ECF No. 289-1 at 27-28.) Dr. Stewart did not conduct a consumer survey on the Plan to a Grand Promotion. (*See id*. at 27-43.) His report included a brief analysis of Wakaya's Plan for a Grand Promotion. (*Id*. at 42-43.) Youngevity states that it asked Dr. Stewart to opine on the Plan for a Grand "in a cost-effective manner" before the FAC was the operative complaint. (ECF No. 326 at 7.) As discussed above, Youngevity did not have an obligation to incur the cost of discovery that would have been unnecessary if its motion for leave to file the FAC was denied. Dr. Stewart may supplement his report with additional analysis of Wakaya's statements regarding its Plan to a Grand Promotion and the proposed consumer survey relating to this claim.

### 6. Retention of Dr. Richard Rucker as an Expert

Lastly, Youngevity requests leave to retain a new expert, Dr. Richard Rucker, to test and analyze the curcumin content of Wakaya's turmeric productions and other turmeric products available in the marketplace. Youngevity argues that it should not have been required to pursue extensive and costly discovery that would have been unnecessary if its motion for leave to file the FAC was denied. (ECF No. 283-1 at 10.) Youngevity estimates that Dr. Rucker's report will cost over $15,000. (*Id*.)
Wakaya argues that Youngevity has already conducted this discovery when it retained Dr. Michael Glade. (ECF No. 289 at 11.) Dr. Glade issued an expert report opining on the results and curcumin content of Wakaya's turmeric products. (ECF No. 289-1 at 64-73.) Youngevity argues that it commissioned only a "cost-effective" analysis by Dr. Glade as more costly testing would have been a waste of resources had the Court denied its motion for leave to file the FAC. (ECF No. 326 at 7.)

Youngevity's request to retain Dr. Rucker as an expert to opine on Wakaya's turmeric products is **GRANTED**. The proposed analysis is directly relevant to the claim that Wakaya falsely advertised that its turmeric products had a higher curcumin content

than the products actually contained and misled consumers to believe that Wakaya's products had a higher curcumin content than similar products available in the marketplace. (ECF No. 269 at ¶¶ 162-68.) Youngevity was not obligated to incur the cost of a more in-depth analysis of Wakaya's turmeric products and other products on the market prior to the grant of its motion for leave to amend the operative complaint. Further, Wakaya has not identified any undue burden that allowing Youngevity to retain an additional expert will impose. Accordingly, Youngevity is granted leave to retain Dr. Rucker to opine on the new allegations in the FAC concerning Wakaya's turmeric products (*id.* at ¶¶ 162-68).

## **CONCLUSION**

Youngevity's motion is **GRANTED in part and DENIED in part** for the reasons set forth above. Youngevity is granted leave to conduct the following discovery:

- Youngevity may propound its proposed requests for production and interrogatories on newly named Defendants Mike Randolph and Mike Casperson.
- Youngevity may depose Dr. Shane Harada on the new allegations in the FAC relating to Wakaya's allegedly false and misleading advertising of the BulaFIT weight loss program (*Id.* at ¶¶ 169-87).
- Youngevity may depose Carolee Koehn on the new allegations in the FAC relating to Wakaya's allegedly false and misleading advertising of the BulaFIT weight loss program (*id.*).

Youngevity must complete the above discovery on or before **February 23, 2018**. "Completed" means that all discovery under Rules 30-36 of the Federal Rules of Civil Procedure, and discovery subpoenas under Rule 45, must be initiated a sufficient period of time in advance of the cut-off date, **so that it may be completed** by the cut-off date, taking into account the times for service, notice and response as set forth in the Federal Rules of Civil Procedure.

- Youngevity may have Dr. David Stewart supplement his report with additional analysis of Wakaya's alleged false advertising in its Plan to a Grand Promotion (*id.*

at ¶¶ 42-53) and a proposed consumer survey relating to this claim. Youngevity shall provide Wakaya with Dr. Stewart's supplemental report on or before **February 23, 2018**. Wakaya may provide Youngevity with a rebuttal expert report solely to contradict or rebut evidence on the same subject matter identified in Dr. Stewart's supplemental report on or before **March 16, 2018**.

- Youngevity may retain a new expert to test the curcumin content of Wakaya's turmeric products and other turmeric products and issue a report summarizing that testing. Youngevity shall provide Wakaya with this new expert's report on or before **February 23, 2018**. Wakaya may provide Youngevity with a rebuttal expert report solely to contradict or rebut evidence on the same subject matter identified in the new expert's report on or before **March 16, 2018**.

Youngevity is not granted leave to conduct any other discovery except as specified in this Order.

**Counsel shall promptly and in good faith meet and confer with regard to all discovery disputes in compliance with Local Rule 26.1(a).** The Court expects counsel to make every effort to resolve all disputes without court intervention through the meet and confer process. If the parties reach an impasse on any discovery issue, counsel shall file an appropriate motion within the time limit and procedures outlined in the undersigned magistrate judge's chambers rules. **A failure to comply in this regard will result in a waiver of a party's discovery issue. Absent an order of the court, no stipulation continuing or altering this requirement will be recognized by the court.**

///
///
///
///
///
///

Discovery motions must be filed in the time and manner directed by Magistrate Judge Burkhardt (*see* Judge Burkhardt's Civil Chambers Rules on Discovery Disputes available on the Court's website). All discovery motions must be filed within 30 days of the service of an objection, answer, or response which becomes the subject of dispute, or the passage of a discovery due date without response or production, and only after counsel have met and conferred to resolve the dispute **and** requested an informal teleconference with the Court.

**IT IS SO ORDERED.**

Dated: December 29, 2017

Hon. Jill L. Burkhardt
United States Magistrate Judge