UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Youngevity International, et al.,<br><br>                      Plaintiffs,<br><br>v.<br><br>Todd Smith, et al.,<br><br>                      Defendants. | Case No.:  16-CV-704-BTM-JLB<br><br>**ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR SANCTIONS FOR WITNESS TAMPERING [ECF No. 180]** |

Before the Court is Plaintiffs' motion for sanctions for witness tampering (ECF No. 180).  For the reasons discussed below, the Court grants in part and denies in part Plaintiffs' motion.

## **I. FACTUAL BACKGROUND**

Plaintiffs and Counterclaim Defendants (collectively "Youngevity") move the Court to impose sanctions against Defendants Todd Smith ("Smith") and Wakaya Perfection, LLC ("Wakaya") for witness tampering.  Youngevity claims that Smith sent text messages to Rick Anson ("Anson") and David Smith with the intent of influencing their deposition testimony.

Rick Anson is the CEO and founder of LiveWell, LLC.  In November 2015, Anson began working for Wakaya as the Vice President of Product Development and LiveWell began producing and supplying its products for Wakaya.  Anson

and Wakaya entered into a Royalty Agreement and LiveWell entered into a licensing agreement with Wakaya. In 2016, LiveWell's relationship with Wakaya came to an end with Anson serving Wakaya a Notice of Default in December 2016. The Notice of Default alleges that Wakaya violated and breached numerous responsibilities and duties under the agreement between Wakaya and LiveWell. Several of these alleged breaches are issues on which Youngevity grounds its own causes of action. Anson's and LiveWell's relationship with Wakaya terminated on or about January 16, 2017. Shortly thereafter, Anson was hired as Youngevity's Vice President. Both parties designated Anson as a witness and agreed to take his deposition on July 7, 2017 in Tempe, Arizona.

Youngevity alleges that Smith attempted to suppress the Notice of Default. On the same day that Smith received Anson's Notice, he sent Anson the following text message:

> Got your letter. Let's talk and work things out Soon! Also, by way of advice. You had better ensure that this letter remains confidential. You have made some very serious allegations which if publicized would make you liable for defamation and libel. Your claims are false. You do not at this stage have judicial immunity. You leak anything like this letter to anyone and I can't protect you. Be careful.

Anson testified in his deposition that the text message made him feel uncomfortable.

Youngevity also claims that Smith intended to intimidate Anson the night before his deposition when he sent Anson the following text message:

> Hello Rick— I hope you arrived in AZ safely. As you prepare your thoughts for tomorrow, please realize that I know what the magic ingredient is to the LuvCap you supplied to us. Not on the label though. I wonder if Clay and others are aware. Not a good thing legally for someone of Clay's reputation. See you in the morning. ;)
>
> Shhhhhhhhh!

It is important to note that Clay Carley is a director and prominent investor in LiveWell. On the day of the deposition, Smith was asked to leave the deposition by his counsel when Youngevity's counsel shared the content of the text message. Anson testified at the deposition that he felt intimidated by the text. He also stated that he interpreted the first text referencing the Notice of Default as a threat. However, despite feeling threatened and intimidated, Anson stated that Smith's actions did not affect his testimony. Smith subsequently apologized for sending Anson the text message.

Youngevity also argues that Smith intended to interfere with the testimony of David Smith, co-founder and co-owner of Great American Clay Company ("GAC"), a Wakaya supplier. On June 15, 2017, David Smith sent Todd Smith, Defendant Blake Graham, counsel for Youngevity and Wakaya, Lynn Jenkins, GAC's other co-founder and co-owner, and Jamie Kidd, a Wakaya employee, an email that stated the following:

> Todd, Both Lynn [Jenkins] and I received yet another urgent text message from you today saying we need to talk because Youngevity was pushing things in regards to a deposition and that we needed to talk today. You have our attorneys name and contact information. You know Lynn and I both have legal representation. Please do not continue in your attempts to circumvent by contacting us directly. I thank you in advance for your cooperation in this regard.

On June 28, 2017 at his deposition, David Smith testified that Smith sent him repeated text messages even after he asked Smith to stop contacting him. Though he was told by Lynn that Smith had an interest in discussing his deposition, David Smith never spoke to Smith personally about it. Youngevity contends that Smith's repeated text messages demonstrates Smith's attempts to change David Smith's deposition testimony.

//
//

3
16-CV-704-BTM-JLB

## II. DISCUSSION

### A. Bad Faith

Courts are vested with the inherent authority to sanction conduct which abuses the judicial process. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991). While a court's inherent power "extends to a full range of litigation abuses," it must make a finding that the litigant "engaged in bad faith or wilful disobedience of a court's order." *Fink v. Gomez*, 239 F.3d 989, 992 (quoting *Chambers*, 501 U.S. at 46–47). The Court here finds by clear and convincing evidence that Smith acted in bad faith in texting Anson, but not David Smith.

While regretful now that he sent Anson the text messages at issue, Smith intended to influence Anson's testimony. First, Smith threatened Anson with libel and defamation if he discussed the Notice of Default or its content with anyone. Second, he texted Anson the night before his deposition and threatened to disclose the ingredients of one of LiveWell's products. While he was unsuccessful in influencing Anson's testimony, Smith nevertheless intended to do so. As to David Smith, however, it is not clear what Smith's intentions were. David Smith testified that he could only speculate as to why Smith was attempting to contact him. The Court has not seen the messages that Smith sent David Smith and based on the evidence before it, it does not find that he acted in bad faith.

### B. Remedy

Having found that Smith engaged acted in bad faith as to Anson, the Court must fashion the appropriate remedy. Youngevity specifically moves for monetary sanctions against Smith for the cost of two depositions and the bringing of this motion, for a referral of the matter to the United States Attorney for investigation and potential prosecution under 18 U.S.C. § 1512(b)(1), and for the Court to make a finding that the content of Anson's Notice of Default is true and admissible against Smith and Wakaya.

First, the Court hereby awards Youngevity the cost of bringing this motion. Under its inherent powers, "a court may assess attorney's fees when a party acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers*, 501 U.S. at 45–46. Here, Smith intended to influence Anson's testimony. Accordingly, Youngevity is entitled to reasonable attorney's fees for the work performed in bringing this motion. However, the Court declines to award Youngevity the cost of Anson's deposition because as he testified, Smith did not succeed in influencing his testimony.

As to Youngevity's request for a referral to the United States Attorney's Office, the Court also declines to exercise its authority in such manner. Courts have referred instances of perjury in civil cases before it to the U.S. Attorney for investigation and prosecution. *Neal v. LaRIVA*, 765 F.3d 788, 791 (7th Cir. 2014); *SEC v. Payton*, 176 F. Supp. 3d 346, 354 (S.D.N.Y. 2016); *In re Actos (Pioglitazone) Prods. Liability Litigation*, No. 6:12-CV-00064-RFD, 2014 WL 2624943, at *7 (W.D. La. June 11, 2014). The Court chooses not to make such a referral in this case. First, the case did not involve perjury. Second, Smith did not hide his actions and seems to understand that they were improper. Third, the actions did not take place before the Court and Plaintiffs can bring them to the attention of the U.S. Attorney. Instead, the Court hereby enjoins Smith and Wakaya from harassing or intimidating any of Plaintiffs' and Counterclaim Defendants' witnesses in this case as set forth below.

Lastly, while the Court declines to enter a finding that the content of the Notice of Default is true, the Court finds that a properly tailored adverse inference instruction is appropriate and will not cause unfairness to Smith or Wakaya. The Court will give the following instruction:

> Youngevity has offered evidence that Todd Smith tried to suppress the Notice of Default written by LiveWell, L.L.C. and tried to influence Rick Anson's testimony. After considering all of the pertinent facts and circumstances, you may, but are not obligated to, infer that any

evidence you find that Mr. Smith attempted to suppress or influence was favorable to Youngevity and unfavorable to him and Wakaya.

### III. CONCLUSION AND ORDER

For the reasons discussed above, Youngevity's motion for sanctions for witness tampering is **GRANTED IN PART** and **DENIED IN PART**. The Court grants Youngevity's request for fees and costs it incurred in bringing this motion. A motion for fees and costs shall be calendared for April 13, 2018 at 11:00 a.m. The injunction provided for herein shall take effect immediately and the Court will give an adverse inference instruction as set forth above.

Todd Smith and Wakaya, and his and its agents, and employees, are enjoined and restrained from, directly or through others, harassing, threatening, intimidating or influencing, or attempting to do so, any of Plaintiffs' and Counterclaim Defendants' witnesses. Todd Smith and Wakaya shall not communicate with any of Plaintiffs' and Counterclaim Defendants' witnesses other than Wakaya employees, agents or representatives, except when counsel for Smith or Wakaya are participating in the communication.

**IT IS SO ORDERED**.
Dated: February 6, 2018

_____
Barry Ted Moskowitz, Chief Judge
United States District Court