UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| YOUNGEVITY INTERNATIONAL, CORP., et al., | Case No.: 16-cv-00704-BTM-JLB |
|---|---|
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART PLANTIFFS' EX PARTE MOTION FOR ATTORNEYS' FEES AND COSTS** |
| v. | |
| TODD SMITH, et al., | |
| Defendants. | **[ECF No. 286]** |

Before the Court is Plaintiffs' and Counterclaim Defendants' ("Youngevity" or "Plaintiffs") Ex Parte Motion for Attorneys' Fees and Costs ("Motion for Fees"). (ECF No. 286-1.) Defendants and Counterclaim Plaintiffs, Wakaya, et al. ("Wakaya" or "Defendants") oppose the Motion for Fees. (ECF No. 334.) For the reasons set forth below the Motion is **GRANTED** in part and **DENIED** in part.

**I.  BACKGROUND**

The instant Motion for Fees comes to the Court following the grant of Plaintiffs' request for fees and costs incurred in the making of a motion for a protective order and sanctions. (*See* ECF No. 246.) On October 23, 2017, the Court granted in part and denied in part Youngevity's Motion for Protective Order and Sanctions ("Motion for Protective Order"). (*Id.* at 12-14, 18.) In its Motion for Protective Order, Youngevity argued that

Wakaya impermissibly provided incorrect legal advice to a third party deponent, improperly urged the witness to invoke his Fifth Amendment rights, intimidated the witness with allusions to criminal liability, and sought information relating to securities violations outside the proper scope of discovery. (ECF No. 179.) On September 28, 2017, the Court held a hearing on the matter. (ECF No. 207.) The Court expressed concern about the propriety of counsel's conduct in the deposition and issued a protective order foreclosing Wakaya from inquiring into alleged instances of insider trading, but denied Youngevity's requests to strike deposition testimony and issue monetary sanctions against Wakaya's counsel. (ECF No. 246 at 13-15, 17.) The Court granted Youngevity's request for its "reasonable fees and costs incurred in researching, drafting, and finalizing Youngevity's motion to compel, as well as those incurred in preparing for and attending the September 28, 2017 hearing" under Federal Rule of Civil Procedure Rule 37(a)(5). (*Id.* at 18.)

Youngevity now requests an award of $23,509.62,[1] which is comprised of $18,974.75 in attorneys' fees for researching, drafting, and finalizing the Motion for Protective Order and the Reply in Support of Motion for Protective Order ("Reply"), and preparation for and attendance at the September 28, 2017 hearing on the Motion for Protective Order; $1,103.75 in costs associated with the Motion, Reply, and hearing; and $3,531.00 in attorneys' fees incurred in the preparation of the instant Motion for Fees. (ECF No. 286-1 at 3.)

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 37 states that if a motion is granted, the court may "require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorneys' fees." Fed. R. Civ. P. 37(a)(5)(A). The Court "must calculate awards for attorneys' fees using the

---

[1] Plaintiffs' Motion for Fees requests two different awards: $23,509.62 and $23,524.87. The Court construes the Motion as requesting the lower amount.

'lodestar method.'" *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 978 (9th Cir. 2008). The lodestar method is calculated by "multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Id.* District courts "[have] a great deal of discretion in determining the reasonableness of the fee." *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983). The Ninth Circuit also identifies a variety of factors the Court might consider in determining whether the requested fees are reasonable:

> 1) time and labor required, 2) the novelty and difficulty of the questions involved, 3) the skill requisite to perform the legal service properly, 4) the preclusion of other employment by the attorney due to acceptance of the case, 5) the customary fee, 6) whether the fee is fixed or contingent, 7) time limitations imposed by the client or the circumstance, 8) the amount involved and the results obtained, 9) the experience, reputation, and ability of the attorneys, 10) the "undesirability" of the case, 11) the nature and length of the professional relationship with the client, and 12) awards in similar cases.

*Carter v. Caleb Brett LLC,* 757 F.3d 866, 869 (9th Cir. 2014) (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)).

### A. Reasonable Hourly Rates

When determining a reasonable hourly rate, a court should consider the prevailing rate for similar work in the relevant community. *Camacho*, 523 F.3d at 979 (citing *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)). Generally, "the relevant community is the forum in which the district court sits." *Id.* Rates outside of the relevant forum should only be used when "local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." *Id.* (citing *Barjon*, 132 F.3d at 500).

Although determining a reasonable hourly rate for lawyers' services can be difficult, "the established standard when determining a reasonable hourly rate is the 'rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation.'" *Camacho*, 523 F.3d at 979 (quoting *Barjon*, 132 F.3d at 502). "[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the

attorney's own affidavits—that the requested rates are in line with those prevailing in the community." *Camacho*, 523 F.3d at 980. *See also Blum v. Stenson*, 456 U.S. 886, 895 n.11 (1984). Satisfactory evidence of the prevailing market rate can include "[a]ffidavits of the [requesting] attorney[s] and other attorneys regarding prevailing fees in the community, and rate determinations in other cases." *Camacho*, 523 F.3d at 980 (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.,* 896 F.2d 403, 407 (9th Cir. 1990)). The party opposing the fees and costs application has the "burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the . . . facts asserted by the prevailing party in its submitted affidavits." *Camacho*, 523 F.3d at 980 (quoting *Gates v. Duekmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992)).

### B. Reasonable Hours Expended

The moving party has the burden of producing "billing records to establish the number of hours it requested is reasonable." *Gonzalez v. City of Maywood,* 729 F.3d 1196, 1202 (9th Cir. 2013). The moving party should exercise billing judgment to exclude hours that are excessive, redundant, or otherwise unnecessary. *Hensley,* 461 U.S. at 434; *Costa v. Comm'r of SSA*, 690 F.3d 1132, 1135 (9th Cir. 2012). Largely, a court should defer to the "winning lawyer's professional judgment as to how much time he was required to spend on the case." *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1111 (9th Cir. 2014) (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)).

District courts have discretion to reduce the number of hours that were not reasonably expended. *Hensley,* 461 U.S. at 434; *see also Gates*, 987 F.2d at 1399. When determining whether the number of hours expended is reasonable, the court may take into account: (1) the novelty and complexity of the issues; (2) the special skill and experience of counsel; (3) the quality of representation; and (4) the results obtained. *Cabrales v. County of Los Angeles*, 864 F.2d 1454, 1464 (9th Cir. 1988); *see also Kilopass Tech., Inc. v. Sidense Corp.,* 82 F. Supp. 3d 1154, 1170 (N.D. Cal. 2015). Where a district court imposes a reduction in fees, the court should provide a "concise but clear" explanation of its reasoning. *Moreno,* 534 F.3d at 1111 (citing *Hensley*, 461 U.S. at 437). A district court

can also "impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation." *Id*. at 1112.

### III. ANALYSIS

As noted above, Youngevity requests an award of $23,509.62, which includes $18,874.75 in attorneys' fees for researching, drafting, and finalizing the Motion for Protective Order and Reply, and for preparing and participating in the hearing; $1,103.87 in costs associated with the Motion, Reply, and hearing; and $3,531.00 in attorneys' fees incurred in submitting the Motion for Fees. (ECF No. 286-1 at 3.) The Court previously determined that an award of Plaintiffs' reasonable attorneys' fees and expenses under Rule 37(a) was appropriate. (ECF No. 246 at 18.) Wakaya argues that the amount of the fees requested is unreasonable because: (1) Youngevity failed to present sufficient evidence to enable the Court to evaluate its request for fees; (2) the claimed hours are excessive; and (3) Youngevity had limited success on its Motion for Protective Order, so they should not be awarded fees and costs for pursuing relief not granted. (ECF No. 334 at 7-11.) Wakaya also argues that Youngevity should not recover for time expended on the Motion for Fees itself because Youngevity failed to meaningfully participate in the meet and confer process. (*Id*. at 11-12.) For the reasons stated below, the Court **GRANTS** in part and **DENIES** in part Plaintiffs' Motion for Fees.

#### A. Meet and Confer Efforts

Defendants argue that Plaintiffs are precluded from an award of fees for time expended on the Motion for Fees because they failed to meaningfully engage in the meet and confer process in accordance with the Court's Local Rules. (*Id*.) Parties are required to meet and confer in an effort to resolve discovery disputes before asking assistance of the Court. CivLR 26.1.a; J. Burkhardt Civ. Chambers R., Section IV(A). The Court ordered Youngevity to provide Wakaya with detailed fee and cost invoices supporting its claim for reasonable costs and fees by November 10, 2017, and further ordered the parties to "meet and confer over any disputed fees and costs incurred by Youngevity in connection with this motion" no later than November 24, 2017. (ECF No. 246 at 18.) On November 2,

5

2017, Youngevity's counsel emailed Wakaya's counsel a heavily redacted fee and cost invoice (ECF No. 286-3 at 15-19) and two weeks of potential dates on which Youngevity was available to engage in the meet and confer process in accordance with the Court's Order. (*Id.* at 8.) Wakaya did not respond to Plaintiffs' November 2, 2017 email until November 17, 2017, leaving just three business days before the national holiday (Thanksgiving) for Plaintiffs to respond and engage in the meet and confer process. (*Id.* at 7.) On November 20, 2017, Youngevity responded to Wakaya's November 17, 2017 email, stating that they were not "obligated to provide their actual billing entries," but were available to meet and confer the next day. (*Id.* at 6.) Wakaya responded the same day, stating that Youngevity must establish its right to fees by providing sufficient detail to allow the Court and the opposing party to evaluate the fee request under the relevant factors, which Youngevity had failed to do by providing the heavily redacted fees and cost invoice. (*Id.* at 5.) Wakaya offered Youngevity $2,500 to resolve the dispute over its fees and costs. (*Id.*) On November 24, 2017, Youngevity sent Wakaya its unredacted billing entries. (*Id.* at 5.) The Court finds that although Youngevity did not initially provide the detailed information the Court ordered, Wakaya contributed to the unproductive burning of the available meet and confer window by failing to request more detailed information, or respond in any way, for fifteen days. The Court will not deny Youngevity the fees expended on their Motion for Fees on this basis.

### B. Plaintiffs' Hourly Attorneys' Fees Are Reasonable

Plaintiffs request hourly rates ranging from $125 per hour to $550 per hour for one paralegal, one law clerk, three associate attorneys ranging in skill and experience, and two partners. (ECF No. 286-1 at 6-9.) Wakaya objects to Youngevity's requested hourly rates on the ground that Youngevity failed to meet its burden to produce satisfactory evidence to establish that its rates are reasonable. (ECF No. 334 at 9.) However, as in *United Steelworkers of America*, "[a]lthough the defendants disagree with [Plaintiffs'] evidence, they did not support their arguments with any affidavits or evidence of their own regarding legal rates in the community." *United Steelworkers of Am.*, 896 F.2d at 407. Plaintiffs

provided affidavits of its counsels' billing rates and cited probative case law from this district to support their hourly rates. (*See generally* ECF No. 286-1.) Defendants provide no counterevidence that Plaintiffs' requested rates are unreasonable; they merely argue that Plaintiffs have not met their burden to establish that its rates are reasonable. (ECF No. 334 at 9.) After comparing Plaintiffs' requested rates to similar rates approved in this district, the Court finds that Plaintiffs use of affidavits and case law meets their burden of establishing that counsels' rates are reasonable for everyone except associate attorney Joshua Furman, for whom no information about experience, skill, and education has been provided.

### 1. Jennifer Fernandes

Jennifer Fernandes, an experienced paralegal with 23 years of state and federal civil litigation practice in several states, bills at an hourly rate of $125 per hour. (ECF No. 286-1 at 6.) Ms. Fernandes completed traditional paralegal work such as "process[ing] documents filed with the court, communicat[ing] with OneLegal regarding delivery service of documents to the court as a courtesy copy for the judge, [and] confirm[ing] [the] order." (ECF No. 286-3 at 27-28.) This district has found that an hourly rate of $125 per hour is a reasonable rate for a paralegal. *Ruiz v. XPO Last Mile, Inc.*, 2017 U.S. Dist. LEXIS 60578 at *16 (S.D. Cal. Apr. 20, 2017); *LG Corp. v. Huang Xiaowen*, 2017 U.S. Dist. LEXIS 143409, at *7-8 (S.D. Cal. Sept. 5, 2017) (finding rate of $175 per hour for paralegal reasonable). The Court finds Ms. Fernandes' rate of $125 per hour reasonable.

### 2. Bryan Schatz

Bryan Schatz, a law clerk, bills at $135 per hour.[2] (ECF No. 286-1 at 6.) Mr. Schatz is a 2017 graduate of George Washington University Law School, a notable and prestigious institution. (ECF No. 286-1 at 7.) Plaintiffs support their contention that Mr. Schatz's rate

---

[2] Plaintiffs note in a declaration that Mr. Schatz billed at an hourly rate of $175 for work performed after November 13, 2017, but fail to argue that this rate is reasonable in their Motion for Fees. (ECF No. 286-1 at 6-7; ECF No. 286-3 at 34.) Accordingly, the Court considers only whether Mr. Schatz's hourly rate of $135 is reasonable.

is reasonable by citing a case that held $175 per hour is "fair and proper within the San Diego community" for a law clerk. *Brown v. 22nd Dist. Agric. Ass'n*, 2017 U.S. Dist. LEXIS 115321 at *15-16 (S.D. Cal. July 21, 2017). Even though *Brown* is a class action suit, there is minimal case law on reasonable rates of law clerks in the Southern District of California and a law clerk generally conducts similar research and writing regardless of the type of litigation. In a non-class action suit, a court in this district found $125 per hour to be reasonable and fair for law clerks. *Nguyen v. HOVG, LLC*, 2015 U.S. Dist. LEXIS 124019, at *13 (S.D. Cal. Sept. 15, 2015). Mr. Schatz's rate of $135 per hour is substantially less than the $175 per hour rate Plaintiffs use to support their motion and slightly more than the hourly rate approved in this district more than two years ago. Mr. Schatz performed substantial work researching, theorizing, drafting, and finalizing the bulk of the Motion for Protective Order and Motion for Fees. (ECF No. 286-1 at 10; ECF No. 286-3 at 26-29.) The Court finds Mr. Schatz's rate of $135 reasonable based on the type of work completed, the increase of hourly rates since 2015, and Mr. Schatz's education and experience.

        3.    <u>Joshua Furman</u>

Mr. Furman, an associate attorney, bills at $225 per hour. (ECF No. 286-1 at 7.) Plaintiffs do not provide the Court with a description of Mr. Furman's skill, experience, or credentials; information which is necessary for the Court to compare his rate to that of an associate attorney with similar skill and experience. (*See id.*) Plaintiffs cite to *Watkins v. Hireright, Inc.*, 2016 U.S. Dist. LEXIS 136200 (S.D. Cal. Sept. 30, 2016), and *Brown v. 22nd Dist. Agric. Ass'n*, 2017 U.S. Dist. LEXIS 115321, to support Mr. Furman's hourly rate. (*Id.* at 7.) *Watkins* is distinguishable because it is a class action lawsuit in which the Court approved the requested fee amount without analysis of the reasonableness of the rates of attorneys by experience level. *See Watkins.*, 2016 U.S. Dist. LEXIS 136200. More importantly, without any additional information regarding Mr. Furman's experience, skill, or credentials, the Court finds that the Plaintiffs have not met their burden to establish the rate is reasonable. However, even without additional information, the Court is comfortable

concluding that an hourly rate of $135 per hour, the rate of a law clerk, is reasonable for Mr. Furman, an associate attorney admitted to practice law in California.

### 4. Eric Awerbuch

Eric Awerbuch, a fourth-year associate, billed at a blended rate of $273.13 per hour, due to an increase in his billable rate (from $260 per hour to $275 per hour) during the middle of this litigation. (ECF No. 286-1 at 7.) Mr. Awerbuch is one of the lead attorneys on this case. (*Id.*) Courts have found that an hourly rate ranging from $250-480 can be reasonable for an associate based on the individual's experience, skill, reputation, and type of work completed. *Lewis v. City of San Diego*, 2017 U.S. Dist. LEXIS 203457 at *37 (S.D. Cal. Dec. 8, 2017) (finding rate of $250 per hour for associate who served as second chair at trial reasonable); *Brown*, 2017 U.S. Dist. LEXIS 115321 (S.D. Cal. July 21, 2017) at *14-17 (finding $350 per hour for fourth-year associate in class action case reasonable); *Flowrider Surf, Ltd. v. Pac. Surf Designs, Inc.*, 2017 U.S. Dist. LEXIS 76757 at *6 (S.D. Cal. May 18, 2017) (finding $480 reasonable for associate at international intellectual property firm). Thus, in light of the aforementioned authority, and considering Mr. Awerbuch's experience and his role in this case, the Court finds Mr. Awerbuch's averaged rate of $273.13 per hour reasonable.

### 5. Bethany Kennedy

Bethany Kennedy, a senior associate, has been practicing law for eight years. (ECF No. 286-1 at 8.) She has extensive experience in federal regulatory law, false advertising law, and administrative and civil litigation. (*Id.*) She bills at an hourly rate of $325 per hour. (*Id.*) Youngevity supports Ms. Kennedy's hourly rate of $325 per hour by citing *Brown*, a case in which a fourth-year associate's rate of $350 in a class action was found reasonable. *See Brown*, 2017 U.S. Dist. LEXIS 115321 at *14-17. Even though the underlying dispute between Youngevity and Wakaya is not considered complex litigation, and the Court in *Brown* does not differentiate between associates by skill level, Ms. Kennedy has substantially more experience than a fourth-year associate and should be

compensated accordingly. *See id.* The Court finds Ms. Kennedy's rate of $325 per hour reasonable.

### 6. Peter Arhangelsky

Peter Arhangelsky is a partner at Emord & Associates and has been practicing law in federal courts for ten years. (ECF No. 286-1 at 8.) Mr. Arhangelsky is admitted to practice in California and Arizona and specializes in complex civil litigation, Lanham Act false advertising matters, deceptive advertising matters, and administrative matters before federal agencies such as the Federal Trade Commission and Food and Drug Administration. (*Id.*) He has published several articles on constitutional and administrative law and was included on the 2017 and 2018 Southwest Region Rising Stars list (published by a subsidiary of Thomson Reuters). (*Id.*) He bills at an hourly rate of $425. (*Id.*) Mr. Arhangelsky's rates are in line with other hourly rates approved by courts in this district. *See Obesity Research Inst., LLC v. Fiber Research Int'l, LLC,* 2016 U.S. Dist. LEXIS 52463, at *6-7 (S.D. Cal. April 18, 2016) (finding partner rates of $425 per hour, senior partner rates of $475 per hour, and rates up to $725 per hour reasonable); *Lewis*, 2017 U.S. Dist. LEXIS 203457 at *29-31, 37 (finding partner rate of $600 per hour reasonable after referencing 2013 National Law Journal survey, which indicates the average billing rate for partners in San Diego was $500 per hour). Thus, the Court finds Mr. Arhangelsky's rate to be reasonable.

### 7. Jonathon Emord

Jonathon Emord is the principal and founding partner of Emord & Associates. (ECF No. 286-1 at 9.) He has been practicing law for 32 years and is an experienced federal litigator who has been awarded the highest rating in legal ability in ethics by Martindale-Hubbell Peer Review. (*Id.*) Mr. Emord is also the author of several books and law review articles. (*Id.*) His hourly rate is $550 per hour. (*Id.*) Courts in this district have held a range of rates from $450-750 per hour reasonable for a senior partner in a variety of litigation contexts and specialties. *Obesity Research Inst., LLC*, 2016 U.S. Dist. LEXIS 52463 at *6 (citing *Makaeff v. Trump Univ., LLC*, 2015 U.S. Dist. LEXIS 46749 at *4-5

(S.D. Cal. Apr. 9, 2015)); *Flowrider Surf, Ltd. v. Pac. Surf Designs, Inc.*, 2017 U.S. Dist. LEXIS 76757 at *10 (granting hourly rate of $750 per hour for co-managing partner of intellectual property firm); *LG Corp.*, 2017 U.S. Dist. LEXIS 143409 at *4-5 (finding $695 per hour reasonable); *Nguyen*, 2015 U.S. Dist. LEXIS 124019 *7-8 (finding $450 per hour reasonable for founding partner based on 2010 Fee Survey Report). Taking into consideration Mr. Emord's extensive experience and notoriety in the field, his rate of $550 per hour is reasonable as it is in the within the range of approved rates for senior partners in this district.

### C. Plaintiffs' Hours Expended are Not Altogether Reasonable and Should Be Reduced

Plaintiffs expended a total of 91.2 hours related to the Motion for Protective Order, Reply, hearing, and Motion for Fees, resulting in $23,524.87 in fees. (ECF No. 286-1 at 9.) They request only 68.05 of those hours, asking for an award of $18,874.75 for the Motion for Protective Order, Reply, and hearing. (*Id.* at 9-10.) They request an additional $3,531.00 in fees for time spent on the Motion for Fees. (*Id.* at 11.) For the reasons stated below, the Court adjusts the requested amount to reflect what is reasonable.

Generally, Defendants assert that Youngevity's requested hours are unreasonable and excessive. (ECF No. 334 at 7.) Wakaya argues that Plaintiffs should not be entitled to recover fees allocated to aspects of their Motion for Protective Order on which Youngevity did not prevail. (*Id.* at 10.) The Court finds that Youngevity substantially prevailed on its Motion for Protective Order. Wakaya is correct that Youngevity did not receive all forms of relief it requested; however, the gravamen of Youngevity's Motion was a motion for a protective order, which was granted. Although Youngevity's motion for sanctions in the Motion for Protective Order was unsuccessful, the Court issued a

1  strongly worded reprimand to Wakaya for counsel's improper conduct.[3]  Additionally,
2  under Federal Rule of Civil Procedure 37(a)(5)(C), when a motion is granted in part and
3  denied in part, as it was here, "the court may . . . apportion the reasonable expenses for the
4  motion." Fed. R. Civ. P. 37(a)(5)(C).  Here, the Court declines to reduce Plaintiffs' fee
5  award on this basis.

1. Motion for Protective Order and Reply

After review of the billing records of Plaintiffs' counsel, the Court concludes that the amount of fees Plaintiffs seek in relation to the Motion for Protective Order and Reply is not entirely reasonable because the hours expended in some areas are excessive and should be reduced.

Mr. Schatz performed the majority of the work on the Motion for Protective Order, expending 40.5 hours. (ECF No. 286-1 at 10.) Plaintiffs reduce Mr. Schatz's hours by fifty percent because Mr. Schatz is a recent graduate. (*Id*.; ECF No. 286-3 at 27-29.) Ms. Fernandes spent .4 hours processing documents filed with the Court, communicating with OneLegal regarding delivery of documents, and confirming delivery of the order. (ECF No. 286-3 at 27-28.) Plaintiffs assert in their Motion for Fees that Mr. Awerbuch spent 14.2 hours drafting and revising the Motion for Protective Order and Reply; however, after reviewing the billing records, it appears he actually spent only 5.2[4] hours editing the Motion for Protective Order and Reply. (*Id.* at 10, 26-29.) Ms. Kennedy spent a total of 16.3 hours finalizing and reviewing the Motion for Protective Order, and researching and drafting the Reply. (*Id.*) Mr. Furman spent .3 hours reviewing the Motion. (*Id.* at 27.) Mr.

---

[3]The Court found that Defendants' counsel's behavior during Mr. Halls' deposition "to be very concerning" because it included "multiple misstatements of the law in conjunction with repeated warnings to Mr. Halls that he may invoke the Fifth Amendment, after Mr. Anderson had already asked questions intended to establish the factual predicate for insider trading." (ECF No. 246 at 17.)

[4] Review of the billing records shows that the other 9 hours that Plaintiffs allege was spent on the Motion for Protective Order and Reply were actually spent on preparation for the hearing. The reasonableness of the 9 mischaracterized hours is considered below in the analysis of hours spent in preparation for and attendance at the hearing.

Arhangelsky spent .5 hours researching legal issues and ethical obligations regarding the Motion. (*Id.* at 26.) Finally, Mr. Emord spent 8.1 hours making edits to the Motion and Reply. (*Id.* at 26-29.)

Plaintiffs argue that they allocated time researching, drafting, and finalizing their Motion for Protective Order as efficiently as possible in an effort to avoid excessive fees. (ECF No. 286-1 at 11.) The Court generally agrees. Mr. Schatz, the biller with the lowest hourly rate, drafted the bulk of the Motion for Protective Order. (*See* ECF No. 286-3 at 26-27.) The billing entries reflect that Mr. Schatz wrote the first draft of the Motion for Protective Order with Mr. Emord's input. (*Id.* at 26.) The draft was then revised by more senior attorneys, Mr. Awerbuch and Mr. Arhangelsky. (*Id.* at 26.) Mr. Schatz continued to research and draft the Motion for Protective Order and once again received feedback from Mr. Awerbuch and Ms. Kennedy prior to finalizing the Motion. (*Id.* at 27.)

Plaintiffs were less efficient, however, in the drafting of their Reply brief. Plaintiffs' Reply brief is five pages long. (*See* ECF No. 185.) It is not a complex or lengthy document. Senior attorneys Ms. Kennedy, Mr. Awerbuch, and Mr. Emord spent 16.4 hours drafting the Reply before handing the draft off to Mr. Schatz for research and editing. (ECF No. 286-3 at 28.) After Mr. Schatz made revisions, the draft was passed back to senior attorneys Mr. Emord and Ms. Kennedy before Mr. Schatz again made revisions. (*Id.*) In total, Plaintiffs' counsel expended 33.5 hours of work on the five-page Reply: Ms. Kennedy spent 13.3 hours drafting, editing, and researching;[5] Mr. Emord spent 5.6 hours editing; Mr. Awerbuch spent 2.1 hours editing; and Mr. Schatz billed 12.5 hours researching, drafting, and editing. (*Id.*) The amount of hours senior attorneys expended on the Reply is excessive and should be reduced.

---

[5] In addition to this amount, the billing entries reflect that Ms. Kennedy billed .3 hours for unspecified work during this time; however, Youngevity does not seek reimbursement for this .3 hours. (*See* ECF No. 286-3 at 28.)

13

The Court finds that the request for attorney hours expended drafting and editing the Motion is reasonable. Counsel efficiently assigned the majority of the work to the lowest biller and Plaintiffs deducted unnecessary hours from their request. However, Ms. Fernandes' .4 hours spent processing and filing the Motion for Protective Order, communicating with OneLegal regarding delivery of documents, and confirming orders will be excluded because clerical work should not be included in hours requested by the moving party. *See Blair,* 2014 U.S. Dist. LEXIS 131228, at *16-17 (citing *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009)).

The Court finds that not all of the time spent drafting the Reply was reasonable. Plaintiffs' counsel could reasonably have drafted the Reply, a five-page document, in a more efficient manner. There is no justification offered for partners and senior attorneys expending excessive amounts of time editing and reviewing a short, uncomplicated pleading prepared by, or under the supervision of, other experienced attorneys. The Court finds that the 12.5 hours Mr. Schatz spent drafting the Reply is reasonable for a law clerk, who is a recent graduate and does not have extensive experience preparing pleadings. However, the Court reduces the time expended on the Reply by Ms. Kennedy to 10 hours; time spent by Mr. Emord to 1.5 hours; and time spent by Mr. Awerbuch to 1.5 hours.

In sum, the Court finds the following hours reasonable for work on the Motion and Reply: 20.25 hours billed by Mr. Schatz; 13 hours billed by Ms. Kennedy; 4.6 hours billed by Mr. Awerbuch; .3 hours billed by Mr. Furman; 4 hours billed by Mr. Emord; and .5 hours billed by Mr. Arhangelsky.

### 2. Hearing

The amount of fees Plaintiffs seek in relation to preparing for and attending the hearing is unreasonable. Mr. Awerbuch billed 19.6[6] hours for preparing for and attending

---

[6] Plaintiffs claim 10.6 hours in preparing for and attending the hearing, but after review of Plaintiffs' billing records, it is clear that Mr. Awerbuch spent 19.6 hours on these tasks. (*See* ECF No. 286-3 at 29) (9 hours of "prep for hearing tomorrow" in addition to 10.6 hours of "additional preparation for hearing

the hearing on the Motion for Protective Order, which Plaintiffs reduced by 2.6 hours for a total of 17 hours. (ECF No. 286-1 at 11.) Mr. Awerbuch's billing with respect to the hearing appropriately included travel time from Phoenix, Arizona to San Diego, California. (ECF No. 286-1 at 10.) Flight time takes approximately one hour. A generous total travel time including transportation to and from the airport is five hours. Mr. Awerbuch spent 1.5 hours attending the hearing.[7] Thus, approximately 10.5 hours (after the 2.6 hour deduction) is attributable to preparation for the hearing. (*See* ECF No. 286-3 at 29.)

The Court finds this unreasonable. Mr. Awerbuch is a fourth-year associate with experience in civil litigation. (ECF No. 286-1 at 7.) His experience presumably includes preparation for and participation at numerous court hearings. Although Plaintiffs' Motion presented some novel issues, it was, at heart, a motion for protective order. The totality of the briefing by both sides, exclusive of exhibits, was only 31 pages. Thus, in light of the routineness of a hearing on a motion for protective order, 17 hours spent on preparation, travel, and attendance is excessive for an attorney of Mr. Awerbuch's experience and skill. The Court finds that 12 hours of time (4 hours for research and preparation, 5 hours travel time, 1.5 hours attending) is reasonable for Mr. Awerbuch's preparation for and participation in the hearing.

### 3. Motion for Fees and Costs

Plaintiffs request $3,531.00[8] in attorneys' fees for preparation of the instant Motion for Fees. The Court finds that the fees and costs incurred by Plaintiffs in preparing the instant Motion for Fees are, for the most part, reasonable but are more appropriately reduced by a ten percent. Four attorneys representing Youngevity spent a total of 16.1

---

and attendance at hearing for protective order.") As previously noted, Plaintiffs misappropriate the missing 9 hours to Mr. Awerbuch's drafting and revision of the Motion and Reply. (*See id.* at 26-29.)

[7] Duration calculated as beginning 15 minutes before the hearing was scheduled to begin and through the time that the hearing ended. (*See* ECF No. 210 at 1 (transcript of the hearing start and end time); ECF No. 197 (minute order setting hearing for September 28, 2017 at 11:15 AM).)

[8] In arriving at this figure, Plaintiffs used billing rates different than those requested in its Motion for Fees. The accurate amount, using the billing rates set forth in the Motion for Fees, is $3,072.71.

hours preparing the 12-page Motion for Fees. (ECF No. 286-3 at 35-36.) Plaintiffs do not seek fees for meeting and conferring. (ECF No. 286-1 at 11.) A majority of the hours claimed were completed by Mr. Schatz, the law clerk. (ECF No. 286-3 at 35-36.) A motion for fees and costs is not a particularly difficult or complex motion but can require significant time and work depending on the complexity of the underlying litigation because it requires the preparer to sift through detailed records and determine what is eligible for recovery. This particular Motion for Fees details a total of 91.2 hours of work (of which 68.05 hours are requested). The Motion for Fees was adequately prepared, but the Court notes that the Motion is not absent of errors and inconsistencies.[9] Based upon the difficulty and quality of the application, a ten percent reduction of the 16.1 hours spent in preparation of the Motion for Fees is reasonable. Plaintiffs may recover 14.5 hours of time expended on the Motion for Fees as follows: .5 hours billed by Mr. Emord; 3.5 hours billed by Mr. Awerbuch; 1.5 hours billed by Mr. Furman; and 9 hours billed by Mr. Schatz.

### D. Expenses and Costs

Federal Rule of Civil Procedure 37(a)(5)(C) provides that if a motion is granted in part and denied in part, a court may apportion the reasonable expenses for the motion. Fed. R. Civ. P. 37(a)(5)(C). The Court granted Plaintiffs' request for reasonable attorneys' fees and costs in connection with the Motion for Protective Order in its Order Granting in Part and Denying in Part Plaintiffs' and Counterclaim Defendants' Motion for Protective Order and Sanctions. (ECF No. 246 at 18.) Wakaya was ordered to reimburse Youngevity for "its reasonable fees and costs incurred in researching, drafting, and finalizing Youngevity's motion to compel, as well as those incurred in preparing for and attending the September 28, 2017 hearing." (*Id.*)

---

[9] For example, Plaintiffs' Motion for Fees (ECF No. 286-1) does not match the hour breakdown shown on the billing records (ECF No. 286-3); the rates Plaintiff uses in its billing records differ from those requested; and it is unclear if Plaintiffs are requesting that a blended rate be used for Mr. Awerbuch or if his rates should be calculated based on time spent prior to his raise and time spent after his raise.

Plaintiffs request a total of $1,103.87 in costs associated with the Motion, Reply, and hearing. (ECF No. 286-1 at 12.) These costs include $531.01 for research on Westlaw related to the above-mentioned Motions; $82.90 for One Legal to serve courtesy copies; and $489.96 to Southwest Airlines for Mr. Awerbuch's flight to attend the hearing. (*Id*.) Plaintiffs successfully establish that their costs are reasonable and Defendants do not contest the costs award. Thus, the Court finds that the costs associated with the Motion, Reply, and hearing are fully recoverable.

## IV. CONCLUSION

For the reasons discussed above, Plaintiffs' Motion for Fees is **GRANTED** in part and **DENIED** in part. The Court concludes that Plaintiffs' costs and the following attorneys' fees were reasonably incurred: 42.65 hours spent on the Motion for Protective Order and Reply; 12 hours for participation in and preparation for the hearing; and 14.5 hours spent on the Motion for Fees. The breakdown of hours per individual is as follows:

| Name | Position | Hourly Rate Granted | Hours Expended Granted | Total Amount Granted |
|---|---|---|---|---|
| Jennifer Fernandes | Paralegal | $125 per hour | 0 | $0 |
| Bryan Schatz | Law Clerk | $135 per hour | 29.25 | $3,948.75 |
| Joshua Furman | Associate Attorney | $135 per hour | 1.8 | $243.00 |
| Eric Awerbuch | Associate Attorney (fourth year) | $273.13 per hour | 20.1 | $5,489.91 |
| Bethany Kennedy | Senior Associate (eight years) | $325 per hour | 13 | $4,225.00 |
| Peter Arhangelsky | Principal | $425 per hour | .5 | $212.50 |
| Jonathon Emord | Principal | $550 per hour | 4.5 | $2,475.00 |
| **TOTAL** | | | **69.15** | **$16,594.16** |

///

///

Plaintiffs are granted $16,594.16 in attorneys' fees related to the Motion for Fees, Motion for Protective Order, Reply, and hearing. Plaintiffs are granted costs of $1,103.87. Defendants are ordered to pay Plaintiffs the amount of **$17,698.03** on or before **June 4, 2018**.

**IT IS SO ORDERED.**

Dated: May 7, 2018

*Jill Burkhardt*
Hon. Jill L. Burkhardt
United States Magistrate Judge

18
16-cv-00704-BTM-JLB