UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOUNGEVITY INTERNATIONAL, CORP., et al.,<br><br>                             Plaintiffs,<br>v.<br>TODD SMITH, et al.,<br><br>                            Defendants. | Case No.: 16-cv-704 BTM (JLB)<br><br>**AMENDED REPORT AND RECOMMENDATION AND ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SANCTIONS AND FOR ORDER TO SHOW CAUSE FOR VIOLATIONS OF PROTECTIVE ORDER**<br>**[ECF Nos. 337, 344, 555]** |

      This **AMENDED** Report and Recommendation amends and supersedes the Court's June 29, 2015 Report and Recommendation (ECF No. 555). Before the Court is Defendants and Counterclaim Plaintiffs' Motion for Sanctions and for Order to Show Cause for Violations of Protective Order. (ECF Nos. 337, 344.)[1] Defendants and Counterclaim Plaintiffs Wakaya, et al. ("Wakaya") seek relief from multiple alleged violations of the Stipulated Protective Order (ECF No. 103) by counsel for Plaintiffs and Counterclaim Defendants Youngevity International, Corp., et al. ("Youngevity"). Youngevity opposes the motion. (ECF No. 407.) For the reasons set forth below, Wakaya's motion is **GRANTED in part and DENIED in part**.

///

///

---

[1] Defendants filed both a public, redacted version of their Motion for Sanctions and for Order to Show Cause for Violations of Protective Order (ECF No. 337) and a sealed, unredacted version of their Motion (ECF No. 344). This Order rules on both motions.

## I. BACKGROUND

The parties in this case have a fundamental mistrust of one another. Youngevity and Wakaya are both multi-level companies that rely on distributors to sell their products. Youngevity alleges, *inter alia*, that Wakaya impermissibly seduced its top distributors into leaving Youngevity and forming Wakaya, resulting in substantial losses to Youngevity. (ECF No. 269 at 50–55.)[2] Wakaya, in turn, alleges that Youngevity impermissibly and unilaterally cancelled contracts with former Youngevity distributors that joined Wakaya and engaged in other hostile tactics to stunt Wakaya's growth. (ECF No. 404 at 16–27.) These allegations have fostered a bitter hostility between these parties/business competitors. In the interest of maintaining the confidentiality of sensitive information exchanged between the parties, the Court entered a Stipulated Protective Order ("protective order") that allows the parties to designate information produced to the other side as "Confidential" or "Confidential—Attorney's Eyes Only." (ECF No. 103.)

In the discovery dispute currently before the Court, Wakaya alleges that Youngevity's counsel violated the protective order by disclosing information designated as "Confidential" or "Confidential—Attorney's Eyes Only" on six separate occasions. (ECF No. 420 at 3.) Specifically, Wakaya alleges that Youngevity violated the protective order by (1) publicly filing, in three separate pleadings, the start dates of two Wakaya distributors derived from a document that was designated as Attorney's Eyes Only ("AEO"); (2) disclosing the AEO start date of a distributor to deponents during their depositions; and (3) providing Plaintiff and Counterclaim Defendant Steve Wallach with an expert report designated as AEO, which he specifically references in his deposition testimony. (*Id.* at 3–5.)

///

///

---

[2] Citations to documents filed on the public docket of this action refer to the pagination assigned by the CM/ECF system.

**A. Public Filing of Start Dates From the Ambassador Report**

Many of Wakaya's allegations stem from Youngevity's disclosure of information contained in a document known as the "Ambassador Report." The Ambassador Report was created in response to Youngevity's discovery requests and includes the names and start dates of all Wakaya distributors who joined the company before June 1, 2016. (ECF No. 337-2 at 7.) Wakaya declares that the Ambassador Report was marked as AEO on every page and that the parties extensively negotiated the conditions under which it would be produced. (*Id*.) Youngevity does not dispute this characterization. Wakaya produced the Ambassador Report in response to Youngevity's first set of interrogatories on June 26, 2017. (ECF No. 337-1 at 5.)

On August 10, 2017, Plaintiff and Counterclaim Defendant Dr. Joel Wallach publicly filed a complaint in a Washington State superior court that included the start date of Wakaya distributor, and former Youngevity distributor, Vivian Wayman. (ECF No. 337-2 at 16, 20.) The complaint alleges that Ms. Wayman illegally recorded her conversations with Dr. Wallach between March 23 and 26, 2016 at Wakaya's instruction. (*Id*. at 20–24.) Youngevity's counsel assisted Dr. Wallach's counsel in drafting the state court complaint and admits to providing Ms. Wayman's start date, sourced from the Ambassador Report. (ECF No. 407-1 at 3.)

On October 4, 2017, Wakaya filed an *ex parte* motion under the All Writs Act seeking to enjoin the Washington state court proceedings and arguing, *inter alia*, that the complaint contained Ms. Wayman's start date which was only available in the AEO Ambassador Report. (ECF No. 213.) Wakaya declares that during a meet-and-confer conference on October 5, 2017, Youngevity argued that the Ambassador Report was incorrectly designated under the protective order and that it would move to de-designate the Report. (ECF No. 337-2 at 7–8.)[3] Youngevity never moved to de-designate the

---

[3] Youngevity does not object to this characterization of the parties' meet and confer efforts.

Ambassador Report. At a hearing on Wakaya's motion on October 11, 2017, District Judge Barry Ted Moskowitz stated that any requests for a remedy relating to violations of the protective order should be raised with the undersigned. (ECF No. 407-4 at 34.) The parties contacted the Court with the dispute, and on October 30, 2017, the parties participated in a telephonic conference with the Court regarding the alleged violations of the protective order. (ECF No. 262.) The parties participated in a second telephonic conference with the Court regarding these issues on November 16, 2017. (ECF No. 280.)

On December 6, 2017, Youngevity publicly filed two motions for summary judgment that contained the start date of Wakaya distributor Total Nutrition Inc. ("TNT"). (ECF Nos. 297-1, 298-1.) Wakaya states that this information could only have come from the Ambassador Report. (ECF No. 337-1 at 7.) Youngevity does not dispute that this information came from the Ambassador Report. Wakaya objected to the public filing of this information, and Youngevity withdrew the motions on December 11, 2017. (ECF No. 323.)[4] Youngevity's counsel also communicated TNT's start date on September 18, 2017 and September 19, 2017 during depositions when Youngevity representatives were present. (ECF No. 407-3 at 12, 24–25.)[5] Youngevity did not inform Wakaya that it would be disclosing information from the Ambassador Report at that time, and neither party designated those portions of the depositions as confidential. (*See id*.)

**B. Disclosure of Mr. Bergmark's Expert Report**

In addition to the above violations, Wakaya asserts that Youngevity disclosed the entirety of the expert report of Brian Bergmark, which was designated as AEO at the time of its disclosure, to Steve Wallach. (ECF No. 337-1 at 8–9.) Of particular concern to Wakaya is the confidential sales figures the report contains.[6] Mr. Wallach was deposed as

---

[4] In its Notice of Withdrawal, Youngevity states that it disputes that the motions contained confidential information. (ECF No. 323 at 2.)

[5] This information was communicated during the depositions of Wakaya's Rule 30(b)(6) designee and TNT's Rule 30(b)(6) designee. (*Id*. at 4, 19.)

[6] On October 11, 2017, Mr. Bergmark's report was re-designated from "Confidential—Attorney's Eyes Only" to "Confidential." (ECF No. 337-1 at 8.) It is not clear from the record whether Wakaya's sales

4

16-cv-704 BTM (JLB)

Youngevity's Rule 30(b)(6) designee on September 19, 2017. (ECF No. 337-2 at 38.) During the first day of his deposition, Mr. Wallach was asked about Youngevity's claimed damages for its Lanham Act claims. (*Id*. at 42–43.) He testified that those damages would be "wholly dependent on the sales of Wakaya's products," but that he was "not privy to the sales data of Wakaya." (*Id*. at 42–44.) Mr. Wallach repeatedly referred to Mr. Bergmark's report in his testimony, but noted that the report contained some redactions. (*Id*.) On the second day of testimony, Mr. Wallach gave a dollar estimate of Youngevity's claimed Lanham Act damages, and by extension, of Wakaya's sales through June 2017. (*Id*. at 50–54.) Mr. Wallach testified that this information was based on discussion with "[c]ounsel through the expert . . . I haven't spoken to the expert directly about that." (*Id*. at 52.)

Wakaya alleges that Mr. Wallach could only have calculated such an accurate estimate of Wakaya's sales if he was privy to Wakaya's confidential sales data. (ECF No. 337-1 at 11–12.) On October 30, 2017, the Court held a telephonic conference on the issue. (ECF No. 262.) Despite extensive discussion of the issue, Youngevity did not communicate to the Court that it had provided Mr. Wallach with a redacted copy of the Mr. Bergmark's report. The Court ordered Youngevity's counsel and Mr. Wallach to provide Wakaya with declarations explaining how Mr. Wallach calculated his damages estimate. (*Id*.) Mr. Wallach's declaration states that his estimate was based on information he learned while attending dozens of depositions in this case and his knowledge of Wakaya's relative size and market penetration, Youngevity's lost revenues, the amount and type of products Wakaya distributes, and the list price of Wakaya's products. (ECF No. 337-2 at 65–66.) Mr. Wallach declared that his "estimate was not based on any specific sales data I received from any attorney." (*Id*. at 66.) Counsel's declaration states that he "did not before, during, or after [Mr. Wallach's] deposition reveal to Steve Wallach any of

---

figures in the report were also re-designated to confidential as Wakaya refers to these figures as "AEO information" in its motion. (*See id*. at 11–12.)

Wakaya Perfection LLC's sales data produced by Wakaya in this case and marked by Wakaya Perfection LLC as 'CONFIDENTIAL – FOR COUNSEL ONLY.'" (*Id.* at 70.) In its opposition to this motion, Youngevity admits for the first time that it provided Mr. Wallach with Mr. Bergmark's report, but asserts that this disclosure was permissible because it redacted Wakaya's sales data from the report prior to providing it to Mr. Wallach. (ECF No. 407 at 3; ECF No. 407-2 at 5, 43.)

## II. LEGAL STANDARDS

Wakaya seeks an order: (1) striking the portions of Steve Wallach's Rule 30(b)(6) testimony that were "sourced from an AEO document"; (2) prohibiting Youngevity from introducing any additional testimony as to its Lanham Act damages, except through the testimony of Mr. Bergmark; (3) requiring Youngevity to show cause as to why it and its counsel should not be referred to Judge Moskowitz for a finding of civil contempt; (4) directing Youngevity to pay Wakaya the reasonable attorney's fees and costs related to this motion and "all other preliminary proceedings related to these protective order violations"; and (5) requiring Youngevity's counsel to refrain from any further violations of the protective order. (ECF No. 337-1 at 12.)

### A. Rule 37 Sanctions

Rule 37(b)(2)(A) provides that "[i]f a party . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders." Such orders may include, *inter alia*, prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; striking pleadings in whole or in part; and treating as contempt of court the failure to obey any order, except an order to submit to a physical or mental examination. Fed. R. Civ. P. 37(b)(2)(A).

Rule 37(b)(2)(C) provides that "[i]nstead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure unless the failure was

6

16-cv-704 BTM (JLB)

substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

The rule "grants courts the authority to impose sanctions where a party has violated a protective order issued pursuant to Rule 26(f)."[7] *O'Connor v. Uber Techs., Inc.*, No. 13-CV-03826-EMC, 2017 WL 3782101, at *4 (N.D. Cal. Aug. 31, 2017) (quoting *Life Tech. Corp. v. Biosearch Tech., Inc.*, No. C-12-00852 WHA (JCS), 2012 WL 1600393, at *8 (N.D. Cal. May 7, 2012)); *Avago Techs., Inc. v. IPtronics Inc.*, No. 5:10-CV-02863-EJD, 2015 WL 3640626, at *3 (N.D. Cal. June 11, 2015). *See also Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 784 (9th Cir. 1983) (affirming assessment of attorney's fees as sanction for violation of stipulated protective order).

Rule 37 "authorizes the district court to impose a wide range of sanctions if a party fails to comply with a discovery order." *United States v. Nat'l Med. Enterprises, Inc.*, 792 F.2d 906, 910 (9th Cir. 1986) (citing *United Artists Corp. v. La Cage Aux Folles, Inc.*, 771 F.2d 1265, 1270–71 (9th Cir. 1985); *Wyle v. R.J. Reynolds Industries, Inc.*, 709 F.2d 585, 589 (9th Cir. 1983)). "The choice among the various sanctions [authorized by Rule 37(b)] rests within the discretion of the district court." *United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365, 1369 (9th Cir. 1980). However, a court's authority is "subject to certain limitations: (1) the sanction must be just; and (2) the sanction must specifically relate to the particular claim at issue in the order." *Nat'l Med. Enterprises, Inc.*, 792 F.2d at 910.

### B. Stipulated Protective Order

The protective order was entered for the purpose of ensuring that sensitive material, such as trade secrets and other confidential commercial information, exchanged with opposing parties, is protected as confidential. (ECF No. 103 at 1.) The protective order

---

[7] "Rule 26(f) addresses the development of a discovery plan and references 'any other orders that should be entered by the court under Rule 26(c),' the rule addressing protective orders." *Harmston v. City & Cty. of San Francisco*, No. C 07-01186SI, 2007 WL 3306526, at *9 (N.D. Cal. Nov. 6, 2007) (quoting Fed. R. Civ. P. 26(f)(3)).

provides that each party may designate information produced or disclosed in this litigation as "Confidential" or "Confidential—Attorney's Eyes Only." (*Id*. at 2.) "All Confidential Information[8] designated as 'CONFIDENTIAL' or 'CONFIDENTIAL - FOR COUNSEL ONLY' must not be disclosed by the receiving party to anyone other than those persons designated within this order and must be handled in the manner set forth below and, in any event, must not be used for any purpose other than in connection with this litigation, ***unless and until such designation is removed either by agreement of the parties, or by order of the Court***." (*Id*. at 4) (emphasis added.) "Information designated 'CONFIDENTIAL - FOR COUNSEL ONLY' must be viewed only by counsel (as defined in paragraph 3)[9] of the receiving party, and by independent experts under the conditions set forth in this Paragraph." (*Id*. at 4.) Before any documents designated as "Confidential" or "Confidential—Attorney's Eyes Only" are "filed with the Court for any purpose, the party seeking to file such material must seek Court permission to file the material under seal." (*Id*. at 5.)

The protective order provides a specific procedure for challenging a party's confidentiality designation. "At any stage of these proceedings, any party may object to a designation of the materials as Confidential Information. The party objecting to confidentiality must notify, in writing, counsel for the designating party of the objected-to materials and the grounds for the objection. If the dispute is not resolved consensually between the parties within seven (7) days of receipt of such a notice of objections, the objecting party may move the Court for a ruling on the objection. The materials at issue

---

[8] "Confidential Information" is defined as "information contained or disclosed in any materials, including documents, portions of documents, answers to interrogatories, responses to requests for admissions, trial testimony, deposition testimony, and transcripts of trial testimony and depositions, including data, summaries, and compilations derived therefrom that is deemed to be Confidential Information by any party to which it belongs." (*Id*. at 2.)

[9] "Counsel" is defined as "outside counsel of record, and other attorneys, paralegals, secretaries, and other support staff employed in the law firms identified below: Emord & Associates, P.C.; Parr Brown Gee & Loveless; Reese Poyfair & Richards; and Van Dyke Law." (*Id*. at 2.)

8

must be treated as Confidential Information, as designated by the designating party, ***until the Court has ruled on the objection or the matter has been otherwise resolved***." (*Id.* at 6) (emphasis added.)

## III. ANALYSIS

Youngevity's repeated violations of the protective order merit sanctions. Its disclosures represent a reckless disregard for the confidentiality of Wakaya's information and are precisely the type of disclosures the protective order was designed to protect against.

### A. Timeliness of Wakaya's Meet and Confer Efforts

As an initial matter, Youngevity urges the Court to deny Wakaya's motion because it failed to timely meet and confer on the disclosure of Mr. Bergmark's expert report, the public filing of Ms. Wayman's start date, and the disclosures of TNT's start date. (ECF No. 407 at 6–10.) In light of the gravity of the allegations against Youngevity and the parties' extensive engagement with the Court on these issues, the Court has determined that it is appropriate to address Wakaya's motion on its merits.[10]

### B. Public Filing of Information From the Ambassador Report

#### 1. Ms. Wayman's Start Date

Youngevity impermissibly filed information designated as AEO in its Washington state court complaint. Youngevity admits that it publicly filed Ms. Wayman's start date, but argues that the distributor start dates in the Ambassador Report were improperly designated as confidential. (ECF No. 407 at 5.) The protective order provides a specific procedure for challenging a confidentiality designation. A party may object to a confidentiality designation by "notify[ing], in writing, counsel for the designating party of

---

[10] Wakaya first raised concerns about violations of the confidentiality provisions of the protective order on October 4, 2017 with the filing of its *ex parte* motion under the All Writs Act. (ECF No. 213.) On October 11, 2017, the alleged violations were discussed with Judge Moskowitz at a hearing on this motion. (ECF No. 407-4 at 34.) The undersigned also held two conferences on the alleged violations of the protective order on October 30, 2017 and November 16, 2017 and required Youngevity to provide sworn declarations to Wakaya. (ECF Nos. 262, 280.)

the objected-to materials and the grounds for the objection." (ECF No. 103 at 6.) Youngevity failed to avail itself of this remedy and cannot *post hoc* justify its public disclosure of information designated as AEO by arguing that the information should not have been designated as confidential in the first place.

Youngevity also argues that its disclosure was proper because Wakaya failed to maintain the confidentiality of the information. (ECF No. 407 at 5–7.) Youngevity's counsel declares that he "believed that, because Wakaya Perfection had affirmatively advertised Ms. Wayman as an ambassador [on its website] in April 2016, that Wakaya Perfection did not consider the date she signed up as an ambassador to be confidential information." (ECF No. 407-1 at 3.) This argument rings hollow. First, every page of the Ambassador Report was marked as "Confidential—Attorney's Eyes Only." (ECF No. 337-2 at 7.) Second, the parties extensively negotiated the terms under which this document would be produced. (*Id*.) Lastly, Youngevity does not allege that Wakaya published Ms. Wayman's *start date* in April 2016, only that Wakaya announced that she was an ambassador at that time. Ms. Wayman's start date is of significance. Dr. Wallach alleges that Ms. Wayman was acting as a Wakaya agent at the time of the alleged recordings. (ECF No. 337-2 at 20–24.) The alleged recordings occurred between March 23 and 26, 2016, before Wakaya made Ms. Wayman's association with the company public. (*Id*.) Thus, Ms. Wayman's exact start date supports Dr. Wallach's allegations in a manner that Wakaya's public announcement of her affiliation with the company in April 2016 does not.[11]

---

[11] Youngevity also argues that the information was not confidential because (1) Wakaya publicly filed Ms. Wayman's start date in its *ex parte* motion to enjoin the Washington state court action (ECF No. 407 at 6), (2) Ms. Wayman shared her status as a Wakaya ambassador with two Youngevity distributors in February and March 2016 (ECF No. 535-3 at 6, 8), and (3) on March 19, 2018, Ms. Wayman produced documents in the Washington state action not marked as confidential that revealed her ambassador start date (ECF No. 535-2 at 3). These arguments do not establish that Ms. Wayman's start date was public knowledge or that Youngevity had knowledge of Ms. Wayman's start date independent of the AEO Ambassador Report at the time that Youngevity disclosed this information. Wakaya's publication occurred after, and in response to, Youngevity's public disclosure of this information. (*See* ECF No. 213-

The protective order explicitly provides that information designated confidential "must not be used for any purpose ***other than in connection with this litigation***, unless and until such designation is removed either by agreement of the parties, or by order of the Court." (ECF No. 103 at 4) (emphasis added.) The public filing of Ms. Wayman's start date is clearly prohibited by the terms of the protective order. *Id. See also On Command Video Corp. v. LodgeNet Entm't Corp.*, 976 F. Supp. 917, 921 (N.D. Cal. 1997).

### 2. TNT's Start Date

Youngevity does not dispute Wakaya's assertion that Youngevity obtained TNT's start date from the Ambassador Report. Nor does Youngevity contest the fact that it publicly filed TNT's start date and referred to this date during depositions. Instead, Youngevity argues that the disclosure was permissible because (1) counsel for all parties had agreed to a clawback arrangement for their motions for summary judgment that covered such disclosures, and (2) Youngevity believed the information was public as Wakaya failed to designate portions of depositions in which this date was discussed as confidential. (ECF No. 407 at 7–8.)

The Court finds Youngevity's *post hoc* justifications unpersuasive, particularly in light of the other disclosures discussed in this Order. The parties' clawback arrangement appears to only cover the inadvertent filing of confidential expert testimony, not the testimony of Wakaya's and TNT's Rule 30(b)(6) deponents. (*See* ECF No. 407-3 at 37–38.)[12] Furthermore, Wakaya's failure to designate as confidential testimony discussing

---

1.) Ms. Wayman's email to two independent distributors in 2016 and her document production a few months ago in a separate action does not make this information public knowledge. Further, and most importantly, at the time Youngevity made the disclosures at issue, Youngevity's only source for this information was the AEO Ambassador Report. The protective order specifically provides that "[p]rior knowledge must be established by pre-production documentation." (ECF No. 103 at 8.) Youngevity admits to extracting Ms. Wayman's start date from an AEO document and providing this information to counsel in a separate action at a time when Youngevity could not supply this information by any other means. Accordingly, Youngevity's arguments are without merit.

[12] In the December 6, 2017 emails between counsel that Youngevity cites to as establishing a clawback arrangement, Wakaya's counsel asks whether Youngevity considers expert testimony relating to expert reports that were previously marked confidential, but had since been de-designated, to be confidential

TNT's start date does not amount to an agreement to de-designate this information as public under the protective order. (*See* ECF No. 103 at 4) (information designated confidential must be treated as such "unless and until such designation is removed either by agreement of the parties, or by order of the Court") The Court credits Youngevity's prompt withdrawal of the documents containing TNT's start date, but cannot overlook these disclosures, as it is part of a pattern in which Youngevity treats material designated as AEO carelessly.

**C. Disclosure of Mr. Bergmark's Expert Report**

Youngevity admits that it provided Steve Wallach with a copy of Mr. Bergmark's expert report, which was designated as AEO at the time of its disclosure. (ECF No. 407 at 8, 10.) Youngevity argues that this disclosure was nonetheless permissible because it redacted Wakaya's sales data from the report before sending it to Mr. Wallach. (*Id*.) Wakaya maintains that Youngevity's counsel expressly represented that the Bergmark report was not disclosed to Mr. Wallach in any form and that nothing in the report was verbally conveyed to Mr. Wallach. (ECF No. 420 at 4.) Youngevity's counsel denies that he ever represented that he did not provide Mr. Wallach with any version of the report, but asserts he instead communicated to Wakaya that he never provided Mr. Wallach with any *sales information* Wakaya designated as AEO. (ECF No. 407-1 at 5.)

The Court finds it is unnecessary to resolve this factual dispute as Youngevity admits that it provided a redacted copy of the expert report to Mr. Wallach. However, even accepting Youngevity's final statement on this matter as true, counsel's lack of candor with opposing counsel and this Court is concerning. Wakaya and the Court invested significant time and resources on this issue and at no time prior to its opposition to this motion did

---

testimony. (EF No. 407-3 at 38.) Youngevity's counsel responds that he does not think such testimony would be confidential if the testimony were directly linked to the de-designated report, but "[i]f after filing anything is concerning, I will let you know and expect the same courtesy in response." (*Id*. at 37.) Wakaya responded, "That sounds reasonable." (*Id*.) TNT's start date was not revealed during the testimony of an expert or derived from an expert report.

12

16-cv-704 BTM (JLB)

Youngevity inform Wakaya or the Court that it had provided Mr. Wallach with a redacted copy of the expert report.

Youngevity's provision of the AEO report violates the protective order, regardless of whether significant information was redacted. Youngevity may not unilaterally determine what information it deems confidential after the entirety of the report was designated as "Confidential—Attorney's Eyes Only" under the protective order. As discussed above, the protective order clearly provides a procedure for challenging a party's confidentiality designation. If Youngevity disagreed with Wakaya's designation of the report as "Confidential—Attorney's Eyes Only" it should have followed the procedure set forth in the protective order. *See supra* Section III.B.1. To hold otherwise would strip the protective order of the security it affords parties that disclose sensitive information to their opponents.

**D. Sanctions**

Youngevity admits that it publicly disclosed information from an AEO document on multiple occasions in violation of the protective order. Youngevity also admits that it provided an expert report designated as AEO to Mr. Wallach. As a result of these failures to abide by the protective order, sanctions are appropriate.

With respect to Wakaya's request for attorney's fees and costs, the Court rules Youngevity is liable to Wakaya under Rule 37(b)(2) for the costs and attorney's fees resulting from Youngevity's violations of the protective order. *See Falstaff Brewing Corp.*, 702 F.2d at 784.[13] Wakaya's request for reasonable fees and costs is **GRANTED**. Youngevity shall pay for the reasonable expenses, including attorney's fees, Wakaya incurred in (a) the making of this motion; (b) meeting and conferring on the violations of the protective order discussed in this order;[14] and (c) participating in the conferences Judge

---

[13] Moreover, this is not the first time Youngevity has willfully violated the protective order in this case. (*See* ECF No. 362 at 20–21.)

[14] The Court does not typically award attorney's fees for meet and confer efforts under Rule 37(a). In this case, the Court awards fees under Rule 37(b)(2)(C), which provides that a court may award reasonable

13

Burkhardt held on this matter.[15] On or before **July 28, 2018**, Wakaya shall provide Youngevity with a detailed fee and cost invoice(s) supporting the amount of reasonable attorney's fees and costs incurred by Wakaya. The parties shall promptly and thoroughly, and by no later than **August 10, 2018**, meet and confer over any disputed fees and costs incurred by Wakaya. If the parties are able to resolve any disputes with respect to the amount of reasonable attorneys' fees and costs, Youngevity is to pay that amount no later than **August 24, 2018**. If the parties are unable to resolve their dispute(s) through the meet and confer process, then Wakaya is granted leave to file, on or before **August 24, 2018**, an *ex parte* motion supported by sufficient evidence in support of the amount of reasonable fees and costs owed by Youngevity to Wakaya in connection with this motion and its participation in conferences with this Court.[16] The deadline for Youngevity to file an opposition to Wakaya's motion for fees and costs, if any, shall be **September 7, 2018**.

With respect to Wakaya's request for sanctions in the form of: (1) striking the portions of Steve Wallach's Rule 30(b)(6) testimony that were "sourced from an AEO document"; (2) prohibiting Youngevity from introducing any additional testimony as to its Lanham Act damages, except through the testimony of Mr. Bergmark; (3) requiring Youngevity to show cause as to why it and its counsel should not be referred to Judge Moskowitz for a finding of civil contempt; and (4) requiring Youngevity's counsel to refrain from any further violations of the protective order (ECF No. 337-1 at 12), the Court **RECOMMENDS** that these requests for sanctions be **DENIED without prejudice**. The Court extensively engaged with the parties on this issue, lesser sanctions are available and

---

attorney's fees "caused by the failure" to obey a discovery order. Youngevity's violations of the protective order were unjustifiable and caused Wakaya to expend resources in meeting and conferring on the issue that it would not have otherwise incurred. Accordingly, Wakaya is entitled to reimbursement of these costs.

[15] Wakaya is not entitled to fees and costs incurred for the October 11, 2017 hearing before Judge Moskowitz.

[16] Wakaya has not yet presented the Court with sufficient evidence to enable the Court to consider all the factors necessary in setting reasonable fees under both Fed. R. Civ. P. 37 and pertinent case law. *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008).

appropriate, and on the record of the instant motion, Wakaya fails to demonstrate specific injury or prejudice resulting from Youngevity's violations of the protective order. *See* Fed. R. Civ. P. 37(b)(2); *Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365, 1369 ("The choice among the various sanctions [authorized by Rule 37(b)] rests within the discretion of the district court."); *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993) (contempt sanctions intended to compensate a party for injuries caused by the contempt "must be limited to [the recipient's] 'actual loss' for 'injuries which result from the noncompliance.'") (quoting *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1366 (9th Cir. 1987)). Further, Wakaya incorporated the instant motion into in its recently filed Motion for Terminating Sanctions. (ECF No. 552-1 at 23.) In that motion, Wakaya requests terminating, evidentiary, and monetary sanctions on the same, as well as broader, grounds as the instant motion. (*See id.*)[17] If appropriate, these requests may be revisited in a ruling on that the newly filed motion.

## IV. CONCLUSION

For the reasons stated above, The Court **ORDERS** that Wakaya's motion for sanctions and an order to show cause (ECF No. 337) is **GRANTED in part** as follows: Wakaya is entitled to the reasonable attorney's fees and costs caused by Youngevity's failure to obey the protective order, as outlined above.

The Court further **RECOMMENDS** that Wakaya's requests for further sanctions be **DENIED without prejudice** as set forth above. **IT IS ORDERED** that no later than **July 16, 2018**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation." **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **July 24, 2018**. The parties are advised that failure to file objections within the specified time may waive the right to

---

[17] This Report and Recommendation and Order does not take into consideration or rule on Wakaya's pending Motion for Sanctions (ECF No. 552).

15

16-cv-704 BTM (JLB)

raise those objections on appeal of the Court's order. *See Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

Dated: July 2, 2018

Hon. Jill L. Burkhardt
United States Magistrate Judge