UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Youngevity International, et al.,<br><br>                             Plaintiffs,<br><br>v.<br><br>Todd Smith, et al.,<br><br>                             Defendants. | Case No.: 16-cv-704-BTM-JLB<br><br>**ORDER GRANTING COUNTERCLAIM DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO COUNTERCLAIM PLAINTIFFS' EIGHTH CLAIM FOR RELIEF**<br><br>**[ECF NO. 432]** |

Presently before the Court is Counterclaim Defendants' motion for summary judgment as to Counterclaim Plaintiffs' eighth claim for relief for tortious interference with prospective economic advantage. (ECF No. 432 ("Countercl. Defs.' MSJ VIII").) For the reasons discussed below, the Court grants Counterclaim Defendants' motion.

## I. STANDARD

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing

substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 323 (1986).

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proving at trial. Id. at 322-23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to demonstrate that a genuine issue of disputed fact remains. *Celotex*, 477 U.S. at 314. The nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." Anderson, 477 U.S. at 256. Rather, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

The court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary

judgment." *Anderson*, 477 U.S. at 255.

## **II. DISCUSSION**

Counterclaim Plaintiffs Blake Graham ("Graham") and Total Nutrition Team, Inc. ("TNT") (collectively, "Graham/TNT") bring a claim against Counterclaim Defendants Youngevity, Steve Wallach ("S. Wallach"), and David Briskie ("Briskie") for allegedly interfering with Graham/TNT's prospective economic advantage in the sale of certain assets owned by Graham/TNT, namely a website, www.wallachonline.com, and a phone number, 1-800-Wallach (collectively, "the TNT Assets").

Graham and Todd Smith ("T. Smith") are former Youngevity distributors who founded TNT in 1997. (Second Am. Countercl., 7:22-26.) Through TNT, Graham and T. Smith operated Youngevity distributorships. (Id.) As part of TNT operations, Graham created a number of tools, including the TNT Assets, to promote Youngevity products. (Id. at 8:2-6). On or about December 31, 2015, T. Smith sold his interest in TNT to Graham, leaving Graham to operate the TNT Youngevity distributorships. (Id. at 13:8-9.) In or about February 2016, Youngevity summarily suspended the TNT distributorships and began to withhold TNT's commission payments. (Id. at 14:16-17.) Youngevity then terminated the TNT distributorships in March 2016. (Id. at 14:17-18.)

On December 9, 2016, Judge Lorenz ruled that TNT could sell the TNT Assets upon several conditions. (Order Granting in Part and Denying in Part Defs.' Mot. [Doc. 59] for Clarification or Recons., 3:5-12.) Shortly thereafter, Graham/TNT initiated communication over e-mail with Sam Steele ("S. Steele"), a Youngevity distributor, about the sale of the TNT Assets. (Countercl. Pls.' Opp'n to Countercl. Defs.' MSJ VIII, ECF No. 474, Ex. 4 32-34.) S. Steele expressed interest in purchasing the TNT Assets but wrote that he would need to discuss it with S. Wallach before any sale in order to determine how the TNT Assets would be permitted to be used in the future. (Id. at 30.)

In January 2017, another Youngevity distributor, Jonny Steele ("J. Steele"), on behalf of himself and S. Steele (collectively, the "Steele brothers"), sent an email to S. Wallach explaining their interest in the TNT Assets and describing how they would envision utilizing the assets to further their Youngevity business. (Countercl. Pls.' Opp'n to Countercl. Defs.' MSJ VIII, Ex. 5 37.) S. Wallach responded that Youngevity would not approve of the use of the TNT Assets by Youngevity distributors under Youngevity standing policies because it would create "an unfair advantage" if one distributor were to have a "Corporate sounding URL." (Id. at 36-37.) J. Steele then replied that he and S. Steele followed up with Graham/TNT to communicate that they would be "unable to continue [their] pursuit of the wallachonline domain." (Id. at 36.)

Based on these facts, Counterclaim Defendants move for summary judgment as to Counterclaim Plaintiffs' eighth claim for relief for tortious interference with prospective economic advantage.

To prevail on a claim of tortious interference with prospective economic advantage, a plaintiff must prove: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Kor. Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003).

It is not necessary to prove that the defendant acted with the specific intent of disrupting the plaintiff's prospective economic relationship. *Id.* at 1154. Instead, the intent element of a tortious interference with prospective economic advantage claim requires a plaintiff to plead that the defendant "knew that the interference was certain or substantially certain to occur as a result of its action." *Id.* In addition, a plaintiff must also prove that the defendant engaged in an independently

wrongful act. *Id* at 1154.  In other words, the defendant's acts must be "wrongful apart from the interference itself." *Id.*  An act is independently wrongful when it "is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Id.* at 1159.

Counterclaim Defendants argue that Counterclaim Plaintiffs' claim fails as a matter of law because Counterclaim Plaintiffs have failed to show evidence of interference with a prospective economic relationship that resulted in harm to an economic relationship, and an independently wrongful act.

### A. Interference in a Prospective Economic Relationship

Counterclaim Defendants argue that Counterclaim Plaintiffs' claim fails because Graham/TNT cannot demonstrate that there was a bona fide purchaser willing to pay a set price to buy the TNT Assets.  However, a plaintiff need not show to that degree of specificity that a prospective economic relationship with a third party existed. Rather, a showing of a relationship "with the probability of future economic benefit to the plaintiff" is sufficient. *Kor. Supply Co.*, 29 Cal. 4th at 1153. Counterclaim Plaintiffs have submitted evidence that Graham/TNT reached out over e-mail to inform a third party, S. Steele, that Graham/TNT intended to sell the TNT Assets. (Countercl. Pls.' Opp'n to Countercl. Defs.' MSJ VIII, Ex. 4 32-34.) The facts establish that S. Steele was "very interested" in the purchase of the TNT Assets. (Id. at 30.)  Graham/TNT and S. Steele even discussed the value of the assets as part of a larger discussion of price.  (Id. at 30-34)

Moreover, the plaintiff must show that defendant had knowledge of the relationship. *Kor. Supply Co.*, 29 Cal. 4th at 1153.  Counterclaim Plaintiffs have established that Counterclaim Defendant S. Wallach knew about the relationship between Counterclaim Plaintiffs and a third party because the Steele brothers informed S. Wallach of their interest in the purchase of the TNT Assets. (Countercl. Pls.' Opp'n to Countercl. Defs.' MSJ VIII, Ex. 5 36-37.)

In addition, a plaintiff must prove that the defendant acted intentionally to

disrupt the relationship. *Kor. Supply Co.*, 29 Cal. 4th at 1153. For this element, it is enough for plaintiff to show that defendant "knew that the interference was certain or substantially certain to occur as a result of its action." *Id.* at 1154. Here, Counterclaim Plaintiffs have shown that S. Wallach interfered in the relationship between Graham/TNT and the Steele brothers when he told the Steele brothers that Youngevity would not approve of their usage of the TNT Assets to promote Youngevity products, rendering the TNT Assets worthless to the Steele brothers. (Countercl. Pls.' Opp'n to Countercl. Defs.' MSJ VIII, Ex. 5 36-37.) Thus, Counterclaim Plaintiffs have established facts that Counterclaim Defendant S. Wallach acted intentionally to disrupt the relationship between Graham/TNT and the Steele brothers and that S. Wallach knew that his actions were certain or substantially certain to result in an interference in that relationship.

Taking these facts in the light most favorable to Counterclaim Plaintiffs, the Court cannot say as a matter of law that a reasonable jury would not find that Counterclaim Defendant S. Wallach interfered in an economic relationship between Counterclaim Plaintiffs and a third party with respect to Graham/TNT's attempt to sell the TNT Assets to the Steele brothers.

### B. Actual and Proximate Causation

Counterclaim Defendants argue that Counterclaim Plaintiffs' claim fails because Counterclaim Plaintiffs cannot prove that Counterclaim Defendants' conduct caused harm that actually or proximately resulted in any damages. However, Counterclaim Plaintiffs have established facts that lead the Court to believe that a reasonable jury could find that Counterclaim Defendants' interference in the relationship between Graham/TNT and the Steele brothers actually disrupted that relationship and proximately caused economic harm to Counterclaim Plaintiffs.

Based on the e-mail correspondence between Graham and S. Steele, it is clear that S. Steele was very interested in entering into an agreement with

Graham/TNT to purchase the TNT Assets. (Countercl. Pls.' Opp'n to Countercl. Defs.' MSJ VIII, Ex. 4 30.) Moreover, S. Steele indicated that he would need to have discussions with S. Wallach before any agreement could move forward. (Id.) Finally, after S. Wallach's communication to the Steele brothers, explaining that Youngevity would not support the Steele brothers' desired usage of the TNT Assets, the Steele brothers wrote that they would not be continuing with the purchase of the TNT Assets. (Countercl. Pls.' Opp'n to Countercl. Defs.' MSJ VIII, Ex. 5 36-37.) Thus, Counterclaim Plaintiffs sufficiently establish actual disruption by showing that the sale of the TNT Assets was unsuccessful, since the Steele brothers ended the discussion about the sale with Graham/TNT after communicating with S. Wallach. Moreover, Counterclaim Plaintiffs satisfy the proximate cause element, because it appears likely that but for S. Wallach's interference, Graham/TNT would have succeeded in selling the TNT Assets to the Steele brothers.

Construing these facts in the light most favorable to Counterclaim Plaintiffs, the evidence creates at least a genuine issue of material fact as to whether Counterclaim Defendant S. Wallach actually disrupted an economic relationship between Counterclaim Plaintiffs and a third party and whether that disruption proximately caused economic harm.

**C. Independently Wrongful Act**

Counterclaim Defendants also argue that Counterclaim Plaintiffs' claim fails because Counterclaim Plaintiffs cannot prove that Counterclaim Defendants' conduct constituted an independently wrongful act. Counterclaim Plaintiffs put forth two theories why Counterclaim Defendants' interference was independently wrongful: First, Counterclaim Defendant's interference constitutes a breach of contract; second, Counterclaim Defendants' actions violate California Business and Professions Code § 17200 ("UCL").

Counterclaim Plaintiffs' first theory must fail as a matter of law, because even

if S. Wallach's interference in the relationship between Graham/TNT and S. Steele does constitute a breach of contract, a breach of contract cannot constitute the "wrongful" conduct required for the tort. *See JRS Prods., Inc. v. Matsushita Elec. Corp. of Am.*, 115 Cal. App. 4th 168, 181 (2004). California courts are clear that "a breach of contract claim cannot be transmuted into tort liability by claiming that the breach interfered with the promisee's business." *Id.* at 183 (citing *Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.*, 47 Cal. App. 4th 464, 479 (1996)).

Counterclaim Plaintiffs' second theory also fails. Counterclaim Plaintiffs have alleged a violation of the UCL based in part on Counterclaim Defendants' interference with the sale of the TNT Assets. (Second Am. Countercl., 35:22-24.) Counterclaim Plaintiffs allege that Briskie and S. Wallach informed the prospective "buyer [of the TNT assets] that they would not approve the sale if any proceeds from the sale would flow to either Graham or [T.] Smith." (Id. at 31:10-12). However, even if this action does constitute a violation under the UCL, Counterclaim Plaintiffs fail to establish any facts that support this allegation. When the Steele brothers asked S. Wallach if the TNT Assets could be used by them to promote Youngevity products, S. Wallach responded that Youngevity would not approve of the use of the TNT Assets by Youngevity distributors under Youngevity standing policies because it would create "an unfair advantage" if one distributor were to have a "Corporate sounding URL." (Countercl. Pls.' Opp'n to Countercl. Defs.' MSJ VIII, Ex. 5 36-37.)

Counterclaim Plaintiffs suggest that this justification for not supporting the sale of the TNT Assets was mere pretext because as of January 24, 2018, Counterclaim Defendants have allowed Youngevity distributors to operate other corporate sounding URLs. Whether this is true, however, is irrelevant, because that fact alone does not demonstrate that S. Wallach withheld approval of the sale of the TNT Assets in order to prevent the flow of proceeds to Graham/TNT or

T. Smith. Without facts establishing that S. Wallach's communication with the Steele brothers was anything more than an attempt by Youngevity to protect its business model of multiple distributorships, there is no evidence that supports the claim that S. Wallach's actions constitute unfair competition under the UCL.

The Court acknowledges that Counterclaim Plaintiffs do provide some evidence that with respect to the sale of Graham/TNT's ownership interest in Heirloom Enterprises to S. Steele and Michael Weeks, Counterclaim Defendants may have interfered with acts that are independently wrongful. However, Counterclaim Plaintiffs have limited their eighth claim for relief to Counterclaim Defendants' alleged tortious interference in the sale of the TNT assets. (Second Am. Countercl., 30:27-31:18.) The Court does not find this evidence sufficient to raise a genuine issue of material fact with respect to their eighth claim for relief.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Counterclaim Defendants' motion for summary judgment as to Counterclaim Plaintiffs' eighth claim for relief for tortious interference with prospective economic advantage (ECF No. 432).

**IT IS SO ORDERED.**

Dated: September 28, 2018

Barry Ted Moskowitz, Chief Judge
United States District Court

9

16-cv-704-BTM-JLB