UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| Youngevity International, et al., Plaintiffs, v. Todd Smith, et al., Defendants. | Case No.: 16-CV-704-BTM-JLB<br><br>**ORDER DENYING PLAINTIFFS' AND DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AS TO PLAINTIFFS' SEVENTH CAUSE OF ACTION [ECF Nos. 308, 324]** |
|---|---|

Presently before the Court are Plaintiffs' and Defendants' motions for summary judgment as to Plaintiffs' seventh cause of action for misappropriation of likeness. (ECF Nos. 308 ("Defs.' MSJ VII"), 324 (Pls.' MSJ VII")). For the reasons discussed below, the Court denies both motions.

## I. STANDARD

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir.

1997). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 323.

On cross motions for summary judgment, a court "evaluate[s] each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *ACLU v. City of Las Vegas*, 466 F.3d 784, 790–91 (9th Cir. 2006) (internal citations omitted). The burdens faced by the opposing parties vary with the burden of proof they will face at trial. When the moving party bears the burden of proof at trial, "'his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.'" *Indep. Cellular Tel., Inc. v. Daniels & Assocs.*, 863 F. Supp. 1009, 1113 (N.D. Cal. 1994) (quoting Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487–488 (1984)). By contrast, when the moving party does not bear the burden of proof at trial, "the [moving party] need only point to the insufficiency of the [nonmoving party's] evidence to shift the burden to the [nonmoving party] to raise genuine issues of fact as to each claim by substantial evidence. *Id.* If the nonmoving party then fails to raise a genuine issue of fact, the court should grant summary judgment in favor of the moving party. *Id.*

The court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

## II. DISCUSSION

Plaintiffs bring a claim against Defendants Total Nutrition Team ("TNT") and Blake Graham for misappropriation of likeness in violation of California Civil

Code section 3344. Plaintiffs seek both monetary damages and a permanent injunction prohibiting Defendants Graham and TNT from making any further commercial use of Dr. Joel Wallach's name and likeness. On December 1, 2016, Judge Lorenz granted Plaintiffs a preliminary injunction prohibiting Defendants from making further commercial use of Defendants' assets which include the number 1–800–WALLACH and websites www.myyoungevity.com and www.wallachonline.com, or a sale of the assets that is noncompliant with the guidance provided by the Court in its December 9, 2016 order. (ECF Nos. 58, 63.) The injunction, however, is narrower than Plaintiffs' claim as it also includes alleged uses of Dr. Wallach's likeness on yteamtools.com, signage outside the TNT office, and in a post-card that was distributed to consumers.

There is no dispute that Defendants had Plaintiffs' consent to use Dr. Wallach's and Youngevity's likeness throughout their business relationship. However, Plaintiffs revoked their consent on March 21, 2016 when Plaintiffs terminated their business relationship and demanded cessation of Defendants' use of Plaintiffs' likeness. (Pls.' MSJ VII, Ex. B, 72–74.) Defendants continued to use Dr. Wallach's likeness until the Court issued the preliminary injunction in December 2016. (Pls.' MSJ VII, Ex. D, 109:1–110:1.)

To succeed on a claim for misappropriation of likeness, a plaintiff must prove: "(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury." *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1138 (9th Cir. 2006); Cal Civ. Code § 3344. Additionally, a plaintiff must prove a knowing use by the defendant as well as a direct connection between the alleged use and the commercial purpose. *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001).

**A. Defendants' MSJ**

Defendants move for summary judgment as to Plaintiffs' seventh cause of

action arguing that Plaintiffs' claim fails as a matter of law.

### 1. Single Publication Rule

First, Defendants renew their argument that Plaintiffs' claim is barred by California's single publication rule as codified in Civil Code section 3425.3[1]. "The single-publication rule limits tort claims premised on mass communications to a single cause of action that accrues upon the first publication of the communication, thereby sparing the courts from litigation of stale claims when an offending book or magazine is resold years later." *Yeager v. Bowlin*, 693 F.3d 1076, 1080–81 (9th Cir. 2012). Within the context of websites, the Ninth Circuit has held that "once a defendant publishes a statement on a website, the defendant does not republish the statement by simply continuing to host the website." *Id.* at 1082. "[A] statement on a website is not republished unless the statement itself is substantively altered or added to, or the website is directed to a new audience." *Id.*

Defendants first raised this argument before Judge Lorenz in their opposition to Plaintiffs' motion for a preliminary injunction. (ECF No. 51, 16.) Judge Lorenz found the argument unpersuasive because "Defendants' position would require a plaintiff to bring a claim before having a legal basis to do so." (ECF No. 58, 4.) The Court agrees with Judge Lorenz's conclusion, as the cause of action did not accrue until March 21, 2016 when Plaintiffs revoked their consent to Defendants' use of Dr. Wallach's likeness. *See Howard Jarvis Taxpayers Ass'n v. City of La Habra*, 25 Cal. 4th 809, 815 (2001) ("[A] cause of action accrues upon the occurrence of the last element essential to the cause of action." (internal citations omitted)). Therefore, the Court also rejects

---

[1] California Civil Code section 3425.3 states: "No person shall have more than one cause of action for damages for . . . invasion of privacy . . . founded upon any single publication or exhibition or utterance, such as one issue of a newspaper or book or magazine or any one presentation to an audience or any one broadcast over radio or television or any one exhibition of a motion picture. Recovery in any action shall include damages for any such tort suffered by the plaintiff in all jurisdictions."

Defendants' argument and finds that Plaintiffs have satisfied their obligation in demonstrating lack of consent.

### 2. *Misappropriation of the 1-800 Number*

Second, Defendants argue that Plaintiffs cannot claim misappropriation of likeness arising from Defendants' use of the "1-800-925-5524" number because they have ceased referring to the number as "1-800-WALLACH," and only advertise the number by its digits. Defendants have not cited to any case holding that a plaintiff cannot premise his/her claim of misappropriation on the alleged use of a business telephone number. The Court's independent research has also not revealed such a case. Instead, Defendants rely on *Los Defensores, Inc. v. Gomez*, 223 Cal. App. 4th 377, 396 (2014), to argue that Plaintiffs cannot claim that the use of the number misappropriates Dr. Wallach's likeness because they have failed to set forth evidence of "secondary meaning."

In *Los Defensores*, the respondent brought a claim against appellants under the common law for unfair competition for their use of telephone numbers that closely resembled respondent's toll-free number. *Id.* at 383. The court concluded that claims of unfair competition may be founded on the use of business telephone numbers, provided that facts sufficient to establish unfair competition are present. *Id.* at 395. Unfair competition most commonly involves the existence of a secondary meaning, which the court defined as a "mental association in the buyer's mind between the mark used in connection with the product in a single source of origin—and a deceptive scheme that exploits that secondary meaning." *Id.* at 396 (internal citations omitted). The Court noted that the respondent's claim was not premised on its ownership or control of the phone number, but rather on its attempt to prevent deceptive conduct aimed at consumers by exploiting a numerical number after it had acquired a "secondary meaning." *Id.* at 397. The court reasoned that "[t]he gist of such an action is not the appropriation and use of another's trademark, but the fraudulent injury to and

appropriation of another's trade." *Id.*

The Court finds the case instructive. Though Plaintiffs' claim here is one for misappropriation of likeness, and not unfair competition, the aim is similar— "to prevent others from misappropriating the economic value generated . . . through merchandising of the 'name, voice, signature, photograph, or likeness of the [publicity holder]." *Timed Out, LLC v. Youbian, Inc.*, 229 Cal. App. 4th 1001, 1006 (2014). After all, Defendants originally developed these tools to take advantage of Dr. Wallach's goodwill while promoting the sale of Youngevity's products. Plaintiffs have submitted sufficient evidence to at least create a genuine issue of material fact as to whether the 1-800 number has acquired a secondary meaning that is synonymous and inexplicably intertwined with Dr. Wallach's name and likeness. Notably, Defendants have used the 1-800 number for about seventeen years, building on the goodwill of TNT within the Youngevity network of distributors. (Defs.' MSJ VII, Ex. A, ¶¶ 8–20.) Thus, Plaintiffs' claim as to the 1-800 number does not fail as a matter of law.

### 3. Damages

Lastly, Defendants argue that Plaintiffs' claim fails as a matter of law because they cannot demonstrate any injury resulting from the alleged misappropriation of Dr. Wallach's name and likeness.

California Civil Code § 3344 provides that a party in violation of the statute "shall be liable to the injured party or parties in an amount equal to the greater of [$750] or the actual damages suffered by him or her as a result of the unauthorized use," and shall disgorge "any profits from the unauthorized use that are attributable to the use and are not taken into account in computing the actual damages."

At a minimum, Plaintiffs have demonstrated that Dr. Wallach suffered harm which § 3344(a)'s minimum statutory damages were intended to remedy. *See Miller v. Collectors Universe, Inc.*, 159 Cal. App. 4th 988, 1005 (2008).

Dr. Wallach testified that he received hundreds of calls asking whether he had purchased Wakaya. (Pls.' Opp'n to Defs.' MSJ VII, ECF No. 363–2, Ex. B, 50:4–24.) He further states that the association greatly disturbed him because he has dedicated his career to improving public health, and believes that Wakaya's products are very unhealthy and would not want consumers to believe he is endorsing those products. (Pls.' Opp'n to Defs.' MSJ VII, ECF No. 363–1, ¶ 5.) Additionally, Plaintiffs have submitted enough evidence to create a genuine issue of material fact as to whether Plaintiffs have suffered commercial loss. Plaintiffs cite to Mr. Brian Bergmark's damages report. (*See* ECF No. 340–2, Ex. JJ.) Though Mr. Berkmark does not specifically address Plaintiffs' misappropriation of likeness claim, the report still reveals that Youngevity failed to meet its projected revenue goals precisely during the time in which Defendants continued to make use of Dr. Wallach's likeness. At this stage, viewing the facts in the light most favorable to Plaintiffs, the Court cannot find as a matter of law that Plaintiffs could not prove actual damages.

Accordingly, Defendants' motion for summary judgment is denied.

**B. Plaintiffs' MSJ**

Plaintiffs also move for summary judgment on this claim seeking to permanently enjoin TNT from using Dr. Wallach's name or likeness in commerce and for damages resulting from the misappropriation. Plaintiffs argue that they have provided enough evidence as to each element that no reasonable juror would find for Defendants.

*1. Use of Dr. Wallach's Name or Likeness*

As to the first element, Plaintiffs argue that up until December 2016, Defendants were making commercial use of Dr. Wallach's name on wallachonline.com, yteamtools.com, myyoungevity.com, on signage outside the TNT office building, in a post-card, and through the phone number 1-800-WALLACH. (Pls.' MSJ VII, Ex. B, F, H, 351). However, there are genuine issues

7

16-CV-704-BTM-JLB

of fact that exist as to these alleged uses. As noted above, there is a dispute as to whether the 1-800-925-5224 number, without any reference to Dr. Wallach's name, has acquired "secondary meaning" so as to constitute a "use" of his name or likeness. Thus, at least as to the 1-800 number, the court cannot conclude as a matter of law that a jury would not find for Defendants.

### 2. Lack of Consent

With regard to whether Defendants lacked consent to use Dr. Wallach's likeness, as already discussed by the Court, Defendants' argument that the single publication rule bars this claim is unpersuasive. Defendants' flawed argument would permit them to perpetually use Dr. Wallach's name and likeness even though Plaintiffs have unequivocally revoked their consent. The undisputed facts show that as of March 21, 2016, Defendants lacked consent to use Dr. Wallach's name or likeness. (Pls.' MSJ VII, Ex. B, 72–74.) Nevertheless, there is a genuine issue of fact at least as to the post-cards. Particularly because it is unclear when Defendants published those postcards. Defendants argue that those postcards were created during a time when they had consent to use Dr. Wallach's likeness. (Def.s' MSJ VII, Ex. A, ¶ 41.) Plaintiffs argue that Defendants distributed the post-card in late March, but do not specify whether this was before or after they revoked their consent. Therefore, genuine issues of fact exist as to whether Defendants lacked consent to use Dr. Wallach's likeness on the post-cards.

### 3. Damages

As discussed above, Defendants challenge Plaintiffs' proof of commercial damages. Plaintiffs rely on Mr. Bergmark's report to argue that because Youngevity failed to meet its projected revenue during the time in which Defendants misappropriated Dr. Wallach's name or likeness, they have met their burden to prove commercial damages. However, at this stage, the Court must view the facts in the light most favorable to Defendants. Therefore, based on Mr.

Bergmark's report, the Court cannot find that no reasonable juror would find for Defendants.

Therefore, given the numerous genuine issues of fact, the Court denies Plaintiffs' motion for summary judgment, as these issues should be left to a jury.

### III. CONCLUSION

For the reasons discussed above, the Court denies both Defendants' motion for summary judgment (ECF No. 308) and Plaintiffs' motion for summary judgment (ECF No. 324).

**IT IS SO ORDERED**.

Dated: 10/10/2018

_____
Barry Ted Moskowitz, Chief Judge
United States District Court