Kyle Van Dyke (171186)
kvandyke@vandykelaw.net
VAN DYKE LAW
701 B Street, Suite 176
San Diego, CA 92012
Telephone: (619) 798-3597

Jonathan O. Hafen (admitted pro hac vice, Utah #6096)
jhafen@parrbrown.com
Jonathan R. Schofield (admitted pro hac vice, Utah #8742)
jschofield@parrbrown.com
Michael S. Anderson (admitted pro hac vice, Utah #13976)
manderson@parrbrown.com
Cynthia D. Love (admitted pro hac vice, Utah #14703)
clove@parrbrown.com
PARR BROWN GEE & LOVELESS, P.C.
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone:  (801) 532-7840
Facsimile:  (801) 532-7750

D.J. Poyfair (admitted pro hac vice, Colorado #14266)
djpoyfair@yahoo.com
REESE POYFAIR RICHARDS, PLLC
1275 East Fort Union Boulevard, Suite 115
Cottonwood Heights, Utah 84047
Telephone:  (801) 981-8281

*Attorneys for Defendants and Counterclaim Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOUNGEVITY INTERNATIONAL CORP., et al., | Case No. 3:16-CV-00704-BT-JLB |
| Plaintiffs, | **DEFENDANTS' RESPONSE TO PLAINTIFF'S SUPPLEMENTAL BRIEFS [ECF NOS. 600, 601]** |
| TODD SMITH, et al., | Judge:  Hon. Barry T. Moskowitz |
| Defendants. | Magistrate Judge:  Jill L. Burkhardt |
| ------------------------------------------------- | PER CHAMBERS, NO ORAL ARGUMENT |
| TODD SMITH, et al., | |
| Counterclaim Plaintiffs, | |

v.

YOUNGEVITY INTERNATIONAL, Inc.,
et al.,

                    Counterclaim Defendants.

Youngevity has attempted to string together a handful of text messages and calls, seeking to prop up a false conspiracy narrative. But these messages and calls show only that Gardner, Cloward, Barney, and others were friends, unhappy at Youngevity due to its culture, and anxious to find other employment away from Youngevity. Youngevity still has not identified any evidence showing that Andreoli breached his Employment Agreement or fiduciary duties to Youngevity. In fact, Youngevity's supplemental briefing has not even substantiated (and cannot) its own allegations that Andreoli instructed Youngevity employees to resign, recruited Youngevity employees to Wakaya, or improperly participated in creating Wakaya or its compensation plan. Further, Youngevity still has not shown (and cannot) that any specific conduct directly and proximately caused any damages. Count IV and Count IX of Youngevity's Fourth Amended Complaint ("4AC") should therefore be dismissed. [ECF No. 269 (4AC).]

## I.  Andreoli Did Not Breach the Employment Agreement.

Youngevity's first brief argues Andreoli breached his Employment Agreement by (1) instructing Barney and Gardner to resign from Youngevity and (2) participating in calls regarding Wakaya's compensation plan. Both arguments fail for the reasons below.

First, Youngevity has failed to produce any evidence showing Andreoli instructed or induced either Barney or Gardner to resign. Youngevity instead supports its argument by cherry picking and blending various communications out of context. Though Andreoli spoke with Cloward and Gardner on October 26, 2015, they were all business associates at Youngevity at that time. [ECF No. 600 Ex. B; ECF No. 317-3 at 49, 53; Andreoli Dep. (ECF No. 303-3 Ex. 1) at 51:14-16.] There is nothing unusual or exceptional about such calls. Indeed, having attempted to recast conspiracy and competition claims into a breach of contract, Youngevity still has no evidence showing Andreoli encouraged anyone to resign from Youngevity during these calls. *Aguilar v. Atl. Richfield Co.*, 24 P.3d 493, 506-15 (Cal. 2001) (considering only "inferences *reasonably* drawn" from the evidence, as ambiguous evidence insufficient support for unlawful conspiracy and competition

claims (emphasis added)). Youngevity next points to October 27, 2015 text messages between Cloward and Barney that simply (and jokingly) say Barney's resignation should "use less than 10 expletives per Bill." [ECF No. 600-2, Ex. C.] Far short of *inducing* or *instructing* Barney to resign, Andreoli may have been aware that Barney wanted to quit but had no affirmative duty to (and could not) stop it. And Barney's letter specifically identifies the reasons for her resignation, including "coarsely dysfunctional and unprofessional communication patterns" by Youngevity's senior management. [*Id.* Ex. D.] Youngevity last references an October 23, 2015 meeting between Cloward, Casperson, and Todd Smith. [ECF No. 600-2, Ex. E.] Similar to Youngevity's other "evidence" here, Andreoli neither attended nor participated in that meeting. [*See id.*] Although Gardner texted Casperson that Andreoli "asked why I didn't go with you guys," nothing in the record shows Andreoli wanted, encouraged, or instructed Gardner to attend. [*Id.*] And several days later, Gardner told Cloward that Andreoli "asked [her] to wait until tomorrow" to resign, showing only that Andreoli sought to *delay* her resignation, not *induce* it. [*Id.* Ex. F.] Even if Andreoli merely knew employees were resigning, it is insufficient support for Youngevity's claim that Andreoli breached the Employment Agreement by *instructing* those resignations.

Second, Youngevity argues that Andreoli violated his Employment Agreement by participating in conference calls about Wakaya's compensation plan in November 2015. [ECF No. 600 at 2.] Youngevity further alleges Andreoli arranged and engaged in these calls and shared information regarding these calls with others. [*See id.*] But nothing in Andreoli's Employment Agreement prohibits him from investigating other employment opportunities or commenting to or advising others for no pecuniary gain or interest. *See, e.g.*, *Sunbelt Rentals, Inc. v. Head & Engquist Equip., L.L.C.*, No. 00-CVS-10358, 2002 WL 31002955, at *9 (N.C. Super. July 10, 2002) (granting summary judgment for defendants where one still employed by former employer "provid[ed] advice" about potential opportunities to other who had left the company). Such allegations are merely

preparations to compete. *See Allergia, Inc. v. Bouboulis*, No. 14-cv-1566, No. 2016 WL 4447522, at *4 (S.D. Cal. May 19, 2016); *Aerovironment, Inc. v. McAllister*, No. 56-2016-00465460, 2016 WL 8294068, at 1 (Cal. Supr. Nov. 23, 2016) (holding that "courts routinely allow an employee to 'make preparations to compete' prior to their departure from one employer, even going so far as to allow an individual to set up a competing enterprise while employed"). In fact, Andreoli could *not* have been competing with Youngevity at any time during his employment because Wakaya did not begin operating until March 2016—months after Andreoli left Youngevity. [Dep. Of Todd Smith (ECF No. 303-3 Ex. 2) at 64:19-20; Andreoli Dep. (ECF No. 303-3 Ex. 1) at 51:14-16.] Although Andreoli spent his own time on Wakaya-related discussions in November 2015, Youngevity has no evidence that Andreoli stopped devoting "time, effort, skill, and attention to the affairs of [Youngevity]" or failed to "faithfully perform his duties." [ECF No. 293-3 at 74.] Under California law, the Employment Agreement cannot be read so narrowly as to prohibit the conduct now contested here by Youngevity.

Finally, even assuming Youngevity could show some breach, it has failed to identify any evidence of damages proximately linked to any alleged breach. Other than conclusory allegations [*see, e.g.*, 4AC (ECF No. 269) ¶ 282 (alleging "lost Youngevity employees" and "lost revenues to the competing venture he helped create and promote, Wakaya.")], Youngevity has offered no evidence showing with any reasonable degree of certainty that it suffered any actual economic harm as a direct and proximate result of any alleged breach of the Employment Agreement. CAL. CIV. CODE § 3301 (damages from breach must be "clearly ascertainable in both their nature and origin"); *In re Checkmate Staffing, Inc.*, 359 Fed. Appx 736, 738 (9th Cir. 2009) (requiring that damages be proximately caused by alleged breach and proven with reasonable certainty); *Aguilera v. Pirelli Armstrong Tire Co.*, 223 F.3d 1010, 1015 (9th Cir. 2000) ("Under California law, a breach of contract claim required a showing of appreciable and actual damage.").

Consequently, Youngevity's contract claim against Andreoli should be dismissed.

## II.   Andreoli Did Not Breach His Fiduciary Duties.

Youngevity's second brief argues that Andreoli breached his fiduciary duties by (1) recruiting Youngevity executives to join Wakaya and (2) assisting in Wakaya's creation. Once again, both of these arguments fail for the reasons below.

As a preliminary matter, there is no dispute that Andreoli resigned as Youngevity's president on October 28, 2015, and that Youngevity publicly named Dave Briskie as its new president on November 2, 2015. [Andreoli Dep. (ECF No. 303-3 Ex. 1) at 51:14-16; Andreoli Decl. (ECF No. 322-3 Ex. A) ¶ 1.] Therefore, because Andreoli was no longer Youngevity's president after resigning, he did not owe any fiduciary duties to Youngevity after that date. *Thomas Weisel Partners LLC v. BNP Parabas*, No. C 07-6198 MHP, 2010 WL 1267744, at *8 (N.D. Cal. Apr. 1, 2010) ("[A]n individual's fiduciary duty toward his employer continues until either the corporation to which the duty is owed ceases to exist or the fiduciary resigns."); *see also GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.,* 99 Cal. Rptr. 2d 665, 673 (Ct. App. 2000), *overruled on other grounds by, Reeves v. Hanlon*, 95 P.3d 513 (Cal. 2004) ("To divest himself or herself of [a fiduciary] duty, the officer must resign the office.").

But even assuming Andreoli did owe fiduciary duties to Youngevity in November 2015, none of his actions would constitute a breach. First, as discussed above, Andreoli did not recruit (or induce or instruct) Youngevity employees to join Wakaya. *See supra* Section I. Second, contrary to Youngevity's conclusory (but still vague) assertions that Andreoli "[a]ssist[ed] in Wakaya's [c]reation," Andreoli did not breach any fiduciary duties by helping "launch Wakaya" or "develop Wakaya's comp. plan." [ECF No. 601 at 2.] Andreoli instead only provided comments and advice on his own time to Smith and others at Wakaya. The law is clear that neither seeking employment nor preparing to

compete is a breach of fiduciary duty.[1] *See Science Accessories Corp. v. Summagraphics Corp.*, 425 A.2d 957 (Del. 1980) (preparations to compete not a breach of fiduciary duty); *accord Maryland Metals, Inc. v. Metzner*, 382 A.2d 564 (Md. 1978) (conducting negotiations, applying for a loan, and buying land not a breach); *Mercer Mgmt. Consulting, Inc. v. Wilde*, 920 F. Supp. 219 (D.D.C. 1996) (finding no breach of fiduciary duty for incorporating a competing business, arranging for office space, inquiring about benefit packages, investigating computer systems, meeting with an accountant, meeting with clients they would later solicit on behalf of their competing business, and attending meetings at which confidential information was discussed). And at the time of Andreoli's communications, *Wakaya was not operational*. [Dep. Of Todd Smith (ECF No. 303-3 Ex. 2) at 64:19-20.] Wakaya did not begin selling products until March 2016, and Andreoli did not join Wakaya until much later on June 1, 2016. [*Id.*; Andreoli Dep. (ECF No. 303-3 Ex. 1) at 97:23-98:9.] Therefore, even if Andreoli were to have created Wakaya's compensation plan himself (which he did not), such conduct is *at most* preparing to compete as permitted by applicable law—not a breach of any fiduciary duty owed to Youngevity.

Finally, even assuming Youngevity could identify some breach of Andreoli's fiduciaries duties, Youngevity has failed to identify any evidence of actual damages *caused by* Andreoli's conduct. *Science Accessories*, 425 A.2d at 965 (rejecting plaintiffs' breach of fiduciary duty claim because it "failed to prove that defendants' conduct had caused it to suffer 'any actual damages'"). There is no evidence of any causal link between Andreoli's alleged actions and any quantifiable harm to Youngevity. [*See*

---

[1] Delaware law applies under the internal affairs doctrine. *See* CAL. CORP. CODE § 2116; *Patriot Sci. Corp. v. Korodi*, 504 F. Supp. 2d 952, 957 (S.D. Cal. 2007) (rejecting a choice of law provision in favor of internal affairs doctrine). But even under California law, seeking employment or preparing to create a competitive corporation does not breach fiduciary duties. *Mamou v. Trendwest Reports, Inc.*, 165 Cal. App. 4th 686, 719 (2008).

Defendant's Memorandum in Opposition to Summary Judgment on Count IX (ECF No. 361) at 5 (the arguments of which are incorporated herein by reference).] Simply pointing to a publicly traded company's decreased overall revenues as proof of damages falls far short of Youngevity's burden of proof.

Youngevity's claim therefore fails as a matter of law and should be dismissed.

## **CONCLUSION**

For the reasons stated above and in his original briefing on these claims, Andreoli respectfully requests that this Court enter summary judgment in his favor, dismiss Youngevity's Count IV and Count IX asserted in the 4AC, and deny the related motions for summary judgment filed by Youngevity.

DATED this 31st day of December 2018.

PARR BROWN GEE & LOVELESS

/s/ *Cynthia D. Love*
Jonathan O. Hafen
Jonathan R. Schofield
Michael S. Anderson
Cynthia D. Love

REESE POYFAIR RICHARDS
D.J. Poyfair

VAN DYKE LAW
Kyle Van Dyke

*Attorneys for Defendants and Counterclaim Plaintiffs*