UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Youngevity International, et al.,<br><br>　　　　　　　　　Plaintiffs,<br><br>v.<br><br>Todd Smith, et al.,<br><br>　　　　　　　　　Defendants. | Case No.:  16-CV-704-BTM-JLB<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S FOURTH CAUSE OF ACTION**<br><br>**[ECF Nos. 293, 303]** |

Presently before the Court are Plaintiff Youngevity's and Defendant William Andreoli's and Defendant Dave Pitcock's cross motions for summary judgment as to Plaintiff's fourth cause of action for breach of contract against Defendants William Andreoli and Dave Pitcock.  (ECF Nos. 293 ("Pl.'s MSJ IV"), 303 ("Defs.' MSJ IV").)  For the reasons discussed below, the Court denies Plaintiff's motion for summary judgment and denies in part and grants in part Defendants' motion for summary judgment.

1

# I. STANDARD

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 323.

On cross motions for summary judgment, a court "evaluate[s] each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *ACLU v. City of Las Vegas*, 466 F.3d 784, 790–91 (9th Cir. 2006) (internal citations omitted). The burdens faced by the opposing parties vary with the burden of proof they will face at trial. When the moving party bears the burden of proof at trial, "'his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Indep. Cellular Tel., Inc. v. Daniels & Assocs.*, 868 F. Supp. 1009, 1113 (N.D. Cal. 1994) (quoting Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487–488 (1984)). By contrast, when the moving party does not bear the burden of proof at trial, "the [moving party] need only point to the insufficiency of the [nonmoving party's] evidence to shift the burden to the [nonmoving party] to raise genuine issues of fact as to each claim by substantial evidence. *Id.* If the nonmoving party then fails to raise a genuine issue of fact, the court should grant summary judgment in favor of the moving party. *Id.*

The court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment."  *Anderson,* 477 U.S. at 255.

## II. DISCUSSION

Both Plaintiff Youngevity and Defendants William Andreoli and Dave Pitcock move for summary judgment on Plaintiff's fourth cause of action for breach of contract.

In California, the elements of a cause of action for breach of contract are "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff."  *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011) (citation omitted).  Neither Defendant disputes that the second element, plaintiff's performance, has been met.  Therefore, the motions turn on the other three elements.

### A. Defendants' MSJ

#### 1. Defendant William Andreoli

Defendant Andreoli moves for summary judgment arguing that there is no evidence to support that he breached the contracts he entered into with Youngevity.  Mr. Andreoli also argues that he is not bound by any non-competition agreement with Youngevity.

##### a. Employment Agreement

On August 13, 2011, as part of the sale of Mr. Andreoli's company, FDI, to Youngevity, Mr. Andreoli and Youngevity entered into an Employment Agreement.  (See ECF No. 269 ("Fourth Amended Complaint" or "FAC"), 54:26-55:2; see also FAC Ex. 39 ("Employment Agreement").)  Among other obligations under the Employment Agreement, Mr. Andreoli promised to (1) "devote his full working time, attention, and energy to [Youngevity]," (2) abstain from "engag[ing]

in any other business activity if pursued for gain, profit, or other pecuniary advantage without [Youngevity's] prior written consent," (3) refrain from "disclos[ing]" any "confidential information" including customer information, to any third party, (4) avoid using any of Youngevity's trade secrets to compete with Youngevity, and (5) disclose promptly any new ideas, discoveries, or improvements that he developed to Youngevity. (Employment Agreement, §§ 7, 9(a), 9(b), 10.)

Mr. Andreoli argues that he did not breach the Employment Agreement and that at most, any activity of Mr. Andreoli could be considered preparation to compete. (See Def.'s MSJ IV, 3:27-4:3 (citing *Bancroft-Whitney Co. v. Glen*, 64 Cal. 2d 327, 345-46 (1966).) Whether Mr. Andreoli's activities were in preparation to compete, however, is not relevant to the inquiry of breach of contract. While the Supreme Court of California has held that "[t]he mere fact that [an] officer makes preparations to compete before he resigns his office is not sufficient to constitute a breach of *[fiduciary] duty*," *Bancroft-Whitney*, 64 Cal. 2d at 345-46 (emphasis added), an officer's preparation to compete may nonetheless violate his contractual obligations. *See Stokes v. Dole Nut Co.*, 41 Cal. App. 4th 285, 293-96 (1995) (holding that an employer had sufficient cause to terminate employees' employment contract when employees made preparations to compete with employer). Thus, whether Mr. Andreoli's activities amount to breach of contract hinges on the particular obligations within the Employment Agreement.

Plaintiff Youngevity has presented sufficient evidence to establish a genuine issue of material fact as to whether Mr. Andreoli breached the Employment Agreement. Though a substantial amount of the evidence does nothing more than demonstrate that Defendant Andreoli communicated with Todd Smith about Wakaya without disclosure to Youngevity, Plaintiff points to several instances from which a jury could infer that Mr. Andreoli failed to devote

4

his full working time, attention, and energy to Youngevity, engaged in other business activity for pecuniary advantage without Youngevity's consent, and failed to disclose new ideas or improvements that he developed to Youngevity. (See Employment Agreement, §§ 7, 10; see also ECF No. 375 (Pl.'s Opp'n to Defs.' MSJ IV), 2.)

For example, Plaintiff has submitted evidence of Mr. Andreoli and Mr. Smith negotiating a business agreement with MXI, Corp., a competitor Youngevity had previously attempted to buy out. (See Pl.'s MSJ IV, Ex. S.) Plaintiff also offers evidence that Mr. Andreoli attended a meeting in Utah with other Youngevity officers and distributors, including Mike Randolph, Patti Gardner, Brytt Cloward, and others, to discuss Wakaya. (See id. at Ex. V. 176:13-181:2; Ex. W 56:11-58:15; Ex. Y 136:5-138:17, 144:17-147:2.) Moreover, there is disputed evidence that Andreoli introduced former Youngevity VPs Mike Randolph, Mike Kolinski, Brytt Cloward, and Patti Gardner to Wakaya and that they subsequently left Youngevity to join Wakaya between October and December 2015. (See id. at Ex. W 50:20–51:1, 55:19–56:13; Ex. X 24:19–25:6, 30:17–21, 32:4–34, 76:17–77:7; Ex. Y 17:25–18:2, 52:13–21, 54:6–14, 59:4–60:19, 163:6–7; Ex. Z 5:4–5, 21:10–16, 49:11–23, 54:17–55, 142:21–45:16, 91:1–2; see also ECF No. 600 ("Pl.'s Suppl. Br."), Ex. E; Ex. F.) Lastly, there is evidence that Mr. Andreoli shared Wakaya compensation plan information with then Youngevity distributors Dave and Barb Pitcock, Andre Vaughn, and Maxandra Desrosiers, but not with Youngevity leaders. (See Pls.' MSJ IV, Exs. BB, CC.) There is further evidence that Andreoli discussed Wakaya compensation plan information with then Youngevity distributors Mike Randolph, Michael Casperson, Patti Gardner, Brytt Cloward, and Mike Kolinski (see Pl.'s Suppl. Br., Ex. H; Ex. I; Ex. J.)

Construing these facts in the light most favorable to Plaintiff, the Court cannot find as a matter of law that Defendant Andreoli would prevail on

Youngevity's claim that he breached the Employment Agreement.

### b. Non-Competition Agreement

Mr. Andreoli argues that he was never bound by a non-competition agreement with Youngevity. He also argues that even if he had been bound by such an agreement, he was never in breach.

As part of Youngevity's acquisition of Mr. Andreoli's FDI holdings, Mr. Andreoli entered into an Amended and Restated Equity Purchase Agreement. (See FAC, 56:15-23; see also FAC Ex. 41 ("Equity Purchase Agreement").) A provision entitled "Closing" of the Equity Purchase Agreement required that Mr. Andreoli sign a "Proprietary Information, Non-Competition and Non-Solicitation Agreement" attached to the contract as Exhibit A ("Non-Competition Agreement"). The provision stated that Mr. Andreoli would execute the form "[a]s a condition precedent to the Closing . . . subject to an appropriate grace period." (See Equity Purchase Agreement, § 1.5(c)(ii).) Mr. Andreoli signed the Equity Purchase Agreement, (see id. at 24), but he failed to execute the Non-Competition Agreement (see ECF No. 269 Ex. 42 ("Non-Competition Agreement").

### i. The Non-Competition Agreement is Enforceable and Binding

Non-compete agreements are generally unenforceable in California. *See* Cal. Bus. & Prof. Code § 16600 ("Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."). Nonetheless, the Non-Competition Agreement here is enforceable under the exceptions provided in § 16601 because it is part of the agreement governing the sale of Mr. Andreoli's business. *See id.* at § 16601 (An agreement not to compete is enforceable against one who "sells the goodwill of a business," all of one's "ownership interest in a business entity," or "substantially all of its operating assets together

6

16-CV-704-BTM-JLB

with the goodwill of the business entity," to a buyer who will carry on the business).

Mr. Andreoli argues that because he never signed the Non-Competition Agreement, he was not bound by it. Youngevity argues that notwithstanding this fact, Mr. Andreoli signed the Equity Purchase Agreement, which made as a condition precedent, the execution of the Non-Competition Agreement. Youngevity also argues that Mr. Andreoli's actions demonstrated that he understood himself to be bound by an agreement not to compete with Youngevity for at least six months subsequent to his leaving the company. For example, in an email from Mr. Andreoli to Mr. Wallach on November 3, 2015 following up on his resignation from Youngevity, Mr. Andreoli stated: "As a side note, the early termination of consideration due to 'Competing Employment' is not and will not be a factor. I will honor the six month non-compete as set forth in the 'Amended and Restated Equity Purchase Agreement' and the 'Employment Agreement.'" (See FAC ECF 43.) Moreover, Mr. Andreoli became employed in an official capacity by Wakaya on June 1, 2016, six months after his last day as a Youngevity officer. (See Defs.' MSJ IV, 3:6-12.)

Under California state law "[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." Cal. Civ. Code § 1642. Moreover, the absence of a signature on a form that is part of a contract does not necessarily render it unenforceable. *See Vita Planning & Landscaping Architecture, Inc. v. HKS Architects, Inc.*, 240 Cal. App. 4th 763, 773 (2015). A court may look to see whether the parties "conducted themselves as though they had an agreement" to determine whether the parties are bound to certain contractual terms. *Id.* Additionally, while an "express contract is one [in which] the terms . . . are stated in words, one party may use the words and the other may accept either in words or by his actions or conduct." *Id.* (quoting *Grant v. Long*, 33 Cal. App. 2d 725,

726 (1939)).

Here, the Equity Purchase Agreement and the Non-Competition Agreement should be "taken together" because the Equity Purchase Agreement makes the Non-Competition Agreement a condition precedent of closing.  Because Mr. Andreoli conducted himself as though he assented to the Non-Competition Agreement by writing to Steve Wallach that he would "honor the six month non-compete" and then waiting six months before becoming officially employed by Wakaya, the Court holds that Mr. Andreoli is bound by the Non-Competition Agreement.

### ii. Breach of the Non-Competition Agreement

Mr. Andreoli argues that even if the Non-Competition Agreement is enforceable and binding, there is no evidence of breach.  The Court disagrees. Plaintiff Youngevity has presented sufficient evidence to establish a genuine issue of material fact as to whether Mr. Andreoli breached the Non-Competition Agreement by taking actions to compete with Youngevity prior to and within the six month period following the termination of his employment with Youngevity. (See *supra* 5:3-5:23; see also Pl.'s MSJ IV Ex. GG.)

### c. Damages

Defendant also argues that Plaintiff has failed to submit evidence of damages.  The report prepared by Youngevity expert Richard Hoffman provides support for Youngevity's assertion that Mr. Andreoli's breach of contract resulted in damages.  (See Pl.'s MSJ IX, Ex. CC, 17, 20.)  At this stage, the Court cannot say as a matter of law that a reasonable jury would not find that Youngevity suffered damages as a result of Mr. Andreoli's alleged breach.  Therefore, Defendant Andreoli's motion for summary judgment is denied.

**2. Defendant Dave Pitcock**

Defendant Pitcock moves for summary judgment arguing that the contract his company, Livinity, Inc. entered into with Youngevity cannot be enforced

against him. He further argues that even if it could be, he never breached the contract.

Mr. Pitcock was the owner of Livinity, Inc. ("Livinity"). (FAC 58:18-24.) He sold the assets of the company to Youngevity on July 10, 2012. (Id.) As part of that transaction, Livinity and Youngevity entered into a Consulting Agreement with non-disclosure and non-circumvent clauses. (FAC Ex. 40 ("Consulting Agreement").) As part of the Consulting Agreement, Livinity was designated as the "Consultant." (Id. at 1.) Mr. Pitcock signed the contract on behalf of Livinity as the company's president. (Id. at 6.)

The contract prohibited Livinity from disclosing any confidential information and from using confidential information, including "business contacts, information regarding distributors/vendors/suppliers and other business associates of [Youngevity] . . . for the purpose of circumventing [Youngevity's] business operations." (Id. at § 4(a), (d).) In addition, Livinity was bound to "refer to [Youngevity] and its operating units in terms that further its business objectives" and prohibited Livinity from "refer[ring] to [Youngevity] or its operating units in a manner that damages [Youngevity's] position in the marketplace." (Id. at § 6.)

### a. Alter Ego Liability

Mr. Pitcock argues that a breach of contract action against him based on the Consulting Agreement cannot lie as a matter of law because he was not a party to the contract. Youngevity, however, asserts a breach of contract claim against Mr. Pitcock under a theory of alter ego liability.

Under California state law, the determination of whether Mr. Pitcock is the alter ego of Livinity is a question of fact, not law. *See Misik v. D'Arco*, 197 Cal. App. 4th 1065, 1071-72 (2011). "The alter ego doctrine arises when a plaintiff comes into court claiming that an opposing party is using the corporate form unjustly and in derogation of the plaintiff's interests." *Mid-Century Ins. Co. v. Gardner*, 9 Cal. App. 4th 1205, 1212 (1992) (citations omitted). Whether the

doctrine applies "will depend on the circumstances of each particular case." *Id.* (citations omitted). There are two general requirements: "(1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." *Id.* (quotations and citations omitted). Moreover, courts have relied on an array of more than fifteen different factors when making the determination. *See id.* at 1213 (citing *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 838-40 (1962). Relevant considerations to the inquiry here include:

> the commingling of funds and other assets; the failure to segregate funds of the individual and the corporation; . . . the treatment by an individual of corporate assets as his own; . . . the representation by an individual that he is personally liable for corporate debts; the failure to maintain adequate corporate minutes or records; . . . [and] the use of a single address for the individual and the corporation.

*Id.* at 1213 n.3 (citing *Associated Vendors, Inc.*, 210 Cal. App. 2d at 838-40).

Mr. Pitcock argues that Youngevity's alter ego claim is not supported by any evidence. However, Youngevity raises several issues of material fact as to whether Mr. Pitcock is the alter ego of Livinity. Plaintiff submits evidence in support of the following: Mr. Pitcock (1) intermingled Livinity funds with his own and treated Livinity assets as his own (see Pl.'s MSJ, Ex. J; Ex. K 26:12-30:21); represented to Youngevity that he was personally bound by the Consulting Agreement (see id. at Wallach Decl., ¶5; Ex. A 23:16-25:16); failed to maintain Livinity corporate minutes or records (see id. at Ex. A 28:17-30:24); and used his home address as the company's official address (see id. at Ex. L; Ex. K 6:8-11). Thus, there is a genuine dispute as to whether Mr. Pitcock is the alter ego of Livinity.

### b. Breach of the Consulting Agreement

Mr. Pitcock argues that even if he can be held personally liable under the

Consulting Agreement, Youngevity has submitted no evidence to support that he breached the contract. The Court agrees that Youngevity fails to submit evidence that Mr. Pitcock "refer[red] to [Youngevity] or its operating units in a manner that damages [Youngevity's] position in the marketplace." (See Consulting Agreement § 6.) At most, Youngevity submits evidence that Mr. Pitcock expressed dissatisfaction with certain Youngevity policies and practices to other Youngevity distributors and excitement about the possibility of Wakaya. However, this is not enough to establish breach of contract with respect to § 6 of the Consulting Agreement. The Court does not read § 6 as a prohibition censoring any negative comment that Mr. Pitcock might express about his work internally to a colleague. Moreover, the language "in the marketplace" indicates that this provision is targeted at preventing widespread, public communications.

      The Court also agrees that Youngevity fails to submit evidence of improper use of Youngevity's confidential information. The Consulting Agreement prohibited Mr. Pitcock from using Youngevity confidential information for the purpose of circumventing Youngevity's business operations. (See id. at § 4.) Youngevity alleges that Mr. Pitcock ordered an agent to send mass emails to Youngevity distributors promoting Wakaya. (See Pl.'s MSJ IV 3:22-23.) But, at most the evidence reflects that Mr. Pitcock's agent, Michelle Wimberley, received a long email list from Mr. Pitcock compiled from unknown sources. (See id.) Youngevity also fails to submit the email list itself. (Id.) Thus, the evidence presented is not sufficient to raise a genuine issue of material fact as to whether Mr. Pitcock used Youngevity confidential information for improper purposes.

      Thus, even when construing the facts in the light most favorable to Plaintiff, the Court finds as a matter of law that Defendant Pitcock would prevail on Youngevity's breach of contract claim. Therefore, the Court grants Defendant Pitcock's motion for summary judgment as to Plaintiff's fourth cause of action.

**B. Plaintiff's MSJ**

Plaintiff moves for summary judgment arguing that it has submitted sufficient evidence as to each element of its breach of contract claims against Defendants Andreoli and Pitcock.

As noted above, however, there remain genuine issues of material fact as to whether Mr. Andreoli's actions prior to June 1, 2016 constitute a breach of his contractual obligations and whether any breach resulted in damages. For example, Defendant Andreoli argues that there is no causal nexus between Mr. Andreoli's alleged breaches of contract and the departure of Youngevity employees to Wakaya. When drawing all inferences in the light most favorable to Defendant Andreoli, the Court cannot say that Plaintiff is entitled to judgment as a matter of law. Thus, Plaintiff's motion for summary judgment as to its breach of contract claim against Defendant Andreoli is denied.

Additionally as to Youngevity's claim against Defendant Pitcock, Plaintiff failed to provide evidence sufficient for the court to hold that no reasonable trier of fact could find other than for Plaintiff. Thus, Plaintiff's motion for summary judgment as to its breach of contract claim against Defendant Pitcock is denied.

### III. CONCLUSION

For the reasons discussed above, the Court **denies** Plaintiff Youngevity's motion for summary judgment (ECF No. 293). The Court **denies** Defendant William Andreoli's motion for summary judgment and **grants** Defendant Dave Pitcock's motion for summary judgment (ECF No. 303).

**IT IS SO ORDERED**.

Dated: March 26, 2019

_____
Honorable Barry Ted Moskowitz
United States District Judge