UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOUNGEVITY INTERNATIONAL, CORP., et al.,<br><br>                                    Plaintiffs,<br><br>v.<br><br>TODD SMITH, et al.,<br><br>                                    Defendants.<br><br><br>AND RELATED COUNTERCLAIMS. | Case No.:  16-cv-00704-BTM (JLB)<br><br>**REPORT AND RECOMMENDATION RE: (1) DEFENDANTS' AND COUNTERCLAIM PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS OR, IN THE ALTERNATIVE, ISSUE, EVIDENTIARY, AND MONETARY SANCTIONS (ECF NO. 552); (2) PLAINTIFFS' AND COUNTERCLAIM DEFENDANTS' EX PARTE MOTION TO STRIKE OR, IN THE ALTERNATIVE, TO STAY (ECF NO. 554); AND (3) REQUEST FOR ORAL ARGUMENT (ECF NO. 586)** |

On June 22, 2018, Defendants and Counterclaim Plaintiffs (collectively, "Wakaya") filed a motion for terminating sanctions or, in the alternative, for issue, evidentiary, and monetary sanctions.  (ECF No. 552.)  On June 29, 2018, Plaintiffs and Counterclaim Defendants (collectively, "Youngevity") filed an *ex parte* motion to strike (or dismiss) Wakaya's motion or, in the alternative, to stay the motion.  (ECF No. 554.)  On September

5, 2018, Youngevity filed a motion for oral argument regarding ECF Nos. 552, 581, and 583. (ECF No. 586.) On January 11, 2019, Youngevity's *ex parte* motion was referred to this Court for disposition. (ECF No. 606.)

For the following reasons, the Court **RECOMMENDS** that the Honorable Barry Ted Moskowitz, United States District Judge, **DENY** Wakaya's motion for terminating sanctions or, in the alternative, for issue, evidentiary, and monetary sanctions (ECF No. 552), and Youngevity's request for oral argument (ECF No. 586). To the extent Judge Moskowitz adopts this report and recommendation, the Court **RECOMMENDS** that Youngevity's *ex parte* motion to strike (or dismiss) or, in the alternative, to stay (ECF No. 554) be **DENIED**. However, to the extent Judge Moskowitz declines to adopt this report and recommendation and determines terminating, issue, and/or evidentiary sanctions are appropriate, the Court <u>alternatively</u> **RECOMMENDS** that Judge Moskowitz **GRANT** Youngevity's *ex parte* motion to dismiss Wakaya's motion, without prejudice, in light of the current stay.

# I.    BACKGROUND

## A.    Factual Background

Youngevity and Wakaya are both multi-level companies that rely on distributors to sell their products. Youngevity alleges, *inter alia*, that Wakaya impermissibly seduced its top distributors into leaving Youngevity and forming Wakaya, resulting in substantial losses to Youngevity. (*See* ECF No. 269 at 50-55.) In the Fourth Amended Complaint, which is the operative complaint, Youngevity brings the following causes of action against one or more of the Wakaya defendants: (1) violation of the Lanham Act (false or misleading advertising); (2) violation of California Business and Professions Code §§ 17200, et seq. ("UCL"); (3) intentional interference with prospective economic advantage; (4) breach of contract; (5) intentional interference with contract/inducing breach of contract; (6) misappropriation of trade secrets; (7) misappropriation of name and likeness; (8) violation of the Lanham Act (trademark infringement); (9) breach of fiduciary duty; and (10) breach of duty of loyalty. (*See id.* at 9-77.)

Wakaya, in turn, alleges that Youngevity impermissibly and unilaterally cancelled contracts with former Youngevity distributors that joined Wakaya and engaged in other hostile tactics to stunt Wakaya's growth. (ECF No. 404 at 16-27.)  In the Second Amended Counterclaim, the operative counterclaim, Wakaya brings the following counterclaims against one or more of the Youngevity counterclaim defendants: (1) declaratory judgment; (2) breach of contract; (3) breach of the covenant of good faith and fear dealing; (4) conversion; (5) [withdrawn]; (6) tortious interference with existing economic relations; (7) tortious interference with prospective economic advantage—Youngevity; (8) tortious interference with prospective economic advantage—Youngevity, Briskie, Steve Wallach; (9) defamation; (10) false light; (11) business disparagement; (12) violation of the UCL; and (13) fraud/negligent misrepresentation.  (*See id.* at 28-38.)

### B.    Relevant Procedural Background

On March 23, 2016, Youngevity commenced this action against Wakaya.  (*See* ECF No. 1.)  On December 21, 2016, Youngevity filed a Third Amended Complaint for Damages and Injunctive Relief against Wakaya.  (*See* ECF No. 64.)  On February 23, 2017, Wakaya filed a First Amended Answer [to the Third Amended Complaint] and [Amended] Counterclaim against Youngevity.  (*See* ECF No. 83.)  In the Counterclaim, Wakaya brought the following counterclaims against one or more of the Youngevity counterclaim defendants: (1) declaratory judgment; (2) breach of contract; (3) breach of the covenant of good faith and fear dealing; (4) conversion; (5) tortious interference with existing economic relations; (6) tortious interference with existing economic relations; (7) tortious interference with prospective economic advantage; (8) tortious interference with prospective economic advantage; (9) defamation; (10) false light; (11) business disparagement; (12) violation of the UCL; and (13) fraud/negligent misrepresentation.  (*See id.* at 39-76.)

On March 9, 2017, Youngevity filed a special motion to strike all of Counterclaims Six, Seven, Nine through Eleven, and Part of Twelve in the Counterclaim pursuant to the California anti-SLAPP statute.  (*See* ECF No. 90.)  Youngevity also moved to dismiss

16-cv-00704-BTM (JLB)

Counterclaims One through Five, Seven, Eight, part of Twelve, and part of Thirteen under the "first to file" rule. (*See id.*) In the alternative, Youngevity moved to dismiss Counterclaims One through Five on the grounds that those claims are subject to binding arbitration; and/or dismiss Counterclaims One, Four through Eleven, and Thirteen pursuant to Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6). (*See id.*)

On April 5, 2017, in the interest of maintaining the confidentiality of sensitive information exchanged between the parties, the Court entered a Stipulated Protective Order ("Protective Order") that allows the parties to designate information produced to the other side as "Confidential" or "Confidential—For Counsel Only." (ECF No. 103.) Information designated "Confidential—For Counsel Only" may only be viewed by counsel (including support staff) of the receiving party, and by approved independent experts. (*Id.* at 4-5.)

On December 13, 2017, Judge Moskowitz granted in part and denied in part Youngevity's motion to strike and/or dismiss. (*See* ECF No. 330.) Pursuant to Youngevity's anti-SLAPP motion, Judge Moskowitz ordered Counterclaims Six, Seven, and Nine through Twelve stricken "[t]o the extent . . . [they are] based on allegations concerning statements directly made within the Verified Complaint," and Counterclaim Eleven stricken in its entirety. (*Id.* at 26-27.) Judge Moskowitz also granted Youngevity's motion to dismiss Counterclaims Five and Eleven with leave to amend. (*Id.* at 27.) Thereafter, on December 28, 2017, Wakaya filed a Second Amended Counterclaim. (ECF No. 404.)

On January 1, 2018, Youngevity filed an interlocutory appeal of Judge Moskowitz's December 2017 Order on the motion to strike and/or dismiss to the Ninth Circuit. (*See* ECF No. 411.)

On January 4, 2018, Youngevity moved the Court *ex parte* for an order staying all action on Counterclaims Six, Seven, and Nine through Twelve in Wakaya's Counterclaim pending the Ninth Circuit's decision on appeal. (*See* ECF No. 412.) In its reply, Youngevity requested to stay proceedings on all of Wakaya's counterclaims. (ECF No. 513.)

On July 16, 2018, Judge Moskowitz granted Youngevity's motion for a partial stay of the proceedings pending the interlocutory appeal. (*See* ECF No. 560.) In the Order, Judge Moskowitz added: "The Court will rule on the remaining motions for summary judgment for Plaintiffs' and Counterclaim Defendants' affirmative claims and counterclaims eight and thirteen[]. However, pursuant to this Court's power to control its own docket and with considerations of judicial economy in mind, the Court will then stay the entire case until the Ninth Circuit's resolution so that all causes of action proceed to trial together." (*Id.* at 2-3.) The Court also denied as premature the pending summary judgment motions on Counterclaims One through Four, Six, Seven, and Nine through Twelve (*see* ECF Nos. 418, 419, 421-431, 433, 435, 437, 438, 441, 444, 445). (*Id.* at 3.) The parties were granted leave to resubmit their motions depending on the judgment of the Ninth Circuit. (*Id.*)

On August 7, 2018, Judge Moskowitz held oral argument on several motions for full or partial summary judgment filed by the parties. (*See* ECF No. 578.) Following oral argument, Judge Moskowitz ruled on some of the motions, granting them in part and denying them in part. (*See* ECF Nos. 292, 293, 296, 302, 303, 304, 322, 339, 582, 590, 591, 592, 595, 598.) However, a few motions for full or partial summary judgment remain pending before the Court. (*See* ECF Nos. 300, 439, 559.)

On January 24, 2019, the Ninth Circuit issued a Memorandum disposition dismissing in part, affirming in part, and reversing in part Judge Moskowitz's December 2017 Order. (*Youngevity Int'l Corp., et al v. William Andreoli, et al.* ("*Youngevity*"), No. 18-55031 (9th Cir.), ECF No. 48 (Jan. 24, 2019).) On February 7, 2019, Wakaya filed a petition for rehearing en banc. (*Id.* at ECF No. 49 (Feb. 7, 2019).) The petition for rehearing en banc was denied on April 1, 2019. (ECF No. 623.)

## C. Discovery Background

The Court held an Early Neutral Evaluation Conference in this case on February 28, 2017 (ECF No. 86), and issued a Scheduling Order on March 2, 2017 (ECF No. 87). In the Scheduling Order, the Court ordered that all discovery, including expert discovery, be

completed by August 18, 2017. (ECF No. 87 at 1.) The Scheduling Order advised the parties that:

> All discovery, including expert discovery, shall be completed by all parties by August 18, 2017. "Completed" means that all discovery under Rules 30-36 of the Federal Rules of Civil Procedure, and discovery subpoenas under Rule 45, must be initiated a sufficient period of time in advance of the cut-off date, **so that it may be completed** by the cut-off date, taking into account the times for service, notice and response as set forth in the Federal Rules of Civil Procedure. **Counsel shall promptly and in good faith meet and confer with regard to all discovery disputes in compliance with Local Rule 26.1(a).** The Court expects counsel to make every effort to resolve all disputes without court intervention through the meet and confer process. If the parties reach an impasse on any discovery issue, counsel shall file an appropriate motion within the time limit and procedures outlined in the undersigned magistrate judge's chambers rules. **A failure to comply in this regard will result in a waiver of a party's discovery issue. Absent an order of the court, no stipulation continuing or altering this requirement will be recognized by the court.**
>
> Discovery motions must be filed in the time and manner directed by Magistrate Judge Burkhardt (*see* Judge Burkhardt's Civil Chambers Rules on Discovery Disputes available on the Court's website). All discovery motions must be filed within 30 days of the service of an objection, answer, or response which becomes the subject of dispute, or the passage of a discovery due date without response or production, and only after counsel (and any unrepresented parties) have met and conferred to resolve the dispute **and** complied with Section IV.B. of Judge Burkhardt's Civil Chambers Rules.

(*Id.* at 1-2 (emphasis in original).)

On June 12, 2017, the Court issued an amended Scheduling Order which required that all discovery, including expert discovery, be completed by September 22, 2017. (ECF No. 132 at 1-2.)

On September 15, 2017, Judge Moskowitz extended the discovery cutoff from September 22, 2017 to October 19, 2017 for the purpose of deposing certain witnesses. (ECF No. 193.) The Court also extended the time for the parties to take the deposition of David Roth to November 20, 2017. (*See* ECF Nos. 208, 244.)

///

On October 11, 2017, the Court extended the discovery cutoff deadline to October 24, 2017 for the purpose of deposing expert witness Dr. Anne T. Coughlan. (ECF No. 224.)

On November 6, 2017, Youngevity filed a Fourth Amended Complaint for Damages and Injunctive Relief. (*See* ECF No. 269.) Therefore, on November 28, 2017, Youngevity filed a motion for leave to conduct additional discovery relevant to the new parties and causes of action in the Fourth Amended Complaint, which had been filed after the close of fact discovery. (ECF No. 283.) The Court subsequently granted in part and denied in part the motion. (ECF No. 406.) Youngevity was granted leave to conduct certain discovery on or before February 23, 2018. (*Id.*)

On March 27, 2018, the parties filed a joint motion for leave to depose expert witnesses Dr. Richard Rucker and Dr. Joshua Plant. (ECF No. 536.) The joint motion was granted and the parties were given leave to depose the witnesses on or before April 27, 2018. (ECF No. 537.) The parties have neither requested nor been granted any additional leave to reopen discovery.

### D. Wakaya's Motion for Terminating Sanctions or, in the Alternative, for Issue, Evidentiary, and Monetary Sanctions (ECF No. 552)

On June 22, 2018, Wakaya filed its motion for terminating sanctions or, in the alternative, for issue, evidentiary, and monetary sanctions. (ECF No. 552.) In its motion, Wakaya requests that the Court enter an order "terminating the claims and defenses of [Youngevity] with prejudice and granting default judgment in favor of Wakaya on all counterclaims based on Youngevity's egregious conduct that has rendered a fair trial on the merits impossible." (ECF No. 552-1 at 7.) Wakaya contends that "lesser sanctions would be ineffective at protecting the sanctity of these proceedings." (*Id.*) However, if the Court does not find that Youngevity's conduct warrants terminating sanctions, Wakaya requests in the alternative that the Court impose issue and evidentiary sanctions relevant to the claims and defenses most directly affected by Youngevity's alleged misconduct. (*See id.* at 29.)

Wakaya bases its motion on the following alleged misconduct of Youngevity: (1) producing 4.2 million pages of documents that were all designated "Confidential—For Counsel Only" and were 80 percent non-responsive; (2) producing a revised production that violates the Court's December 21, 2017 Order (ECF No. 362), in that it contains both non-responsive and mis-designated documents and omits key documents; (3) refusing to produce data on which it seeks to rely; (4) stymying discovery from third parties aligned with Youngevity; (5) conducting improper self-help discovery outside the normal discovery process; and (6) intentionally violating the Protective Order entered in this case on at least seven occasions. (*See* ECF No. 583 at 3.)

As a result of this alleged misconduct, Wakaya seeks the following relief: (1) terminating sanctions as to Youngevity's claims and defenses; and (2) the granting of default judgment in favor of Wakaya on all counterclaims. (ECF No. 552-1 at 7, 9, 29-30.) In the alternative, Wakaya requests that the Court impose issue and evidentiary sanctions as follows:

- Youngevity be precluded from relying on any documents it has produced in this litigation (due to alleged improper productions);

- Youngevity be required to return and destroy all copies of Wakaya's productions (due to alleged violations of the Court's Protective Order);

- Youngevity be prohibited from relying on any documents in Wakaya's productions to support its claims or defenses (due to alleged violations of the Court's Protective Order);

- Youngevity to identify all parties to which it has disclosed Wakaya's "Confidential—For Counsel Only" information (due to alleged violations of the Protective Order);

- Youngevity be prohibited from introducing any data or derivative data from its distributor database (due to alleged failure to produce data from Youngevity's distributor database and to identify the distributors alleged to have been cross-recruited);

- The jury be directed to infer that the data in Youngevity's distributor database would be favorable to Wakaya and not support Youngevity's claims or defenses, including any claim for damages (due to alleged failure to produce data from Youngevity's distributor database and to identify the distributors alleged to have been cross-recruited);

- The following issues related to Counterclaims Six, Seven, and Nine through Twelve be taken as established (due to Youngevity's alleged failure to produce documents regarding the publication of statements in the Verified Complaint):

  o Youngevity distributed the Verified Complaint and other filings and that such distribution did not fall within the scope of any privilege;

  o Youngevity distributed the Verified Complaint and other filings with actual malice and knowledge of their falsity;

  o Wakaya has been harmed by the distribution of the Verified Complaint and other filings; and

  o Youngevity's distribution of the Verified Complaint and other filings to businessforhome.org and others was not privileged;

- Youngevity be prohibited from introducing any evidence of damages related to its Lanham Act claims (due to alleged disclosure of the "Confidential—For Counsel Only" damages report containing Wakaya financial information in violation of the Protective Order); and

- It be taken as established that Youngevity tortiously interfered with Wakaya's relationship with Rick Anson and Livewell (Counterclaim Six) (due to allegedly engaging in self-help discovery).

(*See id.* at 7, 29-30.)

Wakaya also contends that Youngevity should be ordered to reimburse the fees and costs of its motion and all other fees and costs associated with its misconduct. (*See id.* at 30-31.)

///

///

**E.** **Youngevity's *Ex Parte* Motion to Strike (or Dismiss) or, in the Alternative, to Stay Wakaya's Motion (ECF No. 554)**

After Wakaya filed its motion for sanctions, Youngevity filed an *ex parte* motion requesting that the Court strike (or dismiss) with prejudice or, in the alternative, stay Wakaya's motion. (*See* ECF No. 554 at 6.) Youngevity contends that Wakaya's motion should be stricken or dismissed as procedurally deficient because Wakaya (1) failed to meet and confer in advance of filing as required by Local Civil Rule 26.1(a), and (2) improperly brought its motion for sanctions before the district judge in an attempt to circumvent this Court's discovery rules and procedures, including the requirement to meet and confer. (*Id.* at 6-7.)

In the alternative, Youngevity contends that Wakaya's motion should be stayed pending resolution of Youngevity's appeal because (1) the law requires the Court to stay all proceedings related to a cause of action subject to an appeal from an Anti-SLAPP order,[1] and (2) a motion for sanctions is pending, *see* ECF Nos. 337 and 557, covering some of the same alleged conduct and staying the present motion would help avoid inconsistent rulings.[2] (*Id.* at 7-8.)

## II.   LEGAL STANDARDS

### A.   Federal Rule of Civil Procedure 37

Rule 37(b)(2)(A) provides that "[i]f a party . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A). Such orders may include:

---

[1]   Youngevity filed its *ex parte* motion before Judge Moskowitz granted Youngevity's motion for a partial stay of the proceedings pending the interlocutory appeal. (*See* ECF No. 560.)

[2]   The pending motion for sanctions has now been resolved. (*See* ECF No. 605.) Accordingly, the Court finds that a stay is not warranted on this basis.

(i)   directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii)   prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii)   striking pleadings in whole or in part;

(iv)   staying further proceedings until the order is obeyed;

(v)   dismissing the action or proceeding in whole or in part;

(vi)   rendering a default judgment against the disobedient party; or

(vii)   treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii). Instead of, or in addition to, these sanctions, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure to obey, unless the failure was substantially justified or other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(b)(2)(C).

Rule 37(c)(1) further provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard may (1) order payment of the reasonable expenses, including attorney's fees, caused by the failure, (2) inform the jury of the party's failure, and (3) impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi). Fed. R. Civ. P. 37(c)(2).

"The very purpose of Rule 37 is to insure compliance with discovery orders." *Grimes v. City & Cnty. of S.F.*, 951 F.2d 236, 240-41 (9th Cir. 1991). "Without adequate sanctions the procedure for discovery would be ineffectual." *Id.* (quoting C. Wright & A. Miller, *Federal Practice and Procedure:* Civil § 2281 (1970 & Supp. 1988)). "To that

16-cv-00704-BTM (JLB)

end, Rule 37 is flexible: 'The sanctions enumerated in the rule are not exclusive and arbitrary but flexible, selective, and plural. The court may, within reason, use as many and as varied sanctions as are necessary to hold the scales of justice even.'" *Id.* (quoting Wright & Miller, § 2284).

However, the district court's authority to issue the sanctions is subject to the following limitations: (1) the sanction must be just; and (2) the sanction must specifically relate to the particular claim at issue in the order. *United States v. Nat'l Med. Enters., Inc.*, 792 F.2d 906, 910 (9th Cir. 1986) (citing *Rubin v. Belo Broad. Corp.*, 769 F.2d 611, 615 (9th Cir. 1985); *Prof'l Seminar Consultants, Inc. v. Sino Am. Tech. Exch. Council, Inc.*, 727 F.2d 1470, 1474 (9th Cir. 1984)). Furthermore, a compensatory award is limited to the "actual losses sustained as a result of the contumacy." *Id.* (citing *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1148 (9th Cir. 1983)).

## B. Court's Inherent Powers

A district court has the inherent power "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962). Local Civil Rule 83.1(a) provides that the district court has the discretion to impose "any and all sanctions authorized by statute or rule or within the inherent power of the court, including, without limitation, dismissal of any actions, entry of default, finding of contempt, imposition of monetary sanctions or attorneys' fees and costs, and other lesser sanctions," for the failure of counsel, or of any party, to comply with the Court's Local Rules, with the Federal Rules of Civil or Criminal Procedure, or with any order of the court. *See* CivLR 83.1(a).

Dismissal under the court's inherent powers is justified in extreme circumstances, in response to abusive litigation practices, and to ensure the orderly administration of justice and the integrity of the court's orders. *See Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 380 (9th Cir. 1988) (citing *Nat'l Med. Enters., Inc.*, 792 F.2d at 912; *Fjelstad v. Am. Honda Motor Co.,* 762 F.2d 1334, 1338 (9th Cir. 1985); *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983)).

12

When determining whether a case should be dismissed under its inherent powers, the court "must determine (1) the existence of certain extraordinary circumstances, (2) the presence of willfulness, bad faith, or fault by the offending party, (3) the efficacy of lesser sanctions, (4) the relationship or nexus between the misconduct drawing the dismissal sanction and the matters in controversy in the case, and finally, as optional considerations where appropriate, (5) the prejudice to the party victim of the misconduct, and (6) the government interests at stake." *Id.*

## C.  Meet and Confer Requirements

Civil Local Rule 26.1 provides that "[t]he court will entertain no motion pursuant to Rules 26 through 37, Fed. R. Civ. P., unless counsel will have previously met and conferred concerning all disputed issues." CivLR 26.1(a).  The rule further provides that "[i]f counsel for the moving party seeks to arrange such a conference and counsel for the party against whom the motion is made willfully refuses or fails to meet and confer, the judge . . . may order a payment of reasonable expenses, including attorney's fees, pursuant to Rule 37, Fed. R. Civ. P. and Civil Local Rule 83.1." *Id.*  "At the time of filing any motion with respect to Rules 26 through 37, Fed. R. Civ. P., counsel for the moving party must serve and file a certificate of compliance with this rule." CivLR 26.1(b).

In addition, Rule 37 provides that any motion for an order compelling disclosure or discovery "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1).

The Court's Scheduling Order issued in this case further states:

> If the parties reach an impasse on any discovery issue, counsel shall file an appropriate motion within the time limit and procedures outlined in the undersigned magistrate judge's chambers rules. **A failure to comply in this regard will result in a waiver of a party's discovery issue. Absent an order of the court, no stipulation continuing or altering this requirement will be recognized by the court.**

16-cv-00704-BTM (JLB)

Discovery motions must be filed in the time and manner directed by Magistrate Judge Burkhardt (*see* Judge Burkhardt's Civil Chambers Rules on Discovery Disputes available on the Court's website). All discovery motions must be filed within 30 days of the service of an objection, answer, or response which becomes the subject of dispute, or the passage of a discovery due date without response or production, and only after counsel have met and conferred to resolve the dispute **and** requested an informal teleconference with the Court.

(ECF No. 87 at 1-2 (emphasis in original).)

## III. DISCUSSION

### A. Motion for Sanctions

As noted above, Wakaya seeks sanctions based on the following alleged misconduct of Youngevity: (1) producing 4.2 million pages of documents that were all designated "Confidential—For Counsel Only" and were 80 percent non-responsive; (2) producing a revised production that violates the Court's December 21, 2017 Order (ECF No. 362), in that it contains both non-responsive and mis-designated documents and omits key documents; (3) refusing to produce data on which it seeks to rely; (4) stymying discovery from third parties aligned with Youngevity; (5) conducting improper self-help discovery outside the normal discovery process; and (6) intentionally violating the Protective Order entered in this case on at least seven occasions. (*See* ECF No. 583 at 3.) The Court will address each allegation of misconduct below.

#### 1. Contents of Initial and Revised Production

Wakaya contends that Youngevity should be sanctioned for engaging in an initial "document dump" of 4.2 million pages of allegedly mostly non-responsive documents (all of which were mass-designated "Confidential—For Counsel Only") and then for violating the Court's December 21, 2017 Order ("Production Order") (ECF No. 362) with its subsequent document production.

##### a. *Background*

On August 17, 2017, the parties left a joint voicemail with the Court concerning a discovery dispute regarding Youngevity's production, including Youngevity's designation

of all documents as "Confidential—For Counsel Only," its failure to provide native documents, its refusal to produce its distributor database, and its failure to produce its genealogy. (ECF No. 157.) The Court held a Discovery Conference on August 18, 2017 and issued a briefing schedule with a motion filing deadline of August 28, 2017. (ECF No. 159.)

On September 25, 2017, the parties left a joint voicemail with the Court seeking assistance with two discovery disputes, including a dispute over documents produced by Youngevity. (ECF No. 205.) The Court held a telephonic Discovery Conference on September 27, 2017 and addressed Youngevity's production which included over two million allegedly non-responsive documents. (ECF No. 208.) The Court instructed Wakaya's counsel to find out the cost of technology-assisted review ("TAR") to sort the responsive from the non-responsive documents and instructed the parties to then meet and confer to determine if they could strike a compromise.

On October 3, 2017, the parties left a joint voicemail with the Court regarding a discovery dispute related to the review of Youngevity's document production. (ECF Nos. 212, 214.) The Court provided additional guidance at a telephonic Discovery Conference on October 5, 2017 and directed the parties to further meet and confer. (ECF No. 215.) The Court subsequently set a briefing schedule for Wakaya to move for an order for Youngevity to bear the costs of conducting TAR on Youngevity's document production, with a motion deadline of October 16, 2017. (ECF No. 222.)

On October 16, 2017, Wakaya filed a motion to compel proper productions, claiming that Youngevity "chose not to review any of their documents and instead dump[ed] over 4.2 million pages of documents" on Wakaya. (ECF No. 232 at 3.) Wakaya requested that the Court enter an order compelling Youngevity to properly produce their relevant and responsive documents at their own cost, produce their "hit list" of documents responsive to the mutually agreed-upon list of search terms, and award Wakaya attorney's fees and costs related to bringing the motion and the costs incurred in reviewing the prior improper productions. (*Id.* at 11.)

The Court granted Wakaya's motion to compel in some respects. (ECF No. 362.) In its Production Order, the Court ordered Youngevity to satisfy its discovery obligations with respect to the July 21, 2017 and August 22, 2017 productions and the production of an additional 700,000 yet-to-be-produced documents. (*Id.* at 21.) The Court further ordered that Youngevity, at its option, do one of the following:

> 1) By **December 26, 2017**, provide its hit list to Wakaya; by **January 5, 2018**, conclude the meet and confer process as to mutually acceptable search terms based upon the hit list results; by **January 12, 2018**, run the agreed upon search terms across Youngevity's data; by **February 15, 2018**, screen the resulting documents for responsiveness and privilege; and by **February 16, 2018**, produce responsive, non-privileged documents with only appropriate designations of "confidential" and "AEO" (said production to include that subset of the not-previously-produced 700,000 documents that are responsive and non-privileged); or

> 2) By **December 26, 2017**, provide the not-previously-produced 700,000 documents to Wakaya without further review; pay the reasonable costs for Wakaya to conduct a TAR of the 700,000 documents and the July 21, 2017 and August 22, 2017 productions for responsiveness; by **January 24, 2018**, designate only those qualifying documents as "confidential" or "AEO"; by that date, any documents not designated in compliance with this Order will be deemed de-designated.

(*Id.* at 21-22.)

In addition, the Court ordered Youngevity to pay Wakaya for the reasonable expenses, including attorney's fees, Wakaya incurred as a result of Youngevity's failure to abide by the Protective Order's requirements with respect to the designation of confidential documents, and to pay the reasonable expenses associated with Wakaya's efforts to re-designate documents from Youngevity's July 21, 2017 and August 22, 2017 productions. (*Id.* at 22.) This included costs relating to Wakaya's negotiations with Youngevity to re-designate documents and participation in discovery conferences with the Court regarding the issue. (*Id.*) Wakaya was not, however, entitled to the costs it incurred in reviewing Youngevity's productions for other matters, such as deposition or trial preparation. (*Id.*)

///

On February 2, 2018, the parties left three voicemails relating to the Court's Production Order. (ECF No. 515.) The Court granted the parties a three-day extension of their meet and confer deadlines over any disputed fees and costs, payment of fees and costs, and the filing of any motion for fees and costs. (*Id.*) The parties were ordered resolve their disputes about the cost bill by February 7, 2018, or file a motion for fees and costs on or before February 15, 2018. (*Id.*) No motion was filed.

b.    *Analysis*

As an initial matter, to the extent Wakaya seeks sanctions based on Youngevity's initial production of 4.2 million unreviewed documents, this complaint has already been raised with, and resolved by, the Court. As discussed above, this was the subject of a previous motion to compel. The Court granted the motion to compel, fashioned a remedy, and ordered Youngevity to pay Wakaya's fees and costs. Accordingly, the Court finds that this aspect of Wakaya's complaint does not independently warrant additional sanctions.

Next, with respect to the revised production made pursuant to the Court's December 21, 2017 Production Order, there is no dispute that Youngevity provided Wakaya with its Hit List on December 22, 2017. (ECF Nos. 581-2 at 3; 581-3 at 13.) Counsel for the parties then met and conferred telephonically and via e-mail regarding the search terms to employ on all imaged data from Youngevity's devices. (ECF No. 581-2 at 3.) After applying the agreed-upon search terms to all of Youngevity's imaged data, 1,248,016 documents remained. (*Id.* at 3-4.)

Youngevity represents that counsel first removed from the database and prepared for production all documents "clearly responsive to Wakaya's Requests for Production" issued to Youngevity. (*Id.* at 4; *see also* ECF No. 581-3 at 15-18.) Through this process, Youngevity identified 254,082 documents for production. (*Id.*) Youngevity, with the guidance of e-discovery vendor Oasis Discovery, then used TAR to determine which of the remaining 1,029,934 documents were responsive to Wakaya's Requests for Production. (*See id.*; *see also* ECF No. 581-1 at 3-7.) As part of this review, Youngevity's counsel manually coded documents as responsive or non-responsive and ran targeted searches to

16-cv-00704-BTM (JLB)

identify non-responsive documents. (*Id.* at 4-5.) Youngevity completed its TAR process on February 15, 2018. (*Id.*)

Youngevity claims that due to time constraints it did not have time to conduct a document-by-document review for confidentiality designations. (*Id.*) Therefore, Youngevity ran search terms on responsive documents it believed would indicate whether such files should be designated as "Confidential" or "Confidential—For Counsel Only" under the Protective Order. (*Id.* at 5-6.) Youngevity contends that the resulting designations only identified 22% of responsive documents as Confidential and 17% as "Confidential—For Counsel Only." (*Id.* at 6.)

The parties agree that Youngevity completed its revised production of approximately 274,774 documents consisting of 1,189,174 pages (the "Revised Production") on February 16, 2018, the deadline provided in the Court's Production Order. (ECF Nos. 552-4 at 3; 581-2 at 6; *see also* ECF Nos. 552-4 at 8-9; 552-3 at 3; 581-1 at 7.) Upon producing the Revised Production, counsel for Youngevity believed and indicated to Wakaya that it had complied with its obligation under the Court's Production Order and stated that it expected Wakaya to delete its original production. (*See id.*; *see also* ECF Nos. 552-4 at 8-9; 581-2 at 6.)

After producing the documents, Youngevity further represented to Wakaya that the Revised Production included "all documents in Youngevity's possession responsive to Wakaya's document requests, including documents used at depositions and in motions practice, subject to all objections Youngevity ha[d] made in response to Wakaya's requests for production." (ECF No. 552-4 at 7.) Youngevity also represented that the Revised Production included responsive documents from the set of 700,000 documents that had not previously been produced. (*Id.*) In addition, Youngevity stated that although it intended for its Revised Production to supplant all prior productions, it "does not intend to delete and does not ask Wakaya to delete documents previously entered into the record at depositions and in court filings," and the parties can refer to them by their original bates number. (*Id.*)

In its motion for sanctions, Wakaya claims that the Revised Production remains riddled with problems. (ECF No. 552-1 at 14.) Wakaya contends that its own TAR process identified 23,565 responsive documents from the first production that were not included in the Revised Production. (*Id.* at 15-16.) Wakaya also contends that "[k]ey documents used in depositions and summary judgment briefing are missing" and "[n]umerous other critical documents have *never* been produced but are known to exist." (*Id.* at 16.) Wakaya further contends that the Revised Production contains approximately 75,000 documents that were never previously produced but are allegedly responsive to Wakaya's document requests, as well as approximately 200,000 documents that it considers nonresponsive and irrelevant. (*Id.* at 14-18.) In addition, Wakaya contends that Youngevity over-designated documents as "Confidential—For Counsel Only." (*Id.* at 18.)

Wakaya specifically identifies a contract between Youngevity and businessforhome.org ("BFH") and related emails as important documents which are missing from the Revised Production. (*Id.* at 16.) Wakaya also notes that emails transmitting the Verified Complaint are missing from the Revised Production, despite testimony from Steve Wallach and Dave Briskie indicating they exist. (*Id.* at 16-17.) Other than these documents, Wakaya claims that although it is aware of other missing documents, "given the myriad problems with Youngevity's productions, it is impossible to ascertain the full scope of missing information." (*Id.* at 17.) Wakaya contends that Youngevity's "failure to properly produce responsive documents directly violates both Judge Burkhardt's instructions in her [Production Order] and Youngevity's independent obligations." (*Id.*)

Based on the foregoing, the Court finds that the alleged misconduct by Youngevity with respect to the Court's Production Order does not rise to the level of sanctionable conduct. Youngevity provided its Hit List to Wakaya, the parties met and conferred, and then Youngevity ran the agreed-upon search terms, screened the resulting documents for responsiveness and privilege, and produced what it fairly believed were responsive, non-privileged documents with appropriate "Confidential" and "Confidential—For Counsel Only" designations by February 16, 2018. (*See* ECF No. 581-2.)

Thereafter, Youngevity contends that the parties met and conferred on two issues concerning the Revised Production, and both were resolved without court intervention. (*See* ECF Nos. 581 at 14-15; 581-2 at ¶¶ 15-16.) Youngevity further contends that Wakaya made no other inquiries concerning the Revised Production, and the parties did not meet and confer on any subsequent issues relevant to that production. (*Id.* at 15.) Wakaya does not dispute these representations.

Predictive coding or TAR has emerged as a far more accurate means of producing responsive ESI in discovery than manual human review of keyword searches. *Progressive Cas. Ins. Co. v. Delaney*, No. 2:11-CV-00678-LRH, 2014 WL 3563467, at *8 (D. Nev. July 18, 2014); *see also Hyles v. New York City*, No. 10CIV3119ATAJP, 2016 WL 4077114, at *2 (S.D.N.Y. Aug. 1, 2016) ("[I]n general, TAR is cheaper, more efficient and superior to keyword searching."). "Studies show it is far more accurate than human review or keyword searches which have their own limitations." *Id.* (collecting studies); *see also In re Lithium Ion Batteries Antitrust Litig.*, No. 13MD02420 YGR (DMR), 2015 WL 833681, at *3 (N.D. Cal. Feb. 24, 2015) ("[A] problem with keywords is that they often are overinclusive, that is, they find responsive documents but also large numbers of irrelevant documents."); *but see T.D.P. v. City of Oakland*, No. 16-CV-04132-LB, 2017 WL 3026925, at *5 (N.D. Cal. July 17, 2017) (finding that keyword searches were not necessarily inadequate and such a determination was fact specific).

Courts have determined that responding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information. *See Hyles*, 2016 WL 4077114, at *3. If the requesting party later demonstrates deficiencies in the responding party's production, the responding party may have to re-do its search, but that is not necessarily a basis for court intervention, much less a basis for sanctionable conduct. *See id.*

Technology-assisted review of ESI does require an "unprecedented degree of transparency and cooperation among counsel" in the review and production of ESI responsive to discovery requests. *Progressive Cas. Ins. Co.*, 2014 WL 3563467, at *10.

In this regard, courts typically "have required the producing party to provide the requesting party with full disclosure about the technology used, the process, and the methodology, including the documents used to 'train' the computer." *Id.*

Here, the parties agreed on the search terms and Youngevity has disclosed the technology, process, and methodology it used to generate the Revised Production. (*See* ECF Nos. 581-1; 581-2 at ¶¶ 5-10, 14-15.) It also appears that Youngevity has been responsive to Wakaya's concerns regarding the Revised Production and has conducted additional searches and provided additional information upon request. Although the parties disagree over the relevance of certain documents, such a dispute does not support sanctions, particularly where the contention is that the produced documents are over-inclusive. Additionally, the parties dispute why certain documents were not included in the Revised Production. There may be myriad reasons for these omissions, *see, e.g.*, ECF No. 581 at 18-19 (emails that lack context may be overlooked by TAR); however, it appears that Wakaya attached several of the so-called "missing" documents, such as those related to BFH, to its motions for summary judgment with Youngevity bates stamps, thus indicating that they had been produced by Youngevity at some point and there was no attempt to hide the documents. (*See, e.g.*, ECF No. 437-3 at 14-23.)

Based on the foregoing, the Court declines to find that Youngevity violated the Court's Production Order and that it should be subject to sanctions. To the extent that Wakaya initially disputed the responsiveness of the documents, the completeness of the production, or Youngevity's "Confidential—For Counsel Only" and "Confidential" designations, the Court finds that it should have met and conferred with Youngevity and raised its concerns pursuant to Section IV of Judge Burkhardt's Civil Chambers Rules. Based on the representations of the parties, many, if not all, of the issues Wakaya raised

16-cv-00704-BTM (JLB)

with respect to certain documents could potentially have been resolved if the parties had met and conferred.[3] (*See*, *e.g.*, ECF No. 581-2 at ¶¶ 15-19.)

## 2.  Distributor Database

Wakaya also claims that sanctions are warranted because it specifically requested that Youngevity identify with particularity every distributor Youngevity alleges was cross-recruited in violation of Youngevity's Policies and Procedures, and Youngevity has refused to identify any particular distributor and has continued to refuse to produce data from its distributor database sufficient for Wakaya to test Youngevity's claims of cross-recruiting. (ECF No. 552-1 at 18-19.)

The parties previously raised this issue before the Court in August 2017.  On August 17, 2017, the parties left a joint voicemail with the Court concerning a discovery dispute. (ECF No. 157.)  The Court held a telephonic Discovery Conference on August 18, 2017. (ECF No. 159.)  During the Discovery Conference, counsel for the parties raised, *inter alia*, the issue of Youngevity's failure to produce its entire distributor database and Wakaya's corresponding failure to produce its genealogy.  The parties discussed sending their respective genealogies to a third-party vendor, with all attorneys participating in a phone call to the vendor to provide instructions on how to come up with a list of employees that worked at both companies.  The Court was persuaded that Youngevity should provide to Wakaya any data it shared with its expert and any data it intended to rely upon at trial.  The parties were directed to continue their meet and confer efforts and, if those efforts were unsuccessful, the parties were to file briefs in accordance with a briefing schedule provided by the Court for any remaining issues.

---

3       Each party has an ongoing duty to supplement its discovery responses "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e)(1).  The Court expects that the parties have been complying, and will continue to comply, with their obligation to supplement throughout the course of this litigation.

Following the Discovery Conference, the Court issued a Minute Order stating that, "During the conference, a number of discovery matters were resolved informally and the briefing schedule below was discussed. In the event that the parties are unable to resolve issues relating to the production of genealogy information through meet and confer efforts, plaintiff may file a motion." (*Id.*) The order provided a briefing schedule which required the moving party to file a motion on or before August 28, 2017. (*See id.*) No motion was filed.

Based on information provided to the Court, it appears that the parties continued to meet and confer regarding the production of Youngevity's distributor database after August 2017 and as of May 2018, had still not resolved the issue. (*See* ECF Nos. 581-2 at 8-9; 583-1 at ¶ 23, Exh. E; 376-1 at 380-81.) However, in accordance with Judge Burkhardt's Civil Chambers Rules, "[a]ny requests to extend the time by which parties must conclude the meet and confer process or file discovery motions should be made by filing a joint motion no less than 10 calendar days in advance of the discovery motion deadline at issue." (*See* Judge Burkhardt's Civil Chambers Rules at IV(A).) The parties did not do so. (*See* ECF No. 87 at 2 ("If the parties reach an impasse on any discovery issue, counsel shall file an appropriate motion within the time limit and procedures outlined in the undersigned magistrate judge's chambers rules. **A failure to comply in this regard will result in a waiver of a party's discovery issue. Absent an order of the court, no stipulation continuing or altering this requirement will be recognized by the court.**") (emphasis in original).)

The parties had a substantial disagreement about whether and how Youngevity should provide Wakaya with access to data in Youngevity's distributor database. Wakaya could have brought the matter to the Court in a timely-filed motion to compel. Wakaya opted against this course of action. Wakaya now seeks sanctions for Youngevity's failure to meet Wakaya's expectations with respect to Youngevity's discovery obligations. With respect to all aspects of relief requested by Wakaya except those related to Youngevity's use of data from its distributor database at trial, the Court recommends that Wakaya's

motion be denied. With respect to any request related to Youngevity's use of evidence at trial, the Court recommends that Wakaya's motion be denied without prejudice, as any determination about the use of this evidence at trial is better made in the context of the trial itself, once it is known what trial issues remain and the specific evidence upon which the parties intend to rely.

3. <u>Violations of the Protective Order</u>

Wakaya further claims that terminating or issue and evidentiary sanctions are warranted for Youngevity's violations of the Protective Order. (ECF No. 552-1 at 23-29.)

a. *Background*

On October 30, 2017, the Court held a Discovery Conference regarding alleged violations of the Protective Order. (ECF No. 262.) On November 16, 2017, the Court held a second Discovery Conference regarding the alleged violations. (ECF No. 280.) No relief was granted or denied during the conferences. (*Id.*)

A month later, on December 18, 2017, Wakaya filed a motion for sanctions and for an order to show cause regarding violations of the Protective Order. (ECF No. 337.) In its motion, Wakaya alleged that Youngevity's counsel violated the Protective Order by disclosing information designated as "Confidential" or "Confidential—For Counsel Only" on six separate occasions. (*See* ECF Nos. 337; 420 at 3.) Specifically, Wakaya alleged that Youngevity violated the Protective Order by (1) publicly filing, in three separate pleadings, the start dates of two Wakaya distributors derived from a document that was designated as "Confidential—For Counsel Only"; (2) disclosing the "Confidential—For Counsel Only" start date of a distributor to deponents during their depositions; and (3) providing Plaintiff and Counterclaim Defendant Steve Wallach with an expert report designated as "Confidential—For Counsel Only," which he specifically references in his deposition testimony. (ECF No. 420 at 3-5.)

The Court subsequently issued a Report and Recommendation granting in part Wakaya's motion. (ECF No. 557.) The Court determined that Youngevity violated the Protective Order and issued sanctions in the form of Wakaya's reasonable attorney's fees

and costs incurred in filing the motion, meeting and conferring, and participating in conferences before the Court related to the dispute. (*Id.* at 13.) The Court further recommended that Wakaya's request for sanctions in the following forms be denied without prejudice: (1) striking the portions of Steve Wallach's Rule 30(b)(6) testimony that were "sourced from an [Confidential—For Counsel Only] document"; (2) prohibiting Youngevity from introducing any additional testimony as to its Lanham Act damages, except through the testimony of Mr. Bergmark; (3) requiring Youngevity to show cause as to why it and its counsel should not be referred to Judge Moskowitz for a finding of civil contempt; and (4) requiring Youngevity's counsel to refrain from any further violations of the Protective Order. (*Id.* at 14.) The Court noted that "Wakaya fail[ed] to demonstrate specific injury or prejudice resulting from Youngevity's violations of the [P]rotective [O]rder." (*Id.* at 15.)

After review of the Report and Recommendation and all objections (*see* ECF Nos. 561, 567, 571, 574), Judge Moskowitz adopted the Report and Recommendation but vacated the award of attorney's fees to Wakaya. (ECF No. 605.) Judge Moskowitz stated that "[e]ven if Youngevity did make improper disclosures in the few instances of which Wakaya complains in the . . . motion, the circumstances are not sufficiently extreme as to warrant sanctions." (*Id.* at 4.) He further noted that Wakaya had made no showing of bad faith or prejudice. (*Id.*)

### b. *Analysis*

Wakaya now argues that terminating or issue and evidentiary sanctions are warranted for Youngevity's violations of the Protective Order, including those previously addressed by the Court. (ECF No. 552-1 at 23-29.) In its motion, Wakaya incorporates its prior motion by reference and relies on the same violations. (*See* ECF No. 552-1 at 23, n.6.) Wakaya also asserts one additional violation that it discovered on or about January 19, 2018. (*See* ECF Nos. 552-1 at 27-28; 552-4 at 5, 42; 423-3 at 229.) The document at issue in the new violation – an attorney-created document derived from Wakaya's "Confidential—For Counsel Only" Genealogy Report–was first presented at the deposition

of Maxandra Desrosiers, which was taken on August 25, 2017. (*See* ECF Nos. 552-1 at 28; 423-3 at 224; 581 at 24 n.4.) At the deposition, Youngevity's counsel represented that he was introducing a "Confidential—For Counsel Only" document before he questioned Ms. Desrosiers about its contents. (*See* ECF Nos. 552-1 at 27-28; 552-4 at 41; 581-3 at 300.) Wakaya did not object to the use of the specific document at the time of the deposition, but rather asked that the portion of the deposition transcript in which the document was discussed be designated "Confidential—For Counsel Only." (ECF No. 581-3 at 300-02.)

Youngevity subsequently filed the document and deposition transcript in redacted form[4] as exhibits to one of Youngevity's motions for summary judgment. (ECF No. 423-3 at 223-29.) On the docket, the document is clearly identified as Exhibit 28 to the deposition of Ms. Desrosiers. (*See id.*) In its opposition to the summary judgment motion, Wakaya objected to Youngevity's use of the document as it was of unknown origin. (*See* ECF No. 466 at 6, n.1.) Judge Moskowitz denied Youngevity's motion for summary judgment as premature, as it related to a counterclaim stayed during the interlocutory appeal. (ECF No. 560.) Therefore, Judge Moskowitz did not rule on the objection, and both the deposition transcript and document remain on the docket in redacted form.

Wakaya contends that it has been prejudiced by Youngevity's "pattern and practice of 'excerpting' or 'redacting' ["Confidential—For Counsel Only"] documents" without informing Wakaya. (ECF No. 552-1 at 28.) Wakaya states that "it is impossible to determine the full extent to which Wakaya's most-sensitive information has been disclosed

---

[4] Concurrently with filing the redacted version of these documents in support of its motions for summary judgment, Youngevity moved to file the unredacted forms of these documents, under seal. (ECF No. 446.) Youngevity represented that these documents had been designated as "Confidential" or "Confidential—For Counsel Only" by Wakaya under the Protective Order and, after meeting and conferring with Wakaya, Youngevity had filed redacted versions of the documents. (*Id.*) The motion to seal was granted without objection and the unredacted versions were lodged under seal. (*See* ECF Nos. 453; 454-2 at 223-29.)

16-cv-00704-BTM (JLB)

or to what extent testimony has been or will be influenced by information to which the witness should never have been privy." (ECF No. 583 at 12.) For the reasons set forth below, the Court finds that Wakaya is not entitled to sanctions premised on Youngevity's alleged violations of the Protective Order.

First, as to Wakaya's claim for sanctions based on its allegations raised in its earlier motion, the Court has already determined that despite any violations of the Protective Order raised in that motion, Wakaya is not entitled to sanctions based on those violations. (*See* ECF No. 605.) Moreover, Judge Moskowitz, in ruling on Wakaya's prior motion, determined that it had failed to establish any bad faith or prejudice. (*See id.* at 4.) Under the "law of the case" doctrine, a court is precluded from reconsidering an issue that has already been decided by the court, unless the first decision was clearly erroneous, an intervening change in the law has occurred, the evidence is substantially different, other changed circumstances exist, or manifest injustice would otherwise result. *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) (citing *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993)). "Failure to apply the doctrine of the law of the case absent one of the requisite conditions constitutes an abuse of discretion." *Id.* (citing *Thomas*, 983 F.2d at 155). None of those conditions exist here.

Second, as to Wakaya's claim for sanctions based on the new alleged violation, for the same reasons set forth by Judge Moskowitz in his order denying sanctions, the Court finds that the new alleged violation is not sanctionable. First of all, the Court finds that Youngevity created Exhibit 28 using information from documents produced by Wakaya designated "Confidential—For Counsel Only," and yet Youngevity failed to mark the document "Confidential—For Counsel Only" and publicly filed an insufficiently redacted version of Exhibit 28 on the docket. Thus, Youngevity failed to take "reasonable precautions to prevent the unauthorized or inadvertent disclosure" of confidential information, in violation of the Protective Order. However, Youngevity's conduct was not sufficiently egregious to warrant sanctions. Moreover, Wakaya has failed to establish prejudice and has failed to take any action to mitigate its concerns regarding the disclosure

of its sensitive information. In this regard, the Court notes that Wakaya was made aware that the document was designated "Confidential—For Counsel Only" and had no bates-stamp, thus indicating that it had not been produced by a party, before it was introduced as an exhibit at Ms. Desrosiers' deposition. Wakaya had an opportunity to object during the deposition, but did not do so. *See* J. Burkhardt Civ. Chambers R. ¶ IV(E). In addition, despite Wakaya's awareness of Youngevity's public filing of the redacted document in support of its motion for summary judgment in January 2018, Wakaya has not moved to have the document filed under seal. For these reasons, the Court finds that sanctions premised on violations of the Protective Order are not warranted.[5]

### 4. Third-Party Discovery

Wakaya also seeks sanctions based on Youngevity's alleged "concerted and deliberate effort to derail discovery" from third parties. (ECF No. 552-1 at 20.) Wakaya claims that it served approximately eleven third-party subpoenas on Youngevity distributors and other affiliated individuals, and that each of these third parties was represented by Youngevity's counsel. (*Id.*) In response to the subpoenas, Wakaya states that approximately six third parties produced no documents, while the remaining five third parties produced relatively few documents. (ECF No. 552-4 at 4.) In addition, several of the third parties who refused to produce documents directed Wakaya to Youngevity's allegedly problematic production, asserting that the documents were in Youngevity's custody or control. (ECF Nos. 552-1 at 20; 552-4 at 4.)

The record reflects that the subpoenas at issue were served on or about June 26, 2017. (*See* ECF No. 581-3 at 253.) The parties responded to the subpoenas in July and August 2017. (*See id.* at 255-81; *see also* ECF No. 581-2 at 10.) Rule 45 of the Federal

---

[5] Again, with respect to any request related to Youngevity's use of the evidence at trial, the Court recommends that Wakaya's motion be denied without prejudice, as any determination about the use of this evidence at trial is better made in the context of the trial itself, once it is known what trial issues remain and the specific evidence upon which the parties intend to rely.

Rules of Civil Procedure provides that "the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i). Wakaya never filed a motion to compel. (*See* ECF Nos. 583 at 10; 581 at 21.) To the extent a discovery dispute arose between the parties concerning the third-party subpoenas, the dispute was subject to the Court's discovery dispute process. (*See* ECF No. 87 at 1-2; *see also* ECF Nos. 333; 583 at 10.) As Wakaya failed to bring a motion within the time limitations provided by Judge Burkhardt's Civil Chambers Rules, the Court finds that any dispute has been waived.

Furthermore, the Court finds that Wakaya has failed to establish that it is appropriate to punish Youngevity for the alleged failure of third parties to properly comply with subpoenas, even if those third parties are represented by the same counsel. *See* Fed. R. Civ. P. 45(g) ("The court for the district where compliance is required . . . may hold in contempt *a person who, having been served*, fails without adequate excuse to obey the subpoena or an order related to it." (emphasis added)).

### 5. Contacting Control Group Members

Lastly, Wakaya bases its motion for sanctions on Youngevity allegedly repeatedly, intentionally, and improperly asking non-party Rick Anson to provide Youngevity with information and documents belonging to Wakaya, including litigation strategy. (ECF No. 552-1 at 22.) Wakaya asserts that Mr. Anson was Wakaya's VP of Product Development until January 2017, at which time Mr. Anson ended his relationship with Wakaya and joined Youngevity. (*Id.* at 21-22.) Wakaya further contends that it is aware of "numerous other instances" in which Youngevity was in contact with Wakaya vendors and Ambassadors requesting product samples and improperly seeking confidential information. (*Id.* at 23.)

#### a. *Background*

On February 12, 2016, Wakaya entered into a Royalty Agreement with Mr. Anson and a License Agreement with Mr. Anson's company, Livewell. (ECF No. 426-2 at 3.) The Royalty Agreement required Mr. Anson to maintain the secrecy of Wakaya's

29

confidential information and prohibited him from engaging in any competing business for a period of one year following the termination of the Royalty Agreement. (ECF No. 426-3 at 6-14). The License Agreement provided Wakaya with the exclusive, worldwide right to use Livewell's technology in Wakaya's products. (*Id.* at 16-30.)

Youngevity commenced the present lawsuit on March 23, 2016. (ECF No. 1.) In the Second Amended Counterclaim, the operative counterclaim, filed on December 28, 2017, Wakaya brings a counterclaim against Youngevity for tortious interference with existing economic relations (Counterclaim Six).[6] (*See* ECF No. 404 at ¶¶ 212-17.) Counterclaim Six focuses on Youngevity's contacts with then-Wakaya employee Mr. Anson beginning "at least as early as October 2016." (*Id.* at ¶¶ 159-183.) In support of this counterclaim, Wakaya alleges that "Youngevity and its agents intentionally interfered with [the relationship between Wakaya and Livewell/Mr. Anson] when, on information and belief, it contacted [Mr.] Anson—then Vice President of Product Development at Wakaya—and republished or republicized its defamatory allegations, thereby convincing [Mr.] Anson to terminate his and LiveWell's relationship with Wakaya." (*See id.* at ¶ 215.)

On July 27, 2017, the parties left a joint voicemail with the Court representing that they had reached an impasse with respect to two discovery disputes. (ECF No. 144.) The Court held a telephonic Discovery Conference on July 28, 2017. (ECF No. 145.) The parties resolved the first discovery dispute related to the subpoena of Mr. Johnson. (*Id.*) However, the parties were unable to resolve their dispute related to the privilege log issue and were instructed to file cross-motions on that issue. (*Id.*) On August 7-8, 2017, the parties filed their motions. (*See* ECF Nos. 150-151, 154-155.) The question presented in the parties' briefing involved claims of attorney-client and common-interest privileges between Youngevity and Mr. Anson. (*See* ECF No. 146 at 3.) The parties disputed the

---

[6]     This counterclaim first appeared in Wakaya's First Amended Answer and [Amended] Counterclaim filed on February 23, 2017. (ECF No. 83.)

extent to which Mr. Anson and Youngevity were communicating under a common-interest privilege during the latter part of 2016.  (*Id.*)

The Court subsequently denied Wakaya's motion to compel production of unredacted communications and granted Youngevity's cross-motion on the privilege log issue.  (ECF No. 198.)  The Court concluded that Youngevity did not waive work product protection by forwarding work product to counsel for Livewell and Mr. Anson because the parties shared a common legal interest.  (*Id.* at 11.)  The Court explained:

> At the time of the email communications [dated December 14, 2016 and December 15, 2016], all parties had or were preparing to assert legal claims against Wakaya.  Youngevity and Wakaya were already engaged in litigation. Livewell and Anson were preparing to assert their claims against Wakaya in the Notices that were sent two days later, on December 16, 2016. Accordingly, counsel for Youngevity, Livewell and Anson shared legal advice related to their common legal claims against Wakaya.  The parallels between the Notices and Youngevity's allegations in the instant litigation evidence this common legal strategy.

(*Id.* at 9.)  The Court further found that Youngevity met its burden to show that the email communications were privileged.  (*Id.* at 12.)  Wakaya filed objections to the Court's order. (ECF No. 218.)  Judge Moskowitz overruled the objections.  (ECF No. 290.)

On January 10, 2018, Wakaya filed a motion for summary judgment on its tortious interference with existing economic relations counterclaim (Counterclaim Six).  (*See* ECF No. 426.)  Judge Moskowitz denied Wakaya's motion for summary judgment as premature, as it concerned a counterclaim on appeal, and Judge Moskowitz had granted Youngevity's request for a stay of the counterclaim.  (*See* ECF No. 560.)

b.  *Analysis*

To substantiate its request for sanctions, Wakaya relies primarily on the facts it set forth in its motion to compel production of unredacted communications (ECF No. 155), and its motion for summary judgment on its intentional interference with existing economic relations counterclaim (Counterclaim Six) (ECF No. 426-2).  (*See* ECF No. 552-1 at 21-22.)  In both its motion to compel and its motion for summary judgment, Wakaya details

31

an alleged series of contacts between Mr. Anson and Youngevity and others during the time Mr. Anson was Wakaya's VP of Product Development.

The alleged contacts included:

- October 19, 2016 email from Steve Wallach (Youngevity's CEO) to Mr. Anson stating: "Here is Peter's contact information. Peter [Arhangelsky] is the Attorney we work most directly with regarding Wakaya issues. I will give Peter a heads up that one of your Attorney's may be calling him soon." (ECF No. 426-3 at 32.)

- October 24, 2016 email from Mr. Anson to Mr. Wallach. Mr. Anson introduced (and copied on the email) Jesse Vycital, a "key person in the development of the nutritional hydration system with over eight years of product design" and "[s]pecializing in ingredient formulations of [Wakaya's] tablets." (ECF No. 426-3 at 34-47.) The email attached what Wakaya claims is "a detailed proposal for a Youngevity nutritional hydration system essentially identical to Wakaya's product." (ECF No. 426-2 at 4.)

- November 4, 2016 email from Mr. Anson to Mr. Wallach and Dave Briskie (Youngevity's CFO) stating that "I was told some new information I would like to share with you when you have a moment." (ECF No. 426-3 at 49.) Follow up emails indicate that Mr. Anson and Mr. Briskie spoke. (*Id.* at 51.)

- November 16, 2016 and December 2, 2016 emails from Mr. Anson to Todd Smith (Wakaya's owner) regarding the concerns of Livewell shareholders relating to, among other things, a lawsuit filed by Youngevity against Wakaya relating to Prop 65 in San Francisco Superior Court on November 10, 2016. (ECF No. 426-3 at 55-60, 91.)

- November 30, 2016 email from Todd Smith to Mr. Anson concerning Youngevity's litigation claims regarding Prop 65, which Mr. Anson forwarded to Mr. Wallach as an FYI. (ECF No. 426-3 at 59-60.)

- November 30, 2016 email from Mr. Wallach to Mr. Anson attaching a link to the Prop 65 complaint. (ECF No. 426-3 at 185.)

- On December 16, 2016, counsel for Livewell and Mr. Anson sent Wakaya a Notice of Default under each of the Agreements which

Wakaya alleges "repeated a number of the false allegations about Wakaya, its business practices, and its products—allegations contained in and parroted from Youngevity's Prop. 65 Complaint and the Verified Complaint in this case." (ECF Nos. 426-2 at 4; 426-3 at 62-87.)

- January 2, 2017 email from Mr. Anson to Mr. Wallach attaching a "one year pro-forma including updated COG's and revenue figures" and discussing a potential position with Youngevity, including salary and royalty figures. (ECF No. 426-3 at 167-68.)

In addition, Steve Wallach testified in his deposition that Mr. Anson reached out to him for a meeting in or around late October 2016. (ECF No. 426-3 at 172.) Mr. Anson and Mr. Wallach met and discussed Livewell technology and Mr. Anson's family and his history. (*Id.* at 172-73.) Mr. Anson informed Mr. Wallach that Wakaya was in breach of the Livewell agreement and asked questions about Youngevity's Prop 65 complaint against Wakaya. (*Id.* at 173.) Mr. Anson also informed Mr. Wallach that he had a nondisclosure agreement with Wakaya and was meeting with other companies in addition to Youngevity. (*Id.*)

Based on the foregoing, Wakaya claims that it is not only entitled to judgment as a matter of law, but also to discovery sanctions. (*See* ECF Nos. 426, 552.) Wakaya contends that "[i]t is highly improper for a party to contact a litigation opponent's employee (even more so a member of the control group), mine that employee for confidential information, and obtain confidential documents outside of normal discovery." (ECF No. 552-1 at 22.) Wakaya also contends that "Youngevity's deliberate and surreptitious self-help deprived Wakaya of the protections afforded by the [Federal Rules of Civil Procedure], which would have allowed Wakaya to prevent the dissemination of privileged communications, lodge appropriate objections to discovery requests, and appropriately designate under the Protective Order." (*Id.*)

Wakaya cites *Xyngular Corp. v. Schenkel*, 200 F. Supp. 3d 1273 (D. Utah 2016), aff'd sub nom. *Xyngular v. Schenkel*, 890 F.3d 868 (10th Cir. 2018) for the proposition that "[p]arties anticipating litigation may not engage in self-help by improperly gathering a

potential adversary's property," and that conduct that "amounts to an end-run around the Federal Rules of Civil Procedure, including the rules governing discovery and the orderly exchange of information relevant to the disputes presented for resolution in [the] courts," may be subject to serious sanctions. *Id.* at 1317. The Court does not disagree with these general propositions. *See, e.g.*, *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995) (quoting *Wyle*, 709 F.2d at 591) ("It is well settled that dismissal is warranted where . . . a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings: 'courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice.'").

The instant case is not *Xyngular*. In *Xyngular* and similar cases relied upon by Wakaya, the allegation of the moving party was that the opposing party had contacted one of its employees with the intention of obtaining internal, non-public information and documents belonging to the moving party for use in pending or anticipated litigation, thereby circumventing discovery law and procedures. (*See* ECF Nos. 552-1 at 22-23; 583 at 10-11.) The moving party identified specific information wrongfully obtained outside of lawful discovery mechanisms.[7] Here, Wakaya does not identify any internal documents or non-public information belonging to Wakaya that Youngevity allegedly improperly obtained from Mr. Anson for use in this litigation.[8] Moreover, Wakaya filed a counterclaim

---

[7]    *See e.g.*, *Glynn v. EDO Corp.*, No. JFM-07-01660, 2010 WL 3294347, at *1 (D. Md. Aug. 20, 2010) (finding that the moving party had proven by clear and convincing evidence that the opposing party had "wrongfully acquired non-public, internal . . . information" from an employee of the moving party); *Bell v. Lockheed Martin Corp.*, No. CV 08-6292 (RBK/AMD), 2010 WL 11450407, at *5 (D.N.J. June 30, 2010) (finding that the critical inquiry is whether the documents taken by the opposing party were the moving party's property and whether the opposing party was authorized to take the property).

[8]    Wakaya maintains that it is due to "Youngevity's problematic productions" that Wakaya is unaware of the "full extent" of what Mr. Anson may have relayed to

16-cv-00704-BTM (JLB)

(Counterclaim Six) on December 28, 2017,[9] based upon the same complained-of contacts by Youngevity, alleging that by those actions Youngevity intentionally and tortiously interfered with Wakaya's economic relations with Livewell and Mr. Anson. And the relief Wakaya seeks in its sanctions motion for this conduct is telling:

> Because Youngevity engaged in improper self-help discovery, including with Rick Anson, it be taken as established that Youngevity tortiously interfered with Wakaya's relations with [Mr.] Anson and Livewell.

(ECF No. 552-1 at 30.) In the form of a discovery sanctions motion, Wakaya is asking the Court to evaluate its allegations in support of Counterclaim Six, find the facts in its favor, and, as a sanction, make a finding that Youngevity tortiously interfered with its economic relations. That is not a discovery sanctions motion—that is a motion for summary judgment.

Moreover, as to Wakaya's claims that Youngevity is subject to sanctions because it was in contact with other Wakaya vendors and Ambassadors requesting product samples and improperly seeking confidential information, the Court finds that Wakaya has not established that these contacts constitute sanctionable conduct. Rule 37 contemplates sanctions for violations of the discovery rules and the Court's orders, but Wakaya points to no such violations in its motion. In addition, Wakaya has not established how Mr. Wallach's communications with David Smith, the owner of one of Wakaya's vendors (*see* ECF Nos. 552-1 at 23; 552-4 at ¶ 10, Exh. D), for example, constitutes such a violation or undermines the integrity of the judicial proceedings or the rightful determination of this case. *See Anheuser-Busch, Inc.*, 69 F.3d at 348 (quoting *Wyle*, 709 F.2d at 591) ("Due

---

Youngevity (ECF No. 552 at 22-23), but Wakaya fails to identify *any* information allegedly improperly obtained by Youngevity from Mr. Anson.

[9] As previously noted, this counterclaim first appeared in Wakaya's First Amended Answer and [Amended] Counterclaim filed on February 23, 2017. (ECF No. 83.)

process concerns . . . require that there exist a relationship between the sanctioned party's misconduct and the matters in controversy such that the transgression 'threaten[s] to interfere with the rightful decision of the case.'").

For the foregoing reasons, the Court finds that Wakaya has not established that sanctions are appropriate with respect to Youngevity's contacts with Mr. Anson or other Wakaya vendors and Ambassadors.

### 6.    Totality of Conduct

Wakaya contends that any one of the alleged violations addressed above would be sufficient to impose case-dispositive sanctions, but "[t]aken together, Youngevity's discovery misconduct more than supports even the harshest sanctions from this Court." (ECF No. 552-1 at 12.)   Therefore, although the Court has determined that the alleged violations do not independently rise to the level of sanctionable conduct, it also considers whether the alleged violations, taken together, warrant sanctions.  The Court finds that they do.  The most troublesome allegations have already been addressed by the Court on prior motions to compel or for sanctions.  The remaining alleged violations do not rise to the level of sanctionable conduct.  And taken together, Wakaya has failed to establish that Youngevity either violated the Court's orders or otherwise has engaged in a totality of conduct that warrants the sanctions sought by Wakaya.

### 7.    Summary

In conclusion, the Court is reminded of Judge Moskowitz's January 10, 2019 Order, in which he stated:

> The parties have engaged in scorched earth litigation reminiscent of Mad Magazine's cartoon *Spy vs. Spy*. . . .  Youngevity and Wakaya are seeking to use the litigation to inflict a mortal wound on each other's businesses.  The attorneys have unfortunately taken up their clients' attitude.  Each side is lying in wait for the other to make a mistake so that it can then jump out, proclaiming *gotcha*.

(ECF No. 605 at 2.)

The Court finds that Wakaya's motion, while grounded in some legitimate concerns, is another attempt to inflict a mortal wound. As discussed above, many of the issues raised by Wakaya's motion had already been raised before this Court, and many could have and should have been raised using the Court's discovery dispute procedures. During the course of this litigation, both parties have demonstrated not only a keen awareness of Judge Burkhardt's Civil Chambers Rules and the requirements set forth in the Court's scheduling orders, but they have demonstrated their ability to comply with them on numerous occasions. (*See, e.g.*, ECF Nos. 93, 96, 98, 107, 108, 131, 134, 140, 141, 142, 143, 144, 145, 150, 151, 154, 155, 157, 159, 175, 177, 179, 194, 205, 208, 212, 214, 215, 222, 223, 226, 227, 232, 262, 280, 273, 281, 278, 448, 515, 541, 594.)

For all the reasons stated above, the Court **RECOMMENDS** that Wakaya's motion for sanctions be denied.

**B.    *Ex Parte* Motion to Strike (or Dismiss) or, in the Alternative, to Stay**

After Wakaya filed its motion for sanctions, Youngevity filed an *ex parte* motion requesting that the Court strike (or dismiss) with prejudice or, in the alternative, stay Wakaya's motion. (*See* ECF No. 554 at 6.) Youngevity contends that Wakaya's motion should be stricken or dismissed as procedurally deficient because Wakaya (1) failed to meet and confer in advance of filing as required by Local Civil Rule 26.1(a), and (2) failed to comply with the discovery dispute procedure set forth in Judge Burkhardt's Chambers Rules and is improperly circumventing the Court's rules by not filing a discovery motion. (*Id.* at 6-7.)

The Court does not find merit in Youngevity's motion to strike (or dismiss) with prejudice Wakaya's motion on the grounds that it is procedurally deficient. Neither the federal and local rules, nor this Court's chambers rules, require a party to meet and confer prior to filing a Rule 37 motion for sanctions. *See* Fed. R. Civ. P. 37(b) (no meet and confer requirement); CivLR 83.1 (no meet and confer requirement); Judge Burkhardt's Civil Chambers Rules ¶ IV(A) (requiring the parties to meet and confer before it will address "discovery disputes"); *cf. Mausner v. Marketbyte LLC*, No. 12CV2461 NLS (MDD), 2014

WL 12059009, at *2-3 (S.D. Cal. Apr. 4, 2014) (Stormes, J.) (denying motion for terminating sanctions for a failure to meet and confer where there was no basis to bring the motion "under Rule 37(b), which might otherwise excuse the filing of a [meet and confer] certificate"). Therefore, the Court finds that Wakaya is not in violation of any meet and confer requirement with respect to the filing of this motion. In addition, as Wakaya's motion for sanctions may materially affect the course of litigation and requests dispositive relief, the motion was properly filed before the district judge, and is being handled on a report and recommendation basis. *See* 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b); CivLR 72.1; *see also Grimes*, 951 F.2d at 240.

In the alternative, Youngevity contends that Wakaya's motion should be stayed pending resolution of Youngevity's appeal of the Court's anti-SLAPP order. (*See* ECF Nos. 554 at 7-8; 330; 411.) On July 16, 2018, Judge Moskowitz automatically stayed Wakaya's Counterclaims Six, Seven, and Nine through Twelve because they are subject to the anti-SLAPP appeal. (ECF No. 560 at 2.) Judge Moskowitz also stayed Counterclaims One through Four which are similarly subject to the interlocutory appeal, but on different grounds. (*Id.*) Judge Moskowitz stayed Counterclaims One through Four on the basis that the Ninth Circuit's ruling may have a significant effect on the Court's disposition of those counterclaims. (*Id.*)

"The filing of a notice of interlocutory appeal divests the district court of jurisdiction over the particular issues involved in that appeal." *Breazeale v. Victim Servs., Inc.*, No. 14-CV-05266-VC, 2015 WL 13687730, at *1 (N.D. Cal. Sept. 14, 2015) (citing *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982); *City of L.A., Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 886 (9th Cir. 2001)). However, the district court retains jurisdiction over matters except "those aspects of the case involved in the appeal." *Id.* (quoting *Griggs*, 459 U.S. at 58).

Under California law, an appeal of a denial of an anti-SLAPP motion automatically stays further trial court proceedings on causes of action related to the motion. *Makaeff v. Trump Univ., LLC*, No. 10-CV-940-IEG WVG, 2011 WL 613571, at *2 (S.D. Cal. Feb.

11, 2011) (citing *Varian Med. Sys., Inc. v. Delfino* ("*Varian*"), 35 Cal. 4th 180, 186 (2005)). "In determining whether a proceeding is embraced in or affected by the appeal, [a court] must consider the appeal and its possible outcomes in relation to the proceeding and its possible results." *Id.* (citing *Varian*, 35 Cal. 4th at 189). Whether a matter is "embraced in" or "affected by" an order depends on whether the post-order proceedings on the matter would have any effect on the effectiveness of the appeal. *Varian*, 35 Cal. 4th at 189 (citation omitted). "If so, the proceedings are stayed; if not, the proceedings are permitted." *Id.* By contrast, an appeal does not stay proceedings on ancillary or collateral matters which do not affect the order on appeal, even though the proceedings may render the appeal moot. *Id.* at 191, 195 & n.8.

In a Memorandum disposition filed on January 24, 2019, the Ninth Circuit held as follows:

> We reverse the district court's decision not to strike those portions of Wakaya's counterclaims based on the republication of the Verified Complaint and the Youngevity press release, which summarized the substance of the Verified Complaint. California's litigation privilege applies to communications made in judicial proceedings, *see* Cal. Civ. Code § 47(b), and extends to communications regarding such judicial proceedings made to people with "a substantial interest in the outcome of the pending litigation," *see Abraham v. Lancaster Cmty. Hosp.*, 217 Cal. App. 3d 796, 823 (1990); *see also Argentieri v. Zuckerberg*, 8 Cal. App. 5th 768, 783–84 (2017) (indicating that the litigation privilege protects statements made to persons with a "substantial interest" in the litigation, but not statements made to "the general public through the press"). For this reason, the republication of the Verified Complaint and the dissemination of the Youngevity press release to its distributors and the marketing community (which had such a substantial interest) constitute protected speech. [footnote omitted.] Therefore, to the extent Wakaya's counterclaims are based on the republication of the Verified Complaint and Youngevity's press release, Wakaya cannot carry its burden of showing there is a probability that it will prevail on those claims, *see* Cal. Civ. Proc. Code § 425.16(b).

(*Youngevity*, ECF No. 48 at 3-4.) The Ninth Circuit also affirmed "the district court's denial of Youngevity's motion to dismiss or compel arbitration." (*Id.* at 4.) Upon receiving the Ninth Circuit's decision, Wakaya filed a petition for rehearing en banc. (*Id.* at ECF

No. 49.) On April 1, 2019, the Ninth Circuit denied the petition for rehearing en banc. (ECF No. 623.) However, a party has 90 days from the date of such a denial to file a petition for writ of certiorari in the United States Supreme Court. *See* Sup. Ct. R. 13. Accordingly, the appeal remains pending and the case remains partially stayed.

In its motion for terminating sanctions, Wakaya requests, in part, that the Court enter an order "granting default judgment in favor of Wakaya on all counterclaims." (ECF No. 552-1 at 31.) Alternatively, Wakaya requests issue and evidentiary sanctions. (*Id.* at 29-30.) Upon consideration of the foregoing, the Court finds that Wakaya's requests for terminating sanctions, as well as for issue sanctions directed at Counterclaims Six, Seven, and Nine through Twelve, at a minimum, would affect the order on appeal.[10] To the extent Judge Moskowitz is inclined to adopt the report and recommendation and deny the imposition of sanctions, the Court finds that the stay is not implicated, and recommends that Youngevity's *ex parte* motion to strike (or dismiss) or, in the alternative, to stay be **DENIED**. Conversely, to the extent Judge Moskowitz is inclined not to adopt the report and recommendation in its entirety and concludes that terminating sanctions or issue sanctions which go to Counterclaims Six, Seven, or Nine through Twelve may be appropriate, the Court alternatively recommends that Youngevity's *ex parte* motion to dismiss be **GRANTED**, without prejudice, in light of the stay of Wakaya's Counterclaims One through Four, Six, Seven, and Nine through Twelve.

## IV.    CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Wakaya's motion for terminating sanctions or, in the alternative, for issue, evidentiary, and monetary sanctions

---

[10]    For example, Youngevity requests that "it be taken as established that . . . Youngevity distributed the Verified Complaint and other filings and that such distribution did not fall within the scope of any privilege." (*See* ECF No. 552-1 at 30.) This request would clearly affect the order on appeal. *See Varian*, 35 Cal. 4th at 190 ("A trial court proceeding . . . affects the effectiveness of an appeal if the possible outcomes on appeal and the actual or possible results of the proceeding are irreconcilable.").

(ECF No. 552) and Youngevity's request for oral argument (ECF No. 586) be **DENIED**. However, with respect to any request related to Youngevity's use of evidence at trial, the Court recommends that Wakaya's motion for sanctions be denied **WITHOUT PREJUDICE**, as any determination about the use of this evidence at trial is better made in the context of the trial itself, once it is known what trial issues remain and the specific evidence upon which the parties intend to rely.

In addition, to the extent Judge Moskowitz adopts this report and recommendation, the Court further **RECOMMENDS** that Youngevity's *ex parte* motion to strike (or dismiss) or, in the alternative, to stay (ECF No. 554) be **DENIED**. Conversely, to the extent Judge Moskowitz is inclined not to adopt the report and recommendation in its entirety and concludes that terminating sanctions or issue sanctions which go to Counterclaims Six, Seven, or Nine through Twelve may be appropriate, the Court alternatively **RECOMMENDS** that Youngevity's *ex parte* motion to dismiss be **GRANTED**, without prejudice, in light of the stay of Wakaya's Counterclaims One through Four, Six, Seven, and Nine through Twelve.

**IT IS ORDERED** that no later than **April 23, 2019**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **April 30, 2019**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: April 9, 2019

*Jill Burkhardt*
Hon. Jill L. Burkhardt
United States Magistrate Judge

16-cv-00704-BTM (JLB)