UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| Youngevity International, *et al.*, | Case No.: 3:16-cv-704-BTM-JLB |
|---|---|
| Plaintiffs, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART YOUNGEVITY'S MOTION FOR SUMMARY JUDGMENT ON COUNTERCLAIM SIX** |
| Todd Smith, *et al.*, | |
| Defendants. | |
| | **[ECF NO. 667]** |
| Todd Smith, *et al.*, | |
| Counterclaim Plaintiffs, | |
| v. | |
| Youngevity International, *et al.*, | |
| Counterclaim Defendants. | |

Pending before the Court is Plaintiffs' and Counterclaim Defendants' ("Youngevity") motion for summary judgment on Defendants' and Counterclaim Plaintiffs' ("Wakaya") sixth counterclaim asserting tortious interference with existing economic relations. (ECF No. 667 ("Mot.").) For the reasons discussed below, the Court grants in part and denies in part Youngevity's motion.

## BACKGROUND

On February 12, 2016, Wakaya entered into a Royalty Agreement with Rick Anson (ECF No. 426-3, 6–14), and a License Agreement with Anson's company, LiveWell, LLC (collectively, "Anson").  (*Id.* at 15–30.)  The Royalty Agreement required Anson to protect the confidentiality of Wakaya's proprietary information and trade secrets.  (*Id.* at 8–9 (§ 4).)  It also prohibited Anson from engaging in any competing business for one year after termination of the Royalty Agreement. (*Id.* at 10–11 (§ 8).)  The License Agreement provided Wakaya with the exclusive, worldwide right to use LiveWell's technology in Wakaya's products "with the eventual goal of acquiring such assets . . . ."  (*Id.* at 16 (¶ 1.4).)

On March 23, 2016, Youngevity filed this lawsuit.  (ECF No. 1.)

On October 19, 2016, Youngevity's Chief Executive Officer, Steve Wallach, sent Anson contact information for Peter Arhangelsky, Youngevity's counsel in this lawsuit.  (ECF No. 426-3, 32.)  On October 24, 2016, Anson emailed Wallach introducing him to Jesse Vyckal, "a key person in the development of the nutritional hydration system with over eight years of product design, specializing in ingredient formulations for [LiveWell's] tablets."  (*Id.* at 34.)  The email also provided an overview of LiveWell's financials and technology.  (*Id.* at 34–47.)

On November 4, 2016, Anson emailed Wallach and Youngevity's Chief Financial Officer, David Briskie, stating, "I was told some new information I would like to share with you," and requesting a telephone conversation.  (*Id.* at 49.)  On November 6, Anson again emailed Briskie and Wallach to set up a telephone conversation "for an update."  (*Id.* at 51.)  Briskie stated that he "reviewed this with Steve and we are comfortable that is [sic] arrangement will work well for both of us."  (*Id.* at 53.)  Other portions of the email are redacted for attorney-client privilege.  (*Id.* at 52.)  Anson testified that he "frequently" communicated with Wallach in October 2016.  (ECF No. 680-1 ("Anson Dep."), 212:9–12.)

On December 16, 2016, Anson sent Todd Smith, Wakaya's Co-Founder, two

notices of default based on Wakaya's alleged failure to perform its obligations under the Royalty and Licensing Agreements. (ECF No. 426-3, 62–87.) The notices triggered Wakaya's 30-day deadline to cure its alleged failures. *Id.* at 10 (Royalty Agreement), 24–25 (Licensing Agreement).) The contracts were apparently terminated after the 30-day period elapsed.

On January 2, 2017, Anson emailed Wallach an updated overview of LiveWell's financials and compensation proposals noting "[t]he thirty day breach period ends on January 16th. I completely agree with you that our endeavors should remain quiet until we launch the system . . . ." (*Id.* at 167) (underlining in original.)

On February 2, 2017, Anson became Youngevity's Vice President of Global Innovation. (Anson Dep., 244:9–19.)

## STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 716 (9th Cir. 1996). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 323.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential

element of the nonmoving party's case on which the nonmoving party bears the burden of proving at trial. *Id.* at 322–23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to demonstrate that a genuine issue of disputed fact remains. *Celotex*, 477 U.S. at 314. The nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256. Rather, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

The court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

## DISCUSSION

Youngevity contends it is entitled to summary judgment because Wakaya has no evidence proving that Youngevity caused Anson to breach his contracts with Wakaya. (Mot., 3:19–4:15.) Further, the only potential interference Wakaya can show — sharing Wakaya's legal filings with Anson — cannot form the basis of a claim for intentional interference with contractual relations. (*Id.* at 4:17–5:14.) Wakaya opposes on the ground that there is ample evidence supporting its counterclaim that Youngevity intentionally interfered with its contracts. (ECF No.

680 (Opp'n").)

1. Legal Standard

To prevail on a claim of tortious interference with contractual relations, a plaintiff must prove: (1) a valid contract between a plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. *Quelimane Co. v. Stewart Title Guaranty Co.*, 19 Cal. 4th 26, 55 (1998).

"Because interference with an existing contract receives greater solicitude than does interference with prospective economic advantage, it is not necessary that the defendant's conduct be wrongful apart from the interference with the contract itself." *Id.*

2. Application

There are triable issues of fact with respect to whether Youngevity intentionally induced Anson to breach his contracts with Wakaya.

Youngevity contends that the undisputed facts show that it had nothing to do with Anson's decision to terminate his contracts with Wakaya. In support, it points to Wakaya's earlier alleged breaches of the agreements, allegedly a key factor in Anson's notices of default, and predated any communications between it and Anson. (ECF No. 427-2, 58 (p. 178:17–21).) Youngevity also points to Anson's testimony that Youngevity had nothing to do with his decision to terminate his contracts with Wakaya.[1] (ECF No. 427-2, 52 (p. 145:6–25).)

This evidence does not indisputably establish that Youngevity did not influence Anson's decision. It is undisputed that Anson and Wakaya had a

---

[1] The Court notes that Youngevity failed to provide the entire quoted portion of Anson's deposition. The quoted portion of the transcript may have been included elsewhere, but it was not on the page Youngevity cited and it is not enough to merely attach documents as exhibits. *See Harkins Amusement Enters., Inc. v. Gen. Cinema Corp.*, 850 F.2d 477, 482 (9th Cir. 1988) (refusing to consider evidence merely attached as an exhibit to summary judgment motion and not discussed in the party's memorandum.).

contractual relationship and that Wallach knew about it.  (ECF No. 426-3, 172 (pp. 159:21–160:3) (Wallach: "'Would you take a call from Rick Anson?' And I said, 'He works with Wakaya.'").)  The crux of the issue, however, is whether Youngevity acted intentionally to disrupt Anson and Wakaya's contractual relationship.  When viewed in a light most favorable to Wakaya, the Court cannot conclude that there is no genuine dispute of material fact.  Anson's communications with Youngevity about compensation and future product launches while a Wakaya employee create a triable issue as to whether Youngevity intentionally sought to disrupt the Royalty and Licensing Agreements.

In its reply, Youngevity contends that it is nevertheless entitled to summary judgment because Wakaya raises a new theory of liability outside of its pleadings.  (ECF No. 685, 1:19–26.)  In support, Youngevity cited *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963 (9th Cir. 2006).  The case is inapposite.

In *Pickern*, the plaintiff asked Pier 1 to construct an Americans with Disabilities Act-compliant access ramp from the store parking lot to the public sidewalk, but Pier 1 refused.  *Id.* at 965.  The plaintiff subsequently filed suit and the complaint contained a list of possible architectural barriers, but did not specify which barriers the plaintiff encountered or any that actually existed.  *Id.*  The Court granted Pier 1 summary judgment on the issue of the access ramp and other unspecified barriers for lack of evidence.  *Id.* at 966.  The Ninth Circuit affirmed summary judgment on, among other things, the unspecified barriers because Pier 1 had no notice of those violations in the complaint or otherwise.  *Id.* at 968–69.  The only notice Pier 1 had of the additional barriers was an expert report that was not served until after discovery had closed.  *Id.* at 969.  Here, by contrast, Youngevity does not claim that Wakaya did not provide sufficient notice of its basis for counterclaim six.

Wakaya also contends Youngevity interfered with Anson and Wakaya's contractual relationship by republishing or republicizing Youngevity's legal filings.

(ECF No. 404, 29–30 (¶¶ 212–217); *see* Opp'n, 3:6–17.)  There is evidence showing that Wakaya, not Youngevity, made Anson aware of the lawsuits against Wakaya.  (ECF No. 667-2, 3 (pp. 106:23–107:3).)  Even if that were not the case, California's litigation privilege applies to communications made in judicial proceedings, *see* Cal. Civ. Code § 47(b), and extends to communications regarding such judicial proceedings made to people with "a substantial interest in the outcome of the pending litigation."  *Youngevity Int'l Corp. v. Andreoli*, 749 F. App'x 634, 635 (9th Cir. 2019).  For this reason, the republication of the Verified Complaint to Anson (who had such a substantial interest) constitutes protected speech.  The Court therefore grants Youngevity summary judgment on this ground.

Youngevity's motion for summary judgment on Wakaya's sixth counterclaim is therefore granted in part and denied in part.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART AND DENIES IN PART** Youngevity's motion for summary judgment on Wakaya's sixth counterclaim.  Wakaya is prohibited from asserting counterclaim six based on Youngevity's alleged republishing or republicizing of its legal filings against Wakaya.

**IT IS SO ORDERED.**

Dated:  November 5, 2020

_____
Honorable Barry Ted Moskowitz
United States District Judge